### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br>    Plaintiffs,<br><br>v.<br><br>BIOHEALTH LABORATORIES, INC., ET AL.,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL CASE NO.<br>3:19-CV-01324 (JCH)<br><br><br><br>NOVEMBER 22, 2021 |

**POST-REMAND RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 25)**

## I.   INTRODUCTION

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") have brought this action against BioHealth Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PBL"), Epic Reference Laboratories, Inc. ("Epic"), Epinex Diagnostics, Inc. ("Epinex"), NJ Reference Laboratories, Inc. ("NJ"), and Alethea Laboratories, Inc. ("Alethea") (collectively, "the Labs"), based on the defendants' alleged fraudulent billing scheme.  At this stage in the litigation, Cigna's legal claims have been dismissed, and only its equitable claims remain.  These include its Count Three Unjust Enrichment claim under Connecticut law; its Count Six claim under section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"); and its Count Seven claim under the Declaratory Judgment Act.

Defendants have moved to dismiss all three of these claims.  See Defs.' Mot. to Dismiss (Doc. No. 25); Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 25-1); Defs.' Reply in Supp. of Their Mot. to Dismiss ("Defs.' Reply") (Doc. No. 30).  Cigna opposes the Motion.  See Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.'

Mem.) (Doc. No. 27).  This court also ordered "additional briefing on the question of whether the plaintiff's equitable claims should be dismissed on the doctrine of laches." Order on Mot. for Leave to File Renewed Mot. and Mem. on Remand at 1 (Doc. No. 58). The parties timely filed their memoranda.  <u>See</u> Defs.' Post-Remand Brief in Further Supp. of Mot. to Dismiss ("Defs.' Supplemental Mem.") (Doc. No. 62); Pls.' Opp'n to Defs.' Post-Remand Brief ("Pls.' Supplemental Mem.") (Doc. No. 63); Defs.' Post-Remand Reply Brief ("Defs.' Supplemental Reply") (Doc. No. 65).

For the reasons discussed below the Motion to Dismiss is granted in part and denied in part as to Cigna's remaining equitable claims.

## II.   ALLEGED FACTS

Cigna is a managed care company that offers and administers employee health and welfare benefit plans.  <u>See</u> Compl. ¶¶ 26-27.  Cigna serves as a claims administrator for these plans, exercising discretionary authority and fiduciary responsibility over their administration.  <u>Id.</u> at ¶ 28.  In that capacity, one of Cigna's fiduciary responsibilities is to control the cost of health care for its members.  <u>Id.</u> at ¶ 29. It does so, <u>inter alia</u>, by entering into agreements with select "in-network" health-care providers to provide services at fixed rates.  <u>Id.</u> at ¶ 29.  In contrast, "out-of-network" providers do not have an agreement with Cigna and set their rates independently.  <u>Id.</u> at ¶ 31.  When a plan member visits an out-of-network provider, they pay a higher percentage of the total costs than they would if they had visited an in-network provider. <u>Id.</u> at ¶ 32.  Members are thus incentivized to visit in-network providers, keeping the cost of not only those particular services down, but also the overall cost of health care for employees and plan members.  <u>Id.</u> at ¶ 37.

Defendant Labs are all out-of-network providers.  Cigna alleges that they engaged in three types of fraudulent conduct related to billing: fee forgiveness, id. at ¶¶ 82-89, billing for unnecessary testing, id. at ¶¶ 90-107, and unbundling, id. at ¶¶ 108-116.  Fee forgiveness is the practice of an out-of-network provider not attempting to collect the required payment from the patient-member.  Id. at ¶ 38.  This destroys the incentives for members to seek out cost-effective, in-network providers and drives up costs for other members in the form of higher premiums and/or reduced benefits.  Id. at ¶ 39.  Cigna plans also include language excluding coverage from out-of-network providers who do not obligate members to pay their required portion of the out-of-network charges.  Id. at ¶ 42.  Billing for unnecessary testing is, as the Second Circuit observed, "just what it sounds like and is largely self-explanatory."  Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc., 988 F.3d 127, 131 (2d Cir. 2021).  Third, unbundling is "the practice of healthcare providers separately billing for individual services that should otherwise be billed together at a reduced price."  Id.

Some time before August 17, 2015, Cigna's anti-fraud unit "received information that some or all of the Labs were engaged in potentially fraudulent conduct."  Compl. at ¶ 72.  It proceeded to open an investigation into PBL, and eventually determined that PBL had been fraudulently unbundling and billing Cigna for medically unnecessary services.  Id. at ¶ 73.  Cigna proceeded to place a flag on PBL's claims for reimbursement, and began denying all claims it received from PBL for the type of testing it believed to be medically unnecessary.  Id. at ¶ 74.  Cigna continued to investigate PBL's practices regarding fee forgiveness, while also opening an investigation into BioHealth for similar conduct.  Id. at ¶ 75.  As part of this process, it

sent letters to patients and plan members asking them questions about BioHealth and PBL's billing practices, conducted phone interviews with patients about the services they had received, and obtained a sample of patient ledgers from PBL.  Id. at ¶¶ 76-79. Following the investigation, Cigna placed a flag on all claims from BioHealth and PBL and denied all their claims for reimbursement based on fee forgiveness.  Id. at ¶ 80. Because all of the defendant Labs were affiliated with one another and owned and operated by the same entities, Cigna alleges the other four Labs engaged in the same fraudulent practices as BioHealth and PBL.  Id. at ¶ 81.

