UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br>　　Plaintiffs,<br><br>v.<br><br>BIOHEALTH LABORATORIES, INC., ET AL.,<br>　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:19cv1324 (JCH)<br><br><br><br><br>JUNE 12, 2023 |

**RECOMMENDED RULING ON MOTION FOR LEAVE TO SERVE SUBPOENAS
DUCES TECUM (DOC. NO. 172)**

**I.　　INTRODUCTION**

This case was referred to the undersigned by Order of the court dated March 1, 2022 (Doc. No. 98). It involves two actions consolidated for discovery. The plaintiffs are two health insurance companies affiliated with Cigna (hereinafter referred to as "Cigna"), and the defendants are three affiliated laboratory testing companies located in South Florida (hereinafter referred to as the "Labs").

This recommended ruling on Cigna's Motion for Leave to Serve Subpoenas Duces Tecum ("Mot. to Serve Subpoenas") (Doc. No. 172). For the reasons discussed hereafter, the undersigned recommends that the Motion to Serve Subpoenas be denied.

1

## II.    BACKGROUND

Cigna's customers in substance abuse programs require laboratory testing services.  The Labs performed out-of-network laboratory testing for individuals covered by medical insurance issued by, or managed by, Cigna.  The Labs seek to recover for tests they performed but were not compensated for, whereas Cigna alleges that the Labs engaged in fraudulent billing practices and seeks to recover the amounts it paid the Labs.

Some of the underlying acts that give rise to the claims in this case occurred at least as early as 2013.  In the Instant Motion, "Cigna seeks leave of this Court to serve subpoenas on five third-party witnesses after the close of discovery. . . ."  Memorandum in Support of Motion for Leave to Serve Subpoenas Duces Tecum ("Pls.' Mem.") at 1 (Doc. No. 172–1).  Each of the proposed witnesses was convicted of conspiracy to commit healthcare fraud in the Southern District of Florida at least a year prior to the commencement of this action.

Cigna's suit was commenced on August 27, 2019.  See Complaint (Doc. No 1). The initial Scheduling Order was entered on December 27, 2019.  See Scheduling Order (Doc. No. 38).  It called for the completion of discovery by November 20, 2020. Id. at 1.  The Scheduling Order was amended several times.  See, e.g., Order Granting Motion for Entry of Amended Scheduling Order (Doc. No. 111).  At the time the Instant Motion was filed, the Scheduling Order called for fact discovery to be completed by January 31, 2023.  See Order Granting Motion to Amend Scheduling Order (Doc. No. 156).  Cigna filed this Motion—more than a month after that deadline—on March 3, 2023.  See Mot. to Serve Subpoenas.

1. <u>Cigna's Arguments in Support of the Instant Motion</u>

In support of the Instant Motion, the plaintiffs posit that "[t]hroughout the course of discovery, Cigna has diligently sought documents and information regarding the medical necessity of the drug testing services at issue." Pls.' Mem. at 2. Cigna then describes interrogatories and document requests that it addressed to the Labs beginning on November 3, 2021, before specifically alleging that:

> Separately, on March 22, 2022, Cigna requested the medical records related to the drug testing services that the Labs performed. (<u>See</u> Ex. B, RFP No. 52.) In response, the Labs produced some (but not all) of the order forms from the referring providers and the drug testing results for the tests the Labs performed. Those records revealed that the number and frequency of tests that the providers were ordering, and for which the Labs were billing Cigna, far exceeded the bounds of medical necessity. The documents also reflected the Labs' practice of requiring providers to complete standard order forms that apply to <u>all</u> drug testing for <u>all</u> patients — without considering the diagnosis and treatment of any individual patient. These standing orders effectively ensured that the tests ordered were not medically necessary for any individual patient.

<u>Id.</u> at 3.

