UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC, EPIC REFERENCE LABS, INC., and EPINEX DIAGNOSTICS, INC.,<br><br>Defendants. | Case No. 3:19-cv-01324<br><br>Hon. Janet C. Hall |

**DECLARATION OF ANTHONY T. GESTRICH
IN SUPPORT OF LABS' MOTION FOR SUMMARY JUDGMENT**

I, Anthony T. Gestrich, declare as follows:

1. I am an attorney at Whiteford, Taylor & Preston, LLP, a member of the Bar of the Commonwealth of Pennsylvania and the District of Columbia, and admitted to practice before this Court *pro hac vice*. Together with co-counsel, I represent BioHealth Laboratories, Inc. ("**BioHealth**"), PB Laboratories, LLC ("**PB Labs**"), Epic Reference Labs, Inc. ("**Epic**") and Epinex Diagnostics, Inc. ("**Epinex**" and, collectively with BioHealth, PB Labs, and Epic, the "**Labs**").

2. I submit this declaration in support of the *Labs' Motion for Summary Judgment* against Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively "**Cigna**"), and the statement of undisputed facts (the "**Statement of Facts**") and memorandum of law in support thereof (the "**Memorandum**").

3. On June 16, 2023, the Labs deposed Cigna's proposed expert witness, Dr. Kelly Clark. A true and correct copy of relevant portions of Dr. Clark's deposition transcript is appended as **Exhibit 18**.

4. On February 16, 2023, the Labs deposed Cigna's Rule 30(b)(6) designee, Michael Goldfarb. A true and correct copy of relevant portions of Mr. Goldfarb's deposition transcript is appended as **Exhibit 4**. Mr. Goldfarb testified that:

    a. the "events" giving rise to Cigna's lawsuit against the Labs were "many years ago" and that he was not employed by Cigna when "much of the events" at issue in this case took place, *see* **Ex. 4**, Cigna 30(b)(6) Depo. at 106:1–106:19; and

    b. he did not speak with any Cigna employees who had first-hand knowledge of the alleged facts giving rise to this case. *See* **Ex. 4**, Cigna 30(b)(6) Depo.

1

at 77:23–77:25 (testifying that he "did not" "talk with [Ms.] Canto in preparation for [his] deposition"); 20:1–20:12 (confirming that he did not consult "anyone" with first-hand knowledge of the facts Cigna alleged in this case).

5. On February 17, 2023, the Labs deposed current Cigna employee Eva Borden. A true and correct copy of relevant portions of Ms. Borden's deposition transcript is appended as **Exhibit 5**. Ms. Borden testified that:

    a.    "[i]t was her responsibility … to identify where [Cigna] would see potential risk to [its] business" and "the root cause" or "key drivers" of those risks, see **Ex. 5**, Borden Depo. at 33:10–34:15;

    b.    she authored the Mission Statement for the Core Action Team, see id. at 60:7–60:11;

    c.    she could not recall:

        i.    the Core Action Team itself, see id. at 64:25–65:6 ("I don't recall the core action team");

        ii.    the Core Action Team's Mission Statement and why she drafted it, see id. at 30:1–30:10, 60:3–60:11, 61:13–61:15;

        iii.    what she meant by the term, "core action," see id. at 37:1–37:5;

        iv.    the "risks" she identified in the Mission Statement, see id. at 41:3–41:6;

        v.    whether she maintained files for the Core Action Team, see id. at 60:21–61:11;

    vi.  discussing, with other Cigna employees, the reasons she formed the Core Action Team, *see id.* at 31:2–31:17;

    vii.  "who" at Cigna conducted an "analysis" on substance abuse claims that led to the Core Action Team's formation, *see id.* at 34:24–35:15;

    viii.  meetings with and among other members of the Core Action Team, *see id.* at 37:6–37:10, 44:23–45:2, 61:22–62:2;

    ix.  the Core Action Team's performance of its "goals," *see id.* at 37:11–38:5, 56:18–56:24, 57:17–57:23, 59:10–59:14;

    x.  partnering with Navigant to develop procedures for denying substance abuse claims submitted by laboratories, *see id.* at 55:15–55:24;

    xi.  "why" she sent "Substance Abuse" agendas to the members of the Core Action Team, despite the Labs providing her examples as deposition Exhibit 1, Exhibit 4 and Exhibit 6, *see id.* at 18:1–18:7, 27:12–28:13, 65:7–65:15;

    xii.  the "role the SIU … played" in the Core Action Team's initiatives, *see id.* at 18:12–18:15;

