UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>BIOHEALTH MEDICAL LABORATORIES, INC., PB LABORATORIES, LLC, and EPIC REFERENCE LABS, INC.,<br><br>Defendants. | Case No. 3:19-cv-01324-JCH<br><br>Hon. Janet C. Hall<br><br>July 18, 2023 |

**CIGNA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE TESTIMONY FROM THE LABS' EXPERT CHRISTOPHER HANEY**

Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (together, "Cigna") hereby file this memorandum in support of their motion under Fed. R. Evid. 702 to partially exclude testimony from BioHealth Medical Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PBL"), and Epic Reference Labs, Inc.'s ("Epic") (together, the "Labs") purported damages expert, Christopher Haney.

**INTRODUCTION**

Mr. Haney opines that the Labs have been damaged in the full amount of their billed charges for all claims at issue. His purported methodology for reaching this conclusion, however, is inherently unreliable, rendering his damages opinion inadmissible.

The Labs billed Cigna $20,427,577 for 160,028 line-level service charges that the Labs contend Cigna wrongly denied. Mr. Haney has no opinion on whether those denials were proper. Nevertheless, he purports to opine on the amount Cigna "should have paid" for each

1

one of the services. According to Mr. Haney, Cigna would have paid exactly $20,427,577 had the claims not been denied—i.e., the full amount that the Labs billed for those claims.

Mr. Haney fails to employ any reliable method for reaching this conclusion. He constructed a formula based on the values in Cigna's claims data. But Cigna's claims data does not contain the values needed to determine the amount Cigna would have paid had the claims been adjudicated as payable—namely, the applicable coinsurance, deductible, and allowed amount under the relevant benefit plan that would have applied. Cigna does not calculate those hypothetical amounts when it denies a claim. For obvious reasons, Cigna would have no reason to do so. Nevertheless, Mr. Haney simply assumes—without any reliable basis—that Cigna does. Mr. Haney failed to undertake any steps to verify this faulty assumption, including consulting any industry literature or experience regarding out-of-network reimbursement, reviewing testimony from Cigna regarding its processes for adjudicating out-of-network claims or its claims data, or analyzing any of the evidence produced in this case regarding claims adjudication and reimbursement. Any one of these sources would have readily revealed Mr. Haney's errors. Because Mr. Haney relies on invalid assumptions and fails to investigate the facts underlying those assumptions, his methodology is unreliable, and his opinion should be excluded.

## SUMMARY OF MR. HANEY'S OPINION

In this case, the Labs' purported expert on medical coding, Ms. Jacqueline Thelian, identified 160,028 line-level service charges on 15,842 claims for reimbursement that she contends Cigna wrongly denied.[1] Mr. Haney has no opinion on whether those denials were

---

[1] Ex. 1, Expert Report of Christopher Haney dated March 1, 2023 ("Haney Rep.") at ¶ 74.

2

proper or not.[2] Rather, he testified that he was engaged solely to calculate the Labs' damages arising from those allegedly wrongfully denied claims.[3]

All parties agree that the Labs have never had an in-network agreement with Cigna regarding reimbursement for health-care services.[4] When a provider, like the Labs, is out-of-network, the terms of reimbursement are prescribed by the patient's benefit plan.[5] All five expert witnesses in this case — *including the Labs' two other experts* — agree that the amount Cigna would have paid the Labs had the claims been adjudicated as payable is determined by the terms of each individual patient's benefit plan.[6] The experts also agree that the allowed amount, deductible, and coinsurance amount are all prescribed by the applicable benefit plan.[7]

In calculating the amount Mr. Haney believes Cigna would have paid, however, Mr. Haney did not look to the terms of any benefit plan. Instead, he developed a formula based on Cigna's claims data alone. Cigna produced a series of excel files that contain data from Cigna's claim systems regarding the adjudication of claims submitted by the Labs. Mr. Haney correctly observed that the data reflects that when Cigna pays a claim, the paid amount is determined based on the following formula:

> [Allowed Amount] minus [Discount Amount] minus [Coinsurance Amount] minus [Copay Amount] minus [Deductible Amount] minus [COB Savings] minus [Not Covered Amount][8]

---

[2] *See* Ex. 2, Transcript of Deposition of Christopher Haney ("Haney Dep.") at 61:4-16.
[3] *Id.* at 94:10-17.
[4] *Id.* at 65:1-3.
[5] *Id.* at 65:4-8; Ex. 3, Transcript of Deposition of Jacqueline Thelian ("Thelian Dep.") at 182:13-187:5.
[6] Ex. 2, Haney Dep. at 144:6-14; Ex. 3, Thelian Dep. at 185:5-9; Ex. 4, Rebuttal Expert Report of Matthew Ryan dated May 19, 2023 ("Ryan Rebuttal") at ¶ 39; Ex. 5, Transcript of Deposition of Dr. Kelly Clark ("Clark Dep.") at 57:19-25; 168:25-169:20; Ex. 6, Transcript of Deposition of Robert Boorstein ("Boorstein Dep.") at 156:15-20.
[7] Ex. 4, Ryan Rebuttal Report at ¶¶ 40-41; Ex. 3, Thelian Dep. at 239:25-240:9.
[8] Ex. 1, Haney Rep. at ¶ 78.

