# EXHIBIT 2

**CT. GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH MEDICAL LAB. INC., ET AL.**
**Christopher Haney - Vol. I on 06/20/2023**

```
 1              UNITED STATES DISTRICT COURT

 2                DISTRICT OF CONNECTICUT

 3    -----------------------------X

 4    CONNECTICUT GENERAL LIFE        :

 5    INSURANCE COMPANY AND CIGNA     :

 6    HEALTH AND LIFE INSURANCE       :

 7    COMPANY,                        : Case No.

 8              Plaintiffs,    : 3:19-CV-01324-JCH

 9    v.                              :

10    BIOHEALTH MEDICAL LABORATORIES,:

11    INC., PB LABORATORIES, LLC,     :

12    AND EPIC REFERENCE LABS, INC., :

13              Defendants.     :

14    -----------------------------X

15                    VOLUME I

16

17    VIDEOTAPED VIDEO TELECONFERENCE DEPOSITION OF

18                CHRISTOPHER HANEY

19             Tuesday, June 20, 2023

20

21

22

23    Job No.:  1324

24    Pages 1 - 227

25    Reported by:  Lisa Barbera, RPR
```

```
 1                A P P E A R A N C E S

 2

 3     ON BEHALF OF PLAINTIFFS:

 4          KELSEY L. KINGSBERY, ESQUIRE

 5          KELSEY.KINGSBERY@ALSTON.COM

 6          NICK A. YOUNG, ESQUIRE

 7          NICK.YOUNG@ALSTON.COM

 8          ALSTON & BIRD LLP

 9          555 Fayetteville Street, Suite 600

10          Raleigh, North Carolina 27601

11          (919)862-2200

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1       A P P E A R A N C E S  (Continued)

 2

 3    ON BEHALF OF DEFENDANTS, MEDYTOX SOLUTIONS,

 4    INC.:

 5         SCOTT M. HARE, ESQUIRE

 6         SHARE@WHITEFORDLAW.COM

 7         ANTHONY THOMAS GESTRICH, ESQUIRE

 8         AGESTRICH@WHITEFORDLAW.COM

 9         KENNETH J. LUND, ESQUIRE

10         KLUND@WHITEFORDLAW.COM

11         WHITEFORD, TAYLOR & PRESTON, LLP

12         11 Stanwix Street, Suite 1400

13         Pittsburgh, Pennsylvania 15222

14         (412)618-5600

15

16         MATTHEW CHRIST, ESQUIRE

17         MTC@PBGLAW.COM

18         DOMNICK CUNNINGHAM & YAFFA

19         2401 PGA Boulevard, Suite 140

20         Palm Beach Gardens, Florida 33410

21         (561)625-6260

22

23    ALSO PRESENT:

24         Jack McKenzie, Videographer

25
```

```
 1   BY MS. KINGSBERY:
 2        Q.   Mr. Haney, we were going over the scope
 3   of your opinions in this case.
 4             Do you have an opinion as to whether
 5   Cigna improperly denied any of the individual
 6   claims identified in Opinions 2 or 3 of your
 7   report?
 8             MR. HARE:  Object to the form.
 9             THE WITNESS:  I don't.  For the purposes
10        of that conclusion, I relied on the expert
11        analysis of Ms. Thelian.
12   BY MS. KINGSBERY:
13        Q.   You do not have an independent opinion
14   as to whether Cigna improperly denied any claims
15   identified in Opinions 2 and 3; right?
16        A.   No.
17        Q.   Are you --
18        A.   No, I do not.  Yes, you are right.
19   Sorry.
20        Q.   Are you familiar with the concept
21   "out-of-network" in the context of healthcare?
22        A.   Generally, yes.
23        Q.   What's your understanding of what that
24   means?
25        A.   So generally my understanding is
```

1      Q.   Are you aware that the labs were all

2   out-of-network with Cigna between 2012 and 2017?

3      A.   That's my understanding.

4      Q.   So would you agree that whether and how

5   much Cigna reimbursed the labs for the claims you

6   identified in Opinions 2 and 3 would be determined

7   in part by the patient's benefit plan?

8      A.   That stands to reason, yes.

9      Q.   What is your understanding generally of

10   the term "deductible"?

11      A.   So my understanding generally of the

12   term "deductible" comes mainly from my own

13   personal experience paying for healthcare claims.

