# EXHIBIT 4

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,

*Plaintiffs*

v.

BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.

*Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
*CASE NO. 3:19-CV-01324-JCH*

Expert Rebuttal Report of Matthew Ryan

Signed: _____

May 19, 2023

# Contents

I.   **INTRODUCTION & QUALIFICATIONS** ................................................................3

II.  **SUMMARY OF THE LABS' ALLEGATIONS** ........................................................3

III. **SCOPE OF ASSIGNMENT** ...............................................................................4

IV. **SUMMARY OF OPINIONS** ...............................................................................5

V.  **OVERVIEW OF MR. HANEY'S OPINIONS AND DATA RELIED UPON** ............................6

    *A.*   *Universe of Claims Data Relied Upon* ........................................................6

    *B.*   *Mr. Haney's Identified At-Issue Claims and Alleged Damages Opinions*...................7

VI. **BASIS FOR OPINIONS**.....................................................................................9

  **MR. HANEY'S OPINION #2 DAMAGES** ...................................................................9

    *A.*   *Mr. Haney's Opinion #2 Damages Calculation Effectively Seeks Payment of 100% of the Labs' Billed Charges from Cigna on the Alleged Improperly Denied Claims* ........................................9

    *B.*   *Providers Do Not Typically Receive Full Billed Charges as Payment from Payers, as Member Plan Benefits and Related Policies Determine Reimbursement Applicable* ..............................10

    *C.*   *Review of Data Available Regarding Past Cigna Payments Further Illustrates the Flaw in Mr. Haney's Assumption That Cigna Would Have Paid 100% of the Labs' Billed Charges on the Disputed Opinion #2 Claims*.........................................................................13

  **MR. HANEY'S OPINION #3 DAMAGES** ..................................................................14

    *A.*   *Mr. Haney's Opinion #3 Damages Contain Claims Not Previously Identified by the Labs as Claims Without Response from Cigna* ........................................................14

  **CLAIMS CIGNA ASSERTS ARE NOT PROPERLY AT-ISSUE** ........................................16

    *A.*   *Cigna's Identified Claim Categories Not Properly At-Issue*....................................16

    *B.*   *Mr. Haney's Opinion 2 Damages Related to Claims Cigna Asserts Are Not Properly At-Issue* . 16

    *C.*   *Mr. Haney's Opinion 3 Damages Related to Claims Cigna Asserts Are Not Properly At-Issue* . 17

VII. **CONCLUSION**.............................................................................................17

ankura.com

## ATTACHMENTS AND APPENDICES

Attachment 1 – Curriculum Vitae of Matthew Ryan

Attachment 2 – Data and Documents Relied Upon

Appendix A – Summary of Mr. Haney's Interest Inputs

Appendix B – Summary of Cigna Identified Claim Categories

Appendix C – Summary of Comparison to Labs' No Assignment Lists

Appendix D – Summary by ERISA Status

Appendix E – Summary by Funding Arrangement

Appendix F – Summary by Account Type

Appendix G – Summary by Situs State

Appendix H – Summary of Statute of Limitations Analysis

ankura.com

## I.    INTRODUCTION & QUALIFICATIONS

1.      I, Matthew Ryan, am a Senior Managing Director with Ankura Consulting, Inc. ("Ankura"), a global litigation and management consulting firm. I specialize in healthcare disputes and forensics providing consulting and expert related services to a variety of clients. I have more than 14 years of experience assisting clients with disputes associated with a variety of benefits administration, reimbursement, and other related claims processing issues, much of which has involved complex analysis of millions of records of electronic claims / billing data, as well as other types of operational and financial data, in order to develop sophisticated analytical models and financial calculations. I have a B.S. in Finance from Wake Forest University. My curriculum vitae is attached as **Attachment 1**.

2.      I have been retained by Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna"), in the above referenced matter to review certain data and documents related to the above-referenced dispute regarding the processing and adjudication of certain laboratory services billed by BioHealth Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PBL"), and Epic Reference Labs, Inc. ("Epic") (collectively "the Labs").

3.      It is my understanding that Cigna filed a complaint in which it alleged that certain overpayments were made to the Labs as a result of "the Labs' fraudulent billing scheme designed to enrich themselves at the expense of Cigna and the health plans that Cigna administers."[1] I also understand that the Labs have separately filed a complaint in which they allege that, in certain instances, Cigna "failed to pay the Laboratories' invoices for testing services provided to [Cigna's] subscribers and beneficiaries."[2] I understand that these matters are now consolidated into a single proceeding.

4.      On March 1, 2023, the Labs submitted the expert report of Christopher L. Haney in which Mr. Haney describes certain analyses and calculations related to the Labs' allegations of improper denials by Cigna. I have been asked to review and respond to the data, information, methodologies, and assumptions that Mr. Haney has relied upon to develop his various calculations of alleged damages.

5.      The work on this matter was performed personally by me or by a team of professionals working directly under my supervision. Ankura is being compensated at the rate of $850 per hour for my time on this matter. Compensation paid to Ankura is not contingent upon any action or event resulting from the analyses, opinions, or conclusions reached in this matter.

## II.    SUMMARY OF THE LABS' ALLEGATIONS

6.      As noted above, I understand that both Cigna and the Labs have each alleged that certain services billed by the Labs have led to respective damages being incurred. Mr. Haney has offered opinions in the matter related to Cigna's alleged non-payment of certain services and the resulting damages incurred by the Labs, as alleged in the Labs' complaint.

7.      The Labs allege that, since 2012, they have "provided testing services to individual patients who are subscribers or beneficiaries of commercial, non-Medicare health plans insured or administered by

---

[1] Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company, Plaintiffs, v. BioHealth Laboratories, Inc., PB Laboratories, LLC, Epic Reference Labs, Inc., and Epinex Diagnostics, Inc., Defendants, Case 3:19-cv-01324-JCH, Filed December 13, 2021 ("Cigna Amended Complaint"), ¶1.

[2] Epic Reference Labs, Inc., BioHealth Medical Laboratory, Inc. and PB Laboratories, LLC, Plaintiffs, v. Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company, Defendants, Case No. 3:19-CV-1326-SRU, Filed January 11, 2021 ("Labs Amended Complaint"), ¶18.

ankura.com

[Cigna]."[3] The Labs allege that, in certain instances, Cigna "failed to pay the Laboratories' invoices for testing services provided to [Cigna's] subscribers and beneficiaries."[4]

8.  The Labs assert that Cigna is obligated "to pay the Laboratories for testing services provided to [Cigna's] commercial, non-Medicare subscribers and beneficiaries."[5] The Labs state that they are "non-participating (out-of-network) providers, meaning that they have no direct contract with [Cigna] governing the provision of their services or the billing and payment thereof." [6] The Labs further assert that, by nature of being an out-of-network provider, they "did not agree to accept discounted payments from [Cigna] for their covered services."[7]

9.  The Labs state that "expressly excluded from this lawsuit are any claims for payment as to which the Laboratories obtained a valid and permitted assignment of benefits from the patient subscriber/beneficiary assignment where such assignments are permitted and authorized by the applicable Cigna policy."[8]

## III.  SCOPE OF ASSIGNMENT

10.  I have been asked to review and respond to the expert report of Christopher Haney, submitted on behalf of the Labs on March 1, 2023 ("Haney Report"). Mr. Haney was asked "to evaluate documentation related to the Labs' healthcare claims seeking reimbursement from Cigna, along with Cigna's justification(s) for denying such claims."[9]

11.  Mr. Haney was specifically asked to "(i) evaluate Cigna's purported statistical basis for unilaterally flagging and denying reimbursement for the Labs' covered testing service claims, (ii) estimate financial damages resulting from Cigna's alleged improper denial of such claims, including penalty interest, and (iii) estimate financial damages resulting from Cigna's alleged violations of state law(s), including prompt pay statutes."[10]

12.  In connection with this report, I have been asked to evaluate the data, information, methodologies, and assumptions relied upon in Mr. Haney's analyses with respect to items (ii) and (iii) of his assignment, relating to his calculations of alleged damages resulting from Cigna's denial of the Labs' claims at-issue. I have not been asked to evaluate his analysis with respect to item (i) of his assignment, relating to Cigna's basis for initially flagging and denying claims submitted by the Labs.

13.  With respect to my review and analysis of Mr. Haney's opinions, I have been asked to conduct the following:

     i.  I have been asked to evaluate Mr. Haney's analysis and calculations of alleged damages on an identified population of denied claims, assuming the claims were found to have been improperly denied by Cigna.[11]

---

[3] Labs Amended Complaint, ¶13.

[4] Labs Amended Complaint, ¶18.

[5] Labs Amended Complaint, ¶31.

[6] Labs Amended Complaint, ¶28.

[7] Labs Amended Complaint, ¶28.

[8] Labs Amended Complaint, ¶40.

[9] Haney Report, ¶2.

[10] Haney Report, ¶2.

[11] Mr. Haney himself notes that he "assumes the Labs' allegations will be proven, or not, at trial, and [he] render[s] no opinions about Cigna's liability in this matter generally." (Haney Report, footnote, 59). As such, Mr. Haney himself does not appear to opine that Cigna


ankura.com

    ii.    I have also been asked to evaluate Mr. Haney's separate analysis and calculation of alleged prompt payment penalties for claims alleged to have been adjudicated in violation of certain state law(s).

    iii.   Additionally, I have separately been asked to identify and quantify certain categories of claims included in Mr. Haney's analyses that Cigna contends are not properly at-issue in this matter.

14.     I have not been asked to provide, nor do I intend to offer, any legal conclusion with respect to the interpretation of any federal or Florida law, including whether and how the disputed claims are subject to either. For the purposes of my analysis, I have been asked to evaluate the opinions and data provided by Mr. Haney, and other data and documents produced in this matter related to the claims in dispute.

## IV.   SUMMARY OF OPINIONS

15.     Pursuant to the above assignment, and as explained in the following sections of this report, I have developed the following primary opinions:

    i.    With respect to his analysis of a population of claims that another expert offered by the Labs, Ms. Thelian,[12] found to have been improperly denied by Cigna, Mr. Haney aims to calculate damages equal to the amount Cigna should have paid were the claims to have been adjudicated as payable.[13] To do so, he relies on a data field in Cigna's produced claims data that he misinterprets as the allowable benefit amount Cigna would have used to adjudicate each claim, had it not been denied.

        1.    As a result, his damages calculation effectively seeks payment of 100% of the Labs' billed charges from Cigna on each identified disputed claim, which significantly overstates the amount Cigna would have actually paid were the claims to have been adjudicated as payable.

        2.    His assumption results in an inaccurate assessment of the amount Cigna would have paid on each disputed claim as: a) providers do not typically receive payment of their full billed charges from payors, regardless of network participation, b) the applicable allowable benefit amount for services rendered by an out-of-network provider is outlined in the member's plan document and incorporated claims adjudication procedures, and is often less than the provider's submitted charge, c) the portion of the allowable benefit that is the member's out-of-pocket financial responsibility is also outlined in the member's benefit plan and further impacts the amount that would have been paid by Cigna.

