## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC, and EPIC REFERENCE LABS, INC., <br><br> Defendants. | Case No. 3:19-cv-01324 <br><br> Hon. Janet C. Hall <br><br><br> July 18, 2023 |

## CIGNA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE TESTIMONY FROM THE LABS' EXPERT JACQUELINE THELIAN

Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (together, "Cigna") hereby submit this memorandum in support of their motion under Fed. R. Evid. 702 to exclude the testimony from BioHealth Medical Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PBL"), and Epic Reference Labs, Inc.'s ("Epic") (together, the "Labs") purported medical coding expert, Jacqueline Thelian ("Ms. Thelian"), set forth in Opinions 1-4 of her Expert Report.

## INTRODUCTION

The Labs have proffered Jacqueline Thelian as an "expert" to opine on medical coding issues. She identifies four denial codes that Cigna used to deny certain of the Labs' claims and opines that every one of the 15,842 claims she identifies was wrongly denied. All of her opinions fail to satisfy the standards for admissibility under Fed. R. Civ. P. 702 for multiple

reasons. Certain of her opinions are directly contradicted by the governing CPT manuals or reimbursement policies—which she admittedly failed to consider either in whole or in part in reaching her opinions. Other opinions lack any reliable basis at all, including her conclusion that all services underlying 5,490 unique claims were, in fact, performed as billed based on her review of records underlying a single claim as well as her opinion that 2,332 other unique claims were all "correctly" billed based solely on the fact that the CPT codes utilized were active codes at the time of service.  She also seeks to provide "expert" opinions on simple issues of fact that are of no help to the jury, such as her "expert" opinion that invoices were sent to the patients of one of the Labs.  Finally, she attempts to opine on issues for which she is wholly unqualified, such as requirements under a patient's benefit plan to collect a patient's cost-share obligation and the medical necessity of the drug testing services at issue.  Ms. Thelian's opinions fail all three requirements for admission of expert testimony — qualification, reliability, and helpfulness — and the Court should exclude them all for this reason.

## **BACKGROUND**

The Labs have retained Ms. Thelian to "evaluate and opine on: (i) the coding, billing, and supporting documentation for the Labs' covered drug testing claims, and (ii) Cigna's decision to flag and deny reimbursement for the Labs covered drug testing claims."[1] The Labs have also retained Ms. Thelian to serve as a rebuttal expert to Cigna's medical expert, Dr. Kelly Clark ("Dr. Clark").[2]

---

[1] Ex. 1, Report of J. Thelian dated March 1, 2023 ("Thelian Rep.") at 2.
[2] Ex. 2, Rebuttal Report of J. Thelian dated May 19, 2023 ("Thelian Rebuttal").

## I.    Ms. Thelian's Qualifications

Ms. Thelian has no degree in medicine and no formal education degree beyond high school at all.[3] She has a "certification" as a Certified Professional Coder ("CPC") from the American Academy of Professional Coders ("AAPC").[4] The AAPC is an educational organization for medical coders, billers, auditors, practice managers, documentation specialists, compliance officers, and revenue cycle managers.[5] The CPC certification that Ms. Thelian has is available online for $399, and involves a 100-question multiple choice test.[6]

After obtaining her CPC certification in 1997, Ms. Thelian formed her own consulting practice, Medco Consultants, Inc. ("Medco"), which she maintains today.[7] Ms. Thelian consults medical providers on claims processing, payment and "revenue generation."[8] But Medco does not provide its clients with any coding or billing services.[9] Rather, Ms. Thelian counsels providers on how to submit claims to insurance companies to maximize revenue.[10] Ms. Thelian briefly provided coding services for a gastroenterologist and a pediatrician more than twenty years ago but has no other relevant work experience.[11]

Ms. Thelian is not licensed to practice medicine and has no clinical experience of any

---

[3] Ex. 3, Transcript of Deposition of Jacqueline Thelian ("Thelian Dep.") at 18:2-9.
[4] Ex. 1, Thelian Rep. at 3.
[5] AAPC.COM, https://www.aapc.com (last visited July 13, 2023).
[6]    *Certified    Professional    Coder    (CPC)®    Certification*,    AAPC.COM, https://www.aapc.com/certifications/cpc (last visited July 13, 2023.
[7] Ex. 3, Thelian Dep. at 20:15-21:6; Ex. 1, Thelian Rep. at 3.
[8] Ex. 3, Thelian Dep. at 86:16-87:10.
[9]    *Id.* at 84:23-85:14.
[10]    *Id.* at 86:16-87:10. This includes helping clients with revenue generation, which means helping clients "send[] out clean claims," and "train[ing] staff on how to use NCCI edits, how to use the system to generate claims and get them out the door, how to check on the reports that come back when claims are sent electronically." *Id.*
[11] Ex. 3, Thelian Dep. at 18:2-21:10.

