# EXHIBIT 20

| | |
|---|---|
| **From:** | Norton, Matthew C W3SIU [/O=CIGNA/OU=CORE/CN=RECIPIENTS/CN=C14859] |
| **Sent:** | 9/1/2015 7:38:22 PM |
| **To:** | Rabinowitz, Philip 2135 [philip.rabinowitz@cigna.com] |
| **Subject:** | RE: IFP_LAB_Customer_Services.xlsx |

Phil,

Going back to what we were on late on Friday, I have an example. If we think about testing for marijuana, cocaine, or other drugs, there are commonly agreed upon times the drugs require to leave the system. Is it possible to provide any guidelines like these? If so, I could layout the billing and illustrate services that are mathematically solid to be not necessary.

Matt


Direct:   860.226.3751
Assistant:   debra-lee.ryniewicz@cigna.com
*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

---

**From:** Rabinowitz, Philip 2135
**Sent:** Monday, August 31, 2015 10:23 AM
**To:** Norton, Matthew C W3SIU
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Thanks Matt.

Actually, I think referencing that OIG guideline on performance of medically unnecessary testing is brilliant! I was not familiar with that one. I can get behind that.

# Redacted - Privilege

One advantage to also addressing from an ordering provider standpoint is that it negates the fraudulent strategy of migrating the lab to a new name/TIN or shifting the work to a new lab.

In consideration of opening another front, we are all familiar with guidelines prohibiting Laboratory Payments to Referring Physicians
http://oig.hhs.gov/fraud/docs/alertsandbulletins/2014/oig_sfa_laboratory_payments_06252014.pdf and many others.
Of course we know that providers are receiving illegal kickbacks for referring to the labs.
Here is an inside look at one scheme involving Sky Toxicology where the referring providers buy a share of the lab in return for kickbacks based on volume of labs referred.
http://www.alcoholismdrugabuseweekly.com/Article-Detail/drug-testing-partnership-lures-treatment-centers-despite-ethics-issues.aspx
Note how they careful they are about running afoul of the feds; "Boatman stressed that no federal money — Medicaid or Medicare — is involved. 'Our business is based off of private insurance,' said Boatman. Pivotal Point files the insurance claims for the tests. 'We don't deal with federal money as far as the partnership model goes,'".
As most, if not all of the IFP premium is federally subsidized, would partnering with the OIG be a possibility?

Our medical necessity denial strategy appears to be effective, as far as it goes, and the volume of records submitted is still well within our capacity to review. That can change at any time, especially if a lab takes an approach to overwhelm us with records. I need to get with appeals to make sure that appeal MDs are familiar with the situation and do not mistakenly approve unnecessary services.


Phil


Philip F. Rabinowitz, M.D. FACP
Medical Director

Care Facilitation Center
3200 Park Lane Drive
Pittsburgh, PA 15275
Ph: (412) 747-7072
Net: 8-747-7072
Mobile: 412-526-5112

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2015 by CIGNA

---

**From:** Norton, Matthew C W3SIU
**Sent:** Monday, August 31, 2015 7:56 AM
**To:** Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Phil,

The idea of denying based on referring physician is an interesting one. We have some good information on who is referring in what volume, so we might be able to work that angle.

If I stick for a minute with the lab approach, please consider the same modeling question framed on Friday afternoon versus the below language that was extracted from the lab letter:

On August 24, 1998, HHS-OIG issued Compliance Program Guidelines for Clinical Laboratories. *See https://oig.hhs.gov/authorities/docs/cpglab.pdf* (hereinafter "Compliance Guidelines"). The fundamental purpose of these the Compliance Guidelines, as articulated by HHS-OIG, is to "establish a culture within a clinical laboratory that promotes prevention, detection and resolution of instances of conduct that *do not conform to Federal and State law, and Federal, State and private payor health care program requirements*." (emphasis added). Among the various Compliance Guidelines set forth by HSS-OIG are the requirements that clinical laboratories:

•communicate "to physicians that claims submitted for service will only be paid if the service is covered, reasonable, and necessary for the beneficiary, given his or clinical conditions. Laboratories should take all reasonable steps to ensure that it is not submitting claims for services that are not covered, reasonable and necessary;"

This guideline indicates to me the lab has a responsibility to provide services that would reasonably considered medically necessary.

Thoughts?

Matt

Direct:   860.226.3751
Assistant:    debra-lee.ryniewicz@cigna.com

*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

---

**From:** Rabinowitz, Philip 2135
**Sent:** Friday, August 28, 2015 5:47 PM
**To:** Norton, Matthew C W3SIU
**Subject:** RE: IFP_LAB_Customer_Services.xlsx

Now I see what you are asking. Sorry for being slow on the uptake.
I'll need to noodle on that for a while.

