**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>     Plaintiffs,<br><br>v.<br><br>BIOHEALTH MEDICAL LABORATORIES, INC., PB LABORATORIES, LLC, and EPIC REFERENCE LABS, INC.,<br><br>     Defendants. | Case No. 3:19-cv-01324-JCH<br><br>Hon. Janet C. Hall<br><br><br>July 18, 2023 |

**CIGNA'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

GLOSSARY OF TERMS ..................................................................................................... ix

INTRODUCTION .............................................................................................................. 1

RELEVANT BACKGROUND ......................................................................................... 5

    A.    Cigna's plans and network of participating providers. ........................................ 5

    B.    The Labs' drug testing business and relationship with Cigna. ............................ 6

    C.    The Labs' failure to obtain patient consent or an assignment of benefits. ............ 7

    D.    The rise of health-care insurance fraud in the fields of substance use
          disorder treatment and laboratory drug testing. .................................................. 8

    E.    Cigna's SIU investigation into the Labs. ............................................................. 11

PROCEDURAL HISTORY................................................................................................ 12

    A.    The Florida litigation ........................................................................................... 12

    B.    The instant litigation ........................................................................................... 13

LEGAL STANDARD......................................................................................................... 17

ARGUMENT ..................................................................................................................... 17

I.      CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I (FLORIDA
       STATUTORY CLAIM)................................................................................................ 17

    A.    The statutory provisions at issue apply only to claims applicable to Florida
          Individual Policies. ............................................................................................. 18

          1.    The Labs' statutory claims do not apply to any Cigna Group Plans. ....... 18

          2.    The statutory provisions do not apply to any Cigna Individual
               Policies issued in any state other than Florida. ........................................ 18

    B.    Many of the Labs' statutory claims are barred by the statute of limitations........ 19

    C.    For any remaining claims, the Labs have no evidence that Cigna has
          violated any of the three statutory provisions. .................................................... 20

          1.    Fla. Stat. § 627.638 does not apply to any of the claims at issue. ............ 20

          2.    Fla. Stat. § 627.64194 does not apply to any of the claims at issue. ........ 21

3.      There is no evidence that Cigna has violated Fla. Stat. § 627.6131. ........ 23

        a.      There is no private right of action under Fla. Stat. § 627.6131 ................................................................................. 23

        b.      The Labs have no right to receive notice of payment or a denial. ........................................................................................ 24

II.    CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT IV (BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY). ............................ 25

    A.    All claims applicable to ERISA plans must be dismissed from Count IV as preempted. ........................................................................................ 25

    B.    For the remaining claims, Cigna is entitled to summary judgment because there is no evidence that the Labs are third-party beneficiaries. .......................... 28

    C.    For the remaining claims, the Labs have not suffered any damages due to an alleged breach because they have no assignment pursuant to which they are owed any benefits. ........................................................................ 31

    D.    For any remaining claims, Cigna is entitled to summary judgment because there is no evidence that Cigna breached any of the remaining individual Florida policies. ................................................................................. 32

    E.    At a minimum, Cigna is entitled to summary judgment on all claims prior to 2015 because the undisputed evidence confirms Labs were engaged in the practice of fee-forgiving. ....................................................................... 32

        1.    The Cigna Group Plans and Individual Policies prohibit the practice of fee-forgiving. .......................................................... 32

        2.    The Labs did not even attempt to collect payment from patients at all prior to December 15, 2014. ................................................ 33

III.   CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III (*QUANTUM MERUIT*). ................................................................................... 34

        1.    The Labs did not confer a benefit on Cigna. ............................................... 36

        2.    Cigna did not assent to the services at issue. ............................................. 39

        3.    The Labs did not reasonably expect payment. ........................................... 41

        4.    The Labs have no competent evidence regarding the reasonable value of their drug testing. ..................................................... 42

IV.     CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS
        SUBMITTED USING CPT CODES BARRED BY CIGNA'S COVERAGE
        POLICIES. ................................................................................................................ 43

CONCLUSION................................................................................................................ 44

CERTIFICATE OF SERVICE ....................................................................................... 46

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adventist Health Sys./Bunbelt Inc.*,
No. 6:03-cv-1121-Orl-19KRS, 2004 U.S. Dist. LEXIS 30976 (M.D. Fla. Mar. 5, 2004) ...........36

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)......................................................................................................26

*Apex Toxicology, LLC v. United Healthcare Servs., Inc.*,
No. 17-61840-CIV-SMITH, 2020 U.S. Dist. LEXIS 9992 (S.D. Fla. Jan. 17, 2020).............37

*Barix Clinics of Ohio, Inc. v. Longaberger Family of Cos. Grp. Med. Plan*,
459 F. Supp. 2d 617 (S.D. Ohio 2005) ...................................................................24

*Binh Hoa Le v. Exeter Fin. Corp.*,
No. 3:15-CV-3839-L, 2020 U.S. Dist. LEXIS 40115 (N.D. Tex. Mar. 9, 2020) ...................43

*BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*,
706 F. App'x 521 (11th Cir. 2017)......................................................................13

*BioHealth Med. Lab., Inc. v. Conn. Gen. Ins. Co.*,
No. 1:16-cv-20807-KMM, 2016 U.S. Dist. LEXIS 81864 (S.D. Fla. June 23, 2016) ...........13

*BioHealth Medical Laboratory, Inc. v. Connecticut General Life Insurance Co.*,
No. 1:15-CV-23075-KMM (S.D. Fla. Aug. 17, 2015) ...........................................12

*BioHealth Medical Laboratory, Inc. v. Connecticut General Life Insurance Co.*,
No. 1:16-cv-20807-KMM (S.D. Fla. Mar. 4, 2016) .............................................13

*Boca Raton Reg'l Hosp., Inc. v. Celtic Ins. Co.*,
No. 19-80650-CIV-SINGHAL/REINHART, 2020 U.S. Dist. LEXIS 21612 (S.D. Fla.
Feb. 6, 2020) ...........................................................................................36

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*,
No. CV 19-0709 PSG, 2022 U.S. Dist. LEXIS 222580 (C.D. Cal. Dec. 9, 2022) .................33

*Catatonic Invs. Corp. v. Great Am. Assurance Co.*,
No. 14-cv-21621, 2014 U.S. Dist. LEXIS 198456 (S.D. Fla. Nov. 25, 2014) .......................29

*Columna, Inc. v. Aetna Health, Inc.*,
No. 9:19-CV-80522-ROSENBERG/REINHART, 2019 U.S. Dist. LEXIS 155449
(S.D. Fla. Sept. 11, 2019)..........................................................................29

*Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*,
878 F.3d 478 (5th Cir. 2017) .....................................................................33

*Corn v. Greco*,
    694 So. 2d 833 (Fla. 2d DCA 1997) ....................................................................35

*E. Coast Ins. Co. v. Cooper*,
    415 So. 2d 1323 (Fla. 3d DCA 1982) ................................................................19

*Erwin v. Tex. Health Choice, L.C.*,
    187 F. Supp. 2d 661 (N.D. Tex. 2022) ..............................................................27

*Feldt v. Sturm, Ruger & Co.*,
    721 F. Supp. 403 (D. Conn. 1989) ...................................................................20

*Found. Health v. Westside EKG Assocs.*,
    944 So. 2d 188 (Fla. 2006) .........................................................................23, 28

*Franklin Law Firm, P.A. v. Stacey*,
    No. 8:19-cv-1839-MSS-AAS, 2021 U.S. Dist. LEXIS 261953 (M.D. Fla. July 6,
    2021) ...............................................................................................................42

*GVB MD, LLC v. United Healthcare Ins. Co.*,
    No. 19-20727-CIV, 2019 U.S. Dist. LEXIS 138264 (S.D. Fla. Aug. 14, 2019) .........39, 40, 41

*GVB MD v. Aetna Health, Inc.*,
    No. 19-22357-CIV-MORENO, 2019 U.S. Dist. LEXIS 200604 (S.D. Fla. Nov. 19,
    2019) ...................................................................................................37, 39, 40

*Hallowes v. Bedard*,
    877 So. 2d 953 (Fla. 5th DCA 2004) ............................................................36, 41

*Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*,
    No. 13-21895-CIV-KING, 2013 U.S. Dist. LEXIS 102007 (S.D. Fla. July 22, 2013) .....18, 38

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)..................................................................................14, 25

*Juliano v. Grand Hyatt N.Y., Inc.*,
    No. 3:17-cv-1080 (VAB), 2018 U.S. Dist. LEXIS 31285 (D. Conn. Feb. 27, 2018).............19

*Kennedy v. Conn. Gen. Life Ins. Co.*,
    924 F.2d 698 (7th Cir. 1991) ........................................................................33

*Lopez v. Reliance Standard Life Ins. Co.*,
    No. 5:15-CV-00125, 2016 U.S. Dist. LEXIS 72676 (W.D.N.C. June 3, 2016) ....................27

*Mayard-Paul v. Mega Life & Health Ins. Co.*,
    No. 01-3488-CIV-MORENO, 2001 U.S. Dist. LEXIS 22256 (S.D. Fla. Dec. 21,
    2001) ...............................................................................................................19

*Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*,
  No. CV 09-5612 GAF, 2011 U.S. Dist. LEXIS 162115 (C.D. Cal. Mar. 8, 2011) ................28

*MSP Recovery, LLC v. Allstate Ins. Co.*,
  No. 15-20788-CIV-SEITZ/TURNOFF, 2015 U.S. Dist. LEXIS 136252 (S.D. Fla.
  Oct. 6, 2015) ...........................................................................................................................29

*N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*,
  No. 1:20-cv-24914-KMM, 2021 U.S. Dist. LEXIS 88901
  (S.D. Fla. May 10, 2021) ..................................................................................................36, 38

*Neurological Surgery, P.C. v. Aetna Health Inc.*,
  511 F. Supp. 3d 267 (E.D.N.Y. 2021) .................................................................................27

*Neurosurgical Consultants of S. Fla., LLC v. Unitedhealthcare Ins. Co.*,
  No. 22-81428-CIV-MATTHEWMAN, 2023 U.S. Dist. LEXIS 73489 (S.D. Fla. Apr.
  27, 2023) ................................................................................................................................37

*Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*,
  802 F.3d 926 (7th Cir. 2015) ...............................................................................................24

*Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*,
  No. 14-81271-CV, 2015 U.S. Dist. LEXIS 61306 (S.D. Fla. May 11, 2015) .......31, 37, 40, 41

*Peacock Med. Lab., LLC v. UnitedHealth Grp. Inc.*,
  No. 14-81271-CV, 2015 WL 5118122 (S.D. Fla. Sept. 1, 2015) ..........................................38

*Principal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*,
  81 F.3d 53 (7th Cir. 1996) ....................................................................................................24

*Read v. Profeta*,
  397 F. Supp. 3d 597 (D.N.J. 2019) .......................................................................................43

*Realuyo v. Diaz*,
  No. 98 CV 7684 (GBD), 2006 U.S. Dist. LEXIS 11420 (S.D.N.Y. Mar. 17, 2006)..............43

*RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*,
  No. 9:18-CV-80171, 2018 U.S. Dist. LEXIS 198515 (S.D. Fla. Nov. 20, 2018) ............37, 39

*Rutledge v. Pharmaceutical Care Mgmt. Ass'n*,
  141 S. Ct. 474 (2020)............................................................................................................14

*Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*,
  465 F. Supp. 3d 1211 (M.D. Fla. 2020).................................................................................22

*Technolojoy, LLC v. BHPH Consulting Servs., LLC*,
  No. 19-23770-CIV, 2022 U.S. Dist. LEXIS 41262 (S.D. Fla. Mar. 8, 2022) ........................34

*ThunderWave, Inc. v. Carnival Corp.*,
    954 F. Supp. 1562 (S.D. Fla. 1997) ..................................................................35

*Travelers Indem. Co. of Ill. v. Royal Oak Enterss, Inc.*,
    359 F. Supp. 2d 1321 (M.D. Fla. 2005) ...........................................................18