On August 17, 2015, BioHealth and PBL filed a complaint against Cigna in the United States District Court for the Southern District of Florida.  Id. at ¶ 117.  They alleged that Cigna had improperly denied, delayed, or otherwise failed to process claims they had submitted, asserting causes of action under ERISA and Florida law.  Id.  That case was ultimately dismissed by the District Court, and on September 21, 2017, the Eleventh Circuit vacated portions of the District Court's decision but affirmed the dismissal of BioHealth and PBL's Complaint for failure to exhaust administrative remedies.  Id. at ¶¶ 118-23.  Two years later, on August 27, 2019, Cigna filed this action in the District of Connecticut.

## III.   PROCEDURAL HISTORY

In the current action, Cigna brought seven counts against the Labs based on their alleged fraudulent billing scheme.  Id. at ¶¶ 125-74.  These included various legal and equitable claims under both federal and state law.  Id.  Shortly thereafter, the Labs moved to dismiss all claims.  See Defs.' Mot. to Dismiss (Doc. No. 25).  This court originally granted that Motion in full, holding that both Cigna's legal and equitable claims were time-barred.  See Ruling on Defs.' Mot. to Dismiss at 11 (Doc. No. 47).  Cigna

appealed, and the Second Circuit affirmed that decision in part and vacated it in part. While the Circuit agreed that Cigna's legal claims were barred by the applicable statute of limitations, it held that under Connecticut law "its [e]quitable [c]laims [were] subject only to the doctrine of laches."  Conn. Gen. Life Ins. Co., 988 F.3d at 135.  It therefore vacated this court's decision as to Cigna's equitable claims and remanded the case with instructions for this court to "deny the Labs' motion to dismiss with respect to Cigna's [e]quitable [c]laims unless the district court concludes that a meritorious laches defense is available from the face of Cigna's complaint."[1]  Id.  Thus, on remand, only Cigna's equitable claims – i.e., its Count Three Unjust Enrichment claim, its Count Six ERISA claim, and its Count Seven Declaratory Judgment Act claim – remain.

In holding that Cigna's equitable claims were subject only to the doctrine of laches and not Connecticut's statute of limitations, the Second Circuit first observed that "[f]ederal law supplies no limitations period for either Cigna's ERISA § 502(a)(3) claim or Declaratory Judgment Act claim."  Id. at 132.  "In this case," then, "those claims adopt the limitations period of the Connecticut state-law cause of action to which they are most analogous," and the "adopted limitations period also ordinarily incorporates the

---

[1] The Second Circuit did not address the other arguments raised by defendants in their Motion to Dismiss.  In particular, the Labs also argued that Cigna's claims could be dismissed because they "fail[ed] entirely to allege any purportedly-fraudulent billing with respect to four of the Defendants in this action, and their allegations against Defendants PBL and BioHealth [did] not satisfy the pleading requirements of Rule 12(b)(6) and Rule 9(b)."  Defs.' Mem. at 14 (emphasis in original).  Because this court originally held that all of Cigna's claims were timed-barred, it determined then that it "need not address the Labs' remaining arguments."  Ruling on Defs.' Mot. to Dismiss at 11.  Consequently, the Second Circuit did not address these arguments either.

Following remand, the Labs sought leave to file supplemental briefing in part to further address these issues.  See Defs.' Request for Briefing Order on Remand (Doc. No. 53).  The court denied that request as to supplemental memoranda on issues already raised in the Motion to Dismiss.  Order on Mot. for Leave to File Renewed Mot. and Mem. on Remand at 1 (Doc. No. 58).  Instead, the court noted that, if it "concludes not to dismiss the plaintiff's equitable claims on the ground of laches, it intends to address the other arguments raised in the defendants' Motion to Dismiss."  Id.

state-law rules for applying the statute of limitations." Id. at 133.  "Based on the

complaint and the parties' briefing," the Circuit determined, both the ERISA and the

Declaratory Judgment Act claim "most closely resemble a Connecticut unjust

enrichment claim." Id.  Thus, the court proceeded to analyze all three of Cigna's

equitable claims together for the purposes determining whether they were time-barred.

Id. at 133-34.

It concluded they were not.  "Ordinarily, equitable claims, like those for unjust

enrichment, are exempt from statutory limitations periods under Connecticut law and

are instead subject only to the equitable doctrine of laches." Id. at 134.  Although the

Connecticut Supreme Court had held in Certain Underwriters at Lloyd's, London v.