2. <u>Basis for the Instant Motion</u>

Cigna's factual support for this Motion focuses solely on its discovery efforts directed at the Labs, beginning in late March 2022. Cigna focuses on two requests for production ("RFP") Numbers 49 and 50, which asked for communications and agreements with any "licensed medical professionals" referred to in Cigna's Amended Complaint. <u>See</u> Exhibit C, The Labs' Responses to Cigna's Third Set of Requests for Production at 6–8 (Doc. No. 172–4). The Labs objected in writing on April 21, 2022. <u>Id.</u> Two months later, on June 24, 2022, Cigna filed a Motion to Compel the Labs to produce documents responsive to those RFPs. <u>See</u> Motion to Compel (Doc. No. 126). On October 25, 2022, the court adopted, ratified, and affirmed the undersigned's

3

Recommended Ruling granting Cigna's Motion to Compel. See Ruling (Doc. No. 151). The Labs "produced the bulk of the documents on December 9, 2022, [almost two months before the end fact discovery], and completed their production on January 3, 2023. In total, the Labs produced nearly 34,000 documents." Pls.' Mem. at 4.

Cigna's Memorandum in Support of its Motion then sets forth a long, multi-page summary of the documents, which included the identities of people allegedly referred to in the documents. See id. at 4–8. Each of these individuals has been convicted of conspiracy to commit healthcare fraud, with some convictions coming as early as 2017—six years prior to the Instant Motion.

Cigna explains the timing of its Motion as follows:

> Cigna diligently reviewed those 34,000 documents in a matter of weeks and promptly deposed the Labs' corporate witness and former Director of Sales about them. In light of their testimony, including their failure to remember any of the critical details about the Labs' relationships with these criminal actors, the following week, Cigna requested the Labs' consent to subpoena them after the close of discovery. Given the timing of the Labs' document production, Cigna could not possibly have known of the need to depose these witnesses at any earlier date.

Pls.' Mem. at 11.

By this Motion, Cigna seeks to conduct discovery—documents requests and depositions—of five third-party witnesses, whom Cigna describes as "federal criminals", see id. at 1, regarding their relationship with the Labs "and their knowledge of the submission of claims for medically unnecessary drug testing performed by the Labs. . . ." Id. at 2.

      3.      The Labs' Objection

The Labs object to Instant Motion, arguing that it is an attempt to improperly circumvent discovery deadlines because Cigna did not move to "reopen fact discovery",

4

and that, even if Cigna did, "Cigna has not demonstrated the 'good cause' necessary to reopen discovery."  Brief in Opposition to Motion for Leave to Serve Subpoenas Duces Tecum ("Defs.' Opp.") at 2 (Doc. No. 178).  In particular, the Labs assert that Cigna has not acted with "sufficient diligence to demonstrate 'good cause.'"  Id.

In opposing the Motion, the Labs aver that Cigna's deposition practice was erratic.  See id. at 2–6.  For example, on October 17, 2022, Cigna served notices of depositions for five individuals.  Id. at 2.  However, "Cigna did not take any of those depositions", id., cancelling at least one of them with only a single day's notice, id.  Similarly, on November 3, 2022, Cigna notified the Labs that it intended to take the depositions of three doctors, id., all of whom were mentioned in Cigna's Memorandum in Support of this Motion.  Pls.' Mem. at 4.  In reference to these doctors, Cigna asserted:

> The documents confirm that many of the "ordering physicians" that the Labs claim they "relied on" in performing tests are now in prison for having knowingly ordered medically unnecessary drug tests as part of a conspiracy to commit healthcare fraud. . . .

Id.  Despite this, Cigna did not take any of those depositions.  See Defs.' Opp. at 2.  Then again, on November 8, 2022, Cigna served three notices of deposition.  See id.  Ultimately, Cigna took the deposition of only one of those witnesses.  Id.

In total, Cigna was allowed to take 10 depositions, see Order on Rule 26(f) Report (ECF No. 36); Rule 26(f) Report at 7 (Doc. No. 32), but it took only five—three prior to the end of fact discovery and two in the week after the deadline.  Of the five depositions, four were of employees of the Labs and one was of its billing company.  Defs.' Opp. at 3.