    xiii.  information the SIU "need[ed]" from the Core Action Team, *see id.* at 18:8–18:11;

    xiv.  why the SIU was "pending" substance abuse claims, *see id.* at 40:16–40:21;

    xv.  the content of her internal e-mails concerning the Core Action Team's work, *see id.* at 18:25–19:3, 44:4–44:5, 58:18–58:19;

    xvi.  the algorithm or "edit" the Core Action Team created to deny laboratory claims on an automated basis, *see id.* at 24:23–25:5;

    xvii.  which department within Cigna implemented the "edit" to deny laboratory claims on an automated basis, *see id.* at 25:15–25:16; and

    xviii.  initiatives, other than "edits," that the Core Action Team developed to deny substance abuse claims. *See id.* at 52:16–53:23.

  6.  On February 10, 2023, the Labs deposed former Cigna employee William M. Welch, II.  A true and correct copy of relevant portions of Mr. Welch's deposition transcript is appended as **Exhibit 16**.  Mr. Welch testified that:

    a.  he was a "legal advisor to the SIU," *see* Ex. **Ex. 16**, Welch Depo. at 10:4–10:17, 25:9–25:14;

    b.  although he addressed the SIU's investigation of PB Labs and BioHealth, he "ha[d] little or no memory" of the Labs and "did not," in advance of his deposition, "ask … for" or receive "any documents … that might refresh [his] recollection," *see id.* at 35:5–35:21; and

    c.  he could not recall:

      i.  "how he got involved" in the investigation of the Labs, *see id.* at 33:12–33:16;

      ii.  the Labs' cooperation with Cigna in the investigation, *see id.* at 113:9–113:16;

      iii.  "when Cigna placed [its] first flag" on the Labs, *see id.* at 50:13–50:16, 79:5–79:8;

      iv.  whether Cigna began denying claims immediately after it first flagged the Labs, *see id.* at 82:13–82:18;

    v.  how Cigna notified the Labs "of a flag that had been placed on their claims," *see id.* at 84:17–84:22;

    vi.  the methodology Cigna employed to investigate the Labs' claims, *see id.* 112:8–112:16;

    vii.  "who [he] would have spoken with to get the information that [he] put into" letters he sent to the Labs, *see id.* at 54:13–55:4, 57:1–57:6, 103:14–103:17;

    viii.  the basis for purported facts he asserted about the Labs, *see id.* at 69:4–70:3, 77:19–78:3, 94:11–94:20, 102:8–102:15, 103:10–103:13, 178:2–178:19;

    ix.  meetings he had with other employees about Cigna's investigation of the Labs, *see id.* at 97:6–97:13;

    x.  the "conclusions reached by Dr. Nicoll or anybody else" concerning the Labs, *see id.* at 59:9–59:16; and

    xi.  the information Dr. Nicoll reviewed to reach his conclusions about the Labs. *See id.* at 59:17–59:23.

  7.  On January 24, 2023, the Labs deposed former Cigna employee Dr. Daniel Nicoll. A true and correct copy of relevant portions of Dr. Nicoll's deposition transcript is appended as **Exhibit 13**. Dr. Nicoll testified that:

    a.  in his role as Medical Director for Fraud and Abuse, he "worked with the [SIU] and nurse reviewers," who would "send [him] … groups of cases," *see* **Ex. 13**, Nicoll Depo. at 24:24–25:13, 25:21–26:17;

5

    b.  he "work[ed] directly with Ms. Canto" "[m]any times," *see id.* at 39:8–39:10, and her superior, Mr. Hixson, *see id.* at 69:25–70:8;

    c.  he had "no memory of" "being requested … in or around August of 2013 to review [records] related to PB Lab[s]," *see id.* at 43:14–43:19, 44:4–44:19;

    d.  he could not "remember" "being requested … to review [records] relating to Bio[H]ealth," *see id.* at 43:20–43:23, 44:14–44:16, and had no "memory of" "being asked … to review [records] relating to Epic," *see id.* at 43:24–44:3, 44:17–44:19; and