Based on this, Mr. Haney concluded that the same formula applies when Cigna denies a claim to determine the amount Cigna would have paid had the claim been adjudicated as payable except that the [Not Covered Amount] should be ignored.[9] In other words, according to Mr. Haney, the amount Cigna would have paid can be calculated as follows:

[Allowed Amount] minus [Discount Amount] minus [Coinsurance Amount] minus [Copay Amount] minus [Deductible Amount] minus [COB Savings][10]

However, when a claim is denied, Cigna does not calculate the hypothetical [Allowed Amount], [Deductible Amount], or [Coinsurance Amount] that would have applied had the claim been adjudicated as payable.[11] Those hypothetical amounts are simply not reflected in the claims data. Instead, when a claim is denied, the [Deductible Amount] and [Coinsurance Amount] are automatically populated at $0 because the patient owes no coinsurance or deductible for denied claims.[12] In addition, the [Allowed Amount] and [Not Covered Amount] are automatically populated with the provider's billed charges ("[Charge Amount]") for a net $0.[13] Accordingly, using Mr. Haney's formula, every denied claim reflects the following:

[Charge Amount] minus [$0] minus [$0] minus [$0] minus [$0] minus [$0]

Based on this, Mr. Haney concludes that the amount Cigna would have paid on every one of the 15,842 claims had the claims been adjudicated as payable is simply the [Charge Amount]. Mr. Haney cites no support for his methodology. Nor does he offer any support for

---

[9] Ex. 1, Haney Rep. at ¶ 76.
[10] *Id.* at ¶ 76 n. 62.
[11] Ex. 4, Ryan Rebuttal at ¶ 34.
[12] *Id.* at ¶ 33.
[13] *Id.*

4

his conclusion that Cigna would have paid the Labs' full billed charges for every claim. His entire opinion on this topic is set forth in a grand total of five sentences.[14]

## LEGAL STANDARD

Expert testimony is only admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In determining whether expert testimony should be excluded, the district court must consider "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-66 (2d Cir. 2002). The district court must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (citations and quotations omitted).

To be admissible, it is "critical that an expert's analysis be reliable at every step." *Id.* at 267. The district court "should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Indeed, the *Daubert* "requirement that the expert testify to scientific knowledge — conclusions supported by good grounds for each step in the analysis — means that *any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Amorgianos*, 303 F.3d at 267 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("[T]he reliability analysis applies to all

---

[14] Haney Rep. at ¶¶ 76-77.

5

aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.").

"When an expert witness relies upon invalid assumptions or demonstrates a lack of inquiry into the relevant facts, the expert witness' testimony will be precluded." *Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 U.S. Dist. LEXIS 150190, at *7 (W.D.N.Y. May 27, 2011) (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). And where the expert's assumptions are "so unrealistic and contradictory as to suggest bad faith," the expert's testimony should be excluded. *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984).

## ARGUMENT

Mr. Haney's opinion that Cigna would have paid the Labs' full billed charges for 15,842 claims (Opinion 2) is not based on any reliable principles or facts. Instead, it's based solely on invalid assumptions regarding claims data and an adjudication process about which Mr. Haney has no first-hand knowledge. Moreover, despite having access to numerous documents produced in the litigation regarding Cigna's reimbursement, including applicable plan documents and explanations of payment, Mr. Haney failed to analyze any of those documents or otherwise inquire into the relevant facts underlying his faulty assumptions.

In attempting to calculate the amount Cigna would have paid on a particular denied claim had the claim been adjudicated as payable, Mr. Haney wrongly assumes that when a claim is denied, Cigna populates its data with the hypothetical [Allowed Amount], [Deductible Amount], and [Coinsurance Amount] that would have applied had the claim been adjudicated as payable. This invalid assumption is unsupported by any evidence in the case, inconsistent with all documents produced in the litigation, and directly conflicts with

6

the testimony of the Labs' other purported expert. Most importantly, Cigna has confirmed that Mr. Haney's understanding of Cigna's data is incorrect.[15]