14   But the deductible amount in my experience has

15   been an amount as the patient that I owe and I am

16   required to pay out of pocket before my insurance

17   will begin to pay the claims.

18      Q.   And that amount is set forth in the

19   patient's benefit plan; right?

20      A.   I don't know that.  It stands to reason,

21   but I don't know that personally.

22      Q.   How about the term "coinsurance"?  Do

23   you have an understanding of what the term

24   "coinsurance" means?

25      A.   My understanding of it is when multiple

1    insurance payers might be involved -- primary,

2    secondary, tertiary insurance -- and how those

3    could impact the priority of who pays a claim and

4    in what amount.

5         **Q.    In this -- in the claims data that you**

6    **reviewed, is that your understanding of the**

7    **coinsurance field?**

8         A.    So my understanding of the fields of

9    data that were provided are represented in the

10   data dictionary that was provided in this case.

11   That's the document that tells expressly what

12   every field represents.

13        **Q.    And in this case, is your understanding**

14   **based on that for coinsurance different than what**

15   **you just told me?**

16        A.    When it comes to the purposes of this

17   case for my report, when -- my understanding of

18   what the field of coinsurance amount is is based

19   on the data dictionary description of what that

20   field is defined as.

21        **Q.    And what is -- what was it defined as?**

22        A.    We'd need to look at the data

23   dictionary.

24        **Q.    Okay.  We'll get to that.**

25             **Are you familiar with the concept of an**

1  allowed amount in the healthcare industry?

2       A.   Generally, no.  I am in this case -- I

3  am in this case specifically because allowed

4  amount -- it's not a term that I've used in every

5  single healthcare case, but it is a case that --

6  it is a term that was used in the Cigna -- the

7  data produced -- let me start over so I can give

8  you a clean record.

9            My understanding of the allowed amount

10  in this case is that it's a term that was used by

11  Cigna in the structured data that they provided,

12  and it's a term that was ultimately defined by

13  Cigna in their data dictionary.  So that is what I

14  consider the reasonable basis for what the allowed

15  amount was.

16       Q.   So my question is:  Prior to this

17  litigation, did you have an understanding of the

18  term "allowed amount" in the healthcare industry?

19       A.   I would say no.

20       Q.   You never ran into that term in any of

21  your prior work?

22       A.   Well, you're -- you're asking me to

23  define a term that could be different in many

24  cases.  We look at cases on a case-by-case basis.

25  If the data is defined differently, we treat it

 1   differently in different cases.  So I'm not
 2   comfortable generalizing on what a particular term
 3   means if it could mean different things in
 4   different cases.
 5        **Q.   Well, as a general concept, did you have**
 6   **familiarity with the concept of an allowed amount**
 7   **prior to this case?**
 8        A.   No.  I could not have told you generally
 9   across the board what the words "allowed amount,"
10   when you put those two words together, what that
11   means in any particular instance.
12        **Q.   In your experience and generally**
13   **speaking, when a health insurance claim is denied**
14   **in its entirety, does the payer calculate the**
15   **coinsurance amount?**
16        A.   I couldn't tell you.
17        **Q.   In your experience, when a health**
18   **insurance claim is denied in its entirety, does**
19   **the payer typically calculate the deductible**
20   **amount?**
21        A.   I couldn't tell you.
22        **Q.   And when a claim is denied in its**
23   **entirety, does the payer typically calculate an**
24   **allowed amount?**
25        A.   I don't know.

```
 1              MS. KINGSBERY:  All right.

 2              THE WITNESS:  Thanks for checking in.

 3              MS. KINGSBERY:  Yep.

 4    BY MS. KINGSBERY:

 5        Q.   Okay.  So looking at Opinion 2 -- and

 6    tell me if you want me to pull anything up, but it

 7    sounds like you've got your report in front of

 8    you.

 9        A.   I do.

10        Q.   So at the top of page 27, you write --

11    tell me when you're there.

12              "Cigna's improper denial of the labs'

13    15,842 eligible and covered healthcare claims,

14    with dates of service from January 1, 2012, to

15    December 29, 2017, caused estimated damages in the

16    amount of $20,427,577"; right?

17        A.   Correct.

18        Q.   And you testified that those 15,842

19    claims were identified by Ms. Thelian; right?

20        A.   I'm sorry.  Could you say that question

21    one more time?

22        Q.   Yeah.

23              Those 15,842 claims that you referred to

24    were identified by Ms. Thelian; right?

25        A.   That's correct.
```

CT. GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH MEDICAL LAB. INC., ET AL.
Christopher Haney - Vol. I on 06/20/2023                Page 115

1          MS. KINGSBERY:  Jack, do you mind

2     pulling up the May 17, 2022, letter again?