        3.    Prior payments made by Cigna on claims submitted by the Labs that were deemed payable show payments averaging less than 60% of the Labs' submitted charges. This further illustrates the flaws in Mr. Haney's assertion that Cigna would have paid 100% of the Labs' billed charge amounts on the disputed denied claims.

    ii.    With respect to his analysis of a separate population of claims identified by the Labs' counsel as claims for which the Labs were allegedly not properly notified of Cigna's denial, Mr. Haney calculates damages pursuant to prompt payment provisions of applicable state law(s).

---

improperly denied any of the claims identified as at-issue in this matter. Similarly, I understand it is Cigna's position that these claims were in fact properly denied and, as such, no additional amounts are owed to the Labs. However, I have been asked to assess Mr. Haney's calculations assuming the Labs' allegations are ultimately proven.

[12] Expert report of Jacqueline Thelian, submitted on behalf of the Labs on March 1, 2023 ("Thelian Report").

[13] Haney Report, ¶75.

ankura.com

1.  My review of the claims included in Mr. Haney's calculation found that more than 25% of these claims were not included on the Labs' previously identified population of claims for which the Labs initially contended no response notifying the Labs of the denial was received from Cigna.[14]

iii.  Finally, Mr. Haney's damages include various categories of claims that I understand Cigna asserts are not properly at-issue in this matter, including claims for which the Labs obtained an assignment of benefits, ERISA plan claims, claims associated with self-funded or group plans, claims associated with plans outside of Florida, and claims adjudicated prior to July 25, 2013.

1.  I found that approximately 73.5% of the damages Mr. Haney calculated on claims in his Opinion 2 (e.g., claims allegedly improperly denied by Cigna) relate to claims in one or more of these identified categories.

2.  I found that approximately 93.8% of the damages Mr. Haney calculated on claims in his Opinion 3 (e.g., claims for which Cigna allegedly failed to properly notify the Labs of the denial) relate to claims in one or more of these identified categories.

16.      I have relied on certain documents in forming the conclusions contained in this report. A list of these documents is attached to my report in **Attachment 2**. My analyses have been performed based on the information now available to me. As additional information becomes available, I may evaluate and consider that information. Therefore, I reserve the right to modify or supplement my opinions and conclusions.

## V.   OVERVIEW OF MR. HANEY'S OPINIONS AND DATA RELIED UPON

### A.  Universe of Claims Data Relied Upon

17.      Mr. Haney summarizes the initial universe of data underlying the analyses reflected in his report.[15] He identifies a population of 36,290 claims submitted by the three Labs — BioHealth, PBL, and Epic — during the period January 2012 to December 2017. He indicates a total submitted charge amount of $56.7 million and a net paid amount of $16.2 million associated with these claims. Based on my review of Mr. Haney's report, the analyses that form the basis for his calculations of damages are derived from this claims population.

---

[14] LABS00127165 - LABS00132276; LABS00132277 – LABS00160116.

[15] Haney Report, Table 1.

**Table 1. Overview of Claims Population**

|  | Claims | Billed Charges | Cigna Paid Amount | Patient Resp.[16] |
|---|---|---|---|---|
| Total Claims per Mr. Haney[17] | 36,290 | $56,663,179 | $16,169,936 | n/a |
| Claims per Cigna Production Files[18] | 36,290 | $56,705,443 | $16,143,442 | $2,494,300 |

18.    As illustrated above, I have confirmed that Mr. Haney is relying solely on claims data produced by Cigna in this matter to identify the claims population, relevant claim details, and associated financial amounts related to each. I was able to replicate Mr. Haney's starting point population within <1% of Mr. Haney's calculated amounts using the Cigna Claims Data production files on which he relies.[19]

### B. Mr. Haney's Identified At-Issue Claims and Alleged Damages Opinions

19.    With respect to the opinions offered by Mr. Haney that I have been asked to evaluate, he puts forth the following two distinct calculations of alleged damages.

i.    "Cigna's improper denial of the Labs' 15,842 eligible and covered healthcare claims, with dates of service from January 1, 2012 to December 29, 2017, caused estimated damages in the amount of $20,427,577. Penalty interest for these claims, in accordance with various state laws, is estimated to be at least an additional $19,819,549 as of the date of this report."[20] ("Haney Opinion 2")

ii.    "Counsel identified 6,458 claims where (i) the Labs allegedly were not properly notified of Cigna's denial, in violation of state law, and (ii) Cigna failed to properly pay the Labs' invoices for those claims. The unpaid principal balance for these claims caused actual damages in the amount of $9,812,173. Penalty interest for these claims, in accordance with state law, is estimated to be at least an additional $10,261,928 as of the date of this report."[21,22] ("Haney Opinion 3")

20.    Regarding the "15,842 eligible and covered healthcare claims" he considers in his Opinion 2 damages calculation, Mr. Haney indicates that "the Labs' medical coding and reimbursement expert, Ms. Jaqueline Thelian, identified numerous eligible and covered claims in the Population where the Labs submitted claims for reimbursement and Cigna incorrectly denied those claims in their entirety."[23]

21.    As noted in her separate report, Ms. Thelian was asked to evaluate and opine on "the coding, billing, and supporting documentation for the Labs' covered drug testing claims, and (ii) Cigna's

---

[16] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount], [Copay Amount], and [Deductible Amount]*.

[17] Haney Report, Table 1.

[18] Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983 ("Cigna Claims Data").

[19] My analysis of the Cigna Claims Data matches the number of claims referenced by Mr. Haney, but has slightly different charges and payment amounts than the amounts referenced in Mr. Haney's Table 1. Variance in charges = $56,705,443 / $56,663,179 -1 = 0.1%. Variance in paid amounts = $16,143,442 / $16,169,936 -1 = -0.2%. *See* Workpaper 1.

[20] Haney Report, page 5.

[21] Haney Report, page 5.

[22] Mr. Haney acknowledges that "many of the [Opinion 3 claims] were also identified by Ms. Thelian and addressed in [his] Opinion #2" (Haney Report, ¶87). Mr. Haney performed an analysis to "de-duplicate" the claims and determined that "1,612 of the 6,458 claims remain, representing estimated damages of $3,133,454" (Haney Report, ¶87).

[23] Haney Report, ¶74.

ankura.com

decision to flag and deny reimbursement for the Labs' covered drug testing claims."[24] She ultimately opines that claims denied by Cigna using one of four "denial reason codes," in her opinion, reflect improper denials by Cigna.[25] She includes in her report a table identifying the total claims and charges associated with these four isolated denial reason codes and attaches the specific claim detail to her report.[26]

22.    Mr. Haney therefore appears to rely directly on the specific claims identified by Ms. Thelian to define the population of claims he considers subject to damages in his Opinion 2. It is unclear what, if any, role Mr. Haney had in the identification or validation of these claims.

23.    Regarding the "6,458 claims where (i) the Labs allegedly were not properly notified of Cigna's denial, in violation of state law, and (ii) Cigna failed to properly pay the Labs' invoices for those claims"[27] that he considers in his Opinion 3 damages calculation, Mr. Haney states that the Labs' "counsel identified, through its own analysis, … claims for reimbursement in which Cigna provided no EOP, EOB, remittance advice, or any other meaningful communication explaining if or why the respective claims were denied payment, in whole or in part."[28]

24.    Mr. Haney therefore appears to rely directly on the specific claims identified by the Labs' counsel to define the population of claims he considers subject to damages in his Opinion 3. It is unclear what, if any, review or validation Mr. Haney conducted on these claims identified by counsel.[29]

25.    Mr. Haney calculates interest on his identified claims using two methodologies. His first approach assumes all at-issue claims are owed interest under Florida state law, and the second assumes interest is owed based on the state in which the policy was issued, as determined by the *[Situs Ste Code]*.[30] Mr. Haney indicates that "[the Labs'] Counsel identified relevant penalty interest and criteria for each of the relevant states represented by the [Situs Ste Code], with 38 states represented."[31] He indicated he calculated simple interest in each calculation "for each respective claim beginning on the date payment was due in accordance with the respective state law (typically 30 to 120 days after claim submission) until the date of [his] report."[32]

26.    Holding constant the same inputs related to the applicable interest rate(s) and time period(s), I was able to successfully replicate his interest calculation. I have included Mr. Haney's calculated interest amounts in the analysis described in the following sections. I have included a summary of the inputs Mr. Haney relied upon for these calculations in **Appendix A**.

27.    As will be described in the following sections of this report, Mr. Haney's alleged damages amounts (on which this interest is calculated) overstate the amounts Cigna would have actually paid on the claims identified and include several categories of claims Cigna asserts are not properly at-issue. As such, the overstatement in Mr. Haney's alleged damages causes a corresponding overstatement in his alleged interest amounts. See Tables 6 and 7 for the portion of Mr. Haney's calculated interest associated with the claims in these Cigna identified categories.

---

[24] Thelian Report, page 2.

[25] Thelian Report, pages 4 - 5.

[26] Thelian Report, page 22; Thelian Appendices C – F.

[27] Haney Report, page 5, Opinion #3.

[28] Haney Report, ¶82.

[29] Mr. Haney includes this list of claims as an appendix to his report ("Haney Appendix G").

[30] Haney Report, ¶78. In his state specific interest calculation, Mr. Haney assumes simple interest from the date on which claim payment is due, determined by the respective state law. The rates and timeframes used by Mr. Haney are summarized in his Appendix D.

[31] Haney Report, ¶79.

[32] Haney Report, ¶79.



## VI.    BASIS FOR OPINIONS

28.    In the following paragraphs, I will separately discuss my review and resulting observations related to each of Mr. Haney's analyses.

### MR. HANEY'S OPINION #2 DAMAGES

#### A. Mr. Haney's Opinion #2 Damages Calculation Effectively Seeks Payment of 100% of the Labs' Billed Charges from Cigna on the Alleged Improperly Denied Claims

29.    Mr. Haney states that "considering that all the claims identified by Ms. Thelian were denied by Cigna in their entirety (i.e., $0 was paid for each claim), damages are simply the amount Cigna *should have paid* for each claim."[33] Elsewhere in his report, Mr. Haney states that "damages in this matter would be calculated by determining the difference between (i) the amounts Cigna actually *paid* for the Labs' claims, if any, and (ii) the amounts Cigna *should have paid* had those claims been properly adjudicated."[34]

30.    Based on my review of the produced claims data and relevant data elements contained therein, I found that Mr. Haney's alleged damage figure of $20,427,577 reflects an amount equal to the Labs' submitted billed charge amount in the underlying Cigna Claims Data production for these 15,842 claims. **Table 2** shows the financial amounts extracted from Cigna's data production for these isolated Opinion 2 claims.