kind with patients.[12] Nor does she have education, training, or experience in addiction, psychiatry, or treating substance use disorders.[13] In this regard, she is admittedly unqualified to render any opinion on the medical necessity of drug testing services or any medical services at all.[14]

She also has no education in, training in, or work experience with billing and collecting amounts from patients for health-care services.[15] She has never testified as an expert in any case in federal court.[16]

## II.    Ms. Thelian's Opinions

Ms. Thelian reviewed the population of 32,290 claims the Labs submitted to Cigna for reimbursement and identifies 15,842 claims that she opines Cigna wrongly denied. She identifies four denial codes that Cigna used to deny these claims and opines that any denial using one of those four codes was incorrect. Her opinions are as follows:

**Opinion 1 (Denial Code 1698):**[17] Ms. Thelian opines that any claim that Cigna denied using denial code 1698, which is for an unlisted code that is disallowed, was improperly denied because, according to Ms. Thelian, the use of CPT code 80299 (the unlisted code) was "required for the Labs to identify drugs tested for which no specific CPT Code existed at the time the service was rendered" and because "laboratory reports included documentation to support the services performed under the unlisted CPT code utilized by the Labs."[18]

---

[12] *Id.* at 19:18-20:10; 82:20-23; 86:10-15.

[13] *Id.* at 86:10-15.

[14] *Id.* at 82:20-23 (admitting she is not an expert on clinical issues).

[15] *Id.* at 18:2-21:10.

[16] Ex. 1, Thelian Rep. at 3; *Id.* at Appendix B at 5-7.

[17] *Id.* at 8-12.

[18] *Id.* at 9, 11. The Current Procedural Terminology (CPT) codes "offer doctors and health care professionals a uniform language for coding medical services and procedures to streamline reporting, increase accuracy and efficiency." *See CPT® overview and code approval*,

**Opinion 2 (Denial Code 1648):**[19] Ms. Thelian opines that every denial based on denial code 1648 (invalid service code) was incorrect because the CPT codes used for those denied claims existed as active codes on the dates the services were rendered.

**Opinion 3 (Denial Code 0322):**[20] Ms. Thelian opines that Cigna's denial of claims based on the Labs' failure to obligate their patients to pay for their cost-share obligation (a practice known as "fee-forgiving") was incorrect because, according to Ms. Thelian, PB Labs made a good-faith effort to collect patient cost-share by sending invoices to patients.

**Opinion 4 (Denial Code 0369):**[21] Ms. Thelian opines that Cigna's denials of claims using the denial reason "Services Not Performed" were invalid, because the Labs performed the services described in their claims.

## STANDARD OF REVIEW

Expert testimony is only admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In determining whether expert testimony should be excluded, the district court must consider "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-66 (2d Cir. 2002). The court must ensure "an expert, whether basing testimony upon professional studies or personal experience, employs

---

ama-assn.org,    https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval (last visited July 13, 2023). These codes are used for claim processing. *Id.*
[19] Ex. 1, Thelian Rep. at 13-17.
[20] *Id.* at 17-20.
[21] *Id.* at 20-22.

in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (citations and quotations omitted).

To be admissible, it is "critical that an expert's analysis be reliable at every step." *Id.* at 267. "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Indeed, the *Daubert* "requirement that the expert testify to scientific knowledge — conclusions supported by good grounds for each step in the analysis — means that *any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.").

## **ARGUMENT**

I. **All four of Ms. Thelian's opinions constitute improper expert testimony that must be excluded.**

A. **Ms. Thelian has no reliable basis to support Opinion 1 because she admittedly relied on the wrong section of the CPT Manual.**

In Opinion 1, Ms. Thelian opines that Cigna improperly denied claims based on the improper use of an unlisted CPT code (CPT code 80299). Ms. Thelian opines that these denials were in error because "the use of the unlisted [CPT] code (80299) was required for the Labs to identify drugs tested for which no specific CPT code existed at the time the service was rendered."[22] Ms. Thelian opines that if the CPT Code Manual does not specify a code for

---

[22] *Id.* at 11.

the particular drug being tested, then the Labs appropriately used CPT code 80299 and Cigna improperly denied the claim.[23] This opinion is incorrect and Ms. Thelian admitted as much in her deposition.[24]

First, in rendering Opinion 1, Ms. Thelian relies only on the Therapeutic Drug Assays ("TDA") section of the 2013 CPT Code Manual, which she says does not identify any specific codes for the drugs the Labs tested.[25] As Cigna's medical expert, Dr. Kelly Clark, explained, TDAs "are used to measure the quantitative level of a therapeutic medication to ensure its concentration is within the therapeutic range."[26] For example, "if a provider prescribes digoxin to treat heart failure or carbamazepine to treat epilepsy or high-dose tricyclic antidepressant to treat depression . . . each of these medications has a narrow therapeutic blood level range between too low (and ineffective) and too high (and toxic)."[27] TDAs are performed to guide the provider regarding the appropriate medication dose.[28] To this end, the 2013 CPT Code Manual is clear: CPT code 80299 should only be used when conducting a TDA for a *therapeutic* drug that is "not elsewhere specified," not for illicit drugs that are not listed.[29]

In Opinion 1, Ms. Thelian opines that the Labs were "required" to use Code 80299 in 2013 because "many of the drugs tested (e.g., oxycodone, methamphetamine, ecstasy, etc.)