Even though we know the lab is orchestrating the scam and financially enriching the ordering provider, they have plausible deniability. They ostensibly do not decide how many tests to run or how often to run tests. A provider at the rehab orders the tests, and the lab runs them. Perhaps we can take the process one step back and say that everything one provider orders is medically not necessary so we can exclude payments tracked to them, but I'm not sure we can say the same for the lab, as they are "just following orders".

Phil

Philip F. Rabinowitz, M.D. FACP
Medical Director

Care Facilitation Center
3200 Park Lane Drive
Pittsburgh, PA 15275
Ph: (412) 747-7072
Net: 8-747-7072
Mobile: 412-526-5112

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2015 by CIGNA

---

**From:** Norton, Matthew C W3SIU
**Sent:** Friday, August 28, 2015 5:20 PM
**To:** Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx

PRIVILEGED

Phil,

It is background on your following statement I need to better understand:

*"only medically necessary services can be covered and that, along with the CPU inquiry, is the basis of our denial determinations"*

I understand the above, but would love to be able to drop the data for a single lab into a template to determine what they are doing that is <u>clearly and consistently **not** medically necessary</u>. It seems if we can see from the claim data that, for example, each customer receives 20 quantitative tests every two days we could conclude they are performing services that are not medically necessary. That's the thing I'm trying to get to in my questions.

Thank you for your interest and support. If the above brings anything incremental to mind, please shoot the thoughts my way.

Have a good weekend, Matt

Direct:  860.226.3751
Assistant:  debra-lee.ryniewicz@cigna.com
*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

---

**From:** Rabinowitz, Philip 2135
**Sent:** Friday, August 28, 2015 5:10 PM
**To:** Norton, Matthew C W3SIU
**Subject:** RE: IFP_LAB_Customer_Services.xlsx

Thanks, Matt.

Please continue to include me in discussions re: applying guidelines or med nec review to these drug testing claims, especially as relates to IFP, and I will enlist Dr. Gross as needed.

> # Redacted - Privilege

Thanks for your continued leadership in dealing with this ballooning issue. It has me fired up. I was just down in S. Fla, and I found myself eyeing all of the stripmalls looking for storefront "rehabs". I saw many.

Phil

Philip F. Rabinowitz, M.D. FACP
Medical Director

Care Facilitation Center
3200 Park Lane Drive
Pittsburgh, PA 15275
Ph: (412) 747-7072
Net: 8-747-7072
Mobile: 412-526-5112

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.

Use and distribution limited solely to authorized personnel.
© Copyright 2015 by CIGNA

---

**From:** Norton, Matthew C W3SIU
**Sent:** Friday, August 28, 2015 4:05 PM
**To:** Rabinowitz, Philip 2135; Gross, Michael D HHHH
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


All,

# Redacted - Privilege

Have a good weekend, Matt

Direct:   860.226.3751
Assistant:   debra-lee.ryniewicz@cigna.com
*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

---

**From:** Rabinowitz, Philip 2135
**Sent:** Friday, August 28, 2015 3:16 PM
**To:** Gross, Michael D HHHH; Norton, Matthew C W3SIU
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Let me jump in here.
The October coverage policy https://cignaforhcp.cigna.com/public/content/pdf/coveragePolicies/medical/mm_0513_coveragepositioncriteria_drug_test.pdf basically sets limits, which is an effective way to manage high volume claims with least amount of manual review.

In IFP, we are using a medical necessity approach (language below) and flat out state "**high volume or repetitive testing offers no additional clinical value.**". If your analysis identifies high volume or repetitive testing, I am very comfortable with that being the basis of a denial.


Cigna considers confirmatory (quantitative) laboratory testing medically necessary when all of the following criteria are met:
-the individual's clinical condition, history, examination, and/or prior testing results establish a need for the testing.
-the results of the test will directly impact clinical decision-making and clinical outcome for the individual.

From the information provided, medical necessity is not established and coverage cannot be provided because:
-screening (qualitative) test results are not provided.
-confirmatory testing is not necessary as screening (qualitative) test results are consistent with the individual's condition, history, and examination.
-there is no documentation to suggest that the results of the test will directly impact clinical decision-making.

-there is no documentation to suggest that the results of the test will directly impact the clinical outcome for the individual.
-high volume or repetitive testing offers no additional clinical value.