*Trs. of Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Benefit Funds v. J. & A.
    Contractors Corp.*,
    No. 14-cv-4935 (KBF), 2014 U.S. Dist. LEXIS 139032 (S.D.N.Y. Sept. 4, 2014) ...............27

*U.S. v. Alan Bostom*,
    (ECF No. 20) ..................................................................................................11

*U.S. v. Joaquin Mendez*,
    (S.D. Fla. July 14, 2017), No. 9:17-cr-80013-DMM (ECF No. 270) ......................................10

*U.S. v. Mark Agresti*,
    (S.D. Fla. June 24, 2022), No. 9:18-cr-80124-RAR (ECF No. 559) ......................................10

*U.S. v. Mark Hernandez*,
    (S.D. Fla. Aug. 17, 2021), No. 1:19-cr-20583-AHS (ECF No. 162) ......................................10

*U.S. v. Michael Ligotti*,
    (S.D. Fla. Oct. 4, 2022), No. 9:20-cr-80092-RAR (ECF No. 74) ..........................................10

*U.S. v. Tovah Jasperson*,
    (S.D. Fla. Jan. 12, 2018), No. 9:17-cr-80194-DMM (ECF No. 42) ......................................11

*United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*,
    5 F. Supp. 3d 1350 (S.D. Fla. 2014) ..................................................................18

*Vanguard Plastic Surgery, PLLC v. Aetna Life Ins. Co.*,
    No. 0:22-cv-61853-WPD, 2023 U.S. Dist. LEXIS 51720 (S.D. Fla. Mar. 24, 2023) .............37

*White Constr. Co. v. Martin Marietta Materials, Inc.*,
    633 F. Supp. 2d 1302 (M.D. Fla. 2009) ...........................................................35

*Worldwide Aircraft Servs., Inc. v. United Healthcare Ins. Co.*,
    No. 8:18-cv-2549-T-24 TGW, 2018 U.S. Dist. LEXIS 210746 (M.D. Fla. Dec. 14,
    2018) ...............................................................................................................19

*Wright v. N.Y. State Dep't of Corr.*,
    831 F.3d 64 (2d Cir. 2016) ...............................................................................17

**RULES**

Fed. R. Civ. P. 56 .................................................................................................1, 17

## STATUTES

29 U.S.C. § 1144 (1975) ............................................................................................26

29 U.S.C. § 1333 ..................................................................................................14, 26

ERISA § 514 ...................................................................................................14, 18, 26

ERISA § 1002 ..........................................................................................................5

ERISA § 1003 ..........................................................................................................5

Fla. Stat. Ann. § 627.601 ...........................................................................................18

Fla. Stat. Ann. § 627.602 ...........................................................................................18

Fla. Stat. § 95.11(2)(b) ...............................................................................................20

Fla. Stat. § 395.002 ....................................................................................................22

Fla. Stat. § 627.638 ............................................................................................. passim

Fla. Stat. § 627.6131 ........................................................................................... passim

Fla. Stat. § 627.64194 ......................................................................................... passim

Patient Protection and Affordable Care Act, 111 P.L. No. 148, Part 1 of 3, 124 Stat. 119 (2010)....................................................................................................................8

Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 29 U.S.C. § 1185a (2012) ..............................................................................8

## OTHER AUTHORITIES

*Palm Beach County Sober Homes Task Force Report, Identification of Problems in the Substance Abuse Treatment and Recovery Residence Industries with Recommended Changes to Existing Laws and Regulations*, SA15.STATE.FL.US, http://www.sa15.state.fl.us/stateattorney/SoberHomes/_content/SHTFReport2017.pdf (Jan. 1, 2017).......................................................................................................9

*Southern District of Florida Charges 124 Individuals Responsible for $337 million in False Billing as Part of National Healthcare Fraud Takedown,* JUSTICE.GOV, https://www.justice.gov/usao-sdfl/pr/southern-district-florida-charges-124-individuals-responsible-337-million-false-billing (June 28, 2018) ........................................10

*Understanding the Opioid Overdose Epidemic*, CDC.GOV, https://www.cdc.gov/opioids/basics/epidemic.html (last visited July 10, 2023).......................8

## GLOSSARY OF TERMS

| Plan Type | Definition | Examples |
|---|---|---|
| ERISA plans | Group benefit plans sponsored by private employers that are governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). | Ex. 50, American Nutrition, Inc. Plan<br><br>Ex. 51, Home Depot, Inc. Plan |
| Self-funded plans | Plans for which employers assume direct financial responsibility for the costs of the employee's claims. For these plans, Cigna acts as a third-party administrator and not an insurer. | Ex. 50, American Nutrition, Inc. Plan |
| Fully-insured plans | Plans for which a Cigna entity assumes direct financial responsibility for the costs of the members' claims. These plans can be individual policies or group plans. | Ex. 55, LS Power Development, LLC Plan |
| Group plans | Group benefit plans that provide benefits to employees. Group plans include both (1) plans sponsored by private employers and governed by ERISA; and (2) plans that provide benefits to government employees (city, county, and state), church employees, and employees of non-profit organizations and not governed by ERISA. | Ex. 50, American Nutrition, Inc. Plan<br><br>Ex. 51, Home Depot, Inc. Plan<br><br>Ex. 52, Miami-Dade County Public Schools<br><br>Ex. 53, Fairfax County Government |
| Individual policies | Policies for individuals and families that can be purchased on the private market. These policies are issued by state and are not governed by ERISA. | Ex. 54, Georgia myCigna Health Flex 1500 Individual Plan.<br><br>Ex. 56-O, Florida myCigna Health Flex 1500-200 Plan |
| Non-Florida plans and policies | Any group plan or individual policy not issued in Florida | Ex. 50, American Nutrition, Inc. Plan<br><br>Ex. 51, Home Depot, Inc. Plan<br><br>Ex. 54, Georgia myCigna Health Flex 1500 Individual Plan |
| Florida plans and policies | Any group plan or individual policy issued in Florida | Ex. 56-J, Florida myCigna Copay Assure Silver-200 Plan |

Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (together, "Cigna") hereby submit this memorandum in support of their motion under Fed. R. Civ. P. 56 and Local Rule 56 for summary judgment in Cigna's favor on each of the remaining counts asserted in BioHealth Medical Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PBL"), and Epic Reference Labs, Inc.'s ("Epic") (together, the "Labs") First Amended Complaint against Cigna.[1]

## INTRODUCTION

After almost a decade of litigation, the evidence uncovered in this action confirms the Labs had no basis to file suit against Cigna in the first place. The Labs are commercial toxicology laboratories in South Florida that claim to have performed drug testing services many years ago for which they contend Cigna is required to pay. The Labs have no contract with Cigna regarding reimbursement for health-care services. Instead, coverage and reimbursement for such services are determined by the terms of the benefit plans and individual policies that Cigna insures and/or administers. For several reasons, the drug testing services the Labs claim to have performed are not reimbursable under those plans.

Nearly eight years ago, two of the Labs sued Cigna in federal court in Florida seeking reimbursement under those Cigna plans through the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Florida district court correctly dismissed the case in its entirety due to, among other reasons, the Labs' failure to exhaust their administrative remedies under the Cigna plans before filing suit in federal court. That order was affirmed by the Eleventh Circuit. The Labs did not comply with the district or appellate court orders.

---

[1] First Amended Complaint ("FAC"), filed in Case No. 19-cv-1326, ECF No. 47.

Instead, two years later, the Labs filed the instant suit, again demanding reimbursement from Cigna for drug testing services. This time, to avoid the administrative exhaustion requirement, the Labs asserted claims under Florida common and statutory law and expressly disclaimed any relief under ERISA. In a transparent and futile attempt to escape ERISA preemption, the Labs claim they are not seeking relief on behalf of any patients from whom they have a valid assignment of the patient's benefits under their Cigna plan or policy. But the Labs' corporate representative confirmed that the assignment of benefits form is the *only* means through which the Labs ever obtained consent from the patient to perform the drug testing services in the first place. Thus, for the claims at issue in this case, the Labs admittedly have ***no*** valid assignment of their patient's benefits under any Cigna plan or policy, ***no*** contract directly with Cigna, and ***no*** consent from their patients to perform the services to begin with. Nevertheless, the Labs filed this lawsuit demanding tens of millions of dollars from Cigna based on purported statutory violations and equitable principles.

Following the Court's order dismissing the Labs' claims in large part,[2] only the following three causes of action remain:

- Violations of Fla. Stat. § 627.638, Fla. Stat. § 627.64194, and Fla. Stat. § 627.6131 to the extent the claims are governed by non-ERISA plans and policies only (**Count I**);

- Breach of contract based on a third-party beneficiary theory to the extent the foregoing statutory provisions are incorporated into the Cigna plans and policies (**Count IV**); and

- *Quantum meruit* (**Count III**).

After nearly two years of discovery, the undisputed evidence confirms that Cigna is entitled to summary judgment on all three claims.

---

[2] Ruling on Motion to Dismiss, filed in Case No. 19-cv-1326, ECF No. 83 (the "MTD Order").

With respect to the Florida statutory claims (Count I), Cigna is entitled to summary judgment because the evidence confirms that Cigna did not violate any one of the three statutory provisions. As an initial matter, the Labs' statutory causes of action apply only to a fraction (roughly 30%) of the Labs' approximately $20 million worth of claims because the plain language of Chapter 627 limits its reach to individual insurance policies issued in or for delivery in Florida. ERISA plans, group plans, and plans issued in other states are outside the scope. Cigna is entitled to summary judgment on all claims beyond the scope of the statute.

Second, as a matter of law, two of the three sections of Chapter 627 that the Labs invoke do not even apply to the Labs' claims. Fla. Stat. § 627.638 simply prohibits insurers from including anti-assignment provisions in their insurance policies. Here, none of the Florida individual policies includes an anti-assignment provision. Similarly, Fla. Stat. § 627.64194 applies only to claims for non-emergency services provided "in a facility that has a contract for the nonemergency services with the insurer." The Labs do not meet the statutory definition of "facility" and concede they have no contract with Cigna.

Finally, the undisputed evidence confirms that Cigna did not violate the third Florida statutory provision, the Florida Prompt Pay Act (Fla. Stat. § 627.6131 (2008)). The Labs claim that Cigna violated this provision by failing to respond altogether to certain claims. The Labs have identified $9,812,173 worth of claims for which they believe Cigna did not respond. Here again, Cigna is entitled to summary judgment on all claims that are governed by non-Florida individual Cigna plans—which constitute more than 92% of the Labs' claimed damages associated with the Florida Prompt Pay Act. For the less than 8% of the remaining claims, the Labs are still not entitled to relief. The statute requires only that Cigna pay the claims or provide notice of its denial. Because the Labs have no assignment, they are not entitled to any notice—the notice would instead be

provided to the patient. And the Labs have no evidence that Cigna failed to timely provide its members with timely notice of payment or denial.

As for the Labs' breach of contract claim based on a third-party beneficiary theory (Count IV), Cigna is also entitled to summary judgment. For this cause of action, the Labs alleged that the same three Florida statutory provisions are incorporated by operation of law into the Cigna policies, and thus Cigna breached those policies by violating the statutory provisions. The claim fails, for the reasons stated above. But even if Cigna had violated the Florida statutes, the undisputed evidence confirms that the Labs—non-participating providers with no assignment of benefits and without consent to perform any health-care services—are not intended third-party beneficiaries of any Cigna plans.

Lastly, Cigna is entitled to summary judgment on the Labs' *quantum meruit* claim (Count III), because the undisputed facts confirm that the Labs cannot establish the required elements. Although the Court permitted this common law claim to proceed at the pleading stage based on alleged "oral promises," discovery has confirmed that no such promises were made. The Labs now concede that their *quantum meruit* claim is based solely on what the Labs describe as a "course of dealing" with Cigna. The evidence shows, however, that the Labs simply billed Cigna for an enormous number of exceedingly expensive drug testing services without ever communicating with Cigna prior to performing the services, without ever obtaining consent from the patients to perform those services, and after Cigna specifically informed the Labs that Cigna would not pay for such medically unnecessary tests. *Quantum meruit* does not exist under these circumstances. The Court should grant judgment in Cigna's favor on all of the Labs' claims once, and for all.