Cooperman, 298 Conn. 383, 411 (2008), that because certain "legal claims are barred,

[a] plaintiffs' equitable claims based on the same facts also are time barred," it had

clarified that decision in a decade later in Reclaimant Corp. v. Deutsch, 332 Conn. 590

(2019).  There, the Supreme Court held unequivocally that equitable claims are "not

subject to a statute of limitations." Reclaimant, 332 Conn. at 613.  Moreover,

Reclaimant did not limit its holding to cases addressing only equitable claims. Conn.

Gen. Life Ins. Co., 988 F.3d at 134 n. 4.  Instead, it "recast Certain Underwriters as

having turned on a prudential rule designed to aid courts in applying the doctrine of

laches." Id. at 134.  Thus, while a "district court may consider the limitations period

applicable to [a plaintiff's] analogous legal claims" in determining whether an action

should be dismissed for laches, "it should treat that period as simply one non-dispositive factor among many relevant to its ultimate decision."[2] Id. at 135.

The Second Circuit issued its opinion on February 10, 2021, and the case was remanded.  This court subsequently ordered "additional briefing on the question of whether the plaintiff's equitable claims should be dismissed on the doctrine of laches." Order on Mot. for Leave to File Renewed Mot. and Mem. on Remand at 1 (Doc. No. 58). The parties timely filed their memoranda, thus fully briefing the issues currently before the court.

## IV.    STANDARD OF REVIEW

A.    Rule 12(b)(6)

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  Id.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  Id.  However, when

---

[2] In holding that Cigna's legal claims were time-barred, the Circuit also held that Connecticut's statute of limitations was not tolled during the Florida lawsuit.  Id. at 137.  Thus, as this court "consider[s] the limitations period applicable to Cigna's legal claims" as "one non-dispositive factor" to determine whether "a meritorious laches defense is available from the face of Cigna's complaint," the relevant limitations period is not tolled during the pendency of the Florida action.  Id. at 135.

reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor.  See Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

B.   Rule 9(b)

Rule 9(b) requires that, in alleging fraud, a party must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A complaint alleging fraud must ordinarily: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotations and citations omitted).  However, "the adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific."  United States ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med. Resp., Inc., 865 F.3d 71, 81 (2d Cir. 2017) (internal quotations and citations omitted).  "Despite the generally rigid requirement [of Rule 9(b)], allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge."  Id. at 81-82 (internal quotations and citations omitted).  "Pleading on information and belief" is therefore "a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject."  Id. at 82 (internal quotations and citations omitted).  When pleading on information and belief, a Complaint must "adduce specific facts supporting a strong inference of fraud."  Id. (internal quotations and citations omitted).

Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. Pro. 9(b).  "The second circuit

had recognized that the requisite intent of the alleged speaker of the fraud not be alleged with great specificity . . . for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind."  Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP, 128 F. Supp. 3d 501, 507-08 (D. Conn. 2015) (internal quotations and citations omitted).

## V.   ANALYSIS

A.   Laches

Defendants first argue that the court "should dismiss Cigna's equitable claims under the doctrine of laches because Cigna unduly delayed filing suit and the Labs are prejudiced by Cigna's delay."  Defs.' Supplemental Mem. at 2.  Their argument proceeds in two parts.  First, they contend they are entitled to a presumption of laches on Cigna's federal equitable claims because the current action was brought outside the statute of limitations for Cigna's analogous legal claims.  Id. at 6-7; Defs.' Supplemental Reply at 5-7.  Second, they argue that, even if the presumption does not apply, all of Cigna's equitable claims should still be dismissed because substantively, Cigna is guilty of laches.  Defs.' Supplemental Mem. at 7-11; Defs.' Supplemental Reply at 1-5, 8-9. Cigna refutes these arguments, and also contends that "dismissal on the basis of laches at the pleading stage is rare and an extreme remedy."  Pls.' Supplemental Mem. at 3. The court addresses each of these arguments in turn.

1.   Presumption of Laches

The Labs rely on Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187 (2d Cir. 1996) to argue they are entitled to a presumption of laches on their federal equitable claims.  Defs.' Supplemental Mem. at 6-7.  Cigna counters by arguing that the term "presumption" is a misnomer, and what defendants are "actually attempting to [do is]

9

impose a statute of limitations on Cigna's equitable claims where one does not exist."
Pls.' Supplemental Mem. at 4.  They note that the Second Circuit remanded this case
with clear instructions to this court that it should look to the analogous statute of
limitations "as simply one non-dispositive factor" in assessing defendants' laches
argument, and that at no point did it "suggest that the limitations period applicable to
Cigna's previously dismissed legal claims would . . . create a presumption" of laches.
Conn. Gen. Life Ins. Co., 988 F.3d at 135; Pls.' Supplemental Mem. at 5.  Moreover,
Cigna argues that Conopco is "inapposite and readily distinguishable" for two reasons.
First, because it "arose under the Lanham Act, which involves its own, distinct set of
standards regarding the application of laches, which do not apply to the ERISA and
Connecticut state law claims asserted here,"[3] and second, because "the court's decision
on the laches defense . . . turned on findings of fact and conclusions of law [made] after
trial proceedings."  Pls.' Supplemental Mem. at 5 (emphasis in original).  On these
points, the court largely agrees with the Labs.