5

4. <u>The Labs' Claim Cigna Had Notice Prior to the End of Fact Discovery</u>

Doctors Ligotti, Agresti, and Hernandez were all referred to in Cigna's Memorandum of Law in Support of its Motion, and Cigna asserts that it learned about each doctor as a result of the documents produced on December 9, 2022.  Pls.' Mem. at 4.  The Labs counter that Cigna contacted them in November 2022 about taking the depositions of the three doctors, but that Cigna later decided against proceeding with those depositions.  Defs.' Opp. at 4.

Cigna also alleges that Angel's Recovery, purportedly a substance abuse treatment center, "was, in fact, the central hub of a large criminal conspiracy to commit healthcare fraud."  Pls.' Mem. at 6.  The Labs note that Cigna has known about Angel's Recovery since at least 2013—six years before the underlying suit—when Cigna conducted an investigation of the Labs' patients.  Defs.' Opp. at 5.  As part of the 2013 investigation, Cigna requested medical records for twenty of the Labs' patients, at which point Cigna discovered that nine of the twenty Labs' patients examined had been treated at Angel's Recovery.  <u>Id.</u>

The Labs also assert that, on November 28, 2022, the parties exchanged search terms that not only included Angel's Recovery, but also Bostom, Jasperson, and Rivera-Kolb—three of the five witnesses Cigna seeks to subpoena by this Motion.  <u>Id.</u> at 5–6.

### III. LEGAL STANDARD

#### A. <u>Applicable Federal Rules of Civil Procedure</u>

Federal Rule of Civil Procedure 16(b)(4) articulates that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

6

B.     Pertinent Local Rules of Civil Procedure

The Local Rules of Civil Procedure for the District of Connecticut include two relevant provisions. First, Rule 7(b)(1) emphasizes that "[a]ll motions for extensions of time must be decided by a Judge and will not be granted except for good cause." D. Conn. L. Civ. R. 7(b)(1). The Rule goes on to say that, "[t]he good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension." Id.

Second, Rule 7(b)(3) makes clear that:

> All motions for extension of time shall be filed at least three (3) business days before the deadline sought to be extended, except in cases in which compelling circumstances warranting an extension arise during the three days before the deadline. Any motion for extension of time filed fewer than three business days before the deadline sought to be extended shall, in addition to satisfying all other requirements of this Rule, set forth reasons why the motion was not filed at least three business days before the deadline in question.

D. Conn. L. Civ. R. 7(b)(3).

C.     Relevant Provision of Judge Hall's Case Management Plan

The Scheduling Order issued by Judge Hall includes a Case Management Plan, which lays out the requirements that all requests for extensions of time must satisfy. See Scheduling Order Re: Case Management Plan at 3 (Doc. No. 38). In particular, the Plan stresses:

> All dates set forth in this Order are firm and will be extended only for good cause. The good cause standard requires a particularized showing that, despite due diligence, the party seeking the extension could not comply with this order. Because of the importance of the discovery deadline to the entire schedule, motions to extend the discovery deadline will be viewed with disfavor. A motion to extend the discovery deadline will not be granted unless the movant shows that discovery was commenced promptly and pursued with due diligence in a good faith effort to comply with the deadline established by this order.

Id.

7

D.     Key Caselaw

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016); see also Atkins v. Walmart, Inc., 2023 WL 3361807, at *1 (2d Cir. May 11, 2023) (summary order) ("The district court enjoys broad discretion in managing its docket. . . .").

Generally, courts treat a motion to serve subpoenas after the discovery deadline has passed as a motion to reopen discovery. See, e.g., In re: General Motors LLC, 2016 WL 2766654, at *1 (S.D.N.Y. May 11, 2016); McKay v. Triborough Bridge & Tunnel Auth., 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007). To succeed, as noted above, such motions require a showing of "good cause." See, supra, Section III.A–C.