    e.  he could not recall reviewing and evaluating the Labs' records. *See, e.g.*, *id.* at 62:19–63:5 ("It was … ten years ago [and] … I'm [not] remembering everything."); *id.* at 78:24–79:4 (testifying that he had "[n]o memory at all" about "18 patient records" he reviewed from the Labs); 86:25–87:24 (same); 88:20–89:3 (regarding the records he reviewed, commenting that "I'm trying to read my mind from ten years ago"); 89:14–89:19 ("I have no memory of the review at all."); 100:15–100:21 (testifying that he had "no memory" of reviewing doctors' drug-test orders sent to the Labs); 100:22–101:2 ("I have no memory of" "whether the testing that was performed by the [L]ab was consistent with the medical order."); 104:22–105:4 (stating, "I have no memory of what I reviewed in 2013"); 111:18–112:6 (testifying about the identity of a "referring [doctor]" and, "[s]ince I have no memory of it," "I have no way of knowing"); 118:5–118:16 (reviewing the language of an e-mail he sent, and responding that "you're asking me what I meant ten years ago"); 144:18–145:19 (Dr. Nicoll unable to testify about his review of the Labs' records because "I have no memory of what I reviewed"); 149:20–150:5 (testifying that he had "[n]o memory at all" of performing a records-review

6

identified in an e-mail from Ms. Canto to Dr. Nicoll); 160:18–161:16 (testifying that he "ha[d] no memory of [a] meeting" concerning "PB Labs," as reflected in an e-mail to Dr. Nicoll); 161:25–163:12 (Dr. Nicoll had "[n]o memory" of reviewing certain of the Labs' records sent to him).

      8.      On October 27, 2022, the Labs deposed current Cigna employee Stephanie Canto.  A true and correct copy of relevant portions of Ms. Canto's deposition transcript is appended as **Exhibit 3**.  Ms. Canto testified that:

      a.      she was the fraud investigator for the SIU that spearheaded Cigna's investigation of PB Labs and BioHealth, *see* **Ex. 3**, 10/27/22 Canto Depo. at 14:13–14:19;

      b.      a "binder" of materials that Cigna's counsel provided to her in advance of her deposition only "somewhat" "refresh[ed her] memory" about her "involvement in the handling of these cases" because "it has been some time" since her investigation, *see id.* at 44:3–44:22, 46:5–46:9;

      c.      she could not recall:

      i.      the critical conversation she had with her superior to "proceed with flagging" PB Labs and stopping payment on the Labs' reimbursements requests, *see id.* at 109:13–110:10;

      ii.      how she "decide[d]" which of the Labs' healthcare claims to examine, *see id.* 121:16–121:19; *see also id.* at 122:10–122:14, 134:11–135:12 ("I cannot recall the type of criteria that I had utilized at the time for this particular audit."); 136:13–136:17 ("At this point in time, I do not recall"); 137:24–138:3 ("I just don't recall the criteria that was utilized");

        iii.      conversations with her SIU colleagues about their investigation of the Labs, *see id.* at 127:18–127:23, 186:5–186:9;

        iv.      when Cigna may have notified PB Labs that it was denying claims in bulk, *see id.* at 151:12–151:22, 152:9–152:16; and

        v.      the grounds on which Cigna chose not to pay the Labs over time, *id.* at 228:21–229:13 ("I don't remember the exact chronology during the course of the case").

9.      On December 9, 2022, the Labs deposed current Cigna employee Dr. Douglas Nemecek.  A true and correct copy of relevant portions of Dr. Nemecek's deposition transcript is appended as **Exhibit 9**.  Dr. Nemecek testified that:

        a.      he could not recall the Mission Statement that Ms. Borden created for the Core Action Team, *see* **Ex. 9**, Nemecek Depo. at 105:22–106:13, 113:8–113:15;

        b.      he also could not recall:

        i.      "any specific … findings" of the Core Action Team, *see id.* at 109:13–109:18;

        ii.      whether the Core Action Team performed or achieved certain of its stated "goals," *see id.* at 119:20–121:7;

        iii.      whether the "SIU was … able to work through it[s] … backlog of pended claims" submitted by substance-abuse providers, *see id.* at 124:1–124:6; and

        iv.      whether he "suppl[ied] any documents for the group to review" or had been "provided … any documents" from the Core Action Team. *Id.* at

114:11–114:17; *see also* 131:22–132:7 ("I don't recall … what … documents … were there back then.");

      c.     the SIU "occasion[ally]" asked him to review healthcare clams under evaluation, *see id.* at 28:18–29:3, and "always asked" him "about medical necessity," but he was unable to "recall specific questions related to that from the SIU," *see id.* at 32:12–32:19;

      d.     he reviewed healthcare claims submitted by the Labs "to ascertain if the … services were medically necessary," but was unable to "recall" reviewing any of them, *see id.* at 36:24–37:12, 57:17–58:14; and

      e.     he had no "recollection" of the meaning of the contents of documents presented to him at his deposition. *See id.* at 59:11–62:25 ("The email appears to say that, but I don't have any recollection from that time," in late 2014 and early 2015.); *id.* at 66:7–67:9 (Dr. Nemecek testifying that he could not recall a records-review he performed in January 2015); 67:10–68:8 (Dr. Nemecek testifying that the Labs' deposition exhibits did not "refresh his recollection" about the records-review he performed); 68:24–70:21 (same); 102:19–104:18 (Dr. Nemecek testifying that he had no "recollection" about a records-review concerning the Labs, despite documentation expressly identifying his involvement); 104:22–105:2 (same); 105:3–105:13 (Dr. Nemecek testifying that the Labs' deposition exhibit did "not" "refresh [his] memory" "at all").