First, Mr. Haney's methodology for calculating the [Deductible Amount] and [Coinsurance Amount] is unreliable. As the Labs' own expert, Ms. Thelian testified, when an insurer or health plan, like Cigna, denies a claim, the patient does not owe a deductible or coinsurance amount.[16] Accordingly, when a claim is denied, the payer or health plan does not calculate the hypothetical deductible or coinsurance amount that would have applied if the claim had been adjudicated as payable—a practice that Ms. Thelian also confirmed.[17] As a result, for any claim that is denied, Cigna's claims data reflects $0 in the [Deductible Amount] and [Coinsurance Amount] fields.[18]

Despite claiming to be an expert on health-care provider reimbursement, Mr. Haney admitted that he does not know whether payers calculate the deductible or coinsurance amount when a claim is denied.[19] He simply (and wrongly) assumed that the $0 value in [Deductible Amount] and [Coinsurance Amount] fields in Cigna's claims data represents the hypothetical amount the patient would have owed had the claim been adjudicated as payable. This assumption is entirely illogical given when a claim is denied, no coinsurance or deductible is even calculated.

When asked at his deposition what he relied on for his flawed assumption, Mr. Haney testified that he relied solely on a letter from Cigna's outside counsel regarding the meaning

---

[15] Ex. 4, Ryan Rebuttal at ¶ 34 n. 38.
[16] Ex. 3, Thelian Dep. at 240:10-25.
[17] *Id.* at 242:17-243:13.
[18] Ex. 4, Ryan Rebuttal at ¶ 34.
[19] Ex. 2, Haney Dep. at 68:12-21.

of certain fields in the claims data.[20] But nowhere does that letter even suggest that Cigna's data reflects hypothetical deductible and coinsurance amounts when a claim is denied.[21] Instead, the definitions in the letter make clear that deductible and coinsurance amounts do *not* apply when a claim is denied. About the [Deductible Amount] and [Coinsurance Amount], the letter provides only the following definitions:

| Header | Description |
|---|---|
| Coinsurance Amount | Amount calculated as a percentage of covered/allowed charges and paid by member after plan deductible is satisfied |
| Deductible Amount | Flat dollar amount paid by the member each year before the member's benefit plan begins to pay benefits for covered expenses |

As these definitions make clear, coinsurance and deductible amounts apply only for "covered/allowed charges" and "covered expenses"—not charges/expenses that are *denied*. Nevertheless, for reasons that remain unclear, Mr. Haney claims to have relied on this letter alone for his understanding. He elected not to have reviewed any plan documents, explanations of payment, or any other documents produced in this litigation to confirm whether his assumption was correct or even reasonable.[22] Those documents also reaffirm that deductibles and coinsurance do not apply when a claim is denied.[23] Mr. Haney failed to consult any industry literature or even with Ms. Thelian regarding his misguided assumption.

Importantly, the Labs failed to seek any testimony directly from Cigna regarding its claims data to inform Mr. Haney's opinion. Although the Labs' Rule 30(b)(6) Notice of Deposition of Cigna's corporate witness identified the "claims data" as a topic of inquiry and

---

[20] *Id.* at 115:7-117:13; 152:16-21.
[21] Ex. 7, May 17, 2022 Letter from K. Kingsbery.
[22] Ex. 2, Haney Dep. at 141:10-21; 149:3-15; 150:14-17; 151:14-17.
[23] *See, e.g.*, Ex. 8, Miami-Dade County Public Schools Plan, CIGNA19-1326 0008923-8987 at 8933 (explaining that coinsurance and deductible amounts are for "covered expenses" and "covered services" only).

Cigna's corporate representative was fully prepared to testify regarding the fields in the claims data, and Cigna's methods and calculations for denied claims, the Labs failed to ask a single question on the topic.[24] If they had, Cigna's witness would have explained this process, avoiding Mr. Haney's erroneous assumptions.

Second, Mr. Haney made a similar error with respect to the [Allowed Amount]. As Ms. Thelian testified, when a claim is denied, the payer does not calculate the Allowed Amount under the applicable benefit.[25] Accordingly, in Cigna's claims data, when a claim is denied, the [Allowed Amount] and the [Not Covered Amount] are auto-populated with the [Charge Amount] for a net of $0.[26] Again, Mr. Haney wrongly assumes that the [Allowed Amount] reflected in the data for denied claims represents the hypothetical [Allowed Amount] under the patient's benefit plan had the claim been adjudicated as payable. And again, Mr. Haney claims only to have relied on the same letter from Cigna's outside counsel in making this assumption.[27] Mr. Haney elected not to review the terms of any of the applicable benefit plans to verify his assumption, which would have confirmed his error.[28]

By way of example, the American Nutrition plan, which applied to numerous of the claims at issue in Mr. Haney's Opinion 2 calculation, specifies that out-of-network benefits are calculated based on "the lesser of" the "provider's normal charge for a similar service or