3          THE WITNESS:  Can you ask your question

4     again?

5  BY MS. KINGSBERY:

6     Q.    Yeah.

7          Is there anything in this letter that

8  explains to you whether Cigna calculates the

9  coinsurance amount when it denies a claim?

10          MS. KINGSBERY:  Will you scroll down a

11     little bit, Jack?

12          THE WITNESS:  Hang on just a second.

13          Do you mind if I drive, Jack?  Hang on

14     right there.

15          So the first thing, when I evaluate this

16     document -- I'm going to read a couple

17     phrases because this is meaningful in how I

18     interpret it.  I want to make sure I reflect

19     that when I answer your questions.

20          The preceding commentary before we get

21     into the table says, "Those headers have the

22     following meaning," and then it moves into a

23     spreadsheet.

24          Now, Jack, could you scroll down to the

25     header?  So it's going to be the left field.

1      So I see the coinsurance amount there.

2   And I'm just going to read out the

3   coinsurance amount as I refresh myself.  The

4   description, which is the meaning of the

5   coinsurance field, is the "amount calculated

6   as a percentage of covered/allowed charges

7   and paid by member after plan deductible is

8   satisfied."

9      I don't see any caveats that would say

10  this calculation is different for claims that

11  are denied.  I don't see any footnotes that

12  would explain that this calculation is

13  different for claims that are denied.

14      So I think that the answer to your

15  question is:  I don't see any explanation in

16  this document distinguishing between how

17  denied claims are treated and how paid claims

18  are treated.

19      But just to make sure, Jack, would you

20  mind just kind of slowly scrolling through

21  the whole document to see if I've missed any

22  footnotes that explain that?

23      Okay.  And I'll read the last line.  So

24  in reviewing this document, I didn't see any

25  footnotes that would differentiate denied

Case 3:19-cv-01324-JCH    Document 222-3    Filed 07/20/23    Page 13 of 23

CT. GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH MEDICAL LAB. INC., ET AL.
Christopher Haney - Vol. I on 06/20/2023          Page 117

1    claims.  I do see the final note of the data

2    dictionary says that "Finally, the only

3    fields that were omitted were fields with

4    data already captured elsewhere in the report

5    or fields with no value."

6          So what that tells me is all the fields

7    provided have values and that nothing was

8    omitted from this report.  And that -- that

9    confirms my opinion, at least, that the --

10    when we reviewed the data provided, that this

11    data dictionary is a reasonable definition of

12    the fields provided, and it speaks for

13    itself.

14  BY MS. KINGSBERY:

15        **Q.   Okay.  So, then, you would agree the**

16  **letter is silent as to whether Cigna calculates**

17  **the coinsurance amount with respect to denied**

18  **claims?**

19          MR. HARE:  Object to the form.

20          THE WITNESS:  This letter doesn't

21    distinguish denied claims at all.  So there's

22    no reason to think that the calculation would

23    be any different.

24  BY MS. KINGSBERY:

25        **Q.   This letter does not --**

1        I found in Mr. Ryan's calculation.

2    BY MS. KINGSBERY:

3        Q.   You noted that for every single one of

4    the 15,842 denied claims, that the allowed amount

5    was populated with the exact same number as the

6    charge amount for every single claim; right?

7        A.   As I recall, that's correct.  And when

8    we went back to evaluate the definition of the

9    allowed amount, we found that to be reasonable.

10       Q.   Okay.  Well, you agreed that the allowed

11   amount is based on the benefit plan; right?

12       A.   The allowed amount, fortunately it's

13   still up on the screen, is the "amount approved

14   for payment based on the fee schedule or R&C

15   amount."  And my understanding of that includes

16   the benefit plan.

17            MS. KINGSBERY:  Okay.  Can you scroll up

18       a little bit, Jack, please?

19            Okay.  Stop right there.

20   BY MS. KINGSBERY:

21       Q.   It looks like there's another definition

22   of "allowed amount" here.

23            Which one did you use?

24       A.   I believe we used the first one.  Let me

25   see if I articulated it specifically or if I just

1      question?

2            (The Stenographer read the record back.)