**Table 2. Summary of Disputed Opinion 2 Denied Claims[35]**

| Claims | Billed Charge | Discount Amount | Allowed Amount | Not Covered Amount | Eligible Charge Amount | Patient Resp. Amount | Paid Amount |
|--------|--------------|-----------------|----------------|--------------------|-----------------------|--------------------|-------------|
| 15,842 | $20,427,577 | $0 | $20,427,577 | $20,427,577 | $0 | $0 | $0 |

31.    To analyze the claims isolated in his Opinion 2, Mr. Haney relied on the following equation, which he found to be applicable on the actual claims using the data fields provided in the underlying Cigna production:

*[Paid Amount] = [Allowed Amount] minus [Discount Amount] minus [Coinsurance Amount] minus [Copay Amount] minus [Deductible Amount] minus [COB Savings] minus [Not Covered Amount][36]*

32.    To determine his alleged damages amount, Mr. Haney states that "[i]n estimating what Cigna should have paid for claims that were determined to be improperly denied by the Labs' expert, Ms. Thelian, the [Not Covered Amount] was assumed to be $0 (i.e., the claim *should have been* covered)."[37] He then modifies the above calculation, simply setting the [Not Covered Amount] to zero in order to recalculate the adjusted amount Cigna would have purportedly paid, had the claims been covered. This calculation, however, would simply result in an amount equal to the full charge submitted on the claim, not the amount Cigna would have actually paid on the claim had it been adjudicated as payable.

---

[33] Haney Report, ¶75.

[34] Haney Report, ¶46.

[35] *See* Workpaper 2.

[36] Haney Report, ¶76.

[37] Haney Report, footnote 62.

33.    Mr. Haney's modified calculation relies on the primary assumption that the value in the [Allowed Amount] field in Cigna's produced data for these identified claims reflects the amount Cigna would have actually allowed on the claims, had they not been denied. However, as apparent in Table 2, for claims Cigna adjudicated as a denial, the provider's submitted billed charge is populated in the [Allowed Amount] field, with the entirety of that amount being reflected as a [Not Covered Amount], ultimately leading to $0 [Eligible Charge Amount], with $0 [Paid Amount] and $0 patient cost-share resulting from the denial.

34.    For these adjudicated denials, my review of the available data indicates that Cigna did not populate the [Allowed Amount] field based on an application of member benefits or policies that would have applied if the claim was processed for payment. Based on my review of the claims submitted by the Labs that were adjudicated as payable, this total allowable amount is reflected in the [Eligible Charge Amount] field when a claim is adjudicated for payment. Similarly, Cigna did not determine or apply any calculation of what the patient's out-of-pocket financial responsibility would have been when a claim is adjudicated as a denial.[38] As such, and contrary to Mr. Haney's apparent implication, the amount included in the [Allowed Amount] field on the identified denied claims does not reflect the amount Cigna would have paid had the claims been adjudicated for payment.[39]

### B.    Providers Do Not Typically Receive Full Billed Charges as Payment from Payers, as Member Plan Benefits and Related Policies Determine Reimbursement Applicable

35.    Contrary to Mr. Haney's resulting damages, the Labs' submitted billed charge amount would likely not reflect the amount Cigna would have paid on each of the disputed denied claims, had the claims been adjudicated as payable.

36.    In general, the billed charges a provider submits on a particular claim originate from the chargemaster, which represents "a list of billable items and prices for all services provided to patients."[40] Providers set these billed charge amounts independently, with studies noting that providers "have sole discretion in determining their chargemaster prices and that there is a lack of rigorous methodology for constructing those prices."[41] Further, due to the various factors beyond the provider's billed charge that are considered when adjudicating a submitted claim for payment, "many hospital executives and economists have argued that the chargemaster primarily performs a bookkeeping function and that the chargemaster price is set for convenience and is largely irrelevant to patients" as such list prices are not typically paid in full.[42]

37.    As such, when determining the applicable reimbursement amount for a particular service, one must consider not just the provider's submitted charge, but also the member's benefits and any related policies, provider contracts, or other claims adjudication procedures that may apply to the ultimate determination of the amount paid by the relevant payer.

38.    Relatedly, payers and plan administrators develop networks of providers, from whom their members can seek services, by entering into participating provider agreements that often contain pre-determined negotiated reimbursement terms. These pre-negotiated rates can take various forms (i.e., fee

---

[38] This observation was confirmed by Cigna. Interview with Tammy Kahler, Fraud Manager, Claim Research and Integrity Team, May 11, 2023.

[39] Further, based on my review of the Cigna produced claims data, such allowable benefit amount (if the claim is indeed deemed payable) is found in the *[Eligible Charge Amount]* field, rather than the *[Allowed Amount]* field. *See* Workpaper 3.

[40] Ge Bai and Gerard F. Anderson, et al. "US Hospitals Are Still Using Chargemaster Markups To Maximize Revenues: Health Affairs Journal." Health Affairs, 1 Sept. 2016, https://doi.org/10.1377/hlthaff.2016.0093 (page 1).

[41] Ge Bai and Gerard F. Anderson, et al. "US Hospitals Are Still Using Chargemaster Markups To Maximize Revenues: Health Affairs Journal." Health Affairs, 1 Sept. 2016, https://doi.org/10.1377/hlthaff.2016.0093 (page 1).

[42] Ge Bai and Gerard F. Anderson, et al. "US Hospitals Are Still Using Chargemaster Markups To Maximize Revenues: Health Affairs Journal." Health Affairs, 1 Sept. 2016, https://doi.org/10.1377/hlthaff.2016.0093 (pages 1 - 2).

ankura.com

schedule, percentage of Medicare, percentage discount, etc.) and often reflect payment at levels well below the submitted charge. When an in-network provider enters into a participating provider agreement, they have agreed to accept the rates included in the agreement as payment in full (and the patient cannot be billed for any portion of the provider's billed charge in excess of the pre-negotiated rate).

39.    In certain instances, payers and plans may offer products to their members that also provide coverage for services received from providers outside of the plan's pre-determined network of providers. Unlike in-network providers, out-of-network providers have not agreed to a pre-determined reimbursement rate for their services. When members receive care from out-of-network providers, the payer calculates an allowable amount based on the terms of the member's plan and in consideration of any applicable legal and / or regulatory requirements that may apply to the services provided.

40.    The applicable out-of-network allowable amount under the member's plan or policy depends on a number of factors. Factors that determine the applicable allowed amount for any given out-of-network claim can include the type of service or procedure provided, the setting in which the service was provided (e.g., outpatient, inpatient), the reimbursement methodology described in the plan or policy benefit – and implemented by the claims administrator – regarding the amount considered allowable for each service, among others.

41.    The member's benefit plan will also typically include a description of the patient's own out-of-pocket financial responsibility for out-of-network care, based on, for example, applicable deductible, co-insurance, and / or copayment cost-sharing amounts outlined in the plan documents. For instance, once an allowable amount is determined, the member may be fully liable for the payment of that amount to the provider in the form of a deductible (if the member's deductible has not yet been met). In other instances, the patient and plan may share the payment of the allowable benefit according to predetermined cost-sharing percentages (i.e., coinsurance). Moreover, in many instances, the out-of-network provider may also pursue collection from the member for any portion of the provider's charge in excess of the allowable benefit included in the member's plan (known as "balance billing").

42.    Consistent with this general understanding, Cigna member plan documents produced in this matter similarly provide various descriptions of the benefit amount applicable when adjudicating claims for out-of-network providers, such as the Labs. Further, Cigna's published administrative policy regarding non-participating laboratory services notes that "Cigna reimburses covered laboratory and pathology services from non-participating laboratories and health care professionals at the applicable out-of-network benefit level (if available)."[43]   Several example excerpts from member plans applicable to the claims contained in Mr. Haney's Opinion 2 population are included in the Table below.[44]

---

[43] Cigna Administrative Policy: Non-Participating Laboratory Services, dated 1/15/2023
(https://static.cigna.com/assets/chcp/pdf/coveragePolicies/medical/ad_a001_administrativepolicy_nonparlab.pdf).

[44] I requested exemplar plan documents and received documentation for seven plans, including six of the top ten plans (by number of services) occurring in the alleged improperly denied claims.

ankura.com

**Table 3. Out-of-Network Benefit Excerpts from Selected At-Issue Plans**

| Out-of-Network Benefit Description | |
|---|---|
| **Individual Plan Florida Open Access; Assure Silver-200**[45] | "[t]he lesser of;<br>• The provider's normal charge for a similar service or supply; or<br>• A percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna; or<br>• A percentage of a fee schedule developed by Cigna that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for the same or similar service within the geographic market." |
| **American Nutrition; Cheney Brothers Inc.; Rutherford County Employee Benefit Trust**[46] | "[t]he lesser of;<br>• The provider's normal charge for a similar service or supply; or<br>• A policyholder-selected percentage of a schedule developed by Cigna that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for the same or similar service in the geographic market.<br>...<br>In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of:<br>• The provider's normal charge for a similar service or supply; or<br>• The 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna." |
| **DaVita, Inc.; Fairfax County Government**[47] | "[t]he lesser of;<br>• the provider's normal charge for a similar service or supply; or<br>• a policyholder-selected percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna." |

43.    In addition to guidance provided in each applicable member plan benefit document related to the determination of the allowable amount for services received out-of-network, each plan also outlines the cost-sharing provisions relevant to determining any portion of the allowable amount that may be the out-of-pocket responsibility of the member. For example, across the Cigna plan documents I reviewed, the portion of the allowable amount for out-of-network laboratory services that is noted as Cigna's payment responsibility was between 50% and 70% of the allowable amount, after the member's deductible was met.[48] The remaining 30% to 50% of the allowable amount would be the member's out-of-pocket coinsurance responsibility. An excerpt from one such plan document is shown in **Figure 1** below.

---

[45] CIGNA 19-1326 0009240 – CIGNA 19-1326 0009297 at CIGNA 19-1326 0009254 and CIGNA 19-1326 0009258; CIGNA 19-1326 0009609 – CIGNA 19-1326 0009678 at CIGNA 19-1326 0009626 and CIGNA 19-1326 0009630.

[46] CIGNA 19-1326 0008475 – CIGNA 19-1326 0008536 at CIGNA 19-1326 0008533; CIGNA 19-1326 0018712 – CIGNA 19-1326 0018778 at CIGNA 19-1326 0018771; CIGNA 19-1326 0019805 – CIGNA 19-1326 0019865 at CIGNA 19-1326 0019862.

[47] CIGNA 19-1326 0008988 – CIGNA 19-1326 0009048 at CIGNA 19-1326 0009045; CIGNA 19-1326 0138106 – CIGNA 19-1326 0138174 at CIGNA 19-1326 0138166.