---

[23] *Id.* at 11.
[24] Ex. 3, Thelian Dep. at 150:23-152:17.
[25] Ex. 4, Rebuttal Report of Dr. Kelly Clark dated May 19, 2023 ("Clark Rebuttal"), Appendix B, AMERICAN MEDICAL ASSOCIATION, CURRENT PROCEDURAL TERMINOLOGY ("CPT") MANUAL, Professional Edition (2013), at 418-19 [hereinafter "2013 CPT Code Manual"].
[26] *Id.* at ¶ 30.
[27] *Id.* at n.24.
[28] *Id. See also id.* ¶ 33.
[29] *Id.* at Appendix B, 2013 CPT Code Manual, at 418-19.

did not have specific Category I CPT codes" in the TDA section of the CPT Code Manuel.[30] In doing so, she fails to recognize that using ***any*** TDA code for these particular drugs is entirely inappropriate in the first place because the drugs the Labs were testing for were not being used for a therapeutic purpose. For example, there is no CPT code for a TDA of ecstasy because ecstasy is an illicit (not prescribed) substance for which there is no need to monitor a therapeutic blood level.[31] Ms. Thelian admitted that she is unaware of any therapeutic purpose for drugs like ecstasy or other illicit drugs that the Labs billed with the unlisted 80299 code, including propoxyphene, cocaine, K2 spice, and PCP.[32] Thus, she concedes that conducting a TDA for any of these drugs would be inappropriate.

Ms. Thelian ignores altogether the section of the 2013 CPT Code Manual that properly applies to the analysis. The section labeled "Drug Testing" explains how the drug tests at issue should have been coded. For drug confirmation testing,[33] each procedure (not each drug) should have been billed using CPT code 80102.[34] If quantitation was necessary and performed for a particular substance, then the appropriate CPT code could be found in the Chemistry section or the TDA section, as appropriate.[35]

---

[30] Ex. 1, Thelian Rep. at 11.

[31] Ex. 3, Thelian Dep. at 148:14-16.

[32] *Id.* at 147:2-148:16 (admitting that she does not know of any therapeutic purpose of propoxyphene, cocaine, K2 Spice, PCP, ecstasy). In fact, because she is not a physician, she is not qualified to opine on whether conducting a TDA would for these drugs would be medically necessary. any of the Therapeutic Drug Assays were appropriate.[32] *Id.* at 146:14-25.

[33] "The 2013 CPT Manual referred to this as a 'drug confirmation', so I will use the term 'confirmatory.'" Ex. 4, Clark Rebuttal, at 8 n. 30 (citing *Id.* at Appendix B, 2013 CPT Code Manual at 418). In 2015, the language for these particular coded tests was revised. *Id.* at Appendix C, 2015 CPT Code Manual, at 309. These are now referred to as "definitive" tests.

[34] *Id.* at Appendix B, 2013 CPT Code Manual, at 418.

[35] *Id.* at Appendix B, 2013 CPT Code Manual, at 414.

When confronted at her deposition, Ms. Thelian agreed that it was inappropriate to use the unlisted code 80299 where the chemistry section of the CPT Code Manual identifies CPT codes for those specific drugs, including phencyclidine, opiates, cocaine, metabolites, alcohol, amphetamines, or any other drugs listed on page 414 of the 2013 CPT manual.[36] Thus, Ms. Thelian admitted that using 80299 to code for quantitative testing on the following drugs would be inappropriate: alcohol, amphetamines, barbiturates, benzodiazepines, cocaine and metabolites, methadone, opiates, phencyclidine, and phenothiazines.[37] This testimony squarely contradicts her conclusion in Opinion 1 that 80299 was a proper code when testing for drugs such as propoxyphene, cocaine, K2 spice, PCP, or ecstasy.

Ms. Thelian's admittedly improper application of the relevant authority necessarily means her opinion lacks a reliable foundation. For this reason, Opinion 1 must be excluded. *See Degelman Indus., Ltd.*, 2011 U.S. Dist. LEXIS 150190, at *7 ("When an expert witness relies upon invalid assumptions or demonstrates a lack of inquiry into the relevant facts, the expert witness' testimony will be precluded.") (citing *Oglesby*, 190 F.3d at 250).