Phil


Philip F. Rabinowitz, M.D. FACP
Medical Director

Care Facilitation Center
3200 Park Lane Drive
Pittsburgh, PA 15275
Ph: (412) 747-7072
Net: 8-747-7072
Mobile: 412-526-5112

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2015 by CIGNA

---

**From:** Gross, Michael D HHHH
**Sent:** Friday, August 28, 2015 3:13 PM
**To:** Norton, Matthew C W3SIU
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH; Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Generally speaking, when I review these claims, in the majority of cases the clinical information that accompanies these claims are lab test results only. There is either no clinical information or insufficient clinical information (e.g. provider office notes) to explain why testing is being ordered on a frequent basis, and/or how the testing will affect treatment course or clinical outcome.
Mike

**Michael D. Gross MD, MBA, FAAFP**
**Medical Director**
Cigna  HealthCare
**701 Corporate Center Drive**
**Raleigh, NC 27607**

Phone:      919.854.8264 (network 654.8264)

Mobile:    919.943.1701
Fax:           919.854.8541
Fax:           800.748.4136

Email:    Michael.Gross@cigna.com


Please consider the environment before printing this message.

*Confidential, unpublished property of Cigna.*
*Do not duplicate or distribute.*
*Use and distribution limited solely to authorized personnel.*
*© Copyright 2015   Cigna*

---

**From:** Norton, Matthew C W3SIU
**Sent:** Friday, August 28, 2015 3:04 PM
**To:** Gross, Michael D HHHH
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH; Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Michael,

I imagine you are referring to the October 15 rollout of quantitative (8/day, 128/yr.) and qualitative (1/day, 32/yr.). If you are thinking of something else, please let me know.

My question related back primarily to what I heard when we met a few weeks ago. You shared some views that didn't seem to be driven by the future guidelines – things like "when I see this, I know that, so it is denied". I was hoping for some commentary about how often certain things should or should not be done, i.e., separate from the above mentioned generic limits.

Matt


Direct:   860.226.3751
Assistant:   debra-lee.ryniewicz@cigna.com
*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

---

**From:** Gross, Michael D HHHH
**Sent:** Friday, August 28, 2015 3:00 PM
**To:** Norton, Matthew C W3SIU
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH; Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


PRIVILEGED
Matt,
I believe there is a guideline under development and am looking into this further. Will get back to you as soon as I have an answer.
Best regards,
Mike

**Michael D. Gross MD, MBA, FAAFP**
**Medical Director**
Cigna   HealthCare

CONFIDENTIAL

CIGNA19-1326 0327736

701 Corporate Center Drive
Raleigh, NC 27607

Phone:      919.854.8264 (network 654.8264)

Mobile:   919.943.1701
Fax:      919.854.8541
Fax:      800.748.4136

Email:    Michael.Gross@cigna.com

 Please consider the environment before printing this message.

*Confidential, unpublished property of Cigna.*
*Do not duplicate or distribute.*
*Use and distribution limited solely to authorized personnel.*
*© Copyright 2015   Cigna*

---

**From:** Norton, Matthew C W3SIU
**Sent:** Friday, August 28, 2015 12:22 PM
**To:** Gross, Michael D HHHH
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH; Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx

PRIVILEGED

Michael,

I have no qualifications to judge what is necessary and what is not, but believe the pattern/frequency of treatment would say a great deal about whether a particular claim would align with medically necessary services.

**Redacted - Privilege**
**Redacted - Privilege** I believe a pattern of continually testing at excessive levels is material evidence of abuse. On that point about "excessive", can you provide any guidelines as to what billing patterns would be clearly not medically necessary? **Redacted - Privilege**
**Redacted - Privilege**

Matt

Direct:   860.226.3751
Assistant:   debra-lee.ryniewicz@cigna.com
*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

CONFIDENTIAL                                                                                                    CIGNA19-1326 0327737

---

**From:** Gross, Michael D HHHH
**Sent:** Friday, August 28, 2015 11:44 AM
**To:** Norton, Matthew C W3SIU
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH; Rabinowitz, Philip 2135
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


So you are saying that even if a claim for a single DOS appears approvable, it would be inappropriate and should be denied if claim is part of a series of frequent testing, and this table would be a reference to identify those customers receiving inappropriate frequent testing.
Mike

**Michael D. Gross MD, MBA, FAAFP**
**Medical Director**
Cigna  HealthCare
**701 Corporate Center Drive**
**Raleigh, NC 27607**

Phone:         919.854.8264 (network 654.8264)

Mobile:   919.943.1701
Fax:         919.854.8541
Fax:         800.748.4136

Email:    Michael.Gross@cigna.com


 Please consider the environment before printing this message.