## RELEVANT BACKGROUND

**A.     Cigna's plans and network of participating providers.**

Cigna is a managed care company that, among other things, insures and/or administers group employee health and welfare benefit plans (the "Cigna Group Plans") and individual insurance policies (the "Cigna Individual Policies").[3] Most of the Cigna Group Plans are sponsored by private employers and governed by ERISA, such as plans sponsored by Home Depot, Inc. and American Nutrition, Inc.[4] Other Cigna Group Plans—which provide benefits to government employees (city, county, and state), church employees, and employees of non-profit organizations—are not governed by ERISA.[5] Examples of such non-ERISA group plans include the Fairfax County Government and Miami-Dade County Public Schools plans.[6] In addition, Cigna offers Cigna Individual Policies for individuals and families that can be purchased on the private market, including policies such as the Georgia myCigna Health Flex 1500 Individual Plan.[7] These policies are issued by state and are not governed by ERISA.

Cigna controls health-care costs for its members by, in part, entering into agreements with health-care providers that establish fixed rates for health-care services.[8] In exchange for accepting fixed rates, these "participating" providers (also referred to as "in-network" providers) gain access to members of the Cigna Group Plans and Individual Policies as a source of patients.[9] As part of the agreement, participating providers agree not to bill members for the difference between the

---

[3] *See* Cigna's Local Rule 56(a)(1) Statement of Undisputed Material Facts ("SOF") ¶ 1.

[4] *See* SOF ¶ 2; ERISA § 1002(1). *See, e.g.,* Ex. 50, CIGNA19-1326 0076590 (American Nutrition, Inc. plan); Ex. 51, CIGNA19-1326 0023966 (Home Depot. Inc. plan).

[5] *See* SOF ¶ 3; ERISA § 1002(32)-(33). *See also* ERISA § 1003.

[6]. *See, e.g.,* Ex. 52, CIGNA19-1326 0008923 (Miami-Dade County Public Schools Plan); Ex. 53, CIGNA19-1326 0008988 (Fairfax County Government plan).

[7] *See* SOF ¶ 4. *See, e.g.,* Ex. 54, CIGNA19-1326 0011383 (Georgia individual policy); Group Ex. 56 (Florida individual policies).

[8] *See* SOF ¶ 5.

[9] *See* SOF ¶ 5.

agreed-upon rates and the provider's billed charges.[10] Moreover, the Cigna Group Plans and Individual Policies generally require members to pay less in "cost-share" obligations (e.g., co-payments, co-insurance, and deductibles) when the member uses a participating provider as opposed to a non-participating provider.[11] Non-participating providers, by contrast, have no agreement with Cigna regarding rates for health-care services.[12] Instead, non-participating providers can charge and bill Cigna and the members at rates the providers set independently.[13] Coverage and reimbursement for services rendered by non-participating providers is determined by the terms of the Cigna Group Plans and Individual Policies.[14]

**B.    The Labs' drug testing business and relationship with Cigna.**

The Labs were commercial toxicology laboratories that performed urine and blood drug testing services.[15] Between February 2012 and January 2013, Medytox Solutions, Inc. ("Medytox"), through a wholly-owned subsidiary acquired or formed each of the Labs.[16] Neither Medytox's CEO nor VP of Operations had any prior experience working in healthcare.[17] On August 22, 2011, Medytox also acquired Medical Billing Choices, Inc. ("MBC") to perform insurance billing and collection services for the Labs.[18]

The Labs' primary clients were substance abuse treatment facilities and sober homes.[19] Accordingly, most of the patients for whom the Labs performed drug testing services were patients

---

[10] *See* SOF ¶ 6.
[11] *See* SOF ¶ 7.
[12] *See* SOF ¶ 8.
[13] *See* SOF ¶ 9.
[14] *See* SOF ¶ 10.
[15] *See* SOF ¶ 13.
[16] *See* SOF ¶ 14.
[17] *See* SOF ¶ 15.
[18] *See* SOF ¶ 16.
[19] *See* SOF ¶ 17.

receiving treatment for substance use disorders or residing in a substance-free residence.[20] The Labs had a team of sales representatives who were responsible for obtaining business from these substance abuse treatment facilities and sober homes.[21] If a facility or sober home agreed to have the Labs perform drug testing for patients residing at the facility or sober home, the Labs would require the client complete a client registration form and a recurring provider standing order form.[22] On this form, the client could select from a panel of drug tests to be performed on urine specimens from the client's patients.[23]

## C.  The Labs' failure to obtain patient consent or an assignment of benefits.

At all times, the Labs were non-participating providers with Cigna.[24] Accordingly, coverage and reimbursement for the Labs' drug testing services was determined by the Cigna Group Plans or Individual Policies.[25] Before performing drug tests on a patient's specimen, the Labs did not have any communications with Cigna about the tests the Labs planned to perform, nor did they verify whether the applicable Cigna Group Plan or Individual Policy would even cover such tests.[26] The Labs also had no direct communications with any of the patients whose specimen they were testing before running any tests, nor did they communicate to the patients how much the Labs would charges for those tests.[27]

In some instances, the facilities where the patients were residing had the patients execute a "patient consent" form.[28] The form was a single combined document that contained both a consent

---

[20] *See* SOF ¶ 17.
[21] *See* SOF ¶ 18.
[22] *See* SOF ¶ 19.
[23] *See* SOF ¶ 19.
[24] *See* SOF ¶ 20.
[25] *See* SOF ¶ 21.
[26] *See* SOF ¶ 23.
[27] *See* SOF ¶ 24.
[28] *See* SOF ¶ 25.

for the Lab to perform drug testing services and an assignment of the patient's benefits to the Lab

that was performing services:[29]



According to the Labs' corporate representative, this assignment of benefit form was the

*only* manner in which the Labs obtained the patient's consent.[30] Because the Labs concede they

have no valid assignment from any patient at issue in this litigation, they necessarily have no

patient consent either.[31] In other words, for each of the claims in this lawsuit for which the Labs

seek to recover payment from Cigna, the Labs admittedly obtained no consent from any patient to

perform the drug tests for which the Labs billed Cigna, nor did they obtain a valid assignment of

the patient's health-care benefits.[32]

**D.     The rise of health-care insurance fraud in the fields of substance use disorder
treatment and laboratory drug testing.**

Beginning around 2010, opioid abuse evolved into a national crisis.[33] Around the same

time, Congress passed the Affordable Care Act and Mental Health Parity Act, expanding insurance

---

[29] *See* SOF ¶ 26. *See also* Ex. 21, LABS00550343, at LABS00550397 (excerpted below).

[30] *See* SOF ¶ 27.

[31] *See* SOF ¶ 28-29.

[32] *See* SOF ¶ 28-29.

[33] *See* Ex. 36, *Understanding the Opioid Overdose Epidemic*, CDC.GOV, https://www.cdc.gov/opioids/basics/epidemic.html (last visited July 10, 2023) (noting that the second wave of the opioid crisis began in 2010).

coverage to millions of people for substance abuse treatment.[34] The combination of these developments paved the way for an unprecedented rise in health-care fraud in the field of substance abuse treatment—particularly in South Florida. According to a report by the state attorney for Palm Beach County, the "economic environment of substance abuse treatment in Florida, primarily in the private sector, create[d] the opportunity for abuse: overbilling for services, most notably confirmatory and quantitative urinalysis testing (UA)."[35] The report explains how treatment providers began to "sign off" on "tens or hundreds of thousands of dollars in insurance claims for confirmatory and quantitative [urine analysis] and other laboratory testing for an individual patient over the course of treatment" that were not medically necessary, and "in many instances," were "never reviewed by the ordering physician."[36]

As the head of MBC (the Labs' billing company), Mike Nicholson testified at his deposition that " . . . [Labs] could bill confirmation, you could bill screens. You could – wild wild west is what it was and that's why we are sitting here today."[37] According to Mr. Nicholson, when he began billing for the Labs, he was "in shock that the insurance companies are paying this for a blood test."[38] As he explained, "[w]hen [he was] billing for a surgery center who is taking out somebody's appendix and they are getting 600 bucks and I'm seeing a urine sample come in and

---

[34] Patient Protection and Affordable Care Act, 111 P.L. No. 148, Part 1 of 3, 124 Stat. 119 (2010); Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 29 U.S.C. § 1185a (2012).
[35] *See* Ex. 37, *Palm Beach County Sober Homes Task Force Report, Identification of Problems in the Substance Abuse Treatment and Recovery Residence Industries with Recommended Changes to Existing Laws and Regulations*, sa15.state.fl.us, http://www.sa15.state.fl.us/stateattorney/SoberHomes/_content/SHTFReport2017.pdf (Jan. 1, 2017) (hereinafter "Palm Beach Task Force Report").
[36] *See id.*
[37] SOF ¶ 30.
[38] SOF ¶ 31.

they are paying 3,000, that's why I was shocked."[39]  By way of example, for just a single patient during the time period at issue in this lawsuit, BioHealth billed Cigna $341,947 over the course of just three months solely for urine drug testing.[40]

In response to these circumstances, the state attorney for Palm Beach County convened a task force to combat abusive insurance billing practices, including routinely billing for medically unnecessary urine drug tests.[41] In addition, the Department of Justice launched the largest ever national health-care fraud enforcement action by the Medicare Fraud Strike Force.[42]  As part of that initiative, the U.S. Attorney's Office for the Southern District of Florida alone criminally charged more than a hundred individuals for their participation in the health-care fraud scheme.[43] Among other crimes, numerous physicians were indicted for knowingly ordering medically unnecessary urine drug tests for substance abuse treatment patients.[44] In fact, at least four physicians that ordered tests performed by the Labs were convicted of or pled guilty to health-care fraud for ordering medically unnecessary drug tests, including Dr. Michael Ligotti, Dr. Mark Agresti, Dr. Joaquin Mendez, and Dr. Mark Hernandez.[45] In addition, the owners of one of the

---

[39] SOF ¶ 31.

[40] SOF ¶ 32.

[41] Ex. 37, Palm Beach Task Force Report.

[42] Ex. 38, *Southern District of Florida Charges 124 Individuals Responsible for $337 million in False Billing as Part of National Healthcare Fraud Takedown,* JUSTICE.GOV, https://www.justice.gov/usao-sdfl/pr/southern-district-florida-charges-124-individuals-responsible-337-million-false-billing (June 28, 2018).

[43] *Id.*

[44] *Id.*

[45] Ex. 39, Plea Agreement, *U.S. v. Michael Ligotti* (S.D. Fla. Oct. 4, 2022), No. 9:20-cr-80092-RAR (ECF No. 74); Ex. 40, Plea Agreement, *U.S. v. Joaquin Mendez* (S.D. Fla. July 14, 2017), No. 9:17-cr-80013-DMM (ECF No. 270); Ex. 41, Plea Agreement, *U.S. v. Mark Hernandez* (S.D. Fla. Aug. 17, 2021), No. 1:19-cr-20583-AHS (ECF No. 162); Ex. 42, Amended Judgment, *U.S. v. Mark Agresti* (S.D. Fla. June 24, 2022), No. 9:18-cr-80124-RAR (ECF No. 559); Ex. 43, LABS00566365 (test order from Michael Ligotti); Ex. 44, LABS00573536 (test order from Joaquin Mendez); Ex. 45, LABS00513351 (test order from Mark Hernandez); Ex. 46, LABS00574122 (test order from Mark Agresti).