In Conopco, the Second Circuit considered a dispute between two competitors in
the pasta sauce market that involved claims brought under section 43(a) of the Lanham
Act and state law.  Conopco, 95 F.3d at 190.  Although the District Court had initially
denied the defendant's Motion for Summary Judgment made "on the basis of laches . . .
finding that issues of material fact remained in dispute," it later granted judgment to the
defendant on partial findings after it had shown at trial that the case was "barred by

---

[3] The Labs have not argued that the presumption of laches should apply to Cigna's state law
unjust enrichment claim.  The court therefore does not address that question.

laches," despite also finding that the defendant had not been entitled to the presumption. Id. On appeal, the Second Circuit affirmed. Id. at 191-92.

In doing so, it began by noting that, "[a]lthough laches is an equitable defense . . . analogous statutes of limitation remain an important determinant in the application of a laches defense." Id. at 191. "Because the Lanham Act establishe[d] no limitations period" for the claims brought by the plaintiff, "and because there [was] no corresponding federal statute of limitations," the court reasoned that it should "look to the most appropriate or the most analogous state statute of limitations for laches purposes." Id. (internal quotations and citations omitted). "That statute of limitations then determines which party possesses the burden of proving or rebutting the defense." Id. (emphasis added). In other words:

> [P]rior to the running of the most closely analogous state statute of limitations there is no presumption of laches and the burden remains on the defendant to prove the defense. Alternatively, once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not to be applied in the case.

Id.

This reasoning was not, as Cigna argues, limited to claims under the Lanham Act. Rather, it appears be an aspect of applying laches to equitable claims brought under federal law in this Circuit at least where, as is the case here, the statute itself establishes no limitations period and laches are available as a defense. Plaintiffs do not cite – and this court is not aware – of any binding case law limiting Conopco to Lanham Act claims. Indeed, a searching review of this Circuit's laches jurisprudence suggests the opposite: courts in this Circuit have not hesitated to apply this framework to other equitable claims under federal law to aid them in assessing whether a meritorious laches defense has been made. See, e.g., infra at 13-14 (collecting cases).

11

Even the Second Circuit's holding in <u>Conopco</u> was itself derived from an earlier Second Circuit case that did not involve the Lanham Act but helped establish the precedent, <u>Leonick v. Jones & Laughlin Steel Corp.</u>, 258 F.2d 48 (2d Cir. 1958).[4] The <u>Conopco</u> court quoted language cited in Leonick at length to support its central proposition that applying such a burden-shifting framework linked to the analogous state-law statute of limitations was appropriate.

In <u>Leonick</u>, the Circuit assessed a laches defense made in response to an equitable claim brought under the Veterans' Reemployment Act.  <u>Leonick</u>, 258 F.2d at 49.  There, the plaintiff had been honorably discharged by the Army in 1943, and within 90 days had appeared at his former company and requested that his employment be restored.[5]  <u>Id.</u>  Eleven years later, he brought suit seeking, essentially, his job back. Because this was an equitable claim, the Circuit held that the analogous New York statute of limitations was clearly not controlling.  However, it remained equally "clear that [the statute of limitations was] not without significance.  The statute [did] provide a guide to which the federal courts have customarily looked for aid in determining what is a reasonable period of time within which a suitor in equity must assert his rights."  <u>Id.</u> at 50.  Because the plaintiff had "brought [his suit] after the statutory time ha[d] elapsed, the burden [was] on [him] to aver and prove the circumstances making it inequitable to

---

[4] The court also cited a more recent case from the Third Circuit – <u>University of Pittsburgh v. Champion Products Inc.</u>, 686 F.2d 1040 (3d Cir. 1982) – for a similar proposition involving trademark infringement and unfair competition.  There the court observed that its "recent cases ha[d] held that where the plaintiff sleeps on his rights for a period of time greater than the applicable statute of limitations, the burden of proof shifts to the plaintiff to prove the absence of such prejudice to the defendant as would bar all relief."  <u>University of Pittsburgh</u>, 686 F.3d at 1045 (internal quotations and citations omitted).

[5] Section 8 of the Veterans' Reemployment Act required private employers to restore persons honorably discharged from the U.S. land or naval forces to their prior position or a position of like seniority, status, and pay, subject to certain additional conditions.  <u>See id.</u> at 48 n.1.

apply laches to his case."  Id. (internal quotations and citations omitted).  Thus, because the plaintiff had "wholly failed to present any justification for his failure to assert his alleged rights for a period of at least ten years, the district court properly held that his suit was barred by laches."  Id.