In the Second Circuit, "a finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Good cause is not present where the request "rests on information that the [moving] party knew, or should have known, in advance of the deadline." Owens v. Conn. Jud. Branch, 2018 WL 460972, at *2 (D. Conn. Jan. 17, 2018) (internal quotation marks and citation omitted).

Recently, courts in this Circuit have adhered to a six-part test to determine whether good cause exists to reopen discover:

> To determine whether good cause to reopen discovery exists, the courts in the Second Circuit generally consider the following six factors: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

Champagne by & through Urso v. Mohammad, 2023 WL 1108256, at *2 (D. Conn. Jan. 30, 2023) (internal quotation marks and citation omitted).

## IV.     DISCUSSION

### A.     Avoidance of the Applicable Rules and Caselaw

Inexplicably, neither the Instant Motion nor the Memorandum in Support of the Motion cite or refer to any rule, case, or secondary source in arguing that good cause exists to permit Cigna to serve subpoenas after the close of fact discovery.  See Mot. to Serve Subpoenas; Pls.' Mem.  Accordingly, Cigna does not satisfactorily explain why "the time limitation in question cannot reasonably [have] be[en] met. . . ."  D. Conn. L. Civ. R. 7(b)(1).  Nor does Cigna address why this motion was not filed "at least three (3) business days before the deadline sought to be extended. . . ."  D. Conn. L. Civ. R. 7(b)(3).

### B.     Avoidance of the Applicable Rules

Since Cigna omits any reference to case law, it also omits any analysis of this Motion under the test used by the courts of this Circuit to determine good cause.  See, supra, Section III.D.  Set forth below is the undersigned's evaluation of this Motion under the governing test.

The first factor, the imminence of trial, weighs in Cigna's favor.  At the time this motion was filed, no trial date had been set.  Moreover, the dispositive motion deadline had not passed, nor had either party filed such a motion.  The second factor, on the other hand, weighs in the Labs' favor, as Cigna's request to reopen discovery is opposed.  See Defs.' Opp.  Prejudice to the non-moving party—the third factor—similarly supports a denial of Cigna's request to reopen discovery.  The Instant Motion

seeks to take five depositions and subpoena documents from five individuals who are alleged to be convicted felons.  Granting this Motion would likely cause significant additional expense to the Labs.

The fourth factor—the diligence of the moving party in obtaining discovery—weighs heavily against granting this Motion.  For reasons set forth hereafter in detail, the moving party has not been diligent.  The same is true of the foreseeability of the need for additional discovery—the fifth factor.  For reasons laid out below, the basis for pursuing these depositions and documents was foreseeable to Cigna before the close of fact discovery.  Lastly, there's the sixth factor: the likelihood that the discovery will lead to relevant evidence.  While Cigna asserts that the discovery will lead to relevant evidence, it offers no analysis of why the evidence sought is relevant.  See Mot. to Serve Subpoenas; Pls.' Mem.  To the extent that Cigna seeks this discovery to prove that the tests performed by the Labs were "medically unnecessary", Cigna has expressed its intention to prove that through expert testimony.  Pls.' Mem. at 3 n.1.  That has been Cigna's intention for at least a year.  See Fourth Joint Discovery Status Report at 6 (Doc. No. 106).  Additionally, in its Memorandum in Support of the Motion and during oral argument, Cigna referred to the need to fully understand the "conspiracy" and "bribery" at play, but the Amended Complaint makes no allegation about "bribery" or "conspiracy."  See Amended Complaint (Doc. No. 87).  As such, Cigna has failed to establish that the evidence sought is relevant.

      C.     <u>Cigna Knew or Should Have Known the Proposed Discovery was Needed</u>

The Second Circuit has made it clear that while the district court may consider other factors in deciding whether to reopen discovery, the diligence of the moving party

is the most significant factor to weigh.  Kassner v. 2nd Ave Delicatessen Inc., 496 F.3d 229, 244–45 (2d Cir. 2007).

The assessment of diligence is not limited to the results of formal discovery among the parties.  In its Motion, Cigna ignored information it knew or should have known from other sources, including publicly available information as well as information in the record of this case.  In Cigna's discussion of its diligence for purposes of this Motion, Cigna failed to consider the following, readily available information.