    10.    On December 5, 2022, the Labs deposed current Cigna employee Thomas Hixson. A true and correct copy of relevant portions of Mr. Hixson's deposition transcript is appended as **Exhibit 12**. Mr. Hixson testified that:

      a.      he was an Audit Director within the SIU and "overs[aw] investigative teams" in that department, *see* **Ex. 12**, Hixson Depo. at 52:20–52:25, 54:3–54:7;

      b.      he could not recall:

      i.      "the tasks that [Ms. Canto] was taking under investigation, or what she knew at th[e] time," *see id.* at 197:7–198:1; *see also id.* at 229:11–229:17 ("I don't recall specifics in [Ms. Canto's] investigation");

      ii.      creating a "folder for the claims" under investigation because "[t]his was a long time ago," *see id.* at 247:3–248:9;

      iii.      the meaning of internal e-mails he authored concerning the Labs, *see id.* at 194:15–196:4 ("It's so long ago, I would be speculating what that meant."); *see also id.* at 197:1–197:4 ("I don't recall this e-mail"); 200:13–200:18 ("I don't [recall]. This is very old."); 215:2–215:13 (testifying that he could only "speculate" about "the intent of [his] e-mail or th[e] analysis [he] did" because he could not "recall"); 219:8–219:14 ("I don't recall this e-mail, so it's hard for me to determine what this means."); 219:16–222:3 (series of failures to recollect the meaning of e-mail content);

      iv.      which "flags" the SIU placed on the Labs during its investigation, *see id.* at 113:8–113:14; and

      v.      whether the SIU used "any software" to create "a statistically valid random sample" of claims to be reviewed during an investigation. *See id.* at 104:11–104:18, 105:10–105:14.

      11.      On December 5, 2022, the Labs deposed former Cigna employee Patrick Hurley. A true and correct copy of relevant portions of Mr. Hurley's deposition transcript is appended as **Exhibit 11**. Mr. Hurley testified that:

    a.  he led the SIU's investigation of Epic, *see* **Ex. 11**, Hurley Depo. at 22:23–22:25;

    b.  he did "not [have] much" of "any independent recollection of [his] work investigating Epic," *see id.* at 22:23–22:25, and that his review of documents in advance of the deposition "really didn't open up … a floodgate of memory in terms of … what [he] did with the … investigation," *see id.* at 23:4–23:14; *see also id.* at 59:23–60:3 (testifying that Exhibit 1 "d[i]d not" "refresh [his] recollection" about the content of the document); 66:4–66:6 (same, regarding Exhibit 2); 74:18–74:21 (same); 117:22–117:25 (same, regarding Exhibit 5);

    c.  "[i]t's been over ten years since I've … had any involvement with … [this] case" and "[m]y ability to recollect is extremely limited," *see id.* at 133:1–133:12; and

    d.  he could not recall:

      i.  "the circumstances that led [him] to assign [the] investigation to [Ms.] Canto," *see id.* at 72:15–72:18;

      ii.  why he documented a lack of "evidence of a kickback" scheme, *see id.* at 74:22–75:5;

      iii.  when the SIU commenced its investigation into Epic, *see id.* at 118:12–118:19;

      iv.  the number of "verification of service letters" he sent or "how [he] determined to whom to send them," *see id.* 121:17–122:12;

      v.  who, within the SIU, drafted case notes for the investigation of the Labs, *see id.* at 134:23–135:20, 146:24–147:22;

      vi.      whether Epic "cooperated, or did not cooperate, with the information … sought during the [SIU] investigation," *see id.* at 152:18–152:23, 205:19–205:23;

      vii.      "any discussion about revising the [SIU's] strategy" for investigating Epic, *id.* at 157:10–157:15, 203:25–204:7; and

      viii.      why he wrote in Cigna's files that "I just do not know if we have enough to establish fee forgiving …." *Id.* at 173:9–173:16.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2023              /s/ Anthony T. Gestrich
in Pittsburgh, Pennsylvania            Anthony T. Gestrich