---

[24] *See* Ex. 9, Notice of Video-Taped Deposition of Rule 30(b)(6) Designee of Connecticut General Life Insurance Company, Schedule A, Topic 5(f) ("Compilation of Connecticut General Life Insurance Company's claims detail spreadsheets and the databases from which these spreadsheets were generated."); Ex. 10, Notice of Video-Taped Deposition of Rule 30(b)(6) Designee of Cigna Health and Life Insurance Company, Schedule A, Topic 5(f) (same).
[25] Ex. 3, Thelian Dep. at 240:18-25.
[26] Ex. 4, Ryan Rebuttal at ¶ 33.
[27] Ex. 2, Haney Dep. at 151:23-153:7.
[28] Ex. 2, Haney Dep. at 146:3-9; 149:3-15.

9

supply" or "a policy-holder selected percentage of a schedule developed by Cigna that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for the same or similar service within the geographic market."[29] The American Nutrition plan further provides that Cigna will only reimburse 70% of that allowed amount after the member has met its deductible (i.e., the coinsurance amount is 30%).[30] For unexplained reasons, Mr. Haney chose not to review this or any other plan document and instead concluded that Cigna would have reimbursed 100% of the Labs' full billed charges for every claim governed by the American Nutrition plan and every other applicable plan.

Mr. Haney admitted that he has no understanding of the concept of an allowed amount in the context of out-of-network health-care reimbursement.[31] As all of the other experts in this case have testified, there is a difference between the allowed amount and the provider's billed charges.[32] And although Mr. Haney had available to him the historical payment data reflecting that Cigna paid, on average, less than 60% of the Labs' billed charges for the Labs' claims that Cigna paid, Mr. Haney apparently did not consider that fact in making his assumptions.[33] When asked at his deposition about this historical data, Mr. Haney did not dispute that, historically, Cigna paid, on average, less than 60% of the Labs' billed charges. Nevertheless, he declared that it still seemed "reasonable" to him that the Allowed

---

[29] Ex. 4, Ryan Rebuttal at ¶ 42.
[30] *Id.* at n.48 (citing CIGNA19-1326 0018712-778 at CIGNA19-1326 0018727).
[31] Ex. 2, Haney Dep. at 66:25-67:2.
[32] Ex. 6, Boorstein Dep. at 153:14-23; 156:15-20; 161:25-162:11; Ex. 3, Thelian Dep. at 239:14-240:9; Ex. 5, Clark Dep. at 168:25-169:6; Ex. 11, Transcript of Deposition of Matthew Ryan ("Ryan Dep.") at 90:18-22.
[33] Ex. 4, Ryan Rebuttal at ¶¶ 46-48.

Amount under each one of the hundreds of different benefits plans was the exact amount the Labs billed for the service.[34]

Simply put, Mr. Haney's conclusion that Cigna would have paid 100% of the Labs' billed charges is contradicted by all the other documentary and testimonial evidence in this case. His decision to (1) rely solely on invalid assumptions; (2) not inquire into the facts underlying those assumptions; and (3) ignore historical payment data directly undermining those assumptions requires exclusion of his testimony. *See Shatkin*, 727 F.2d at 208 (upholding district court's decision to exclude an expert's testimony where the expert erroneously assumed that the Plaintiff would have contributed 20% of his $150,000 income to his mother when previously he had only contributed $96.01); *Chart v. Town of Parma*, No. 10-CV-6179P, 2014 U.S. Dist. LEXIS 140463, at *43 (W.D.N.Y. Sept. 30, 2014) (excluding expert testimony that arsenic in a park posed a human health risk where expert relied on invalid assumption that the park would be converted into residential property despite evidence suggesting that substantial hurdles prevented it from being converted from a park).

## CONCLUSION

For all of the foregoing reasons, Mr. Haney's Opinion 2 should be excluded under Fed. R. Evid. 702.

DATED: July 18, 2023

---

[34] Ex. 2, Haney Dep. at 139:3-9.

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (CT26653)
EMILY COSTIN (PHV No. 10291)
950 F Street, NW
Washington, DC  20004
Telephone:  202-239-3300
Facsimile:  202-239-3333
E-mail:  edward.kang@alston.com
E-mail:  emily.costin@alston.com

KELSEY L. KINGSBERY
(PHV No. 10282)
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
Telephone: 919-862-2200
Facsimile: 919-862-2260
E-mail: kelsey.kingsbery@alston.com

*Attorneys for Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that this day, July 20, 2023, I electronically filed the foregoing using the CM/ECF system, which will automatically effectuate service upon all counsel of record in this matter.

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (No. CT26653)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com

*Counsel for Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company*