3            THE WITNESS:  Yeah.  I would need to

4      revisit that.  I don't recall as I sit here

5      right now.  The charge amount is one more

6      field of the data.  I didn't articulate that

7      analysis in my report, so I'd need to revisit

8      the data to be able to answer that.

9  BY MS. KINGSBERY:

10     **Q.   Did you analyze how the allowed amount**

11 **compares to the charge amount in your -- in the**

12 **claims set forth in Opinion 2?**

13     A.   Well, I didn't find that to be a

14 relevant consideration.  Again, the -- when we

15 looked at the paid claims, the allowed amount as

16 compared to the charge amount could be different

17 fields.  So that indicated that one wasn't

18 necessarily the result of the other.  When we rely

19 on the allowed amount, we relied on the definition

20 in the data dictionary as the basis for our

21 understanding of what it was.

22     **Q.   So if the charge amount was the exact**

23 **same amount as the allowed amount for 15,842**

24 **claims, you would not consider that relevant to**

25 **your opinion?**

1      Q.    You do recall, though, that your final

2   damages number is the exact same amount that the

3   labs charged for the -- for every single claim set

4   forth in Opinion 2; right?

5      A.    I do.

6      Q.    And you did agree with me that the

7   allowed amount is based on the benefit plan;

8   right?

9      A.    According to the definition, it includes

10  the patient's -- it is the amount -- I'm sorry.

11  I'll read the whole definition.

12          It's the "amount approved for payment

13  based on the fee schedule or R&C amount and the

14  patient's benefit plans."

15     Q.    And is --

16     A.    That's my understanding.

17     Q.    Sorry.  So is it your testimony that you

18  believe that the benefit plans would have provided

19  an allowed amount that is equal to the total

20  amount the labs charged for all the claims set

21  forth in Opinion 2?

22     A.    I don't have an opinion about that.  My

23  opinion, in relying on the allowed amount data, is

24  that Cigna produced complete and accurate data to

25  us that corresponds to the definition of that

1    apply to the claims in Opinion 2; right?

2        A.    I don't know how many.

3        Q.    And you didn't -- didn't review any of

4    those plans to confirm whether the allowed amount

5    in the claims data is consistent with the allowed

6    amount set forth in the benefit plan?

7        A.    No.   I didn't confirm that the data

8    provided to us by Cigna was accurate.   I trusted

9    Cigna in that sense.

10       Q.    Do you believe, based on all of your

11   experience in the healthcare field, that Cigna

12   determined that these 15,842 claims, if they were

13   payable, Cigna would have paid 100 percent of the

14   labs' billed charges?

15            MR. HARE:   Object to the form.

16            THE WITNESS:   That's what the data

17        shows.

18   BY MS. KINGSBERY:

19       Q.    And so you believe that had Cigna

20   determined that these claims were payable, Cigna

21   would have paid 100 percent of the labs' billed

22   charges; is that your testimony?

23       A.    That's what the data shows.

24       Q.    Is that your testimony?

25       A.    That's what the data shows.

1    amount presented by Cigna really doesn't include

2    those is, again, objectively untrue.

3        **Q.   Well, you didn't check any of the**

4    **benefit plans to see whether the allowed amount**

5    **was populated based on the member benefits or**

6    **policies; right?**

7            MR. HARE:  Object to the form.

8            THE WITNESS:  Again, I found it reliable

9        in this case to rely on Cigna's

10       representation of what the allowed amount

11       represents.  Based on that representation, I

12       did not see the need to go through, as you've

13       said, hundreds of benefit plans.  I trusted

14       that Cigna's data dictionary speaks for

15       itself.

16   BY MS. KINGSBERY:

17       **Q.   And you don't know whether Cigna**

18   **populated the allowed amount based on the member**

19   **benefits or policies for a denied claim; right?**

20           MR. HARE:  Object to the form.

21           THE WITNESS:  They said they did.

22       Again, I presume that they are being

23       truthful.  Their data dictionary represents

24       that amount includes those fields.

25

1   BY MS. KINGSBERY:

2        Q.   So you haven't pointed me to anything

3   where Cigna said that when they deny a claim they

4   populate the allowed amount based on the member

5   benefits and policies.  I mean, you pointed me to

6   a meaning of a term --

7        A.   So --

8        Q.   Let me ask --

9             MR. HARE:  Object to the form.

10  BY MS. KINGSBERY:

11       Q.   Sorry.

12       A.   What's the question?

13       Q.   Yeah.  My question is:  Did you review

14  anything where Cigna explained how they populate

15  the allowed amount when they deny a claim?