[48] CIGNA19-1326 0008475 - CIGNA19-1326 0008536 at CIGNA19-1326 0008492 (60% after plan deductible). CIGNA19-1326 0008988 - CIGNA19-1326 0009048 at CIGNA19-1326 0009003 (70% after plan deductible). CIGNA 19-1326 0009240 – CIGNA 19-1326 0009297 at CIGNA 1901326 0009250 (60% after plan deductible), CIGNA19-1326 0009609- CIGNA19-1326 0009678 at CIGNA19-1326 0009619 (50% after plan deductible), CIGNA19-1326 0018712 - CIGNA19-1326 0018778 at CIGNA19-1326 0018727 (70% after plan deductible), CIGNA19-1326 0019805 - CIGNA19-1326 0019865 at CIGNA19-1326 0019820 (50% after plan deductible), CIGNA19-1326 0138106 - CIGNA19-1326 0138174 at CIGNA19-1326 0138123 (60% after plan deductible).

ankura.com

**Figure 1. Exemplar Cigna Benefit Schedule[49]**

| BENEFIT INFORMATION NOTE: Covered Services are subject to applicable deductible(s) unless specifically waived | IN-NETWORK (Based on Cigna contract allowance) | OUT-OF-NETWORK (Based on Maximum Reimbursable Charge) (Based on Maximum Reimbursable Charge) |
|---|---|---|
| COINSURANCE AMOUNTS SHOWN ARE Cigna's RESPONSIBILITY; COPAYMENT AMOUNTS ARE THE INSURED PERSON'S RESPONSIBILITY | | |
| All Other Laboratory and Radiology Services<br>Facility and Interpretation Charges | | |
| *Physician's Office* | 80% | 60% |
| *Any other Free-standing/Independent lab or x-ray facility* | 80% | 60% |

44.    Mr. Haney's alleged damages calculation simply asserts that 100% of the Labs' submitted billed charge would reflect the amount Cigna "*should have paid*" on the identified Opinion 2 claims.[50] As noted above, this appears to be driven by Mr. Haney's misinterpretation of the values stored in the [Allowed Amount] field in Cigna's produced data for these claims.

45.    Mr. Haney does not appear to have considered the allowable out-of-network benefit amount outlined in each member's benefit plan, the portion of such allowable benefit that may have been the out-of-pocket responsibility of the patient, nor whether any other benefit criteria would have applied that may have impacted any resulting payment applicable to each disputed claim. As such, in my opinion, Mr. Haney's assumption that Cigna would have paid each disputed denied claim at 100% of the Labs' charges is unsupported and ignores the various critical factors that would have impacted the amount paid by Cigna, should the claims have instead been adjudicated as payable.

*C.    Review of Data Available Regarding Past Cigna Payments Further Illustrates the Flaw in Mr. Haney's Assumption That Cigna Would Have Paid 100% of the Labs' Billed Charges on the Disputed Opinion #2 Claims*

46.    Separate and apart from the relevant factors outlined above related to the determination of the applicable out-of-network benefit amounts for each disputed claim, data related to past payments the Labs received from Cigna further illustrates the inaccuracy of Mr. Haney's assumption that Cigna would have paid each of the disputed denied claims at 100% of the Labs' billed charges.

47.    The Labs allege, in part, that a basis for their damages was established "through a course of dealing and … reliance on [Cigna's] prior conduct."[51] Mr. Haney, however, does not appear to have reviewed available data that contains information regarding payments Cigna did make to the Labs for services that were not denied. While an evaluation of the relevant plan benefits and policies applicable to the disputed denied claims would be needed in order to assess the amount Cigna would have actually paid on each claim, a review of this prior payment data alone illustrates that Mr. Haney's assumption that such amount would reflect 100% of the Labs' billed charges is inaccurate and significantly overstated.

48.    Mr. Haney's total 36,290 claims universe (from which his Opinion 2 and Opinion 3 claims populations were derived) included both claims that Cigna paid and claims that Cigna denied. From this total claims universe, I identified 22,439 claims for services submitted by the Labs that Cigna did indeed

---

[49] CIGNA 19-1326 0009240 – CIGNA 19-1326 0009297 at CIGNA 19-1326 0009250.

[50] Haney Report, ¶75.

[51] Labs Amended Complaint ¶75.

ankura.com

pay. My review found that these paid claims reflected similar services (e.g., procedure codes) as the disputed denied claims. As shown in **Table 4**, contrary to Mr. Haney's assertion, Cigna's payment on these 22,439 out-of-network claims that were adjudicated as payable averaged less than 60% of the Labs' submitted billed charge. This observation is consistent across the payments received by each of the three Labs.

**Table 4. Summary of Payment Rates**[52]

|  | Paid Claims | Billed Charge | Eligible Amount | Eligible % of Charge | Paid Amount | Paid % of Charge |
|---|---|---|---|---|---|---|
| **Total** | 22,439 | $28,742,677 | $18,696,121 | 65.0% | $16,182,609 | 56.3% |
| *BioHealth* | *5,998* | *$8,627,793* | *$5,553,170* | *64.4%* | *$4,903,929* | *56.8%* |
| *Epic* | *11,624* | *$13,693,025* | *$9,032,206* | *66.0%* | *$7,484,052* | *54.7%* |
| *PBL* | *4,817* | *$6,421,859* | *$4,110,745* | *64.0%* | *$3,794,628* | *59.1%* |

49.     In order to fully determine the amount Cigna would have actually paid on each of the 15,842 claims identified, a review of the applicable out-of-network benefits associated with each member's plan, applicable Cigna payment policies, relevant member cost-sharing responsibilities, etc. would need to be conducted. Mr. Haney did not appear to conduct such a review, instead simply asserting 100% of the Labs' billed charges would have been paid by Cigna had the disputed denied claims instead been adjudicated for payment. His assertion that all claims would be paid by Cigna at 100% of the Labs' billed charges is thus not supported and is further contradicted by past payments the Labs received from Cigna.

## MR. HANEY'S OPINION #3 DAMAGES

### A. Mr. Haney's Opinion #3 Damages Contain Claims Not Previously Identified by the Labs as Claims Without Response from Cigna

50.     As noted above, Mr. Haney describes his Opinion 3 disputed claims population noting that "counsel identified, through its own analysis, … claims for reimbursement in which Cigna provided no EOP, EOB, remittance advice, or any other meaningful communication explaining if or why the respective claims were denied payment, in whole or in part."[53] It appears that Mr. Haney relies on this analysis performed by counsel to identify his Opinion 3 disputed claims.

51.     Mr. Haney ultimately asserts damages of $9,812,173 for these claims, which reflects 100% of the billed charges submitted on the 6,458 disputed claims identified. He notes that, for these claims, "damages would be estimated as the [Charge Amount] (i.e., the amount charged to Cigna by the Labs) minus the [Payment Amount] (i.e., any amount paid by Cigna), for each of the claims identified by Counsel."[54] He further notes that he developed this calculation "assuming Cigna's failure to properly provide an explanation of its denial and nonpayment violated state law, thereby rendering the entirety of the principal balance for those claims an incontestable obligation."[55] Mr. Haney acknowledges that many of the claims in his Opinion 3 are also in his Opinion 2 and, as such, separately quantifies $1,565,359 in damages for the 1,612 claims included only in his Opinion 3.[56]

---

[52] Paid claims were identified where *[Eligible Charge Amount]* was greater than $0 for the combination of [Inv DCN], *[Line Number]*, *[Service Code]*, and *[First Service Date]*. *See* Workpaper 4.

[53] Haney Report, ¶82.

[54] Haney Report, ¶83.

[55] Haney Report, ¶83.

[56] Haney Report, ¶87.

52.     It is my understanding the Labs previously produced spreadsheets that identified 5,879 claims for which the Labs initially contended no response was provided by Cigna explaining the denial issued on the claim (the Labs' "No Response Lists").[57]

53.     I was asked to compare the 6,458 claims in Mr. Haney's Opinion 3 population with the claims included on these prior No Response Lists produced by the Labs.[58] To do so, I identified claims in Mr. Haney's Opinion 3 claims population that matched to Cigna Claims Data produced in this matter, and then matched those claims to the Labs' prior No Response Lists on member name and/or Member ID as well as date of service.[59] I found that many of the claims included in Mr. Haney's Opinion 3 population were not included in the Labs' initial No Response Lists.

54.     As illustrated in **Table 5** below, I determined that $2.2 million of the $9.8 million in damages asserted in Mr. Haney's Opinion 3 analysis is associated with claims that were not included in one of the Labs' prior No Response Lists.

**Table 5. Summary of Opinion 3 Claims Not on Labs' Previous No Response Lists[60]**

|  | # of Claims[61] | % of Claims | Total Charges | % of Charges | Alleged Interest (FL) | Alleged Interest (State Specific) |
|---|---|---|---|---|---|---|
| **Total Haney Opinion 3 Claims** | **6,458** | **100.0%** | **$9,812,173** | **100.0%** | **$10,261,928** | **$11,037,960** |
| Not Identified on Labs' No Response Lists | 1,846 | 28.6% | $2,199,149 | 22.4% | $2,238,433 | $2,452,443 |
| Identified on Labs' No Response Lists | 4,612 | 71.4% | $7,613,024 | 77.6% | $8,023,495 | $8,585,517 |
| **Haney Opinion 3 Claims** (*Not in Opinion 2*) | **1,612** | **100.0%** | **$1,565,359** | **100.0%** | **$1,568,195** | **$1,681,369** |
| Not Identified on Labs' No Response Lists | 812 | 50.4% | $789,323 | 50.4% | $793,716 | $854,031 |
| Identified on Labs' No Response Lists | 800 | 49.6% | $776,037 | 49.6% | $774,479 | $827,338 |

---

[57] LABS00127165 - LABS00132276, LABS00132277 - LABS00160116; The Labs' No Response Lists did not include claim numbers. Claims were determined by unique combinations of Member ID, Date of Service, First Name and Last Name, where the name or Member ID was available in addition to the Date of Service. If multiple, similar names existed for the same Member ID, one name was used for the purpose of quantifying the unique number of claims. Specifically, the following fields were used, depending on the list: *[Last Name]*, *[First Name]*, *[Member ID]* and *[MinDateOfService]*, or *[Patient Name]*, *[Member ID]*, and *[Service Date]*.

[58] LABS00127165 - LABS00132276, LABS00132277 - LABS00160116.

[59] From the Labs' No Response Lists, *[Last Name]*, *[First Name]*, *[Member ID]* and *[MinDateOfService]*, or *[Patient Name]*, *[Member ID]*, and *[Service Date]*, depending on the list. From the Cigna Claims Data, *[Member First Name]*, *[Member Last Name]*, *[AMI]*, and *[First Service Date]*.

[60] *See* Workpaper 2.