**B.    Opinion 2 should be excluded because it is unsupported *ipse dixit* and does require any expertise.**

In Opinion 2, Ms. Thelian identifies 2,332 claims that Cigna denied because "the claim was received with a missing or invalid service code based on our reimbursement policy."[38] She opines that Cigna's denial on this basis was incorrect because the codes the Labs used were "valid" CPT codes on the dates the services were rendered.[39] Ms. Thelian apparently

---

[36] Ex. 3, Thelian Dep. at 151:19-152:22.

[37] *Id.* at 148:17-25; 151:18-152:17.

[38] Ex. 1, Thelian Rep. at 6, 13, 22.

[39] *Id.* at 13. Ms. Thelian opines that because the CPT codes listed "on Appendix D were valid CPT codes for the dates of service for which they were billed" then Cigna's denials were "incorrect and unsubstantiated." *Id.* Ms. Thelian further opines that the "CPT code(s) billed

believes that, if the Labs used a CPT code that was active at the time the services were rendered then the charge was improperly denied.[40] Because this conclusion lacks any reliable basis and is not the product of any specialized knowledge, education, or training, it is not proper under Rule 702.

### 1.    Opinion 2 lacks any reliable foundation.

A CPT code may be "invalid" on a claim for reimbursement for any number of reasons, regardless of whether it exists as an active code, including, if it is improperly used in combination with other codes, missing a code with which it must be used in combination, does not accurately identify the services rendered, or is not reimbursable under Cigna's reimbursement policy.[41] Simply because a CPT code on a claim for reimbursement exists as an active code at the time of the services does *not* mean the code is correctly used and reimbursable.

Nevertheless, Ms. Thelian opines that because certain of the CPT codes that Cigna denied as "invalid" were active codes at the time of service, the CPT codes used by the Labs were "correct for the dates of service."[42] Significantly, Ms. Thelian provides absolutely no explanation as to why she believes the coding is "correct." She failed to review any medical records underlying the services rendered, the actual claim forms on which the services were billed, many of applicable Cigna drug testing coverage policies, and *all* of the applicable Cigna

---

by BioHealth and Epic were valid for the dates of service for which they were reported." *Id.* Ms. Thelian then includes a three-and-a-half-page chart which appears to be CPT codes from 2013-2017. *Id.* at 14-17.
[40] *Id.* at 8 ("If CPT Codes were valid for the date of service billed."). *See* Ex. 3, Thelian Dep. at 158:22-159:13; 159:24-160:11.
[41] Ex. 4, Clark Rebuttal ¶ 63.
[42] Ex. 1, Thelian Rep. at 17.

reimbursement policies.[43] She is without any basis to conclude that the coding was "correct" for any one of the 2,332 claims she identifies, and yet she does so.

The only analysis set forth in Opinion 2 is Ms. Thelian's confirmation that the CPT codes on the Labs' claims for reimbursement were active in the CPT Code Manual during the time they were billed to Cigna.[44] But her leap to conclude that all the codes were therefore necessarily "correct" and validly billed is wholly unsupported. For this reason, Opinion 2 must be excluded as improper *ipse dixit*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Amorgianos*, 303 F.3d at 265-66; *In re Pfizer Inc. Sec. Litig.,* 819 F.3d 642, 664 (2nd Cir. 2016) (citing *Joiner*, 552 U.S. at 665); *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'… If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.").

### 2.    Opinion 2 will not assist the trier of fact.

Opinion 2 should be excluded for an additional reason:  Ms. Thelian admitted during her deposition that her "analysis" required no expertise.[45] Ms. Thelian acknowledged that all she did in rendering Opinion 2 was to identify CPT codes that were denied due to an invalid service code, and then check whether those CPT codes appeared in the applicable CPT

---

[43] Ex. 3, Thelian Dep. at 158:20-160:17 (admitting that all she did was check that the codes were valid).
[44] *Id.*
[45] *Id.* at 160:12-17.

Manual.[46]  Ms. Thelian acknowledged that even someone without her background, qualifications, and expertise (even opposing counsel) could have performed this function.[47] Opinion 2 is thus not properly the subject of expert testimony and it should be excluded. *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 375 (S.D.N.Y. 2014) ("[E]xpert testimony is not helpful if it simply addresses ''lay matters which a jury is capable of understanding and deciding without the expert's help.'") (quoting *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001)); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 549-50 (S.D.N.Y. 2004) (excluding expert testimony about testimony constituting lay matter that the fact-finder can understand without the assistance of experts).

### 3.  Opinion 2 is directly contradicted by the evidence in the case.

Finally, many of the CPT codes utilized were "invalid" because they were not covered under Cigna's reimbursement policies. Although Ms. Thelian concedes that the claims she identified were denied because they were received with "a missing or invalid service codes based on our reimbursement policy," for unexplained reasons, she failed to review any of those reimbursement policies to determine whether the codes were, in fact, invalid.