*Confidential, unpublished property of Cigna.*
*Do not duplicate or distribute.*
*Use and distribution limited solely to authorized personnel.*
*© Copyright 2015  Cigna*

---

**From:** Norton, Matthew C W3SIU
**Sent:** Friday, August 28, 2015 9:44 AM
**To:** Gross, Michael D HHHH
**Cc:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Michael,

The functional use of this is to understand the overall frequency of testing and then apply that understanding to the discrete claim under review. If you look at most customers in the attachment, you will find they are tested constantly (often daily) for a wide range of drugs. Net, the overall context of the testing regimen provides a broader context of what's happening with the lab and the patient.

Matt

Direct:  860.226.3751
Assistant:  debra-lee.ryniewicz@cigna.com
*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2015 Cigna.*

---

**From:** Gross, Michael D HHHH
**Sent:** Friday, August 28, 2015 9:24 AM
**To:** Grace, Ryan P W3SIU; Pendergast RN BSN, Rebecca (Becky) HHHH
**Cc:** Norton, Matthew C W3SIU
**Subject:** RE: IFP_LAB_Customer_Services.xlsx


Good morning,
This is a very comprehensive report. Appreciate the efforts applied to produce this report.
I think this report may be more beneficial to the SIU team looking at this IFP and other related IFP issues.
Any suggestions how this report would be useful to medical management?
Mike

### Michael D. Gross MD, MBA, FAAFP
### Medical Director
Cigna   HealthCare
**701 Corporate Center Drive**
**Raleigh, NC 27607**

Phone:        919.854.8264 (network 654.8264)

Mobile:    919.943.1701
Fax:        919.854.8541
Fax:        800.748.4136

Email:    Michael.Gross@cigna.com

 Please consider the environment before printing this message.

*Confidential, unpublished property of Cigna.*
*Do not duplicate or distribute.*
*Use and distribution limited solely to authorized personnel.*
*© Copyright 2015  Cigna*

---

**From:** Grace, Ryan P W3SIU
**Sent:** Friday, August 28, 2015 9:15 AM
**To:** Pendergast RN BSN, Rebecca (Becky) HHHH; Gross, Michael D HHHH

**Cc:** Norton, Matthew C W3SIU
**Subject:** RE: IFP_LAB_Customer_Services.xlsx

Hi Becky & Michael,

Matt and I discussed the best way to generate and distribute this report to your team. We decided to produce the report bi-weekly and publish to a secure sharepoint or shared drive. At your earliest convenience please provide a list of your team members that will need access to this report. I will submit the access tickets and provide a location to both of you.

Also, feel free to reach out to me directly if you have feedback on the report.

Thanks,

Ryan

_____

**From:** Norton, Matthew C W3SIU
**Sent:** Wednesday, August 26, 2015 4:24 PM
**To:** Gross, Michael D HHHH; Pendergast RN BSN, Rebecca (Becky) HHHH
**Cc:** Nicoll, Daniel (Dan) 685; Grace, Ryan P W3SIU
**Subject:** IFP_LAB_Customer_Services.xlsx

Michael and Becky,

When we spoke last month, I referenced the idea of generating customer profiles to assist in quickly understanding how the frequency of lab testing looks for any given customer. The attached provides that view:

- File includes all customers that have hit the IFP edit
- Rows are lab codes, columns are the services for those lab codes summarized by date of service

I'm thinking of two things here:

1. I'm optimistic this file will make review of the medical records a bit more efficient. Specifically, I'm thinking this view will quickly highlight which code(s) might be most questionable.

2. We would like to understand what numeric guidelines might be appropriate for us to apply to the file. That information could be applied to this file to further improve effectiveness. More importantly, we would also like to understand this point as we can then take the guidelines and apply them to some of the cases that are billing at excessive levels. Said differently, we could leverage the claim data to highlight the proportion of customers for a given rehab/lab to contribute to resolving the case evidence activity.

Please consider both points 1 and 2 above. I'll admit to being somewhat anxious to hear your thoughts on point 2. We have a number of cases flagged due to their incredible ramp in spend, combined with highly unlikely utilization levels (and other factors). I would like to further substantiate the unlikely utilization levels by applying your interpretation of guidelines we could apply to the claim data.

Let me know if anything I've said is unclear, and please let us know if the file is helpful and/or if it can be improved. Incrementally, please provide thoughts on the guidelines.

Thank you, Matt

CONFIDENTIAL                                                                                                                    CIGNA19-1326 0327740

<< File: IFP_LAB_Customer_Services.xlsx >>

CONFIDENTIAL

CIGNA19-1326 0327741