Labs' largest clients, Angel's Recovery, pled guilty to conspiracy to commit health-care fraud.[46] The owners, Tara Jasperson and Alan Bostom, admitted to paying kickbacks and bribes for patients and submitting fraudulent claims for medically unnecessary drug testing.[47]

**E.    Cigna's SIU investigation into the Labs.**

On February 22, 2013, Cigna's SIU received a referral from a client regarding suspicious billing patterns by PBL.[48] In April 2013, Cigna's SIU opened an investigation into PBL's billing practices, including a review of medical records underlying certain claims for reimbursement to Cigna.[49] In September 2013, Cigna's SIU determined that PBL was performing medically unnecessary drug testing services.[50] On October 30, 2013, Cigna's SIU informed PBL during a phone call of the results of Cigna's investigation and that a "Cigna medical director reviewed information supplied by [PBL] and determined that the information provided within the record documentation did not substantiate the claim information billed to Cigna."[51]

Subsequently, in April 2014, Cigna's SIU began investigating PBL for waiving its patients' cost-share obligations (a practice referred to as "fee-forgiving"), which is prohibited by the Cigna Group Plans and Individual Policies.[52] In December 2014, Cigna's SIU concluded that PBL was engaged in the practice of fee-forgiving and informed PBL on December 12, 2014, that Cigna

---

[46] Ex. 47, Judgment, *U.S. v. Tovah Jasperson* (S.D. Fla. Jan. 12, 2018), No. 9:17-cr-80194-DMM (ECF No. 42); Ex. 47, Factual proffer, *U.S. v. Tovah Jasperson* (ECF No. 17); Ex. 48, Judgment, *U.S. v. Alan Bostom* (S.D. Fla. Jan. 12, 2018), No. 9:17-cr-80194-DMM (ECF No. 43); Ex. 48, Factual proffer, *U.S. v. Alan Bostom* (ECF No. 20). *See also* Ex. 49, LABS00415302; Ex. 30 Lagan I Dep. 275:25-279:5.
[47] *Id.*
[48] *See* SOF ¶ 41.
[49] *See* SOF ¶ 42.
[50] *See* SOF ¶ 43.
[51] *See* SOF ¶ 44.
[52] *See* SOF ¶ 46.

expected PBL to submit documentary proof of customer payment as required by the Cigna Plan when PBL submitted claims for medical benefits to Cigna.[53]

Separately, in December 2013, Cigna's SIU was independently notified of a complaint from one of its customers regarding an enormous volume of charges associated with BioHealth and Angel's Recovery.[54] In April 2014, Cigna began investigating BioHealth and subsequently determined that BioHealth was also engaged in fee-forgiving.[55] On May 28, 2015, Cigna informed BioHealth of its findings.[56] Cigna also investigated Epic for fee-forgiving but did not deny any claims from Epic on this basis in light of strategic considerations due to litigation that Epic's sister companies, BioHealth and PBL, had initiated against Cigna.[57]

## PROCEDURAL HISTORY

### A.    The Florida litigation

On August 17, 2015, BioHealth and PBL sued Cigna in the United States District Court for the Southern District of Florida, alleging that Cigna had not properly paid claims for reimbursement.[58] On February 1, 2016, the District Court dismissed the complaint for failure to state a claim for several reasons, including failure to exhaust administrative remedies prior seeking relief under ERISA.[59] Thereafter, BioHealth and PBL appealed.[60]

---

[53] *See* SOF ¶ 47.
[54] *See* SOF ¶ 48.
[55] *See* SOF ¶ 49.
[56] *See* SOF ¶ 50.
[57] *See* SOF ¶ 51.
[58] Complaint, *BioHealth Medical Laboratory, Inc. v. Connecticut General Life Insurance Co.*, No. 1:15-CV-23075-KMM (S.D. Fla. Aug. 17, 2015), ECF No. 1 ("*BioHealth I*").
[59] BioHealth I, No. 1:15-cv-23075-KMM, 2016 U.S. Dist. LEXIS 11466 (S.D. Fla. Feb. 1, 2016).
[60] Notice of Appeal, *BioHealth I*, No. 1:15-cv-23075-KMM (S.D. Fla. Mar. 2, 2016), ECF No. 34.

On March 4, 2016, while the appeal was pending, BioHealth and PBL filed another, nearly identical complaint in the Southern District of Florida.[61] On June 23, 2016, the District Court dismissed the second action for lack of subject-matter jurisdiction, determining that the claims were the "mirror image" to those raised in the first action, over which the Eleventh Circuit had jurisdiction.[62] In September 2017, the Eleventh Circuit vacated the District Court's decision in part but affirmed the part of the decision which dismissed the claims for failure to exhaust administrative remedies as required to bring an ERISA claim.[63]

## B.    The instant litigation

Approximately two years later, the Labs commenced the present action, this time asserting common law and statutory claims under Florida law. In an effort to avoid the administrative exhaustion requirement under ERISA, the Labs "expressly excluded" any relief under ERISA and specifically alleged that they seek payment only for claims for which they lack standing under ERISA because they "lack any valid assignment of benefits."[64] In other words, the Labs sought relief only for claims for which they have no valid assignment from their patients to receive payment under the Cigna Group Plans or Individual Policies.

The Labs alleged that they provided drug testing services to Cigna's "subscribers and beneficiaries" and that Cigna failed to pay for the services.[65] According to the Labs, in some instances, Cigna did not respond at all to the Labs' invoices. This alleged failure to respond, the Labs contend, is a violation of Fla. Stat. § 627.6131. The Labs argue that a failure to respond to a

---

[61] *BioHealth Medical Laboratory, Inc. v. Connecticut General Life Insurance Co.,* No. 1:16-cv-20807-KMM (S.D. Fla. Mar. 4, 2016) *("BioHealth II").*
[62] *BioHealth Med. Lab., Inc. v. Conn. Gen. Ins. Co.*, No. 1:16-cv-20807-KMM, 2016 U.S. Dist. LEXIS 81864 (S.D. Fla. June 23, 2016).
[63] *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521 (11th Cir. 2017).
[64] FAC ¶¶ 39-40.
[65] FAC ¶¶ 13-20.

claim within 120 days creates an "uncontestable obligation" to pay the claim.[66] The Labs asserted claims for (1) a violation of six different Florida statutes (including Fla. Stat. § 627.6131); (2) promissory estoppel/implied contract; (3) *quantum meruit*; and (4) breach of contract as third-party beneficiary.

In September 2021, the Court granted Cigna's motion to dismiss in part, dismissing the Labs' claims for promissory estoppel/implied contract and their claims under three different Florida statutes for failure to state a claim.[67] The court also undertook a rigorous analysis of ERISA preemption under ERISA § 514. At the outset, the Court noted Congress's objective in enacting ERISA to "establish a 'uniform body of benefits law,' reducing the administrative and financial burden of 'complying with conflicting directives' by 'set[ting] various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility . . . ."[68] To that end, the Court stated that "ERISA preempts any state law that 'forc[es] plans to adopt any particular scheme of substantive coverage . . ., govern[s] central matters of plan administration,' or has 'acute, albeit indirect, economic effects' compelling a substantive coverage scheme.'"[69]

The Court determined that the Florida statutes the Labs invoke which "regulate payments to third-party" providers "interfere with the uniformity of plan administration."[70] In fact, the Court noted that ERISA has its own rules and regulations regarding notice "to participants or beneficiaries regarding denial of their insurance claims."[71] Further, "the Florida statutes on which the Laboratories rely risk 'compel[ling] certain action (prompt benefit determinations and

---

[66] FAC ¶ 46.
[67] MTD Order at 40 (dismissing claims under Fla. Stats. §§ 627.662, 627.3154, and 641.3155).
[68] *Id.* at 12 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)).
[69] *Id.* (citing *Rutledge v. Pharmaceutical Care Mgmt. Ass'n*, 141 S. Ct. 474, 480, 482 (2020)).
[70] *Id.* at 12-13.
[71] *Id.* at 14 (citing 29 U.S.C. § 1333).

payments) by plans and their administrators' and 'impact the amount paid to beneficiaries in the case of late payment or notice.'"[72]

Based on this reasoning, the Court concluded that "to the extent that the Laboratories' state-law statutory claims arise from services provided to beneficiaries of ERISA plans, those claims are preempted and dismissed with prejudice."[73] The Court permitted the Labs' statutory claim to proceed only to the extent the claims arise from "services provided to insureds under privately-purchased insurance."[74]

With respect to the Labs' common law claims, including their *quantum meruit* claim, the Court noted that "[a]s out-of-network providers without contracts and assignments of benefits, [the Labs] plead that they intend for this Court to enforce obligations—implied promises or contracts arising from coverage confirmations by Cigna employees and Cigna's conduct—that are independent of the express terms of ERISA plans or other insurance policies."[75] The Court stated that "the Laboratories' common law claims for relief are based on Cigna's oral promises and conduct—bases for independent promises—and h[e]ld that they do not impermissibly refer to ERISA plans."[76]

With respect to the Labs' claims for breach of contract as a third-party beneficiary (Count IV), the Court observed that the Labs allege that Cigna is a party to "contracts of health insurance with their subscribers," that those "contracts of health insurance were issued under and in compliance with Florida law," and that the Labs are third-party beneficiaries to those contracts.[77]

---

[72] *Id.* at 14.
[73] *Id.*
[74] *Id.* at 14.
[75] *Id.* at 20.
[76] *Id.* at 21.
[77] FAC ¶¶ 78-80.

According to the Labs, under those "contracts of health insurance," Cigna "agreed to make payment to medical providers such as [the Labs]" and failed to do so.[78] The Court determined that, based on these allegations, "Florida law—including Florida Statutes Section [627.]6131(1)—governs the transactions at issue, including the policies Cigna issued to its subscribers."[79] The Court concluded that the Labs had stated a plausible claim for relief in Count IV *only to the extent the Court "read into the insureds' policies a default rule that Cigna was constructively bound by the terms of Section 627.6131*."[80]

During discovery, the Labs provided a list of claims for which the Labs argued they were entitled to payment from Cigna.[81] Cigna requested that the Labs confirm the list included all claims for which the Labs seek recovery.[82] The Labs refused.[83] After multiple meet-and-confers, the Labs finally agreed that they would serve an amended list to the extent they seek recovery for any additional claims.[84] The Labs never served that list. Accordingly, Cigna produced the Cigna Group Plans and Individual Policies applicable to the claims identified on the Labs' original list.

On March 1, 2023, after the close of fact discovery, the Labs' expert witnesses, Christopher Haney, identified the 15,842 claims (and 160,028 individual line-level service charges) for which the Labs contend Cigna wrongfully failed to pay.[85] In addition, the Labs identified 6,458 claims (and 79,714 individual line-level charges) for which the Labs contend Cigna did not respond at all

---

[78] FAC ¶¶ 78, 82.
[79] MTD Order at 39.
[80] *Id.* (emphasis added).
[81] *See* Ex. 2, Plaintiffs' First Set of Interrogs., Req. for Produc. Of Doc., and Reqs. For Admis.
[82] *See* Ex. 6-A, BioHealth's Resp. to Cigna's First Set of Req. for Admis.; Ex. 6-B, PBL's Resp. to Cigna's First Set of Req. for Admis.; Ex. 6-C, Epic's Resp. to Cigna's First Set of Req. for Admis.
[83] *Id.*
[84] Ex. 7, Cigna's June 15, 2022 Letter to Labs' Re Outstanding Discovery Disputes.
[85] Ex. 35, Haney Expert Report, at 5.

(i.e., the claims the Labs believe are subject to Section 627.6131).[86] Several of those claims overlap, resulting in a total of 17,454 unique claims and $23,561,031 at issue.[87] Because the Labs did not identify these claims until after the close of fact discovery, Cigna had neither reason nor opportunity to produce the Cigna Group Plan or Individual Policy applicable to each of the claims the Labs now belatedly claim are at issue.

## LEGAL STANDARD

A motion for summary judgment may be granted where the moving party establishes "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71-72 (2d Cir. 2016).

## ARGUMENT

### I.    CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I (FLORIDA STATUTORY CLAIM).

The Labs claim that Cigna violated three different sections of the Florida code: Fla. Stat. § 627.638, Fla. Stat. § 627.64194, and Fla. Stat. § 627.6131. There is no evidence in the record that Cigna violated any one of them. As an initial matter, these three statutes only apply to a fraction of the claims at issue in this case—claims submitted under Florida Cigna Individual Policies. And even for those claims, the Labs have failed to adduce any evidence that Cigna violated any one of the three provisions.

---

[86] Ex. 35, Haney Expert Report, at 5.
[87] *Id.* at 8.