Courts in this Circuit have continued to apply the presumption of laches burden-shifting framework to non-Lanham Act claims post-Conopco as well.  See, e.g. Leopard Marine & Trading, Ltd. V. Easy Street Ltd., 896 F.3d 174, 195 (2d Cir. 2018) ("[i]n deciding whether maritime claims are barred by laches, courts of admiralty will use local limitation statutes as a rule-of-thumb . . . . When the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks why the case should be allowed to proceed; when the suit . . . [has] been brought within the state limitation period, the court asks why is should not be . . . . If the most closely analogous state statute of limitations has not run, the presumption of laches does not attach and the defendant bears the burden of proving the defense") (internal quotations and citations omitted) (emphasis in original); Ikelionwu v. U.S., 150 F.3d 233, 238 (2d Cir. 1998) (holding that where a claimant sued the United States for the return of forfeited currency, and his "claim [was] timely under the applicable statute of limitations . . . the burden remains on the defendant to prove all the elements of the [laches] defense");[6] State Farm Mut. Auto Ins. Co. v. Valery Kalika, No. 04-CV-4631, 2006 WL 6176152, at *7 (E.D.N.Y. Mar. 16, 2006) (citing Conopco and Leonich to apply the burden-shifting framework to a state-law unjust enrichment claim and noting that "[i]f there is no

---

[6] The court notes that, in Ikelionwu, there was a federal statute of limitations that applied to the plaintiff's claim, even though it was equitable in nature.  Id.  Nevertheless, the court still cited and extended Conopco to employ the same burden-shifting framework.  Id.

limitations period set by statute for a particular claim, the court looks to the most analogous period . . . . When a claim is brought within the applicable limitations period, the burden is on the defendant to show . . . circumstances which require the application of the doctrine of laches") (internal quotations and citations omitted), report and recommendation adopted State Farm Mut. Auto Ins. Co. v. Valery Kalika, No. 1:04-CV-04631, Order (Doc. No. 105) (E.D.N.Y. Mar. 31, 2006) ("the Court agrees with Judge Pollack's well-reasoned recommendations"); Gordon v. Amadeus IT Group, S.A., 194 F. Supp. 3d 236, 251 (S.D.N.Y. 2016) (citing Conopco's burden-shifting framework to explain "the relevance of analogous statutes of limitations when considering laches as a defense" to a claim under the Sherman Act; Williams v. Nat'l Gallery of Art, London, No. 16-CV-6978, 2017 WL 4221084, at *12 (S.D.N.Y. Sept. 21, 2017) (citing and applying Conopco to an action seeking to recover a piece of art); see also 30A C.J.S. Equity § 159 (2021) (although "[g]enerally, a party asserting the affirmative defense of laches bears the burden of proof with respect to that defense," where the plaintiff's delay in bringing the action "exceeds the time fixed for suit by statutes of limitations in an analogous action at law, the burden is on the party asserting such right to explain the delay and to show that it would be inequitable and unjust to refuse the aid of the court in the enforcement of the right"); Mitchell A. Lowenthal et al., Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations, 65 Cornell L. Rev. 1011, 1015 n. 11 (1980) (describing the doctrine of laches generally and noting that federal "[c]ourts give statutes of limitations varying degrees of weight; some shift the burden of persuasion to the plaintiff after the period has run, although others consider the running merely as one element in the defense").

Because <u>Conopco</u> was not limited to claims under the Lanham Act, and because courts in this Circuit have applied its reasoning to other federal claims where a defense of laches was properly asserted, the court concludes that the presumption applies to the federal claims in this case as well.  And, because Cigna has brought its claims outside of the analogous statute of limitations, it also concludes that the Labs are entitled to a presumption of laches.

The court notes, however, that this is not an easy question of law.  Cigna is not incorrect to point out that the vast majority of cases in this Circuit applying the presumption of laches doctrine arise in the Lanham context.  In addition, none of the cases the court cites above directly discuss the delicate interplay between federal and state law in this context.  While the Second Circuit has used the presumption of laches doctrine in the context of federal claims, Connecticut courts, in assessing laches defenses under state law, have not followed suit.

Here, the Second Circuit has held that, because federal law supplies no statute of limitations period for either of Cigna's federal claims, "those claims adopt the limitations period of the Connecticut state-law cause of action to which they are most analogous."  <u>Conn. Gen. Life Ins. Co.</u>, 988 F.3d at 133.  And, because those federal claims are most analogous to Cigna's unjust enrichment claim under state law, and unjust enrichment is "subject only to the equitable doctrine of laches" as a matter of Connecticut law, Cigna's federal claims are thus subject only to laches as well.  <u>Id.</u> at 134.  The question therefore becomes, in applying the doctrine of laches to Cigna's federal claims, whether this court should be applying the doctrine promulgated by federal courts in the context of federal statutes, or continue to follow Connecticut law not

only in determining that Cigna's claims are subject to laches, but also in how that doctrine should be interpreted.