1. 2015 Press Reports

At least as early as October 2015, four years before Cigna filed this action, the plaintiffs were aware of the alleged connection between laboratory testing companies, sober houses, and treatment centers.  In a press report from October 15, 2015, Cigna Spokesperson, Joseph Mondy, referred directly to, "stories in The Palm Beach Post detailing how fraudulent drug screening has reaped millions for South Florida labs, especially those affiliated with sober homes and treatment centers."  Pat Beall, Cigna Pulls Out of Fla. Exchange, Blames Addiction Treatment Fraud, Palm Beach Post, Oct. 15, 2015, https://perma.cc/BGB5-VTBC.

2. Criminal Prosecutions in the Southern District of Florida

In its Memorandum in Support of the Motion, Cigna identifies by name the five proposed witnesses: Alan Bostom, Tara Jasperson, Michael Bond (sic), Albert Jones, and Kenneth Rivera-Kolb, see Pls.' Mem. at 1, as well as six doctors: Dr. Mark Hernandez, Dr. Joaquin Mendez, Dr. Eric Snyder, Dr. Mark Agresti, Dr. Kenneth Rivera-Kolb (one of Cigna's proposed witnesses), and Dr. Michael Ligotti.  Id. at 4.  In that filing, the doctors are described as "'ordering physicians' that the Labs claim they 'relied

11

on' in performing tests [and who] are now in prison for having knowingly ordered medically unnecessary drug tests as part of a conspiracy to commit healthcare fraud. . . ." Id.

At the conclusion of this section is a chart that lists the names of each of the people identified in Cigna's Memorandum, the date criminal proceedings were commenced against each person, the criminal index number in the United States District Court for the Southern District of Florida, and whether Cigna was mentioned by name in the charging document.  Cigna was mentioned by name in every charging document, except 16mj08462 and 17cr80013 (which correspond to Michael Bonds and Joaquin Mendez, who were charged together in the same criminal proceeding). Significantly, the chart shows that criminal proceedings against Cigna's proposed witnesses were commenced at least 18 months before Cigna initiated this action.

In addition, the United States Attorney's Office of the Southern District of Florida routinely issues a press release both when a criminal action is commenced as well as at the time of conviction—whether by plea or after trial.  These releases frequently draw media coverage, and press releases were disseminated in connection with each of the proceedings listed below.  See News, United States Attorney's Office of the Southern District of Florida, https://perma.cc/ASW5-9TT2.

Proposed Witnesses

| NAME | | DATE OF FILING | INDEX NO |
|---|---|---|---|
| Alan Bostom | Cigna | 10/16/17 | 17cr80194 |
| Tara Jasperson | Cigna | 10/17/17 | 17cr80194 |
| Michael Bonds | (40 plans) | 12/20/16 | 16mj08462 |
|  |  | 1/24/17 | 17cr80013 |
| Albert Jones | Cigna | 12/11/17 | 17cr80229 |

Other Referring Doctors

| | | | |
|---|---|---|---|
| Mark Hernandez | Cigna | 9/21/20 | 19cr20583 |
| Joaquin Mendez | (40 plans) | 12/20/16 | 16mj08462 |
|  |  | 1/ 24 17 | 17cr80013 |
| Michael Ligotti | Cigna | 7/31/20 | 20cr80092 |
| Mark Agesti | Cigna | 6/22/18 | 18cr80124 |

| Eric Snyder | Cigna | 7/ //17 | 17mj08268 |
|---|---|---|---|
| | Cigna | 6/ 7/18 | 18cr80111 |

### 3.  Dr. Michael Ligotti

On October 11, 2022, almost four months before the close of fact discovery, counsel for Cigna sent a letter—by email—to counsel for the Labs, a copy of which was sent to the undersigned.  The email said: "Counsel, please find the attached correspondence and corresponding exhibits related to RFPs 49 and 50, which were not objected to in the Labs' objections to the Recommended Ruling."