16       A.   Cigna did not distinguish.  They define

17  how they calculate the allowed amount every time,

18  and that is included in the data dictionary.  That

19  is my understanding of that data dictionary, and I

20  think it speaks for itself.

21       Q.   But Cigna didn't say this is how they

22  calculate the amount -- allowed amount every time?

23       A.   They didn't indicate that they ever

24  calculated it in a different way.  I think the

25  fair reading of that is, this is how it was

1    calculated.

2          Q.    And Mr. Ryan also writes that Cigna did

3    not determine or apply any calculation of what the

4    patient's out-of-pocket responsibility would have

5    been when a claim is adjudicated as a denial.

6                Do you remember that portion of his

7    report?

8          A.    Generally, yes.

9          Q.    Do you have any reason to dispute that

10   conclusion?

11         A.    Again, Cigna provided data on those

12   particular topics that he addressed.  It was

13   included in the data produced related to

14   coinsurance, deductible amount.  Again, they

15   define those fields in the data dictionary, and we

16   accepted the definitions in that data dictionary

17   on their face.

18         Q.    Is there anything else you have to

19   dispute his conclusion other than the letter from

20   counsel?

21         A.    I'm sorry.  You're going to have to be

22   more specific.  To dispute what?

23         Q.    So my question is:  Do you have any

24   reason to dispute his conclusion that Cigna does

25   not determine or apply a patient's out-of-pocket

1    responsibility when it denies a claim?

2         A.    I do.  So let's -- and maybe it's

3    worthwhile just to discuss how experts reach

4    conclusions.

5              Our opinions are based on reliable data.

6    I have not seen any reliable data presented from

7    Mr. Ryan that would present what you've said.

8    Without that, I can't reach any conclusions that

9    Cigna would have done what you're describing for

10   denied claims.

11             However, the data that is available, the

12   facts of the case, point directly to a different

13   conclusion, that the allowed amount is based on

14   this definition as provided that includes the plan

15   benefits, the fee schedule, and the R&C amount.

16             Similarly, the fields of data provided

17   in the data dictionary about coinsurance or

18   deductibles similarly were provided to us by

19   Cigna.  That is reliable data, in my opinion, and

20   it's the reason my opinions are based on that

21   data.

22             I read Mr. Ryan's report, and I listened

23   to his deposition.  I did not see any instances

24   where he produced any reliable data to contradict

25   that.  In fact, I understand he was not presented

1    with this data dictionary in the first place to

2    even know what the fields of data represent.  My

3    understanding of that is he simply assumed what

4    the fields of data were.

5            So those are all collectively reasons

6    why I disagree with the conclusions in the Ryan

7    report, among others.

8        Q.   You heard -- oops.  Sorry.  Are you

9    finished?

10       A.   I am.

11       Q.   Okay.

12       A.   Thank you.

13       Q.   Do you recall he testified that Cigna

14   actually informed his team that his understanding

15   was correct, that Cigna does not populate the

16   allowed amount field based on application of the

17   benefit plans and policies when the claim is

18   denied?  Do you recall that part of his testimony?

19       A.   I do recall that testimony.  I also

20   recall he didn't attend that meeting, he wasn't

21   aware of the duration of that discussion, he

22   wasn't aware of what questions were asked in that

23   meeting, he wasn't aware of how those questions

24   were responded to.

25            I also understood that there were no

**CT. GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH MEDICAL LAB. INC., ET AL.**
Christopher Haney - Vol. I on 06/20/2023                    Page 227

1              CERTIFICATE OF SHORTHAND REPORTER

2

3              I, Lisa Barbera, Shorthand Reporter, the

4       officer before whom the foregoing deposition

5       was taken, do hereby certify that the

6       foregoing transcript is a true and correct

7       record of the testimony given; that said

8       testimony was taken by me stenographically

9       and thereafter reduced to typewriting under

10      my supervision; and that I am neither counsel

11      for or related to, nor employed by any of the

12      parties to this case and have no interest,

13      financial or otherwise, in its outcome.

14

15              IN WITNESS WHEREOF, I have hereunto set

16      my hand this 25th day of June, 2023.

17

18      _Lisa Barbera_

19      _____

20      LISA BARBERA

21      STENOGRAPHER

22

23

24

25