[61] Matching between Opinion 3 (Haney Appendix G) and the Cigna Claims Data was performed at the claim line level using *[Inv DCN]* and *[Line Number]*. Matching between the Cigna Claims Data and the Labs' No Response Lists (Exhibit B) was performed using member name and / or Member ID as well as date of service. The Cigna claims in Opinion 3, not on the Labs' No Response Lists were then identified.

ankura.com

## CLAIMS CIGNA ASSERTS ARE NOT PROPERLY AT-ISSUE

### A.  Cigna's Identified Claim Categories Not Properly At-Issue

55.      I understand it is Cigna's position that certain categories of claims included in Mr. Haney's analysis are not properly at-issue in this matter due to various characteristics of the claims. As such, I was asked to quantify Mr. Haney's alleged damages for claims meeting any of the criteria below that were included in Mr. Haney's damages analysis:

i.   *Claims not present on Labs' exhibits identifying claims without assignment of benefits:*  The Labs note in their complaint that "expressly excluded from this lawsuit are any claims for payment as to which the Laboratories obtained a valid and permitted assignment of benefits from the patient subscriber / beneficiary assignment where such assignments are permitted and authorized by the applicable Cigna policy."[62] Accordingly, I understand the Labs produced exhibits identifying the specific claims for which the Labs indicated they did not have an assignment of benefits.[63] I was asked to identify claims included in Mr. Haney's analysis that I could not match to the Labs' exhibits identifying claims with no assignment of benefits.

ii.  *Claims for ERISA-governed plans:* I was asked to identify claims included in Mr. Haney's analysis associated with members of ERISA-governed plans. To do so, I identified ERISA claims as those where the *ERISA_IND* field in the Cigna Claims Data was "Y."

iii. *Claims for self-funded plans:* I was also asked to separately identify claims associated with self-funded plans. To do so, I identified claims associated with self-funded plans as those where the [*Funding Arrangement Type]* field in the Cigna Claims Data was "ASO."

iv.  *Claims for group plans:* I was also asked to separately identify claims associated with Group plans. To do so, I identified claims associated with Group plans as those where the *[Account Name]* in the Cigna claims data did not include "individual" or "indemnity."

v.   *Non-Florida claims:* I was also asked to separately identify claims for non-Florida plans. To do so, I identified non-Florida plan claims in the Cigna Claims Data where the *[Situs Ste Code]* field contained a value other than "FL."

vi.  *Time-Barred Claims:* I was asked by counsel to identify claims with adjudication dates prior to July 25, 2013.[64]

56.      In the sections below, I identify and summarize the claims in Mr. Haney's analyses meeting one or more of the criteria referenced above.

### B.  Mr. Haney's Opinion 2 Damages Related to Claims Cigna Asserts Are Not Properly At-Issue

57.      As shown in **Table 6**, below, approximately 74% of the Opinion 2 damages alleged by Mr. Haney on claims that were allegedly improperly denied by Cigna are associated with claims that meet one or more of the criteria described above that Cigna contends are not at-issue.

---

[62] Labs Amended Complaint ¶40.

[63] LABS00306365 - LABS00306842, LABS00306843 - LABS00312322, LABS00312323 – LABS00404886.

[64] I determined the paid date using the [*Claim Paid Date]* in the Cigna Claims Data and, specifically, identified the last paid date for each claim [*Inv DCN]* and line number [*Line Number]*.



## Table 6. Summary of At-Issue Claims[65]

|  | # of Claims | Alleged Damages | % of Damages | Alleged Interest (FL) | Alleged Interest (State Specific) |
|---|---|---|---|---|---|
| **Total Haney Opinion 2 Population** | **15,842** | **$20,427,577** | **100.0%** | **$19,819,549** | **$20,978,153** |
| Subject to One or More Cigna Categories | 11,256 | $15,014,016 | 73.5% | $15,067,148 | $16,225,752 |
| Remaining | 4,586 | $5,413,561 | 26.5% | $4,752,401 | $4,752,401 |

58.     Any single disputed claim may fall in one or more identified Cigna categories. The table above identifies the distinct set of claims captured across *any* of the Cigna categories referenced above. Further summarization of the claims meeting any subset of these categories found to be applicable could be performed. Additional detail regarding the claims in Mr. Haney's Opinion 2 damages population meeting the criteria for each of the individual categories identified by Cigna is included in Workpaper 2.

### C.  Mr. Haney's Opinion 3 Damages Related to Claims Cigna Asserts Are Not Properly At-Issue

59.     As shown in **Table 7**, below, approximately 95% of the Opinion 3 damages alleged by Mr. Haney on claims for which Cigna allegedly failed to properly notify the Labs of the denial are associated with claims meet one or more of the criteria described above that Cigna contends are not at-issue.

## Table 7. Summary of At-Issue Claims[66]

|  | # of Claims | Alleged Damages | % of Damages | Alleged Interest (FL) | Alleged Interest (State Specific) |
|---|---|---|---|---|---|
| **Total Haney Opinion 3 Population** | **6,458** | **$9,812,173** | **100.0%** | **$10,261,928** | **$11,037,960** |
| Subject to One or More Cigna Categories | 6,131 | $9,284,050 | 94.6% | $9,768,649 | $10,544,681 |
| Remaining | 327 | $528,123 | 5.4% | $493,279 | $493,279 |

60.     Any single disputed claim may fall in one or more identified Cigna categories. The table above identifies the distinct set of claims captured across *any* of the Cigna categories referenced above. Further summarization of the claims meeting any subset of these categories found to be applicable could be performed. Additional detail regarding the claims in Mr. Haney's Opinion 3 damages population meeting the criteria each of the individual categories identified by Cigna is included in Workpaper 2.

## VII.  CONCLUSION

61.     Pursuant to my assignment in this matter, I have reviewed the claims data[67] produced by Cigna, the Labs' previously produced exhibits,[68] and the calculations and analyses presented by Mr. Haney in support of his alleged damages estimates. Based on that review, in my opinion, the methodology and

---

[65] Appendices D through H show the individual impact of each of the criteria described above.

[66] Appendices D through H show the individual impact of each of the criteria described above.

[67] Cigna19-1326 0007979-Cigna19-1326 0007981, Cigna19-1326 0007983.

[68]   LABS00127165 - LABS00132276, LABS00132277 - LABS00160116 (Labs' Exhibit B, No Response Lists), LABS00306365 - LABS00306842, LABS00306843 - LABS00312322, LABS00312323 – LABS00404886 (Labs' Exhibit D, No Assignment of Benefits).

ankura.com

analysis developed by Mr. Haney to calculate his alleged damages on claims alleged to have been improperly denied by Cigna are flawed and lead to overstated resulting estimates.

62.     With respect to his Opinion 2, Mr. Haney analyzed of a population of claims that another expert offered by the Labs, Ms. Thelian, found to have been improperly denied by Cigna, Mr. Haney aims to calculate damages equal to the amount Cigna should have paid were the claims to have instead been adjudicated as payable.[69] However, due to his apparent misinterpretation of the values contained in the [Allowed Amount] field Cigna's claims data for the disputed denied claims, his damages calculation effectively seeks payment of 100% of the Labs' billed charges from Cigna on each identified disputed claim. As a result, his alleged damages significantly overstate the amount Cigna would have actually paid were the claims not to have been denied.

63.     His analysis results in an overstated assessment of the amount Cigna would have paid on the disputed denied claims as: a) providers do not typically receive payment of their full billed charges from payors, regardless of network participation, b) the applicable allowable benefit amount for services rendered by an out-of-network provider is outlined in the member's plan documents and incorporated claims adjudication procedures, and is often less than the provider's submitted charge, c) the portion of the allowable benefit that is the member's out-of-pocket financial responsibility is also outlined in the member's benefit plan and further impacts the amount that would have been paid by Cigna. Moreover, a review of prior payments made by Cigna on claims submitted by the Labs' that were deemed payable - which show payments averaging less than 60% of the Labs' submitted billed charges - further illustrates the flaws in Mr. Haney's assertion that Cigna would have paid 100% of the Labs' billed charge amounts on the disputed claims.

64.     With respect to his Opinion 3, Mr. Haney analyzed a separate population of claims identified by the Labs' counsel as claims for which the Labs were not properly notified of Cigna's denial, Mr. Haney asserts damages pursuant to the prompt payment provisions of applicable state law(s). My review of the claims included in Mr. Haney's calculation found that more than 25% of these claims were not previously identified by the Labs in their spreadsheets of claims for which the Labs' contended no response was received from Cigna notifying the Labs of the denial.[70]

65.     Finally, Mr. Haney's damages include various categories of claims that I understand Cigna asserts are not properly at-issue in this matter, including claims for which the Labs' obtained an assignment of benefits, ERISA plan claims, claims associated with self-funded or group plans, claims associated with non-Florida plans, and claims adjudicated prior to July 25, 2013. I found that approximately 73.5% of the damages Mr. Haney calculated on his Opinion 2 claims alleged improperly denied by Cigna relate to claims in one or more of these identified categories. I found that approximately 94.6% of the damages Mr. Haney calculated on his Opinion 3 claims for which Cigna allegedly failed to properly notify the Labs relate to claims in one or more of these identified categories.

---

[69] Haney Report, ¶75.

[70] LABS00127165 - LABS00132276, LABS00132277 – LABS00160116.

ankura.com

# Attachments

# ankura



# Matthew Ryan

## Senior Managing Director

2000 K Street NW, 12th Floor | Washington DC, 20006

## Contact

| | |
|---|---|
| Main | +1.202.797.1111 |
| Direct | +1.202.481.8455 |

matt.ryan@ankura.com

### Education

BS, Finance, Wake Forest University

Matthew Ryan is a Senior Managing Director based in the Washington, DC office. He specializes in healthcare litigation support, disputes, and forensics, providing consulting and expert services to a variety of clients. He has extensive experience working with healthcare payers, providers, and their legal counsel to assess and quantify damages associated with a variety of complex disputes related to the payment and adjudication of healthcare services and benefits. He has more than 14 years of experience assisting clients with disputes involving a variety of reimbursement and other related claims processing issues. His work often leverages the complex analysis of millions of records of electronic claims/billing data, as well as other types of operational and financial data, in order to develop sophisticated analytical models to calculate financial exposure.

### Areas of Expertise

- Healthcare Benefits & Reimbursement: Assists clients with issues surrounding the operational procedures, IT systems, regulations and industry standards regarding the payment and administration of healthcare benefits related to all types of medical services and treatment settings.

- Complex Healthcare Data Analytics: Coordinates the identification, collection, and analysis of complex and electronic business records from a variety of departmental functions for disputes ranging from 10 claims to well over 100 million claims. Analysis often involves the aggregation of data across many disparate sources, the development of sophisticated data models to assess claims processing, editing, and payment, and the comparison of client data patterns to various industry standards and benchmarks.

- Damages/Financial Modeling: Develops assessments of potential financial damages arising from internal investigations, compliance reviews or commercial reimbursement disputes. Work often involves the development of various scenario-based assessments modeling

1



Matthew Ryan

exposure under a number of different contexts. Assists clients in such calculation of damages for use in initial case assessment, mediation, and expert testimony settings.

### *Representative Engagements*

Out-of-Network Reimbursement Disputes

- Engagement lead for the support of a large national payor in its dispute with an out-of-network acute care hospital regarding allegations of improper reimbursement over a multi-year period, excessive billing, waiver of patient cost-sharing, overuse of emergency facilities, among other issues. Performed in-depth claims data analysis, review of payor, and hospital claims documentation, and market reimbursement benchmarking data to investigate issues, and assess potential damages. Supported expert witness in the development of several affirmative, and rebuttal expert reports, preparation for deposition, and trial testimony. Provided analytical support to legal team throughout multi-week trial.

- Engagement lead for the support of a large national payor in its dispute with an out-of-network physician management organization providing hospital-based anesthesiology, radiology, and emergency services regarding allegations of underpayment. Performed in-depth claims data analysis, review of payor, and hospital claims, and contract documentation, and market reimbursement benchmarking data to assess potential exposure, and develop various exposure models for the purposes of mediation.

Contracted Reimbursement Disputes

- Engagement lead for the support of a large national payor in its dispute with several hospitals over the alleged improper application of contracted reimbursement rates over a multi-year period. Performed in-depth claims data analysis to assess potential exposure, and develop various financial models for the purposes of mediation.