Effective August 19, 2013, Cigna excluded from coverage qualitative drug screen testing claims that were submitted under CPT codes 80100, 80101, and 80104.[48] In making this global policy change, Cigna followed CMS in requiring the use of HCPCS codes G0431 and G0434, rather than the AMA's CPT codes for the billing of these services.[49] This policy was extended to the new replacement CPT codes 80300-80304, as of January 1, 2015.[50]

---

[46] *Id.* at 159:24-160:11
[47] *Id.* at 160:12-25.
[48] Ex. 5, LABS00535783.
[49] *Id.*
[50] Ex. 6, Cigna Omnibus Reimbursement Policy, LABS00642392—LABS00642396.

Accordingly, all service charges for CPT codes 80100, 80101, and 80104 on or after August 19, 2013, and all services charges for CPT codes 80100, 80101, 80104, 80301, 80302, 80303, and 80304 on or after January 1, 2015 were invalid based on Cigna's reimbursement policy. Thus, even assuming those codes existed and were active, they could not be validly billed to Cigna and were properly denied.[51]

When she was presented with these policies at deposition, Ms. Thelian agreed, as she must, that the CPT codes identified could not be validly billed to Cigna.[52] Consequently, she conceded that she would need to revisit her opinion in light of these policies.[53] Ms. Thelian's failure to investigate the relevant facts renders her opinion unreliable and inadmissible. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Sierra v. Nat'l R.R. Passenger Corp.*, No. 19-CV-05726(CM), 2022 U.S. Dist. LEXIS 114473, at *25 (S.D.N.Y. June 28, 2022) (courts may disregard expert testimony where the expert's opinion is unsupported and contradicted by the undisputed record); *Degelman Indus., Ltd.*, 2011 U.S. Dist. LEXIS 150190, at *7 (noting that an expert's testimony should be excluded where she failed to inquire into the relevant facts).

---

[51] In light of Cigna's drug coverage policy from August 19, 2013, she agrees that any claims denied for 80101 claims after that date would be appropriate. Ex. 3, Thelian Dep. at 166:8-13. In light of Cigna's drug coverage policy effective Jan. 1, 2015, she agrees that any claims denied for 80300 to 80304 after that date would also be appropriate. It might also change her opinion. *Id.* at 170:18-171:12.

[52] In light of Cigna's drug coverage policy from August 19, 2013, Ms. Thelian agrees that any claims denied for 80101 claims after that date would be appropriate. Ex. 3, Thelian Dep. at 165:24-166:19. In light of Cigna's drug coverage policy effective Jan. 1, 2015, Ms. Thelian agrees that any claims denied for 80300 to 80304 after that date would be appropriate. It might also change her opinion. *Id.* at 168:25-169:7; 171:13-18.

[53] *Id.* at 171:7-12.

### C. Opinion 3 must be excluded because it is not proper expert testimony and, even if it were, Ms. Thelian is not qualified to provide it.

With Opinion 3, Ms. Thelian opines that Cigna improperly denied more than 718 claims using the denial code 0322, which is a denial based on "fee-forgiving." She bases this opinion on her conclusion that "the Labs met industry standards regarding balance billing for deductibles, copayments, and co-insurance."[54] Specifically, Ms. Thelian concludes that the Labs were not engaged in fee-forgiving because, according to Ms. Thelian, one of the Labs submitted "statements to patients" for "deductibles, copayments, and coinsurance."[55] Ms. Thelian is not qualified to opine on industry standards for a patient billing and collecting, and, even if she was, whether or not the Labs were submitting invoices to their patients is a simple fact question for which the jury does not need any help from Ms. Thelian to resolve.

#### 1. Ms. Thelian is not qualified to render an expert opinion on fee-forgiving.

To testify as an expert witness, an individual must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To determine whether a witness qualifies as an expert, "courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). In the event that the area of the witness's education and experience does not align with the subject matter of the proffered testimony, that testimony should be excluded. *Sec. & Exch. Comm'n v. LEK Secs. Corp.*, 370 F. Supp. 3d 384, 407 (S.D.N.Y. 2019) (excluding an expert's testimony on "high-frequency [securities] trading practices" where the expert "never worked as a trader or in the

---

[54] Ex. 1, Thelian Rep. at 4.
[55] *Id.* at 20.

securities industry" and had a degree in economics); *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 47416, at *8-9 (S.D.N.Y. Apr. 29, 2011) ("Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702.").