**A.     The statutory provisions at issue apply only to claims applicable to Florida Individual Policies.**

    **1.     The Labs' statutory claims do not apply to any Cigna Group Plans.**

Part VI of Chapter 627 limits the scope of its application, in relevant part, as follows: "Nothing in this part applies to or affects . . . Any group or blanket policy." Fla. Stat. Ann. § 627.601. Accordingly, any claim the Labs submitted to Cigna on behalf of a patient that belongs to a Cigna Group Plan, as opposed to a Cigna Individual Policy, must be dismissed from Count I. This would include any private employer-sponsored group plan governed by ERISA[88] as well as any non-ERISA group health plans maintained by governmental entities.[89] Thus, all claims submitted pursuant to any ERISA or non-ERISA group plan must be dismissed from this Count as a matter of law.[90] *See Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-CIV-KING, 2013 U.S. Dist. LEXIS 102007, at *8-9 (S.D. Fla. July 22, 2013) (concluding that Part VI of Chapter 627 does not apply to "[a]ny group or blanket policy."); *United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*, 5 F. Supp. 3d 1350, 1364 (S.D. Fla. 2014) (holding that § 627.638 applies only to "individual, and not group, health insurance policies issued for delivery in" Florida).

    **2.     The statutory provisions do not apply to any Cigna Individual Policies issued in any state other than Florida.**

Part VI of Chapter 627, by its own terms, also applies only to a "health insurance policy delivered or issued for delivery to any person in this state." Fla. Stat. Ann. § 627.602. Accordingly, none of the three Florida statutory provisions apply to any policies "delivered or issued for delivery to any person" outside of Florida. *See Travelers Indem. Co. of Ill. v. Royal Oak Enterss, Inc.*, 359

---

[88] The Court already dismissed all claims applicable to an ERISA-governed plan as preempted under ERISA § 514. *See* MTD Order at 20.
[89] *See* SOF ¶¶ 2-3.
[90] *See* SOF ¶ 72.

F. Supp. 2d 1321, 1322 (M.D. Fla. 2005) (interpreting identical language in separate part of Chapter 627 and concluding that the statutory provision did not apply to a policy delivered to insured in Georgia); *Worldwide Aircraft Servs., Inc. v. United Healthcare Ins. Co.*, No. 8:18-cv-2549-T-24 TGW, 2018 U.S. Dist. LEXIS 210746, at *15 (M.D. Fla. Dec. 14, 2018) (dismissing claim by health-care provider under Fla. Stat. § 627.64194(4) where the policy at issue was delivered in Louisiana); *Mayard-Paul v. Mega Life & Health Ins. Co.*, No. 01-3488-CIV-MORENO, 2001 U.S. Dist. LEXIS 22256, at *10 n.4 (S.D. Fla. Dec. 21, 2001) (holding that policy was "delivered or issued for delivery" in Florida where the policy was "delivered to Plaintiff in Florida by an insurance agent."); *E. Coast Ins. Co. v. Cooper*, 415 So. 2d 1323, 1325 (Fla. 3d DCA 1982) (policy was issued for delivery in Florida where is insured's principal place of business was in Florida).

Many of the Cigna Group Plans and Individual Policies applicable to the Labs' claims were not delivered or issued for delivery in Florida.[91] Because the Florida statutory provisions do not apply to any of these claims, Cigna is entitled to summary judgement on all of them.

### B.    Many of the Labs' statutory claims are barred by the statute of limitations.

All claims that were processed on or before July 25, 2014, are barred by the statute of limitations.  In federal diversity suits in Connecticut, the law of the forum state governs matters of procedure. *Juliano v. Grand Hyatt N.Y., Inc.*, No. 3:17-cv-1080 (VAB), 2018 U.S. Dist. LEXIS 31285, at *12 (D. Conn. Feb. 27, 2018). Normally, the statute of limitations is considered procedural. However, there is an important exception to that rule "where the right of action did not exist at common law and the foreign statute of limitations is so interwoven with the statute creating the cause of action that forms the basis of action as to become one of the congeries of elements

---

[91] SOF ¶ 71.

necessary to establish the right . . . ." *Feldt v. Sturm, Ruger & Co.*, 721 F. Supp. 403, 406 (D. Conn. 1989). In such cases, that limitation goes with the cause of action wherever brought. *Id.*

Here, the Labs' cause of action did not exist at common law but rather was created by statute. Thus, Florida's statute of limitations should apply. The only avenue for enforcement of the statutory provisions is through a breach of contract claim as a third-party beneficiary.[92] Under Florida law, claims for breach of contract are governed by a five-year statute of limitations. *See* Fla. Stat. § 95.11(2)(b).

Here, Cigna's data reflects the date on which the claim was processed by Cigna.[93] The Labs filed this action on July 25, 2019. Accordingly, any claims processed more than five years before July 25, 2019 (i.e., July 25, 2014) are time-barred.[94]

### C.    For any remaining claims, the Labs have no evidence that Cigna has violated any of the three statutory provisions.

For the sub-set of remaining claims—those applicable to Florida Cigna Individual Policies that were processed within five years prior to July 25, 2019—there is no evidence in the record that Cigna violated any of the three Florida statutory provisions. The undisputed evidence confirms that the statutes are either entirely inapplicable to the claims at issue or that Cigna did not violate the relevant provisions.

#### 1.    Fla. Stat. § 627.638 does not apply to any of the claims at issue.

Fla. Stat. § 627.638 is an anti-assignment provision that prohibits insurers, under certain circumstances, from including anti-assignment provisions in their health-care policies.  The statute provides as follows:

> Whenever, in any health insurance claim form, an insured specifically authorizes payment of benefits directly to any

---

[92] *See infra*, Section II.
[93] *See* SOF ¶ 12.
[94] *See* SOF ¶ 73.

> recognized hospital, licensed ambulance provider, physician, dentist, or other person who provided the services in accordance with the provisions of the policy, the insurer shall make such payment to the designated provider of such services. ***The insurance contract may not prohibit, and claims forms must provide an option for, the payment of benefits directly to a licensed hospital, licensed ambulance provider, physician, dentist, or other person who provided the services in accordance with the provisions of the policy for care provided***.

Fla. Stat. § 627.638 (emphasis added). On its face, this provision only applies where a provider has obtained an assignment of benefits that a policy has disallowed. Based on the Labs' own allegations, this provision does not apply to the claims at issue. To reiterate, the claims at issue are ones for which the Labs have no *valid* assignment.[95] Because the Labs have expressly carved out of this lawsuit any claims for which they have a valid assignment, this provision cannot apply.[96]

Furthermore, the Labs have no evidence that they submitted any claim at issue in this case that "specifically authorize[d] payment of benefits directly to" the Labs. And even if they had, the Labs have no evidence that any one of Florida Cigna Individual Policies at issue prohibit assignments.[97] Rather they each expressly provide that "[m]edical benefits are assignable to the provider."[98] For all these reasons, Cigna is entitled summary judgment as a matter of law as to the Labs' claim under Fla. Stat. § 627.638.

### 2.    Fla. Stat. § 627.64194 does not apply to any of the claims at issue.

Fla. Stat. § 627.64194 is equally inapplicable. That provision provides, in relevant part, as follows:

> (3) An insurer is solely liable for payment of fees to a nonparticipating provider of covered nonemergency services provided to an insured in accordance with the

---

[95] FAC ¶¶ 37, 39.

[96] Confusingly, the Labs rely on this statutory provision, the purpose of which is to validate any assignments that would otherwise have been invalidated by an anti-assignment provision in a health-insurance contract.

[97] SOF ¶ 64.

[98] *See* SOF ¶ 63.

coverage terms of the health insurance policy, and such insured is not liable for payment of fees to a nonparticipating provider, other than applicable copayments, coinsurance, and deductibles, for covered nonemergency services that are:

   **(a)**   ***Provided in a facility that has a contract for the nonemergency services with the insurer*** which the facility would be otherwise obligated to provide under contract with the insurer; and

   **(b)**   Provided when the insured does not have the ability and opportunity to choose a participating provider at the facility who is available to treat the insured.

. . .

**(4)** An insurer must reimburse a nonparticipating provider of services under subsections (2) and (3) as specified in s. 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy, within the applicable timeframe provided in s. 627.6131.

Fla. Stat. § 627.64194 (emphasis added). In other words, this statute applies to services provided "in a facility that has a contract for the nonemergency services with the insurer" but by a nonparticipating provider because there was no participating provider available at the facility. *See Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1226 (M.D. Fla. 2020). The statute defines "facility" as a "licensed facility" or "urgent care center" pursuant to Section 395.002.[99]   A "licensed facility" is, in turn, defined as a "hospital or ambulatory surgical center licensed in accordance with this chapter,"[100] and an "urgent care center" is defined as "a facility or clinic that provides immediate but not emergent ambulatory medical care to patients."[101]

The Labs do not fall within the scope of this provision because they do not meet the definition of "facility." They are not an urgent care center, a hospital, or an ambulatory surgical center.[102] And even if the Labs did satisfy the definition of "facility," they have never had a "contract for . . . nonemergency services with" Cigna. Indeed, none of them has ever had any

---

[99] Fla. Stat. § 627.64194(b).
[100] Fla. Stat. § 395.002(17) ("licensed facility").
[101] Fla. Stat. § 395.002(30) ("urgent care center").
[102] *See* SOF ¶ 22.

contract at all with Cigna.[103]  *See Surgery Ctr. of Viera, LLC*, 465 F. Supp. 3d at 1226 (dismissing

claim under § 627.64194 because non-participating provider did not have a contract with United

governing the services that were rendered). Because the Labs do not meet the definition of

"facility" and do not have a contract with Cigna, their reliance on this statutory provision fails as

a matter of law.

### 3.     There is no evidence that Cigna has violated Fla. Stat. § 627.6131.

Finally, the undisputed evidence confirms that Cigna has not violated the Prompt Pay Act,

Fla. Stat. § 627.6131. The Labs have identified 6,458 claims to which they contend Cigna never

responded.[104] The Labs allege that this results in an "uncontestable obligation" upon Cigna to pay

each claim pursuant to Section 627.6131.[105]  For the reasons discussed above, Section 627.6131

only applies to 554 of those 6,458 claims (and less than $800,000 in billed charges)[106]—the only

claims governed by a Florida Cigna Individual Policy. For those 554 claims, the evidence confirms

there has been no violation of Fla. Statute § 627.6131.

### a.     There is no private right of action under Fla. Stat. § 627.6131.

As a threshold matter, the Labs' claim must be dismissed because the Florida Prompt Pay

Act does not provide for a private statutory right of action. As the Florida Supreme Court has

declared in analyzing the companion prompt pay provisions applicable to an HMO, "an allegation

that an HMO violated the 'prompt pay provisions' is not sufficient by itself to establish a private

cause of action." *See Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 194 (Fla. 2006).

---

[103] *See* SOF ¶ 20.
[104] SOF ¶ 53.
[105] FAC ¶ 20.
[106] *See* SOF ¶ 69.

"Instead, a party must bring a recognized common law cause of action."[107] *Id.* For this reason alone, Count I must be dismissed to the extent it asserts statutory violations of Fla. Stat. § 627.6131 as a matter of law.

### b.     The Labs have no right to receive notice of payment or a denial.

Even if the Labs did have a private right of action under Fla. Stat. § 627.6131, they have failed to adduce any evidence that Cigna actually violated it. The Labs misapprehend the requirements of the statute. The statute requires only that a claim be "paid or denied within 90 days after receipt of the claim" and that a "[f]ailure to pay or deny a claim within 120 days after receipt of the claim creates an uncontestable obligation to pay the claim."[108]

But when, as here, a non-participating provider does not have a valid assignment of benefits, that provider has no right to receive notice of a denial of a claim. *See Principal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 56 (7th Cir. 1996) ("Of course any such entitlement to notice would depend on there being an assignment and on the insurer or other plan administrator having notice of it."); *Barix Clinics of Ohio, Inc. v. Longaberger Family of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 623 (S.D. Ohio 2005) ("An assignee who has not given proper notice of its status to the plan administrator is not entitled to notice of a denial."). *See also Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 930 (7th Cir. 2015) (distinguishing providers' status as assignees versus members of a voluntary network and holding that because provider was not a beneficiary, it was not entitled to notice procedures).