The Second Circuit does not appear to have provided an explicit answer to this question. However, its reasoning in Conopco and Leonick is instructive. In both those cases, the plaintiff brought a claim under a federal statute. In both cases, the court held that because they were seeking equitable relief, the analogous state statute of limitations was not controlling. They then looked only to the analogous statute of limitations – but not the state forum's substantive jurisprudence regarding laches – as a guide for determining how to apply laches to the federal claim. The court follows the same process here. It also notes that outside of this question, there do not appear to be any further substantive differences between Connecticut and federal law regarding laches.

Applying the presumption does not, as Cigna contends, contradict the Second Circuit's remand order. Nor does it impose a statute of limitations where one does not otherwise exist. As Cigna correctly points out, the presumption "does not answer the ultimate question of whether laches bars the Plaintiff's claims." Pls.' Supplemental Mem. at 6 (quoting Gibson v. Metropolis of CT LLC, No. 19-CV-00544, 2020 WL 956981, at *5 (D. Conn. Feb. 27, 2020). It simply shifts "the burden of providing evidence to defeat laches . . . to the plaintiff," while still leaving "the ultimate burden of persuasion . . . with the defendant." BJB Limited v. iStar Jewelry LLC, --- F. Supp. 3d ----, 2021 WL 1431345, at *7 (E.D.N.Y. Apr. 9, 2021). In this way, this court is – consistent with Second Circuit precedent – "consider[ing] the limitations period applicable to Cigna's analogous legal claims" but "treat[ing] that period as simply one

16

non-dispositive factor among many relevant" to whether "a meritorious laches defense is available" to the Labs at this stage.  Conn. Gen. Life Ins. Co., 988 F.3d at 135.  It is to that question the court now turns.

        2.     Merits of the Laches Defense

A meritorious laches defense requires a showing that the plaintiff: (1) "'is guilty of unreasonable and inexcusable delay,'" and; (2) that the delay "'has resulted in prejudice to the defendant.'"  Leopard Marine, 896 F.3d at 193 (2d Cir. 2018) (quoting Ikelionwu, 150 F.3d at 237).  Laches is "ordinarily not a proper defense at the pleading stage.  Id. at 134.  "[A] determination that a claim is barred by laches requires a factual inquiry into the reasons for plaintiff's delay and the extent and nature of the prejudice suffered by defendant as a result of that delay."  Deere & Co. v. MTD Products, Inc., No. 00-CIV-5936, 2001 WL 435613, at *2 (S.D.N.Y. Apr. 30, 2001) (emphasis added).  Because such a factual inquiry "is inappropriate on a motion to dismiss", a court's inquiry at this stage is limited to "the face of [the] complaint."  Id.; Conn. Gen. Life Ins. Co., 988 F.3d at 135.  Dismissal at this stage on the basis of laches is therefore rare, as the defense "necessarily involve[s] a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute."  State Farm, 2006 WL 6176152, at *8.

Here, the Labs nevertheless contend that the court should dismiss Cigna's Complaint in its entirety at the pleadings stage.  It makes three arguments to this end, none of which have merit.  First, it spends several pages focusing on the lengthy delay between the alleged harm and Cigna's commencement of this action in federal court, stressing that "the uncontested record reveals that Cigna had at least four years to pursue equitable claims against the Labs . . . but declined to do so."  Defs.'

Supplemental Mem. at 9.  As the Labs admit, however, the "[m]ere lapse of time, without a showing of prejudice, will not sustain a defense of laches."  Zuckerman v. Meto. Museum of Art, 928 F.3d 186, 193 (2d Cir. 2019).

The Labs' second argument seeks to build on the lapse of time to show prejudice, but similarly falls short.  Id.  They note that Cigna "allege[d] that the Labs used the same third-party billing company to prepare and submit claims for reimbursement to Cigna."  Defs.' Supplemental Mem. at 9.  Because these "old records . . . are outside the Labs' possession," they allege, they will be prejudiced in defending against Cigna's claims.  Id.  Maybe so.  At this stage and absent "a fact-intensive analysis and balancing of equities", however, it is impossible for the court to determine whether the difficulty in retrieving records that the Labs speculate about will be actual prejudice as they proceed to defend against Cigna's claims.  Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).

Finally, the Labs attempt to show that Cigna's delay was unreasonable and inexcusable by pointing to its tactics in other actions it has brought against other parties. Defs.' Supplemental Mem. at 10-11.  Stated differently, they attempt to bring in information beyond the face of the Complaint to argue that Cigna brought this suit as a strategic maneuver.  At this stage, absent a developed record, it would not be appropriate for the court to make factual findings regarding the reasons for Cigna's delay based on cases first raised in a Memorandum supporting its Motion to Dismiss.

For these reasons, the Labs' Motion to Dismiss on the basis of laches in denied at this time, without prejudice to defendants asserting an affirmative defense of laches.