The attached letter stated in part: "Dr. Michael Ligotti recently pled guilty to federal criminal charges in the Southern District of Florida, acknowledging his participation in a massive fraud scheme involving agreements to order expensive and medically unnecessary urine drug tests from clinical drug testing laboratories in exchange for kickbacks from the laboratories."  The letter went on to state that: "The Labs have produced hundreds of documents relating to Dr. Ligotti. . . ."  While Cigna mentions Dr. Ligotti in its Memorandum in Support of the Motion, it fails to discuss how the information conveyed in this letter is substantively different from the information it uses as a predicate for the Instant Motion.

### 4.  Joint Discovery Status Reports

Between April 1, 2022, and October 28 2022, the parties were required to file a status report every two weeks to update the court on the progress of document discovery.  During that time, fifteen status reports were filed.  See Docket (ECF Nos.

14

103–152).  Those reports are revealing about Cigna's knowledge of the criminal activity, the actors involved, and Cigna's discovery plans generally.

Each of the status reports contained a section entitled, "Additional Discovery Cigna Anticipate Conducting."  See, e.g., Fourth Joint Discovery Status Report at 8–9. Moreover, each of the status reports from April 1, 2022, through July 1, 2022 states, in relevant part, the following: "Cigna also intends to conduct additional third-party discovery, including subpoenas on certain of the physicians that allegedly referred patients to the Labs."  Id. at 9; Fifth Joint Discovery Status Report at 9 (Doc. No. 109); Sixth Joint Discovery Status Report at 18 (Doc. No. 112); Seventh Joint Discovery Status Report at 6 (Doc. No. 115); Eighth Joint Discovery Status Report at 8 (Doc. No. 116); Ninth Joint Discovery Status Report at 13 (Doc. No. 119); Tenth Joint Discovery Status Report at 5 (Doc. No. 124); Eleventh Joint Discovery Status Report at 6 (Doc. No. 128).  Notably, the status reports between July 15, 2022, and September 16, 2022, contain no reference to third-party discovery at all.  See Twelfth Joint Discovery Status Report (Doc. No. 132); Thirteenth Joint Discovery Status Report (Doc. No. 136); Fourteenth Joint Discovery Status Report (Doc. No. 139); Fifteenth Joint Discovery Status Report (Doc. No. 144).

The Sixteenth Joint Discovery Status Report, dated September 30, 2023, notes that: "Cigna has reached out to the Labs regarding the scheduling of depositions for three witnesses but has not yet received their availability.  Cigna also intends to depose a Rule 30(b)(6) witness and potentially other third-party witnesses."  Sixteenth Joint Discovery Status Report at 11 (Doc. No. 147).

15

The next status report contains a statement about the letter concerning Dr. Ligotti, who is referred to above. The statements reads:

> On October 11, 2022, Cigna sent the Labs a letter asking the Labs to confirm that they intend to produce any communications or agreements with Dr. Michael Ligotti, who recently pled guilty to federal criminal charges and admitted to ordering expensive and medically unnecessary urine drug tests from clinical drug testing laboratories in exchange for kickbacks. In connection with his guilty plea, Mr. Ligotti acknowledged "signing standing orders authorizing expensive and medically unnecessary definitive urine drug tests for patients multiple times a week" and to accepting kickbacks from the clinical testing laboratories "for each sample tested." According to the plea documents, the fraudulent scheme allowed Dr. Ligotti to "profit by billing patients' insurance for duplicative, unnecessary, and expensive tests and treatments." Among the companies identified as a victim of Dr. Ligotti's fraud was Cigna.

Seventeenth Joint Discovery Status Report at 2 (Doc. No. 149). In that same report, under "Additional Discovery Cigna Anticipates Conducting", the plaintiffs reported:

> In any event, Cigna cannot proceed with these depositions until the Labs have completed their production of documents, including those that relate to RFPs 49 and 50, including any documents that relate to Dr. Ligotti. Counsel for Cigna informed the Labs that they would propose alternative dates for these depositions once the Labs have completed their document production. Cigna also intends to depose a Rule 30(b)(6) witness and potentially other third-party witnesses.