- Engagement lead for numerous projects assisting payor clients with the investigation, analysis, and defense of alleged violations of various prompt payment standards. Such engagements involve the initial processing, and review of expansive disputed claims lists produced by the opposing party, the collection, and analysis of responsive data available to the payor, and the development of potential affirmative defenses, and potential mitigating factors for review.

Claims Processing/Editing Disputes

- Engagement lead for the support of a large national payor in its dispute with a hospital system regarding the application of proprietary, and industry claims processing edits, reimbursement bundling, medical necessity denials, and retroactive denial/retraction of reimbursement. Performed in-depth claims data analysis, review of payor, and hospital claims, and contract documentation, and industry research to investigate issues, and assess potential exposure. Supported expert witness in the development expert report summarizing observations.

Class Action Disputes

- Engagement lead for the support of a large national payor in its defense of a member class action lawsuit regarding allegations of the improper denial of benefits for mental health, and substance abuse treatment. Provided analysis of data, and document regarding potential class members for the purposes of class certification review. Supported expert witness in the development of expert report, and preparation for deposition testimony.

### *Prior Declarations / Testimony*

- *Confidential AAA Arbitration between Health Insurer and Hospital: Report filed August 29, 2022*

- *Wit, et al. v. United Behavioral Health (N.D. Cal. Case No. 14-cv-02346 JCS): Declaration filed January 1, 2021*

- *Confidential AAA Arbitration between Health Insurer and Hospital: Declaration filed March 30, 2018, Deposition Testimony on June 20, 2018*

- *Davidson, et al. v. Cigna Health and Life Insurance Company (LASC Case No. BC558566): Deposition Testimony on July 27, 2016, Declaration filed on March 16, 2018*

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs**

**v.**

**BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants**

**Attachment 2 - Data and Documents Relied Upon**

| Data / Document | Description |
|---|---|
| **Case Pleadings and Legal Filings** | |
| Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company, Plaintiffs, v. BioHealth Laboratories, Inc., PB Laboratories, LLC, Epic Reference Labs, Inc., and Epinex Diagnostics, Inc., NJ Reference Laboratories, Inc., and Alethea Laboratories, Inc., Defendants, Case No. 3:19-cv-01324-JCH, Complaint filed August 27, 2019. | Cigna's Complaint (2019) |
| Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company, Plaintiffs, v. BioHealth Laboratories, Inc., PB Laboratories, LLC, Epic Reference Labs, Inc., and Epinex Diagnostics, Inc., Defendants, Case 3:19-cv-01324-JCH, Amended Complaint filed December 13, 2021. | Cigna's Amended Complaint (2021) |
| Epic Reference Labs, Inc., BioHealth Medical Laboratory, Inc. and PB Laboratories, LLC, Plaintiffs, v. Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company, Defendants, Case No. 3:19-CV-1326, Complaint dated July 25, 2019. | Labs' Complaint (2019) |
| Epic Reference Labs, Inc., BioHealth Medical Laboratory, Inc. and PB Laboratories, LLC, Plaintiffs, v. Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company, Defendants, Case No. 3:19-CV-1326-SRU, Amended Complaint filed January 11, 2021. | Labs' Amended Complaint (2021) |
| **Expert Reports** | |
| Expert report of Mr. Christopher Haney, dated March 1, 2023. | Expert Report and Appendices |
| Expert report of Ms. Jacqueline Thelian, dated March 1, 2023. | Expert Report and Appendices |
| **Public Documents** | |
| Ge Bai and Gerard F. Anderson, et al. "US Hospitals Are Still Using Chargemaster Markups To Maximize Revenues: Health Affairs Journal." Health Affairs, September 1, 2016. https://doi.org/10.1377/hlthaff.2016.0093 | |
| Cigna Administrative Policy: Non-Participating Laboratory Services, dated January 15, 2023. https://static.cigna.com/assets/chcp/pdf/coveragePolicies/medical/ad_a001_administrativepolicy_nonparlab.pdf | |
| Cigna Reimbursement Policy: Laboratory Services, updated January 2016. https://static.cigna.com/assets/chcp/resourceLibrary/clinicalReimbursementPayment/medicalClinReimPolPayExternalLabFact.html | |
| Florida Statute 627.6131 | |
| **Other Information** | |
| CIGNA 19-1326 0012471 to CIGNA 19-1326 0012473 | Sample EOP Documents |
| CIGNA 19-1326 0012662 to CIGNA 19-1326 0012664 | Sample EOP Documents |
| CIGNA 19-1326 0012778 to CIGNA 19-1326 0012781 | Sample EOP Documents |
| CIGNA 19-1326 0012884 to CIGNA 19-1326 0012886 | Sample EOP Documents |
| CIGNA 19-1326 0013385 to CIGNA 19-1326 0013387 | Sample EOP Documents |
| CIGNA 19-1326 0014099 to CIGNA 19-1326 0014102 | Sample EOP Documents |
| CIGNA 19-1326 0014107 to CIGNA 19-1326 0014109 | Sample EOP Documents |
| CIGNA 19-1326 0014645 to CIGNA 19-1326 0014647 | Sample EOP Documents |
| CIGNA 19-1326 0014762 to CIGNA 19-1326 0014764 | Sample EOP Documents |
| CIGNA 19-1326 0014780 to CIGNA 19-1326 0014782 | Sample EOP Documents |
| CIGNA 19-1326 0017587 to CIGNA 19-1326 0017589 | Sample EOP Documents |
| CIGNA 19-1326 0017651 to CIGNA 19-1326 0017654 | Sample EOP Documents |
| CIGNA 19-1326 0017680 to CIGNA 19-1326 0017683 | Sample EOP Documents |
| CIGNA 19-1326 0017886 to CIGNA 19-1326 0017888 | Sample EOP Documents |
| CIGNA 19-1326 0017951 to CIGNA 19-1326 0017953 | Sample EOP Documents |
| CIGNA 19-1326 0012528 to CIGNA 19-1326 0012530 | Sample EOP Documents |
| CIGNA 19-1326 0012541 to CIGNA 19-1326 0012543 | Sample EOP Documents |
| CIGNA 19-1326 0012556 to CIGNA 19-1326 0012558 | Sample EOP Documents |
| CIGNA 19-1326 0012571 to CIGNA 19-1326 0012574 | Sample EOP Documents |
| CIGNA 19-1326 0012584 to CIGNA 19-1326 0012586 | Sample EOP Documents |
| CIGNA 19-1326 0012597 to CIGNA 19-1326 0012599 | Sample EOP Documents |
| CIGNA 19-1326 0012615 to CIGNA 19-1326 0012617 | Sample EOP Documents |
| CIGNA 19-1326 0089132 to CIGNA 19-1326 0089134 | Sample EOP Documents |
| CIGNA 19-1326 0089957 to CIGNA 19-1326 0089959 | Sample EOP Documents |
| CIGNA 19-1326 0089960 to CIGNA 19-1326 0089962 | Sample EOP Documents |

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs

v.

BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants
Attachment 2 - Data and Documents Relied Upon

| Data / Document | Description |
|---|---|
| CIGNA 19-1326 0090426 to CIGNA 19-1326 0090428 | Sample EOP Documents |
| CIGNA 19-1326 0090432 to CIGNA 19-1326 0090434 | Sample EOP Documents |
| CIGNA 19-1326 0092341 to CIGNA 19-1326 0092343 | Sample EOP Documents |
| CIGNA 19-1326 0092347 to CIGNA 19-1326 0092349 | Sample EOP Documents |
| CIGNA 19-1326 0092350 to CIGNA 19-1326 0092352 | Sample EOP Documents |
| CIGNA 19-1326 0092353 to CIGNA 19-1326 0092355 | Sample EOP Documents |
| CIGNA 19-1326 0092356 to CIGNA 19-1326 0092358 | Sample EOP Documents |
| CIGNA 19-1326 0133522 to CIGNA 19-1326 0133522 | Sample EOP Documents |
| CIGNA 19-1326 0018712 to CIGNA 19-1326 0018778 | Sample Health Plan - American Nutrition 2012 |
| CIGNA 19-1326 0019805 to CIGNA 19-1326 0019865 | Sample Health Plan - Cheney Brothers |
| CIGNA 19-1326 0138106 to CIGNA 19-1326 0138174 | Sample Health Plan - DaVita |
| CIGNA 19-1326 0008988 to CIGNA 19-1326 0009048 | Sample Health Plan - Fairfax Co Govt 2014 |
| CIGNA 19-1326 0009609 to CIGNA 19-1326 0009678 | Sample Health Plan - FL Ind Silver - 200 2015 |
| CIGNA 19-1326 0009240 to CIGNA 19-1326 0009297 | Sample Health Plan - FL Ind. Indemnity |
| CIGNA 19-1326 0008475 to CIGNA 19-1326 0008536 | Sample Health Plan - Rutherford Co. 2015 |
| Interview with Tammy Kahler, Fraud Manager, Claim Research and Integrity Team, May 11, 2013. | |

**Data**

| | |
|---|---|
| CIGNA19-1326 0007530 to CIGNA19-1326 0007531; CIGNA19-1326 0007533 | Cigna Claim Data (3 files) |
| CIGNA19-1326 0007979 to CIGNA19-1326 0007981; CIGNA19-1326 0007983 | Cigna Claim Line Data (4 files) |
| LABS00127165 - LABS00132276 | Labs Exhibit B Part 2 - PBL No Response |
| LABS00132277 - LABS00160116 | Labs Exhibit B Part 3 - Cigna 2014-2017 No Response |
| LABS00306365 - LABS00306842 | Labs Exhibit D Part 1 - BIO Unpaid - No AOB |
| LABS00306843 - LABS00312322 | Labs Exhibit D Part 2 - PBL Unpaid - No AOB |
| LABS00312323 - LABS00404886 | Labs Exhibit D Part 3 - Cigna 2014-2017 Unpaid - No AOB |

Confidential - Pursuant to Protective Order

# Appendices

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,**
Plaintiffs

v.

**BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.**
Defendants

**Appendix A - Summary of Mr. Haney's Interest Inputs**

Interest Calculation:   Charges[1] * Daily Interest Rate[2] * {Interest End Date[3] - (Claim Receipt Date[4] + Days After Claim Receipt[5])}

| State[6] | Statute Citation[6] | Daily Interest Rate[2] | Interest Start Date: Days After Claim Receipt[5] | Interest End Date[3] |
|---|---|---|---|---|
| AR | Ark. Admin. Code 054.00.43-12 | 0.033% | 60 | 3/1/2023 |
| AZ | Ariz. Rev. Stat. § 20-3102 | 0.027% | 30 | 3/1/2023 |
| CA | Cal. Ins. Code § 10123.13 | 0.027% | 30 | 3/1/2023 |
| CO | Colo. Rev. Stat. § 10-16-106.5 | 0.027% | 30 | 3/1/2023 |
| CT | Conn. Gen. Stat. § 38a-816 (LexisNexis, Lexis Advance through all Acts from the 2022 Regular Session and 2022 November Special Session) | 0.041% | 20 | 3/1/2023 |
| DC | D.C. Code § 31-3132 (Lexis Advance through February 7, 2023) | 0.082% | 120 | 3/1/2023 |
| DE | CDR18-1300-1310; 19 De. C. § 2322F | 0.033% | 30 | 3/1/2023 |
| FL | 627.6131 | 0.033% | 120 | 3/1/2023 |
| GA | Ga. Code Ann. § 33-24-59.14 | 0.033% | 15 | 3/1/2023 |
| IL | 215 ILCS5/368a | 0.025% | 30 | 3/1/2023 |
| IN | Ind. Code Ann. § 27-8-5.7-5 ; Ind. Code Ann. § 27-8-5.7-6 cross referencing IC 12-15-21-3(7)(A) | 0.003% | 30 | 3/1/2023 |
| KS | K.S.A._40-2440; K.S.A._40-2441; K.S.A._40-2442 | 0.033% | 30 | 3/1/2023 |
| KY | KRS 304.17A-702 & KRS 304.17A-730 | 0.058% | 60 | 3/1/2023 |
| LA | La. R.S. 22:1832 | 0.033% | 60 | 3/1/2023 |
| MA | Mass. Ann. Laws ch. 175, § 110 | 0.049% | 45 | 3/1/2023 |
| MD | Md. Insurance Code Ann § 15-1005 | 0.082% | 120 | 3/1/2023 |
| ME | 24-A M.R.S. § 2436 | 0.049% | 30 | 3/1/2023 |
| MI | Mich. Comp. Laws Serv. § 500.2006 | 0.033% | 30 | 3/1/2023 |
| MN | Minn. Stat. Ann. § 62Q.75 | 0.049% | 30 | 3/1/2023 |
| MO | Mo. Rev. Stat. § 376.383 (LexisNexis, Lexis Advance through 101st General Assembly, 2022 First Extraordinary Session) | 0.033% | 45 | 3/1/2023 |
| NC | N.C. Gen. Stat. § 58-3-225 | 0.049% | 30 | 3/1/2023 |
| NH | RSA 415:6-h; RSA 415:18-k; RSA 420-A:17-d; RSA 420-J:8-a | 0.049% | 15 | 3/1/2023 |
| NJ | N.J.A.C. 11:22-1.5 & 1.6 | 0.033% | 30 | 3/1/2023 |
| NY | NY CLS Ins § 3224-a | 0.033% | 30 | 3/1/2023 |
| OH | ORC Ann. 3901.381 & 389 | 0.049% | 30 | 3/1/2023 |
| OR | ORS § 743B.450 (formerly ORS § 743.911 - renumbered in 2015); ORS § 743B.452 | 0.033% | 30 | 3/1/2023 |
| PA | 40 PS §991.2166 | 0.027% | 30 | 3/1/2023 |
| RI | RI Gen. Laws §27-18-61 | 0.033% | 30 | 3/1/2023 |
| SC | S.C. Code Ann. § 38-59-230 & 240; §34-31-20 (interest rate) | 0.024% | 20 | 3/1/2023 |
| TN | Tenn. Code Ann. § 56-7-109 Health insurance claims; timely reimbursement | 0.033% | 21 | 3/1/2023 |
| TX | Tex. Ins. Code §1301.001, et seq. | 0.049% | 30 | 3/1/2023 |
| UT | Utah Code Ann. §31A-26-301.6 Health Care Claims Practices | 0.033% | 30 | 3/1/2023 |
| VA | VA Code Ann. § 38.2-3407.15 | 0.016% | 40 | 3/1/2023 |
| VI | 22 V.I.C. § 1725 | 0.027% | 30 | 3/1/2023 |
| VT | 18 V.S.A. §9418 | 0.033% | 30 | 3/1/2023 |
| WA | WAC § 284-170-431 (effective 12/14/15); 284-43-321 (repealed 2015) | 0.033% | 61 | 3/1/2023 |
| WI | Wis. Stat. §628.46 | 0.021% | 30 | 3/1/2023 |

*Notes:*
[1] Cigna Claims Data: *[Charge Amount]*
[2] Haney Appendices E-F and H-I
[3] Haney Appendices E-F and H-I
[4] Cigna Claims Data: *[Claim Received Date]*
[5] Number of days after the *[Claim Received Date]* at which Mr. Haney starts calculating interest.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs

v.

BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants

Appendix B - Summary of Cigna Identified Claim Categories[1]

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| Claim Category[2],[3] | # of Claims[4] | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[5] | Discount Amount | Total Non-Covered Amount |
| Subject to One or More Cigna Categories | 11,256 | $15,014,016 | 73.5% | $0 | $0 | $0 | $0 | $15,014,016 |
| Remaining | 4,586 | $5,413,561 | 26.5% | $0 | $0 | $0 | $0 | $5,413,561 |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| Claim Category[2],[3] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[5] | Discount Amount | Total Non-Covered Amount |
| Subject to One or More Cigna Categories | 6,131 | $9,284,050 | 94.6% | $77,941 | $0 | $77,936 | $44,265 | $9,093,845 |
| Remaining | 327 | $528,123 | 5.4% | $14,959 | $0 | $14,959 | $602 | $471,885 |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| Claim Category[2],[3] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[5] | Discount Amount | Total Non-Covered Amount |
| Subject to One or More Cigna Categories | 1,485 | $1,407,171 | 89.9% | $77,941 | $0 | $77,936 | $42,047 | $1,219,184 |
| Remaining | 127 | $158,188 | 10.1% | $14,959 | $0 | $14,959 | $827 | $101,726 |

*Sources*
Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023
Labs' No Assignment Lists: Exhibit D, LABS00306365 - LABS00404886

*Notes*
[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN]*, *[Charge Amount]*, *[Eligible Charge Amount]*, *[Paid Amount]*, *[Coinsurance Amount]*, *[Copay Amount]*, *[Deductible Amount]*, *[Discount Amount]*, *[Line Number]*, *[Claim Received Date]*, *[Service Code]*, *[AMI]*, *[ERISA Ind]*, *[Funding Arrangement Type]*, *[Situs STE Code]*, *[Account Name]*, *[Claim Paid Date]*, and *[Not Covered Amount]*.

[2] Claims in Cigna's identified categories include a) claims not present on the Labs' lists of claims with no assignment of benefits, b) claims related to ERISA plans, c) claims related to self-funded plans, d) claims for Group plans, e) claims for which the plan was issued in a state other than Florida, or f) claims barred by the statute of limitations with adjudication dates prior to July 25, 2013. These claims were identified using the following fields: *[ERISA Ind]*, *[Funding Arrangement Type]*, *[Situs STE Code]*, *[Account Name]*, and *[Claim Paid Date]*.

[3] The *[Account Name]* was used to determine whether the claim was associated with an Individual or Group account. Individual plans were identified where the *[Account Name]* field included "Individual" or "Indemnity." All other claims were assumed to be group plans.

[4] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN]*, *[Line Number]*, and *[Service Code]* with a charge amount > $0 was identified.

[5] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount]*, *[Copay Amount]*, and *[Deductible Amount]*.

[6] *See* Workpaper 2 for additional detail.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs

v.

BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants

Appendix C - Summary of Comparison to Labs' No Assignment Lists[1],[2],[3]

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| **Claim Category** | **# of Claims[4]** | **Total Charges** | **% of Charges** | **Total Eligible Charges** | **Total Paid** | **Total Patient Responsibility[5]** | **Discount Amount** | **Total Non-Covered Amount** |
| Not Present on Labs' No Assignment List | 5,465 | $5,876,944 | 28.8% | $0 | $0 | $0 | $0 | $5,876,944 |
| Present on Labs' No Assignment List | 10,377 | $14,550,633 | 71.2% | $0 | $0 | $0 | $0 | $14,550,633 |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| **Claim Category** | **# of Claims** | **Total Charges** | **% of Charges** | **Total Eligible Charges** | **Total Paid** | **Total Patient Responsibility[5]** | **Discount Amount** | **Total Non-Covered Amount** |
| Not Present on Labs' No Assignment List | 3,019 | $3,442,726 | 35.1% | $38,901 | $0 | $38,896 | $18,309 | $3,350,430 |
| Present on Labs' No Assignment List | 3,439 | $6,369,447 | 64.9% | $53,999 | $0 | $53,999 | $26,558 | $6,215,300 |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| **Claim Category** | **# of Claims** | **Total Charges** | **% of Charges** | **Total Eligible Charges** | **Total Paid** | **Total Patient Responsibility[5]** | **Discount Amount** | **Total Non-Covered Amount** |
| Not Present on Labs' No Assignment List | 977 | $832,021 | 53.2% | $38,901 | $0 | $38,896 | $18,309 | $739,725 |
| Present on Labs' No Assignment List | 635 | $733,338 | 46.8% | $53,999 | $0 | $53,999 | $24,564 | $581,185 |

*Sources*

Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023
Labs' No Assignment Lists: Exhibit D, LABS00306365 - LABS00404886

*Notes*

[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN], [Charge Amount], [Eligible Charge Amount], [Paid Amount], [Coinsurance Amount], [Copay Amount], [Deductible Amount], [Discount Amount], [Not Covered Amount], [Service Code], [Line Number], [Claim Paid Date], [Claim Received Date], [AMI], [First Service Date]*, [Member Last Name], and [Member First Name].

[2] The Labs' Exhibit D was used to determine claims without an assignment of benefits. Claims not identified on the Labs' Exhibit D were assumed to reflect claims for which the Labs did obtain an assignment of benefits from the member.

[3] Matching between Haney Opinion 2 (Haney Appendix C), Haney Opinion 3 (Haney Appendix G), and the Cigna Claims Data was performed at the claim line level using *[Inv DCN]* and *[Line Number]*. Matching between the Cigna Claims Data and the Labs' No Assignment Lists (Exhibit D) was performed using member name and / or Member ID as well as date of service. The Cigna claims in Haney's Opinions 2 and 3, not on the Labs' No Assignment Lists were then identified.

[4] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN]*, *[Line Number]*, and *[Service Code]* with a charge amount > $0 was identified.

[5] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount], [Copay Amount], and [Deductible Amount]*.

[6] *See* Workpaper 2 for additional detail.

Confidential - Pursuant to Protective Order

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and**
**CIGNA HEALTH AND LIFE INSURANCE COMPANY,**
**Plaintiffs**

**v.**

**BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,**
**and EPIC REFERENCE LABS, INC.**
**Defendants**

**Appendix D - Summary by ERISA Status[1]**

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| ERISA[2] | # of Claims[3] | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Y | 8,414 | $11,520,425 | 56.4% | $0 | $0 | $0 | $0 | $11,520,425 |
| N | 7,428 | $8,907,152 | 43.6% | $0 | $0 | $0 | $0 | $8,907,152 |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| ERISA[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Y | 4,719 | $7,423,123 | 75.7% | $66,382 | $0 | $66,382 | $37,844 | $7,263,418 |
| N | 1,739 | $2,389,049 | 24.3% | $26,518 | $0 | $26,513 | $7,024 | $2,302,312 |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| ERISA[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Y | 870 | $855,480 | 54.7% | $66,382 | $0 | $66,382 | $37,844 | $695,775 |
| N | 742 | $709,879 | 45.3% | $26,518 | $0 | $26,513 | $5,030 | $625,135 |

*Sources*
Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023

*Notes*
[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN]*, *[Charge Amount]*, *[ERISA IND]*, *[Eligible Charge Amount]*, *[Paid Amount]*, *[Coinsurance Amount]*, *[Copay Amount]*, *[Deductible Amount]*, *[Discount Amount]*, *[Not Covered Amount]*, *[Service Code]*, *[Line Number]*, *[Claim Paid Date]*, *[Claim Received Date]*, *[AMI]*, and *[First Service Date]*.

[2] The *[ERISA IND]* was used to determine the ERISA status of the claim.

[3] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN]*, *[Line Number]*, and *[Service Code]* with a charge amount > $0 was identified.

[4] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount]*, *[Copay Amount]*, and *[Deductible Amount]*.

[5] *See* Workpaper 2 for additional detail.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,**
Plaintiffs

v.

**BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.**
Defendants

**Appendix E - Summary by Funding Arrangement[1]**

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| Funding Arrangement[2] | # of Claims[3] | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Self-Funded (ASO) | 8,286 | $11,405,897 | 55.8% | | | | | $11,405,897 |
| Fully Insured or Blank | 7,556 | $9,021,680 | 44.2% | $0 | $0 | $0 | $0 | $9,021,680 |
| *Fully Insured* | *7,279* | *$8,748,504* | *42.8%* | | | | | *$8,748,504* |
| *Blank values* | *277* | *$273,176* | *1.3%* | | | | | *$273,176* |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| Funding Arrangement[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Self-Funded (ASO) | 5,003 | $7,630,605 | 77.8% | $42,539 | $0 | $42,534 | $28,879 | $7,537,579 |
| Fully Insured or Blank | 1,455 | $2,181,568 | 22.2% | $50,361 | $0 | $50,361 | $15,988 | $2,028,151 |
| *Fully Insured* | *1,303* | *$1,936,216* | *19.7%* | *$46,762* | *$0* | *$46,762* | *$14,771* | *$1,798,842* |
| *Blank values* | *152* | *$245,351* | *2.5%* | *$3,599* | *$0* | *$3,599* | *$1,217* | *$229,309* |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| Funding Arrangement[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Self-Funded (ASO) | 1,058 | $904,635 | 57.8% | $42,539 | $0 | $42,534 | $26,661 | $813,827 |
| Fully Insured or Blank | 554 | $660,724 | 42.2% | $50,361 | $0 | $50,361 | $16,213 | $507,083 |
| *Fully Insured* | *435* | *$465,204* | *29.7%* | *$46,762* | *$0* | *$46,762* | *$14,996* | *$327,605* |
| *Blank values* | *119* | *$195,520* | *12.5%* | *$3,599* | *$0* | *$3,599* | *$1,217* | *$179,477* |

*Sources*

Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023

*Notes*

[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN]*, *[Funding Arrangement Type]*, *[Charge Amount]*, *[Eligible Charge Amount]*, *[Paid Amount]*, *[Coinsurance Amount]*, *[Copay Amount]*, *[Deductible Amount]*, *[Discount Amount]*, *[Not Covered Amount]*, *[Service Code]*, *[Line Number]*, *[Claim Paid Date]*, *[Claim Received Date]*, *[AMI]*, and *[First Service Date]*.
[2] The *[Funding Arrangement Type]* was used to determine whether the services associated with the claim were "ASO" (Self-Funded) or "Fully Insured." This field includes blank values.
[3] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN]*, *[Line Number]*, and *[Service Code]* with a charge amount > $0 was identified.
[4] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount]*, *[Copay Amount]*, and *[Deductible Amount]*.
[5] *See* Workpaper 2 for additional detail.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs**

**v.**

**BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants**

**Appendix F - Summary by Account Type[1]**

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| **Account Type[2]** | **# of Claims[3]** | **Total Charges** | **% of Charges** | **Total Eligible Charges** | **Total Paid** | **Total Patient Responsibility[4]** | **Discount Amount** | **Total Non-Covered Amount** |
| Group | 9,709 | $13,407,842 | 65.6% | $0 | $0 | $0 | $0 | $13,407,842 |
| Individual | 6,133 | $7,019,735 | 34.4% | $0 | $0 | $0 | $0 | $7,019,735 |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| **Account Type[2]** | **# of Claims** | **Total Charges** | **% of Charges** | **Total Eligible Charges** | **Total Paid** | **Total Patient Responsibility[4]** | **Discount Amount** | **Total Non-Covered Amount** |
| Group | 5,903 | $9,051,297 | 92.2% | $72,361 | $0 | $72,356 | $43,429 | $8,874,262 |
| Individual | 555 | $760,876 | 7.8% | $20,540 | $0 | $20,540 | $1,438 | $691,468 |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| **Account Type[2]** | **# of Claims** | **Total Charges** | **% of Charges** | **Total Eligible Charges** | **Total Paid** | **Total Patient Responsibility[4]** | **Discount Amount** | **Total Non-Covered Amount** |
| Group | 1,355 | $1,272,475 | 81.3% | $72,361 | $0 | $72,356 | $41,211 | $1,097,658 |
| Individual | 257 | $292,884 | 18.7% | $20,540 | $0 | $20,540 | $1,663 | $223,252 |

*Sources*
Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023

*Notes*
[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN], [Charge Amount], [Eligible Charge Amount], [Paid Amount], [Coinsurance Amount], [Copay Amount], [Deductible Amount], [Discount Amount], [Not Covered Amount], [Account Name], [Service Code], [Line Number], [Claim Paid Date], [Claim Received Date], [AMI], and [First Service Date].*
[2] The *[Account Name]* was used to determine whether the claim was associated with an Individual or Group account. Individual plans were identified where the *[Account Name]* field included "Individual" or "Indemnity." All other claims were assumed to be group plans.
[3] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN], [Line Number],* and *[Service Code]* with a charge amount > $0 was identified.
[4] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount], [Copay Amount], and [Deductible Amount].*
[5] *See* Workpaper 2 for additional detail.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs

v.

BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants

Appendix G - Summary by Situs State[1]

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| Situs[2] | # of Claims[3] | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Non-Florida | 8,656 | $11,722,035 | 57.4% | $0 | $0 | $0 | $0 | $11,722,035 |
| Florida | 7,186 | $8,705,542 | 42.6% | $0 | $0 | $0 | $0 | $8,705,542 |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| Situs[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Non-Florida | 4,842 | $7,500,580 | 76.4% | $56,227 | $0 | $56,227 | $33,600 | $7,361,231 |
| Florida | 1,616 | $2,311,593 | 23.6% | $36,673 | $0 | $36,668 | $11,268 | $2,204,498 |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| Situs[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Non-Florida | 993 | $906,312 | 57.9% | $56,227 | $0 | $56,227 | $31,382 | $769,182 |
| Florida | 619 | $659,047 | 42.1% | $36,673 | $0 | $36,668 | $11,492 | $551,728 |

*Sources*

Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023

*Notes*

[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN]*, *[Charge Amount]*, *[Eligible Charge Amount]*, *[Paid Amount]*, *[Coinsurance Amount]*, *[Copay Amount]*, *[Deductible Amount]*, *[Discount Amount]*, and *[Not Covered Amount]*, *[Service Code]*, *[Line Number]*, *[Claim Paid Date]*, *[Claim Received Date]*, *[AMI]*, *[First Service Date]*, and *[Situs Site Code]*.

[2] The *[Situs Ste Code]* was used to determine whether the plan was issued in Florida. Mr. Haney treated claims without a populated *[Situs Ste Code]* as Florida claims (Haney Report, footnote 64). The same assumption is used in the analysis summarized above.

[3] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN]*, *[Line Number]*, and *[Service Code]* with a charge amount > $0 was identified.

[4] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount]*, *[Copay Amount]*, and *[Deductible Amount]*.

[5] *See* Workpaper 2 for additional detail.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Plaintiffs

v.

BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC,
and EPIC REFERENCE LABS, INC.
Defendants

Appendix H - Summary of Statute of Limitations Analysis[1]

| Haney Opinion 2: | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |
|---|---|---|---|---|---|---|---|---|
| Claim Category[2] | # of Claims[3] | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Pre-7/25/2013 | - | $0 | 0.0% | $0 | $0 | $0 | $0 | $0 |
| On/After 7/25/2013 | 15,842 | $20,427,577 | 100.0% | $0 | $0 | $0 | $0 | $20,427,577 |

| Haney Opinion 3: | 6,458 | $9,812,173 | 100.0% | $92,900 | $0 | $92,895 | $44,867 | $9,565,730 |
|---|---|---|---|---|---|---|---|---|
| Claim Category[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Pre-7/25/2013 | 220 | $113,875 | 1.2% | $13,331 | $0 | $13,326 | $6,862 | $93,481 |
| On/After 7/25/2013 | 6,238 | $9,698,298 | 98.8% | $79,569 | $0 | $79,569 | $38,005 | $9,472,249 |

| Haney Opinion 3 (only): | 1,612 | $1,565,359 | 100.0% | $92,900 | $0 | $92,895 | $42,874 | $1,320,910 |
|---|---|---|---|---|---|---|---|---|
| Claim Category[2] | # of Claims | Total Charges | % of Charges | Total Eligible Charges | Total Paid | Total Patient Responsibility[4] | Discount Amount | Total Non-Covered Amount |
| Pre-7/25/2013 | 220 | $113,875 | 7.3% | $13,331 | $0 | $13,326 | $6,862 | $93,481 |
| On/After 7/25/2013 | 1,392 | $1,451,484 | 92.7% | $79,569 | $0 | $79,569 | $36,011 | $1,227,429 |

*Sources*
Cigna Claims Data: Cigna19-1326 0007979 - Cigna19-1326 0007981, Cigna19-1326 0007983
Haney Opinion 2 Claims Population: Appendix C to Expert Report of Christopher L. Haney, dated March 1, 2023
Haney Opinion 3 Claims Population: Appendix G to Expert Report of Christopher L. Haney, dated March 1, 2023

*Notes*
[1] The following fields from the Cigna Claim Line Data were used for this analysis: *[Inv DCN], [Charge Amount], [Eligible Charge Amount], [Paid Amount], [Coinsurance Amount], [Copay Amount], [Deductible Amount], [Discount Amount], [Not Covered Amount], [Service Code], [Line Number], [Claim Paid Date], [Claim Received Date], [AMI], and [First Service Date].*
[2] The latest claim paid date (*[Claim Paid Date]*) for each claim (by *[Inv DCN], [Line Number], [First Service Date], and [Service Code]*) was used to determine whether the claim was adjudicated prior to July 25, 2013, six years prior to the date of the Labs' complaint dated July 25, 2019.
[3] For each claim number identified by Mr. Haney, the last *[Claim Paid Date]* by *[INV DCN], [Line Number],* and *[Service Code]* with a charge amount > $0 was identified.
[4] Patient Responsibility reflects the sum of the following fields: *[Coinsurance Amount], [Copay Amount], and [Deductible Amount].*
[5] *See* Workpaper 2 for additional detail.