As a medical coder, Ms. Thelian is not qualified to render an opinion on out-of-network insurance reimbursement requirements. As Ms. Thelian acknowledges, because the Labs were out-of-network with Cigna, the patient's benefit plan would have prescribed the terms of coverage and eligibility for benefits.[56] As Cigna's corporate representative testified, the relevant Cigna plans and policies all include language that prohibits the practice of fee-forgiving (i.e., forgiving the patient's cost-share obligation for the cost of the services rendered).[57] Furthermore, out-of-network providers, like the Labs, are typically required to obligate the patient to pay the difference between what the provider bills and the amount the benefit plan covers—practice known as "balance billing."[58]

Ms. Thelian is not qualified to opine on the amounts the Labs' patients owe under the terms of their benefit plans or the Labs' duties as health-care providers to collect those amounts. She has no experience, training, or education regarding out-of-network insurance reimbursement. She has never worked for an insurance company, a health-care plan, or an insurance billing company and has not provided any billing and/or collection services for a health-care provider. She admittedly did not review any of the relevant benefit plans or insurance policies to determine what is required in terms of patient-cost share obligation and failed to even consider whether those plans and policies require an out-of-network provider,

---

[56] Ex. 3, Thelian Dep. at 127:21-128:11.
[57] Ex. 7, Transcript of Deposition of Michael Goldfarb ("Goldfarb Dep.") at 71:15-72:5.
[58] Ex. 4, Clark Rebuttal at ¶ 74.

like the Labs, to balance bill their patients. She is simply without the requisite qualifications to opine on an out-of-network provider's obligations regarding collection of patient responsibility in order for their services to be covered. For this reason, her suggestion that the Labs were only required to collect "deductibles, copayments, and coinsurance" must be excluded.

Nor is she qualified to opine on what constitutes a "good faith" effort to collect the patients' responsibility of the cost. Ms. Thelian cites no facts, authority, or experience to support her conclusion that "submitting" a single statement to a patient is sufficient to discharge the Labs' obligation under the terms of the patients' benefit plans to hold the patient responsible for the amounts owed.[59] Again, she has no experience, training, or education regarding a health-care provider's duties to collect amounts owed by their patients. She must be precluded from rendering any opinion on this subject.

### 2. Ms. Thelian's opinion that the Labs "timely and routinely" sent invoices to patients is not proper expert testimony.

In addition, Ms. Thelian's testimony that she believes the Labs sent invoices to their patients will not assist the trier of fact in any way and must therefore be excluded. Expert testimony is only relevant if it will assist the jury. *See In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 407 (D. Conn. 2010). Expert testimony will not assist the jury, and thus should be excluded, when that "testimony . . . is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d

---

[59] "Though the OIG Report does not define the specific parameters of 'good faith' efforts, city and state medical societies often offer guidance to their members on how to fulfill this 'good faith' requirement, which may include a written protocol for collections efforts and a process for determining financial hardship on a case-by-case basis." *See* Ex. 4, Clark Rebuttal at ¶ 77. Ms. Thelian ignores all of these authorities and does not provide any of her own.

99, 103 (D. Conn. 2006) (excluding an expert's testimony because it was "directed solely to lay matters" and improperly usurped the role of the jury); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 549-50 (excluding expert testimony regarding lay matters that the fact-finder can understand without the assistance of experts).

Ms. Thelian's conclusion that the Labs did, in fact, conduct a "good-faith" effort to collect the proper amount by submitting "statements to patients" is not helpful to the trier of fact. Whether or not the Labs sent invoices to their patients is a simple issue of fact that does not require any specialized knowledge, education, or training. Indeed, in reaching her conclusion, Ms. Thelian does not rely on any expertise at all. She simply cites to six invoices and deposition testimony from other witnesses that she believes supports the notion that the Labs sent invoices to patients—evidence that a jury is perfectly capable of interpreting.[60] Putting aside the fact that the uncontroverted evidence establishes that the Labs were *not* "timely and routinely" submitting patient invoices,[61] Ms. Thelian's "expert" testimony that she believes the Labs were doing so is not proper under Rule 702.[62]

---

[60] Ex. 1, Thelian Rep. at 20.

[61] Indeed, Ms. Thelian failed to consider the 2014 memorandum from the Chief Financial Officer of the Labs' parent company, Medytox, which confirmed that the Labs were not even able to send patient bills before 2014. Ex. 8, Memorandum to File from J. Simmons, LABS00643279-280. And the owner of the Labs' billing company, Michael Nicholson, testified that to the extent bills were sent to patients, "it was not in a timely fashion." Ex. 9, Transcript of Deposition of Michael Nicholson ("Nicholson Dep.") at 9:22-10:7.

[62] For similar reasons, her testimony regarding whether the Labs were capable of complying with Cigna's request to provide proof of patient payments is improper. Ex. 1, Thelian Rep. at 18-19. It remains unclear how this testimony is relevant to whether or not the Labs were engaged in fee-forgiving. But even assuming it was relevant, Ms. Thelian possesses no specialized training, education, or experience that would allow her to opine on whether the Labs were able to comply with Cigna's request.