Instead, any payment or denial notice is only required to be provided to the patient, typically in the form of an explanation of benefits. In other words, where there is no valid

---

[107] The Labs have also asserted violations of Fla. Stat. § 627.6131 as part of its third-party beneficiary contract claim in Count IV. That claim must be dismissed for the reasons discussed in Section II, *infra.*

[108] Fla. Stat. § 627.6131(e).

assignment, the right to receive notice of payment or denial lies exclusively with the patient. As noted, this arrangement is expressly provided for in the Florida Cigna Individual Policies at issue.[109]

Here, the Labs have no valid assignment for any of the claims at issue.[110] The Labs have no evidence that Cigna failed to timely notify its patients of its payment or denial of any one of the 6,458 claims. For this reason alone, the Labs are unable to establish a violation of Fla. Stat. § 627.6131.

## II.    CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT IV (BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY).

With Count IV, the Labs bring a claim for breach of contract based on a "third-party beneficiary" theory.  That is, they contend they are entitled to enforce the terms of the Cigna Group Plans and Individual Policies as "third-party beneficiary" of those contracts. However, in the FAC, the Labs did not identify any provisions in the Cigna Group Plans or Individual Policies that Cigna allegedly breached.  Rather, the Labs' position is that the statutory provisions identified in Count I are incorporated into all of the Cigna Plans.[111] In fact, in the Court's order dismissing in part the FAC, the only "basis" on which the Court determined the Labs had plausibly stated a claim, was through the alleged incorporation of Fla. Stat. § 627.6131.[112] For several reasons, the evidence confirms the Labs cannot establish third-party beneficiary claim in this manner.

### A.    All claims applicable to ERISA plans must be dismissed from Count IV as preempted.

ERISA is a "comprehensive" and "closely integrated regulatory system" that is "designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-*

---

[109] *See* SOF ¶ 11.
[110] FAC ¶ 37-40.
[111] Labs' Brief in Opposition to Motion to Dismiss, No. 3:19-cv-01326 (ECF No. 57), at 23.
[112] MTD Order at 38-39.

*Rand Co.*, 498 U.S. at 137. The primary objective of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To accomplish this, Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (1975) (emphasis added). The term "state law" encompasses not only statutes but also common law causes of action. *See* 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law…."). When a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, any such state law claims will be preempted. *See Davila*, 542 U.S. at 209.

In ruling on Cigna's motion to dismiss, the only plausible basis for a breach of contract claim that the Court discerned in Count IV was the alleged incorporation of the terms of Section 627.6131 into the "policies of insurance" that Cigna issued under Florida law.[113] The Court has already correctly concluded that ERISA preempts Section 627.6131. The Court ruled that the Florida statutes the Labs invoke which "regulate payments to third-party" providers "interfere with the uniformity of plan administration."[114] In fact, the Court noted that ERISA has its own rules and regulations regarding notice "to participants or beneficiaries regarding denial of their insurance claims."[115] Further, "the Florida statutes on which the [Labs] rely risk 'compel[ling] certain action (prompt benefit determinations and payments) by plans and their administrators' and 'impact the amount paid to beneficiaries in the case of late payment or notice.'"[116]

---

[113] MTD Order at 38-39 ("I will read into the insured's policies a default rule that Cigna was constructively bound by the terms of Section 627.6131. On that basis, the Laboratories have stated a plausible claim for relief.").
[114] *Id.* at 12-13.
[115] *Id.* at 13 (citing 29 U.S.C. § 1333).
[116] *Id.* at 14.

Based on this reasoning, the Court concluded that "to the extent that the [Labs'] state-law statutory claims arise from services provided to beneficiaries of ERISA plans, those claims are preempted and dismissed with prejudice."[117] Accordingly, because this Court has already determined that the only contract provision that forms the basis of the Labs' claim in Count IV is preempted by ERISA, Count IV must, as a logical matter, also be dismissed for the same reason.

Moreover, putting aside the Court's prior ruling, a third-party beneficiary contract claim, such as Count IV, is the quintessential state-law claim that is preempted by ERISA. The Labs allege that Cigna is a party to "contracts of health insurance with their subscribers," that those "contracts of health insurance were issued under and in compliance with Florida law," and that the Labs are third-party beneficiaries to those contracts.[118] According to the Labs, under those "contracts of health insurance," Cigna "agreed to make payment to medical providers such as [the Labs]" and failed to do so.[119] Based on these allegations, the Labs' contract claim is not just "related to" the contracts of health insurance at issue, the terms of those contracts form the sole basis for the relief the Labs' seek in Count IV. A third-party beneficiary contract claim, such as this one, is inescapably preempted. *Trs. of Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Benefit Funds v. J. & A. Contractors Corp.*, No. 14-cv-4935 (KBF), 2014 U.S. Dist. LEXIS 139032, at *3 (S.D.N.Y. Sept. 4, 2014) (dismissing third-party beneficiary claim because it was preempted by ERISA); *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 289 (E.D.N.Y. 2021) (holding that third-party beneficiary claims were preempted by ERISA); *Lopez v. Reliance Standard Life Ins. Co.*, No. 5:15-CV-00125, 2016 U.S. Dist. LEXIS 72676, at *15 (W.D.N.C. June 3, 2016); *Erwin v. Tex. Health Choice, L.C.*, 187 F. Supp. 2d 661, 667 (N.D. Tex.

---

[117] *Id.*
[118] FAC ¶¶ 78-80.
[119] FAC ¶¶ 78, 82.

2022); *Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*, No. CV 09-5612 GAF (JCx), 2011 U.S. Dist. LEXIS 162115, at *23 (C.D. Cal. Mar. 8, 2011).

Because the Labs have admitted that Cigna never made any promises to the Labs, there is no "independent obligation" outside the terms of the Cigna Group Plans and Individual Policies.[120] In dismissing in part the Labs' claims, the Court made clear that the Labs' state-law claims can proceed only "to the extent that [they] arise from obligations independent of the express terms of the ERISA plans or other insurance policies."[121] The Court explained that the common law claims do not impermissibly relate to ERISA plans to the extent they "are based on Cigna's oral promises and conduct—bases for independent promises."[122] By their own allegations, the Labs have made clear that Count IV arises from the terms of the Cigna Group Plans and Individual Policies at issue and not some "independent obligation."

For all of these reasons, Count IV is preempted to the extent any of claims arise from ERISA-governed plans.[123] Cigna is entitled to summary judgment on those claims.

### B.    For the remaining claims, Cigna is entitled to summary judgment because there is no evidence that the Labs are third-party beneficiaries.

For any remaining claims not arising from an ERISA-governed plan, Cigna is entitled to summary judgment because the Labs have no evidence that they are third-party beneficiaries of the Florida Cigna Individual Policies at issue. To succeed on a third-party beneficiary claim, the Labs must establish that it was the "clear and manifest intent" of Cigna and its members to "primarily and directly benefit" the Labs with each of the Florida Cigna Individual Policies at issue. *Found. Health*, 944 So. 2d at 194-95 (holding that succeeding on breach of third-party

---

[120] *See* SOF ¶ 62.
[121] MTD Order at 20, 40.
[122] MTD Order at 21.
[123] *See* SOF ¶ 67.

beneficiary claim requires proving "the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party"). Establishing the necessary intent requires proving "that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party." *Catatonic Invs. Corp. v. Great Am. Assurance Co.*, No. 14-cv-21621, 2014 U.S. Dist. LEXIS 198456, at *4 (S.D. Fla. Nov. 25, 2014).

Medical providers, particularly non-participating providers, are not, as a matter of law, third-party beneficiaries of their patients' benefit health-insurance contracts. *See Columna, Inc. v. Aetna Health, Inc.*, No. 9:19-CV-80522-ROSENBERG/REINHART, 2019 U.S. Dist. LEXIS 155449, at *7-8 (S.D. Fla. Sept. 11, 2019) (noting the absence of any "case law to suggest that medical providers are, as a matter of law, third-party beneficiaries to their patients' health insurance contracts."). Rather, to establish their status as a third-party beneficiary, the non-participating provider must identify specific provisions in the contracts which evidence an intent to "primarily and directly benefit" the provider. *Id.* (dismissing third-party beneficiary claim where there were no facts to suggest that non-participating provider was a third-party beneficiary of benefits plans); *MSP Recovery, LLC v. Allstate Ins. Co.*, No. 15-20788-CIV-SEITZ/TURNOFF, 2015 U.S. Dist. LEXIS 136252, at *11 (S.D. Fla. Oct. 6, 2015) (dismissing third-party beneficiary claim by non-participating provider where no evidence of intent).

Here, the Florida Cigna Individual Policies reflect no such intent. Rather, the clear intent of the policies is to benefit the insured by providing benefits for covered services.[124] If any third party is intended to benefit from these plans, it is participating providers. Indeed, under each of the plans, non-participating providers are not even entitled to be paid directly unless the patient

---

[124] *See* SOF ¶ 61.

chooses to assign its rights under the plan to that particular provider.[125] Importantly, there is no evidence that the parties to the contract intended to benefit non-participating providers that performed non-emergency services *without the consent of the patient*. Any suggestion that Cigna or any of its members intended for its insurance policy to benefit providers that render services without the patient's authorization is non-sensical.

Tellingly, during discovery, Cigna specifically and repeatedly requested the Labs to identify the complete factual basis for their position that Cigna and its members had a "clear and manifest intent" to benefit the Labs. The *only* evidence the Labs put forward was the alleged incorporation of Fla. Stat. § 627.6131 into the plans "by operation of law."[126] But that statutory provision does not evidence any intent to benefit non-participating providers, such as the Labs, who have no valid assignment to receive benefits. In fact, the same chapter makes clear that payments need not be made directly to a non-participating provider absent a "specific[] authoriz[ation]" from the insured. *See* Fla. Stat. Ann. § 627.638. Moreover, to the extent that provision was incorporated into any Cigna Group Plans or Individual Policies, it was not as a result of any intent by the parties to the contract but rather, as the Labs admit, "by operation of law."

In short, nothing in the contracts themselves nor the provisions of Fla. Stat. § 627.6131 evidence an intent to benefit the Labs—non-participating providers with no authorization from their patients to receive insurance payments and no consent from the patients to render the services at issue.

---

[125] SOF ¶ 11 ("Payment for services provided by a Non-Participating Provider are payable to the Insured Person unless assignment is made as above.").
[126] SOF ¶ 55.

**C.    For the remaining claims, the Labs have not suffered any damages due to an alleged breach because they have no assignment pursuant to which they are owed any benefits.**

Even if the Labs have standing as a third-party beneficiary to sue for a breach of the Cigna Group Plans or Individual Policies, the Labs have no right to recover any damages. To prevail on a breach of contract claim, the Labs must demonstrate "damages . . .  resulting from the breach." *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 U.S. Dist. LEXIS 61306, at *13 (S.D. Fla. May 11, 2015). If the Labs cannot demonstrate a "right to receive benefits" under the Florida Cigna Individual Policies via an assignment, they have not suffered any damages due to non-payment. *Id.* (dismissing third-party beneficiary claim where laboratory alleged that the treatment center, not the laboratories, had the only applicable assignment of benefits under the patients' benefit plans).

Here, the Florida Cigna Individual Policies make clear that benefits are only payable to a non-participating provider if the provider has an assignment.[127] In other words, under these policies, a non-participating provider has no right to receive benefits without an assignment. Here, the Labs concede they have no valid assignment for the claims at issue. Therefore, they have no contractual right to receive payment from Cigna. Accordingly, to the extent the Labs have no standing to sue for breach of contract as a third party, the only person with the right to receive any benefits owed is the patient, not the Labs. For this reason, even assuming *arguendo* that Cigna breached its insurance contracts, the Labs have suffered no damages as a result.

---

[127] SOF ¶ 11.