B.    <u>Failure to State a Claim</u>

The Labs also argue that all of Cigna's remaining claims should be dismissed for

failure to adequately state a claim.  Defs.' Mem. at 14-27; Defs.' Reply at 8-10.

Because all three of Cigna's remaining claims "sound in fraud", they are subject to the

heightened pleading standard of Rule 9(b).  <u>See</u> <u>Rombach</u>, 355 F.3d at 171;[7] Compl. at

¶¶ 138, 156, 168 (incorporating all of the preceding paragraphs in the Complaint,

including allegations of fraud, into each of the three remaining claims); Compl. at ¶ 140

(premising the Count Three unjust enrichment claim on the Labs' alleged "false,

misleading, and fraudulent charges submitted to Cigna"); Compl. at ¶ 171 (doing the

same for the Count Seven claim for declaratory relief); Compl. at ¶ 161 (premising its

Count Six ERISA claim on "false and misleading representations, that included but are

not limited to the misrepresentations described in Paragraph 126 above," where

paragraph 126 specifically alleges fraud).

The Labs make two arguments for dismissal for failure to meet the pleading

requirements in Rule 9(b).  First, as to defendants PBL and BioHealth – against whom

---

[7] In <u>Rombach</u>, the Second Circuit held that "the heightened pleading standard of Rule 9(b) applies to . . . claims insofar as the claims are premised on allegations of fraud."  <u>Id.</u>  In doing so, it explicitly rejected the idea of an elements-based approach to the Rule's application.  In other words, simply "because proof of fraud or mistake is not a prerequisite to establishing liability" does not mean that Rule 9(b) does not apply.  <u>Id.</u>  "Th[e] wording [of Rule 9(b)] is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."  <u>Id.</u>  Thus, if the allegations in the Complaint are "predicated on fraud", "sound in fraud", or "rely upon averments of fraud", they are subject to Rule 9(b)'s requirements." <u>Id.</u>

Cigna concedes that its unjust enrichment and Declaratory Judgment Act claims are governed by Rule 9(b), but argues that its ERISA claim is subject to the usual pleading standards in Rule 8.  Pls.' Mem. at 14-15 (arguing that its "claim under ERISA § 502(a)(3) is adequately pled under Rule 8" and that all its "remaining claims are sufficient to satisfy Rule 9(b)").  In support, it cites <u>Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP</u>, 128 F. Supp. 3d 501, 511 (D. Conn. 2015).  That case is inapposite here.  There, the court was concerned with whether or not the relief sought by the plaintiff was appropriate under ERISA section 502(a)(3), not the sufficiency of the pleadings under Rule 8 or 9(b). <u>Id.</u>

Cigna levies the bulk of the factual allegations in its Complaint – they argue that the allegations are not stated with sufficient particularity.  Defs.' Mem. at 15-27.  Second, they note that the allegations against the other four labs – Epic, Epinex, NJ, and Alethea – are sparse.  Cigna alleges only that "[a]ll five [sic] of the individual Labs are wholly owned and operated by Medytox;" that they all "used the same third-party billing company to prepare and submit claims for reimbursement," and; "[b]ased upon information and belief" each of the Labs "employed the same policies, procedures, and/or practices with respect to urine drug testing; medical billing and coding; and the collection of cost-share obligations."  Compl. at ¶¶ 67, 69-70.  The court assesses both of these arguments in turn.

> 1.     PBL and BioHealth

As discussed above in Section IV.B, Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A complaint alleging fraud must ordinarily: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Rombach, 355 F.3d at 170 (internal quotations and citations omitted).  However, "the adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific."  Chorches, 865 F.3d at 81.  In particular, where plaintiffs "allege fraud over a continuing course of conduct during a period of . . . multiple years, with respect to [multiple] parties," Rule 9(b) "does not require a plaintiff to set forth a complete history of every transaction."  White v. Allstate Ins. Co., No. 3:98-CV-1586, 2000 WL 303435, at *2 (D. Conn. Feb. 1, 2000) (internal quotations and citations omitted).

The Labs spend a large portion of their Memorandum focusing on whether the sources and factual assertions underpinning Cigna's allegations of fraud against PBL and BioHealth meet the requirements of Rule 9(b). As Cigna correctly points out, this misses the mark.  Pls.' Mem. at 15-18.  It is the allegations of fraud themselves – not the allegations about how Cigna discovered the alleged fraud – that are subject to the four-prong test in Rombach.  On that score, Cigna has adequately pled its three remaining claims against PBL and BioHealth.