Id. at 5–6.

Then, in the October 28, 2022 status report, Cigna repeated the paragraph quoted above in full beginning "On October 11, 2022. . . ." See Eighteenth Joint Discovery Status Report at 4–5 (Doc. No. 152). Following that paragraph, Cigna added: "<u>Since then, Cigna has uncovered at least three other referring providers that ordered drug testing services from the Labs that were indicted for similar criminal conduct</u>." Id. at 5 (emphasis added). Additionally, the "Additional Discovery Cigna Anticipates Conducting" section contained the following update: "Cigna is working with the Labs on

16

scheduling a Rule 30(b)(6) deposition of the Labs, a Rule 30(b)(6) deposition of MBC, and depositions of eight former employees and other third parties." Id. at 7.

During fact discovery, Cigna never noticed any of the third-party depositions of referring physicians, sober house owners, or any of the individuals identified in this Motion. Cigna offers no explanation as to why it did not take the deposition of any third-party.

In their opposition, the Labs report that Cigna contacted the Labs on November 3, 2022, almost three months before the end of fact discovery. Defs.' Opp. at 2. At that time, Cigna said it intended to take the depositions of three of the doctors referred to by Cigna in the Instant Motion, but "Cigna did not take those depositions." Id.

     5.   Other Information Cigna Knew or Should Have Known

As noted above, see, supra, Section IV.B, Cigna reported as far back as April 1, 2022, that it "anticipate[d] engaging expert witnesses that will testify to, among other things, the lack of medical necessity of the Labs services. . . ." Fourth Joint Discovery Status Report at 9. Consistent with that representation, the Memorandum in Support of the Motion acknowledged that Cigna had retained Dr. Kelly Clark as an expert witness to address why the drug tests billed were not medically necessary, and also noted that her report was served on the Labs on March 1, 2023. Pls.' Mem. at 3 n. 1.

In the Criminal Complaint in United States v. Mark Hernandez—filed September 22, 2020—it is reported that Dr. Clark consulted with and provided expert testimony regarding addiction treatment fraud in several cases previously filed in the Southern District of Florida. See Criminal Complaint ¶¶ 55–61 (Doc. No. 3), United States v. Mark Hernandez, 19-cr-20583 (S.D. Fla.). Clearly, two years prior to the close of fact

17

discovery in this case, Cigna's expert witness was very familiar with the criminal proceedings in the Southern District of Florida.

In a recently filed Memorandum in this case, Cigna discussed its broad understanding of the history and dynamics of the addiction testing activities in South Florida. Memorandum of Law in Support of Motion for Leave to Partially Seal at 1–3 (Doc. No 194). However, Cigna makes no reference to that information or knowledge in the Instant Motion.

### 6. These Considerations Combine to Undermine Any Claim of Diligence

The forgoing illustrates that Cigna has a long and deep involvement with the laboratory testing business in South Florida. Its attempt in the Instant Motion to limit its knowledge to the formal discovery in this case is unpersuasive and inconsistent with well-established caselaw. Cigna knew or should have known about the relationship between sober houses or treatment facilities, prescribing physicians, and testing laboratories. If Cigna wanted to take discovery concerning any of the relevant individuals or entities, it had the opportunity to do so during fact discovery.

## V. CONCLUSION

For the reasons stated above, the Motion to Serve Subpoenas (Doc. No. 172)—which is a motion to reopen discovery after the discovery deadline for fact discovery had expired—is denied. Cigna has failed to prove "good cause", as it knew or should have known about this discovery months, if not years, before the end of fact discovery.

This is a recommended ruling; any party may object within 14 days of its entry on the docket.

Dated: June 12, 2023

                                           /s/ James R. Hawkins  
                                           James R. Hawkins  
                                           Para-judicial Officer