### D.  Opinion 4 must be excluded because it is neither relevant nor helpful to the trier of fact.

With Opinion 4, Ms. Thelian opines that each one of the 5,490 claims that were denied using denial code 0369—which she describes as "services not performed"—was "incorrect" because "documentation in the laboratory reports support the billed services."[63]

This testimony is improper for two reasons: (1) whether the services were, in fact, performed is not relevant to the denial reason and not helpful to the trier of fact; and (2) the relevant question—whether the services were properly denied because the claims misrepresented that the services were medically necessary—is not a subject that Ms. Thelian is qualified to opine on.

Without any basis, Ms. Thelian represents that any claims denied using denial code 0369 were denied because "services" were "not performed" and, in turn, opines that this is "incorrect" because the "documentation supports the services for which the Labs billed." She cites no documents, testimony, or data that suggests denial code 0369 means services were "not performed." Rather, as she acknowledged during her deposition, the claims data is clear that 0369 bears the following description: "Based upon the information reported or contained in the file, services were not rendered as billed."[64] Indeed, elsewhere in her report, she acknowledges that this is the applicable description for the denial code.[65]

As Cigna's corporate representative explained, the remark description for denial code 0369 can be used to encompass a range of scenarios, from outright fraud (e.g., actually not performing the services), to abusive practices (e.g., misrepresenting the services performed),

---

[63] *Id.* at 20.
[64] Ex. 3, Thelian Dep. at 98:23-99:3.
[65] Ex. 1, Thelian Rep. at 6.

to including an incorrect code to describe the service rendered.[66] Here, Ms. Thelian acknowledges that the denial code was used to deny claims following Cigna's medical director's review and analysis of the Labs' services and conclusion that the drug testing services were not "medically necessary."[67] There is no evidence that Cigna denied any claims because Cigna believed the services were not being performed. Nevertheless, Ms. Thelian ignores the medical necessity issue altogether and incorrectly assumes that the denial was because the services were "not performed."

Because the reason for the denial was not whether the services were performed, her opinion that the services were, in fact, performed is not relevant. And even if it was, the trier of fact does not need "expert" testimony to determine whether the Labs actually performed any drug testing services or not. For these reasons alone, Opinion 4 should be excluded. *See In re Xerox Corp. Sec. Litig.*, 746 F. Supp. at 407; *Rieger*, 427 F. Supp. 2d at 103; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 549-50.

Furthermore, Ms. Thelian lacks any reliable basis for her conclusion that the Labs did, in fact, perform all the services for which they billed Cigna on 5,490 individual claims for reimbursement. She claims to have reviewed "laboratory reports" to determine that "documentation supported the CPT codes billed." For support, she cites *a single* example. She does not profess to have reviewed *any* other laboratory reports, medical records, or other supporting documentation that she considered in determining that the Labs performed *all* the services underlying the 5,490 claims she identifies. Her baseless assertion that all the services

---

[66] Ex. 7, Goldfarb Dep. at 116:4-118:11.
[67] Ex. 1, Thelian Rep. at 20-21.

were, in fact, performed lacks any reliable foundation and should be excluded for this additional reason.

Finally, Ms. Thelian appears to attempt to challenge the conclusion of Cigna's Medical Director, Dr. Nicoll, that certain of the Labs' drug testing services were not medically necessary by pointing out that (1) she believes 17 of the 20 patients in sample set of records that Dr. Nicoll reviewed tested positive for more than one drug; and (2) sometimes "qualitative tests could test negative when the drug was actually present but below the limits of detection."[68] She fails to explain how this information is relevant to whether the claims were properly denied or not. But to the extent she is attempting to challenge Dr. Nicoll's conclusion that the Labs' drug testing services were not medically necessary, she is not qualified to do so. Ms. Thelian has no formal higher education at all, much less a medical degree or training. She is wholly unqualified to render an opinion on the medical necessity of drug testing services or any other medical services. She conceded as much in her deposition.[69] Accordingly, any testimony attempting to rebut Dr. Nicoll's conclusions must be excluded. *United States v. Burkich*, No. 1:19-cv-3510-MLB, 2022 U.S. Dist. LEXIS 166165, at *7 (N.D. Ga. Sept. 14, 2022) (finding that an expert was not qualified to opine on medical necessity because she was "not a physician"); *Arista Records LLC*, 2011 U.S. Dist. LEXIS 47416, at *8 (noting that an expert may only testify on subject matters within her expertise).

## II.    **All of Ms. Thelian's opinions are unreliable because they are all based on the invalid assumption that each of the 15,842 claims at issue are "covered" claims.**

In addition to all of the reasons specific to each of Ms. Thelian's four opinions set forth above, all of Ms. Thelian's opinion must be excluded for an overarching reason: They are all

---

[68] *Id.* at 21-22.
[69] Ex. 3, Thelian Dep. at 19:18-20:21; 86:10-15; 145:14-146:7.

based on the invalid assumption that the drug testing services are covered. Ms. Thelian purports to opine on: "(i) the coding, billing, and supporting documentation for the Labs' ***covered*** drug testing claims, and (ii) Cigna's decision to flag and deny reimbursement for the Labs' ***covered*** drug testing claims."[70] In other words, Ms. Thelian's stated objective presupposes that all of the Labs' 15,842 claims at issue are ***covered*** services. Ms. Thelian has no basis to support this underlying assumption.

For any medical claim to be "covered," it necessarily must satisfy several criteria. Among other things, the medical service must be: (1) legitimately ordered by a licensed physician; (2) "medically necessary" for that particular patient; and (3) and satisfy the terms of coverage under the patient's benefit plan and Cigna's coverage policies.[71]

Ms. Thelian admits she did not perform any analysis to determine whether the drug testing services the Labs performed were, in fact, covered services under each patient's benefit plan or insurance policy.[72] She did not review: (1) any individualized physician order forms, (2) any patient treatment records, and/or (3) any patient benefit plans.[73] She did not do anything to independently verify whether each of the drug testing services had been legitimately ordered by a physician and did not analyze whether any of them were medically necessary.[74] She also admits she did nothing to determine whether any of the claims were eligible for reimbursement based on, among other things, the patient's deductible and out-of-

---

[70] Ex. 1, Thelian Rep. at 2 (emphasis added).
[71] Ex. 10, Transcript of Deposition of Robert Boorstein ("Boorstein Dep.") at 114:7-115:6. Ex. 4, Clark Rebuttal at ¶ 19.
[72] Ex. 3, Thelian Dep. at 117:5-25.
[73] *Id.* at 114:12-115:24 (admitting that she did not review medical records or order forms); 117:21-25 (admitting that she did not review the benefit plans).
[74] *Id.* at 19:18-20:21; 39:4-9; 86:10-15; 117:5-15; 145:14-146:7.

pocket maximum amounts.[75]

Ms. Thelian testified that she *assumed* that all 15,842 claims were for "covered" services simply because Cigna had paid claims to the Labs in the past.[76]  But even if Cigna had made payments to the Labs in the past, that is no basis to assume that all subsequent claims for services render to different patients, under different circumstances, belonging to different benefit plans and policies, and subject to difference coverage policies would all be "covered." For this reason alone, Ms. Thelian's analysis is unreliable and should be excluded.  *See, e.g., Robinson v. Sanctuary Rec. Grps., Ltd.*, 542 F. Supp. 2d 284, 292 (S.D.N.Y. 2008) (excluding expert testimony where the expert's methodology was founded on, among other things, "dubious assumptions"); *see also Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 516-17 (E.D.N.Y. 2019) (excluding an expert's opinions as speculative when "his conclusions regarding causation derive[d] solely from" an assumption, unsupported by the record or his own report); *Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 U.S. Dist. LEXIS 150190, at *7 (W.D.N.Y. May 27, 2011) ("When an expert witness relies upon invalid assumptions or demonstrates a lack of inquiry into the relevant facts, the expert witness' testimony will be precluded.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).

## CONCLUSION

Cigna respectfully requests that the Court grant their Motion and exclude the testimony from Ms. Thelian set forth in Opinions 1-4 of her Expert Report.

---

[75] *Id.* at 61:15-24.
[76] *Id.* at 62:25-63:7.

Dated: July 18, 2023                     Respectfully submitted,

                                         **ALSTON & BIRD LLP**

                                         */s/ Edward T. Kang*
                                         EDWARD T. KANG (CT26653)
                                         EMILY COSTIN (PHV No. 10291)
                                         950 F Street, NW
                                         Washington, DC  20004
                                         Telephone:  202-239-3300
                                         Facsimile:  202-239-3333
                                         E-mail:  edward.kang@alston.com
                                         E-mail:  emily.costin@alston.com

                                         KELSEY L. KINGSBERY
                                         (PHV No. 10282)
                                         555 Fayetteville Street, Suite 600
                                         Raleigh, North Carolina 27601
                                         Telephone: 919-862-2200
                                         Facsimile: 919-862-2260
                                         E-mail: kelsey.kingsbery@alston.com

                                         *Attorneys for Connecticut General Life Insurance*
                                         *Company and Cigna Health and Life Insurance*
                                         *Company*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that this day, July 20, 2023, I electronically filed the foregoing using the CM/ECF system, which will automatically effectuate service upon all counsel of record in this matter.

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (No. CT26653)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com

*Counsel for Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company*