**D.     For any remaining claims, Cigna is entitled to summary judgment because there is no evidence that Cigna breached any of the remaining individual Florida policies.**

This Court made clear in its order dismissing in part the FAC that the Labs' third-party beneficiary claim may proceed only to the extent it is based on an alleged violation of Fla. Stat. § 627.6131.[128]  The Labs failed to allege any other provision that was breached, nor did the Court discern one in its ruling. To be sure, Cigna provided the Labs with all of the Cigna Group Plans and Individual Policies applicable to the claims the Labs identified during discovery, yet the Labs *still* did not identify any other provisions that were allegedly breached. In their sworn interrogatory response, the Labs identified only "the provisions codified at Florida Statute Sections 627.6131, 627.638, and 627.64194."[129] And the Labs' corporate representative confirmed the Labs have no additional information to add to their interrogatory responses.[130]

For the reasons discussed in Section I, *supra*, the undisputed evidence confirms that Cigna has not violated any one of these three provisions.

**E.     At a minimum, Cigna is entitled to summary judgment on all claims prior to 2015 because the undisputed evidence confirms Labs were engaged in the practice of fee-forgiving.**

**1.     The Cigna Group Plans and Individual Policies prohibit the practice of fee-forgiving.**

As explained above, "fee forgiving" occurs when a non-participating provider, like the Labs, does not obligate a member to pay its full billed charges and/or when such provider fails to bill, waives, reduces or  "forgives" the member from having to pay any portion of the member's required deductible, coinsurance and/or "balance bill" amounts (i.e., any portion of the billed

---

[128] MTD Order at 38-39.
[129] SOF ¶ 56.
[130] SOF ¶ 63.

charges that exceed the Allowable amount set forth in the member's health-benefit plan).[131]
Because the practice of fee forgiving destroys incentives to seek participating providers and,
ultimately drives up medical costs for plans, Cigna Group Plans and Individual Policies include
language that excludes coverage when a health-care provider does not obligate members to pay
their required portion of the full amount of charges submitted to Cigna (*i.e.*, the patient's cost-
share obligation).[132] Each of the Cigna Group Plans and Individual Policies applicable to the claims
at issue includes the following or substantially similar language excluding from coverage
"[s]ervices for which [the Insured Person] ha[s] no legal obligation to pay or for which no charge
would be made if [the Insured Person] did not have health plan or insurance coverage."[133] Courts
agree that, based on this language, services are not covered if the provider has waived the patient's
cost-share obligation. *See Biomed Pharms., Inc. v. Oxford Health Plans(NY)*, Inc., 522 F. App'x
81, 82 (2d Cir. 2013); *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478,
485 (5th Cir. 2017); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 699 (7th Cir. 1991); *Bristol
SL Holdings, Inc. v. Cigna Health Life Ins. Co.,* No. CV 19-0709 PSG (ADSx), 2022 U.S. Dist.
LEXIS 222580, at *16 (C.D. Cal. Dec. 9, 2022). Accordingly, if the Labs do not attempt to collect
the required deductible or co-insurance from the member or fails to hold the member responsible
for the difference between the insurance allowable and the provider's billed charge, the Labs are
not entitled to reimbursement by the Cigna Group Plan or Individual Policy.

> **2.    The Labs did not even attempt to collect payment from patients at all
> prior to December 15, 2014.**

The evidence confirms that prior to December 15, 2014, the Labs did not send a single bill
to any patient for any amount. According to the Labs' own internal communications, the system

---

[131] SOF ¶ 33.
[132] SOF ¶ 34.
[133] SOF ¶ 35.

used by their billing company, MBC, did not even allow the Labs to generate patient statements.[134] Beginning in January 2014, the Labs invested in a new system that would allow the Labs to generate patient statements.[135] But it took a significant amount of time for that system to be operational.[136] The Labs' Chief Financial Officer submitted a memorandum on December 10, 2014, confirming that as of that date, the Labs have "yet to be able to bill patients for their portion of the services rendered."[137] Email correspondence confirms that even in January 2015, the Labs still had not sent any bills to BioHealth patients.[138]

During discovery, Cigna requested that the Labs produce all statements sent to patients for any services at issue in the case.[139] The Labs failed to produce a single patient statement prior to December 15, 2014.[140] Accordingly, the undisputed evidence establishes that, at least as of December 15, 2014, the Labs were engaged in the practice of fee-forgiving and therefore any services rendered before December 15, 2014, are not covered under the Cigna Group Plans and Individual Policies.

## III.    CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III (*QUANTUM MERUIT*).

In addition to their breach of contract claim, the Labs have also asserted an equitable claim based on a theory of *quantum meruit*.[141] The claims for reimbursement underlying the Labs' third-party beneficiary contract cause of action and the Labs' *quantum meruit* claim are the same. The Court permitted the Labs to proceed with their alternative *quantum meruit* theory at the pleading

---

[134] *See* SOF ¶ 37.
[135] *See* SOF ¶ 37.
[136] *See* SOF ¶ 37.
[137] *See* SOF ¶ 38.
[138] *See* SOF ¶ 41.
[139] SOF ¶ 40.
[140] SOF ¶ 36.
[141] FAC ¶¶ 71-84.

stage, but the Labs cannot prevail on this equitable claim where a valid contract exists. "Quantum meruit is premised upon the absence of an express and enforceable agreement; accordingly, the existence of a valid, written contract between the parties necessarily precludes the doctrine's application." *See Corn v. Greco*, 694 So. 2d 833, 834 (Fla. 2d DCA 1997) ("Quantum meruit relief is founded upon the legal fiction of an implied contract. This fiction cannot be maintained . . . when the rights of the parties are described in a written contract."); *Technolojoy, LLC v. BHPH Consulting Servs., LLC*, No. 19-23770-CIV, 2022 U.S. Dist. LEXIS 41262, at *18-19 (S.D. Fla. Mar. 8, 2022) (dismissing *quantum meruit* claim where the record was undisputed that a valid contract existed); *see also White Constr. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1332 (M.D. Fla. 2009) (stating it is well settled that Florida law will not imply a contract where an express contract exists concerning the same subject matter); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (stating that conclusive proof of valid express contract precludes suit for recovery in *quantum meruit* and unjust enrichment since "the law will not imply a contract where a valid express contract exists.").

The Labs do not dispute that a valid contract between Cigna and the Labs' patients exists—the Cigna Group Plans and Individual Policies. Of course, if there is no valid plan or policy to which Cigna is a party, there would be absolutely no basis to reasonably expect payment from Cigna. Because a valid contract exists governing each of the claims at issue, the Labs' equitable claim for *quantum meruit* must be dismissed.

In any event, the evidence confirms that the Labs are unable to establish any of the elements necessary for *quantum meruit*. The doctrine of *quantum meruit* arises from the following principle: "One person should not benefit from the work efforts of another under circumstances where the person doing the work has the reasonable expectation of being paid by the person benefitted, and

the person benefitted has a reasonable expectation of paying for the work." *Hallowes v. Bedard*, 877 So. 2d 953, 957 (Fla. 5th DCA 2004). The undisputed facts of this case do not fit within this principle. The Labs performed an enormous number of drug testing services without ever communicating with Cigna prior to performing the services, without ever obtaining consent from the patients to perform those services, and after Cigna specifically informed the Labs that Cigna would not pay for such medically unnecessary tests. Under these circumstances, the Labs could not possibly have had any reasonable expectation of payment. And even if they did, as a matter of law, the Labs did not confer any benefit on Cigna by performing drug testing services for patients who did not consent to receive them.

### 1.     The Labs did not confer a benefit on Cigna.

To prevail on a claim for *quantum meruit* under Florida law, the Labs must demonstrate that they conferred a benefit on Cigna in rendering the drug testing services at issue.[142] The benefit conferred "must be a <u>direct</u> benefit." *N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*, No. 1:20-cv-24914-KMM, 2021 U.S. Dist. LEXIS 88901, at *15 (S.D. Fla. May 10, 2021). The Labs have failed to adduce any evidence to support such a benefit. The majority of courts to address whether an insurer or administrator benefits from the services a provider renders to a member have concluded that the health-care provider confers no such benefit:

- *Adventist Health Sys./Bunbelt Inc.*, No. 6:03-cv-1121-Orl-19KRS, 2004 U.S. Dist. LEXIS 30976, at *18-19 (M.D. Fla. Mar. 5, 2004) ("[A] third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit.").

- *Boca Raton Reg'l Hosp., Inc. v. Celtic Ins. Co.*, No. 19-80650-CIV-SINGHAL/REINHART, 2020 U.S. Dist. LEXIS 21612, at *27 (S.D. Fla. Feb. 6, 2020) ("[A] medical provider who treats a patient does not confer a direct benefit on the patient's health insurer.").

---

[142] MTD Order at 36.

- *Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, No. 17-61840-CIV-SMITH, 2020 U.S. Dist. LEXIS 9992, at *20 (S.D. Fla. Jan. 17, 2020) (dismissing equitable claim where provider "fail[ed] to allege that it conferred a benefit on United because benefits of healthcare treatment flow to patients, not to insurance companies.")

- *Peacock Med. Lab, LLC* , 2015 U.S. Dist. LEXIS 61306, at *15 ("[A] healthcare provider who provides services to an insured does not benefit the insurer.").

- *GVB MD v. Aetna Health, Inc.*, No. 19-22357-CIV-MORENO, 2019 U.S. Dist. LEXIS 200604, at *17 (S.D. Fla. Nov. 19, 2019) ("[A]ny benefit conferred on [the insurer] was indirect at best.").

- *RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, No. 9:18-CV-80171, 2018 U.S. Dist. LEXIS 198515, at *26 (S.D. Fla. Nov. 20, 2018) ("By providing treatment to Cigna insureds, Plaintiffs benefitted their *patients*, not Cigna.")

In ruling on Cigna's motion to dismiss, the Court declined to dismiss the claim at the pleading stage due to the "unsettled nature of Florida law."[143] Since that ruling, multiple Florida courts have determined that, under Florida law, a health-care provider does *not* confer a benefit on a health insurer by rendering health-care services. *See Vanguard Plastic Surgery, PLLC v. Aetna Life Ins. Co.*, No. 0:22-cv-61853-WPD, 2023 U.S. Dist. LEXIS 51720, at *33 (S.D. Fla. Mar. 24, 2023) ("[T]his Court previously recognized a split of authority in evaluating the benefit that flows from a health care provider to an insured's insurer, upon careful review of recent cases in the district, the Court is persuaded that the weight of authority favors the conclusion that any benefit conferred upon [the insurer] was indirect at best."); *Neurosurgical Consultants of S. Fla., LLC v. Unitedhealthcare Ins. Co.*, No. 22-81428-CIV-MATTHEWMAN, 2023 U.S. Dist. LEXIS 73489, at *17 (S.D. Fla. Apr. 27, 2023) ("[H]aving reviewed all of the relevant case law on this issue, and despite Plaintiff's use of the term 'direct benefit' . . . the Court finds that Plaintiff has alleged that Plaintiff conferred, at best, an indirect benefit.). The weight of authority favors the absence of any

---

[143] MTD Order at 37.

direct benefit under the circumstances. *See N. Shore Med. Ctr. V. Cigna Health & Life Ins. Co.*, No. 1:20-cv-24914-KMM, 2021 U.S. Dist. LEXIS 88901, at *15-16 (S.D. Fla. May 10, 2021) (acknowledging split of authority in Florida but observing that "the weight of authority in this district holds that claims for unjust enrichment and *quantum meruit* fail to satisfy the first element.").

To be sure, however, the Labs have failed to adduce any evidence establishing a benefit conferred on Cigna. During discovery, Cigna requested that the Labs identify any facts or evidence supporting the existence of any benefit. The Labs responded only that "Cigna received payment for the insurance policies issued in favor of its members."[144] This theory is untenable. The Labs have not offered any evidence regarding any premiums or other payments paid to Cigna by any Cigna member. But even if they had, premiums paid by Cigna's insureds would not represent a direct benefit conferred on Cigna by the Labs. *N. Shore Med. Ctr.*, 2021 U.S. Dist. LEXIS 88901, at *15 (noting that to establish a *quantum meruit* claim, "the **plaintiff** must have conferred a benefit on the defendant") (emphasis added). Regardless of how much Cigna collects in premiums, Cigna obtains no benefit when a non-participating health-care provider, like the Labs, renders services to a Cigna Member *without even obtaining the member's consent.*[145]

---

[144] SOF ¶ 58.

[145] Where Cigna functions solely as the plan administrator of a self-funded plan (and is therefore not the insurer), Cigna does not even benefit from premiums. There is a distinction between "self-funded" and "fully-insured" employee benefit plans. *Peacock Med. Lab., LLC v. UnitedHealth Grp. Inc.*, No. 14-81271-CV, 2015 WL 5118122, at *6 (S.D. Fla. Sept. 1, 2015). Unlike a fully-insured plan, for a "self-funded" plan, employers assume direct financial responsibility for the costs of the employee's claims. *See generally* David Goldin, Survey, External Review Process Options for Self-Funded Health Insurance Plans, 2011 Colum. Bus. L. Rev. 429, 440 (2011). Thus, for self-funded plans, Cigna, as opposed to the plan itself, does not pay benefits and does not retain any premiums. *See Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-CIV-KING, 2013 U.S. Dist. LEXIS 102007, at *11 (S.D. Fla. July 22, 2013) ("If HPC conferred no benefit upon the Plan's insurer by providing treatment to Plan beneficiaries, common sense

## 2.    Cigna did not assent to the services at issue.

The Labs are unable to establish another key element of any *quantum meruit* claim under Florida law: Cigna's assent to the services at issue. To prevail on a *quantum meruit* claim, a plaintiff must show that the defendant "assented to" receipt of the goods or services. *GVB MD,* , 2019 U.S. Dist. LEXIS 200604, at *18 ("To state a claim for *quantum meruit* under Florida law, a complaint must allege that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it."). In the *quantum meruit* context, there must be a "meeting of the minds" between the parties regarding the good or services being provided. *Id.*

In the health-care context, non-participating providers often attempt to satisfy this element with evidence that the provider obtained a confirmation from the insurer of coverage prior to rendering services. However, courts applying Florida law have consistently rejected this theory, determining that a mere verification of coverage does not support a *quantum meruit* claim because a verification of coverage is not a promise to pay for the services. *See*, *e.g.*, *id.* ("Without more, Miami Back's verification of coverage allegations do not support a claim for *quantum meruit* because, as courts across the country agree, "an insurer's verification of coverage is not a promise to pay a certain amount."); *GVB MD, LLC*, , 2019 U.S. Dist. LEXIS 200604, , at *19-20 (dismissing *quantum meruit* claim based on allegation the defendant "confirmed that its patients were covered under certain healthcare plans and that Defendant made sporadic payments for some of the services rendered"); *RMP Enters., LLC*, 2018 U.S. Dist. LEXIS 198515, , at *8 (dismissing

dictates that CGLIC, as the claims administrator, cannot be said to have received a benefit from the same conduct."). An example of a Cigna self-funded plan is American Nutrition, Inc. *See, e.g.,* Ex. 50, CIGNA19-1326 0076590. An example of a Cigna fully funded plan is the LS Power Development, LLC Plan. Ex. 55, CIGNA19-1326 0018779.

with prejudice *quantum meruit* claim based on "alleged oral verification of coverage" and noting "[c]ourts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount").

Here, the Labs never even obtained a verification of coverage from Cigna prior to rendering any services. Both Mr. Nicholson and the Labs' corporate representative confirmed that the Labs had ***no communication with Cigna at all*** before performing any drug testing services.[146] The Labs have no evidence of any communication with Cigna prior to rendering services that might establish "assent" to the Labs' services or a "meeting of the minds" regarding those services.

Nor could Cigna have possibly "assented" to the services through a course of dealing. The evidence confirms that Cigna was not paying the Labs consistently throughout the relevant time period, a fact that even the Labs' corporate representative admitted.[147] Cigna's sporadic payment negates any notion that Cigna assented to the services based on a course of payment. *Peacock*, 2015 U.S. Dist. LEXIS 61306, at *16-17 (dismissing *quantum meruit* claim based on allegation the defendants "made payments either inconsistently or not at all" and explaining "[t]his conduct shows that Defendants never assented to pay for the provided services. If anything, it shows they assented not to pay for them"); *GVB MD, LLC*, No. 19-20727-CIV, 2019 U.S. Dist. LEXIS 200604, at *20, *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 182203, (dismissing *quantum meruit* claim based on allegation the defendant "confirmed that its patients were covered under certain healthcare plans and that Defendant made sporadic payments for some of the services rendered"). Because the undisputed evidence confirms the absence of any consistent course of dealing, the Labs cannot establish any implied "assent" to their services either.

---

[146] SOF ¶ 22.
[147] SOF ¶ 52.

### 3.    The Labs did not reasonably expect payment.

A last required element of any quantum meruit claim is a reasonable expectation of payment by the party seeking payment. *Hallowes*, 877 So. 2d at 957.  All of the evidence confirms that the Labs could not possibly have been reasonably expecting payment from Cigna.

First, as noted above, at no point was Cigna consistently paying any one of the three Labs' claims for reimbursement.[148] By their own allegations, the Labs claim Cigna failed to pay millions of dollars in claims for reimbursement between 2013 and 2017.[149] Such inconsistent payments vitiate any reasonable expectation of payment. *See Peacock*, 2015 U.S. Dist. LEXIS 61306, at *16-17; *GVB MD, LLC v. United Healthcare Ins. Co.*, No. 19-20727-CIV, 2019 U.S. Dist. LEXIS 138264, at *13 (S.D. Fla. Aug. 14, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 182203, (S.D. Fla. Sept. 5, 2019).

Indeed, in dismissing certain of the Labs' common law claims, this Court rejected the Labs' argument that the Labs reasonably relied on the parties' prior "course of dealing" in rendering services.[150] As the Court explained, this "argument fails as a matter of common sense, because the parties' course of conduct could not reasonably have justified the Laboratories' reliance."[151]

Second, Cigna expressly informed a representative from Medytox as early as October 30, 2013, that PBL's billed claims were not substantiated by the medical record documentation, and Cigna would seek a refund for the medically unnecessary drug testing.[152] Given that all three Labs employed the same practices in terms of rendering drug testing services and used the same billing company under the same corporate parent (Medytox), none of the Labs could have reasonably

---

[148] SOF ¶ 52.
[149] *See, e.g.,* FAC ¶ 19.
[150] Order at 31, 33.
[151] *Id.* at 33.
[152] SOF ¶¶ 44-45.

expected for Cigna to pay for them.[153] Moreover, Cigna informed PBL and BioHealth on December 12, 2014, and May 28, 2015, respectively, that Cigna would not pay for their services without proof of customer payment due to their practice of fee-forgiving.[154]

In sum, the undisputed evidence confirms that the Labs had no reason to expect payment from Cigna. Cigna specifically informed the Labs that Cigna would not pay them and that the Labs were without any authority to receive payment from Cigna.[155] Any suggestion that the Labs reasonably expected payment under these circumstances is belied by the undisputed evidence.

### 4. The Labs have no competent evidence regarding the reasonable value of their drug testing.

Finally, even if the Labs could prevail on the merits of their *quantum meruit* claim (which they cannot), Cigna is entitled to summary judgment because the Labs have no competent evidence to support any damages. The proper measure of damages for a *quantum meruit* claim is the "reasonable value" of the services. *See Franklin Law Firm, P.A. v. Stacey*, No. 8:19-cv-1839-MSS-AAS, 2021 U.S. Dist. LEXIS 261953, at *9-10 (M.D. Fla. July 6, 2021).

Here, the Labs have adduced no competent evidence regarding the reasonable value of the drug testing services they claim to have performed. As Mr. Nicholson testified, the amounts the Labs charged were exorbitant.[156] The Labs' damages expert, Mr. Haney, opined only (and unreasonably) that he believed Cigna would have paid the Labs' full billed charges had the claims not been denied.[157] He specifically agreed that he had no opinion as to the reasonable value of the

---

[153] SOF ¶¶ 14, 16.

[154] SOF ¶¶ 47, 49-50.

[155] Moreover, the services at issue were rendered to patients who had not consented to the services and who had not validly assigned any rights to insurance payments to the Labs. Although Cigna unwittingly paid some of these claims, the Labs could not possibly have reasonably expected to be paid without proper authorization.

[156] *See* SOF ¶¶ 30-31.

[157] Haney Dep. 146:10-23.

Labs' services.[158] Because the Labs have no evidence to support the only proper measure of damages for a *quantum meruit* claim, summary judgment is appropriate. *See Binh Hoa Le v. Exeter Fin. Corp.*, No. 3:15-CV-3839-L, 2020 U.S. Dist. LEXIS 40115, at *11 (N.D. Tex. Mar. 9, 2020) (entering summary judgment on *quantum meruit* claim where plaintiff failed to offer evidence of the reasonable value of the services); *Read v. Profeta*, 397 F. Supp. 3d 597, 644 (D.N.J. 2019) (same); *Realuyo v. Diaz*, No. 98 CV 7684 (GBD), 2006 U.S. Dist. LEXIS 11420, at *44-51 (S.D.N.Y. Mar. 17, 2006) (same).

## IV. CIGNA IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS SUBMITTED USING CPT CODES BARRED BY CIGNA'S COVERAGE POLICIES.

Certain line-level charges for which the Labs seek discovery are indisputably not covered under Cigna's reimbursement policy at the time and therefore properly denied.

Effective August 19, 2013, Cigna excluded coverage for qualitative drug screen testing services that were billed to Cigna using CPT Codes 80100, 80101, and 80104.[159] In making this global policy change, Cigna followed guidance from CMS in requiring the use of HCPCS codes G0431 and G0434, rather than the AMA's CPT Codes (CPT Codes 80100, 80101, and 80104) for the billing of these services.[160] The Labs' medical coding expert agreed that any charges billed with these three codes on or after August 19, 2013, would not be covered and properly denied.[161] Therefore, services billed with CPT Codes 80100, 80101, and 80104 on or after August 19, 2013, are not covered based on Cigna's reimbursement policy, and summary judgment should be granted in Cigna's favor on any such claims.[162]

---

[158] SOF ¶ 54.
[159] SOF ¶ 72.
[160] *See* Ex. 57, LABS00535783.
[161] SOF ¶ 74.
[162] *See* SOF ¶ 70.

Similarly, beginning January 1, 2015, Cigna extended its coverage policy to exclude the new CPT Codes 80300-80304, which replaced CPT Codes 80100, 80101, and 80104, which were deleted effective January 1, 2015.[163] Therefore, all claims submitted with CPT Codes 80300, 80301, 80302, 80303, and 80304 as of January 1, 2015, were invalid and excluded from coverage based on Cigna's reimbursement policy.[164] Again, the Labs' medical coding expert agreed that any charges billed with these codes on or after January 1, 2015, were properly denied.[165] Summary judgment should be granted in Cigna's favor on these claims as well.

## CONCLUSION

Accordingly, Cigna respectfully requests that the Court grant summary judgment in Cigna's favor on each of the remaining counts asserted in the Labs' First Amended Complaint.

DATED: July 18, 2023

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (CT26653)
EMILY COSTIN (PHV No. 10291)
950 F Street, NW
Washington, DC  20004
Telephone:  202-239-3300
Facsimile:  202-239-3333
E-mail:  edward.kang@alston.com
E-mail:  emily.costin@alston.com

KELSEY L. KINGSBERY
(PHV No. 10282)
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
Telephone: 919-862-2200
Facsimile: 919-862-2260
E-mail: kelsey.kingsbery@alston.com

---

[163] SOF ¶ 73.
[164] SOF ¶ 73. *See* SOF ¶ 71.
[165] SOF ¶ 75.

*Attorneys for Connecticut General Life*
*Insurance Company and Cigna Health and*
*Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that this day, July 20, 2023, I electronically filed the foregoing using the CM/ECF system, which will automatically effectuate service upon all counsel of record in this matter.

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (No. CT26653)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com

*Counsel for Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company*