First, Cigna is clear about the three categories of fraudulent billing it has alleged, supra at Section II, and thus has "specif[ied] the statements that [it] contends were fraudulent."  On prongs two and three, as Cigna correctly points out, "the 'speaker' is whoever [at PBL and BioHealth] prepared the fraudulent claims, and the 'where' and 'when' is each instance that Cigna received the Labs' fraudulent claim for reimbursement."  Pls.' Mem. at 17.  Cigna need not delineate each case of fraud – at this stage, the specific examples it gives of alleged fraud by PBL and BioHealth are sufficient.  See, e.g., Compl. at ¶¶ 73-79, 102-07.  Finally, Cigna has also sufficiently explained why it believes the billing in question was fraudulent.  Id. at ¶¶ 82-116.

For these reasons, the Labs' Motion to Dismiss Cigna's remaining claims against PBL and BioHealth for failure to meet the pleading standards in Rule 9(b) is denied.

### 2.    Epic, Epinex, NJ, and Alethea

In contrast to the specific, example-driven allegations Cigna makes against PBL and BioHealth, its claims against Epic, Epinex, NJ, and Alethea are all based on information and belief.  Such claims can be adequate under Rule 9(b) in certain circumstances.  For instance, "when facts are peculiarly within the opposing party's knowledge," a claim may still meet the requirements of Rule 9(b) if "the complaint

adduce[s] specific facts supporting a strong inference of fraud." Chorches, 865 F.3d at 82.

Here, Cigna alleges that Epic, Epinex, NJ, and Alethea all "followed the same testing, billing, and collection practices employed by BioHealth and PBL . . . because each of [those] Labs is owned and operated by the same company and employed the same third-party billing company to prepare and submit claims for reimbursement." Pls.' Mem. at 19. Because Cigna has adequately alleged its claims against PBL and BioHealth, it asks this court to impute those allegations onto the four remaining Labs based on information and belief. Because it has made specific allegations against two Labs, it argues, and those Labs are owned by the same company and use the same third-party for billing, it "need not restate the identical allegations" for each of the other four Labs. Id.

The court disagrees for two reasons. First, as the Second Circuit articulated in Chorches, pleading upon information and belief may be sufficient for the purposes of Rule 9(b) where the plaintiff does not have access to the information necessary to state the allegations with particularity; he pleads facts within his knowledge demonstrating as much; and his pleadings provide a "strong inference" that the defendant engaged in the alleged conduct. Chorches, 865 F.3d at 82. Cigna meets none of these requirements. First, it has not alleged that the information necessary to plead its claims against Epic, Epinex, NJ, and Alethea are outside of its control. If anything, the Complaint and Cigna's Memoranda suggest the opposite: it has adequately pled its allegations against PBL and BioHealth; alleged the other four Labs engaged in the same behavior; but

rather than make factual allegations to support that claim, instead chooses to argue that it "need not" do so because it "would be superfluous and inefficient."[8] Pls.' Mem. at 19.

Nor does Cigna's Complaint "adduce specific facts supporting a strong inference" that Epic, Epinex, NJ, or Alethea engaged in the alleged fraudulent conduct. Chorches, 865 F.3d at 82. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). "The requirement of Rule 9(b) . . . [is] '[i]f a claim involves multiple defending parties, a claimant usually may not group all claimed wrongdoers together in a single set of allegations. Rather, the claimant must make specific and separate allegations against each defendant.'" United States Reg'l Econ. Dev. Auth. v. Matthews, No. 16-CV-01093, 2018 WL 1409806, at *2 (D. Conn. Mar. 21, 2018) (quoting 2 James Wm. Moore, Moore's Federal Practice § 9.03[1][f] (3d ed. 2010) (emphasis added). Moreover, Rule 9(b) requires that "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." In re DDAVP Direct Purchaser Antitrust Litigation, 585 F.3d 677, 695 (2d Cir. 2009). Similarly, plaintiffs must provide a factual basis for their allegations that the four other Labs engaged in fraudulent conduct beyond simply speculating that it occurred because they had the same owner and used the same third-party billing company as PBL and BioHealth.

---

[8] Cigna cites Nutrishare, Inc. v. Conn. Gen. Life Ins. Co., No. 2:13-CV-02378, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014), to support its argument that pleading specific allegations against each defendant would be superfluous and unnecessary. The court in that case, however, held that a counterclaim against a single plaintiff need "not specify every transaction," because "such particularity is neither practical nor required." Nutrishare, Inc., 2014 WL 1028351, at *4.

Accordingly, the Motion to Dismiss is granted as to Cigna's remaining claims against Epic, Epinex, NJ, and Alethea.

## VI.    CONCLUSION

For the reasons stated above, the Motion to Dismiss is denied as to Cigna's Count Three Unjust Enrichment claim, its Count Six ERISA claim, and its Count Seven Declaratory Judgment Act claim – i.e. its remaining claims – against PBL and BioHealth. The Motion to Dismiss is granted for failure to meet the pleading standard as to Cigna's remaining claims against Epic, Epinex, NJ, and Alethea without prejudice to repleading if Cigna can allege facts against each defendant sufficient to meet the requirements of Rule 9(b).  If Cigna wishes to file an Amended Complaint, the court grants it leave to do so within the next **21 days**.


**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of November 2021.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge