UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>BIOHEALTH MEDICAL LABORATORIES, INC., PB LABORATORIES, LLC, and EPIC REFERENCE LABS, INC.,<br><br>    Defendants. | Case No. 3:19-cv-01324-JCH<br><br>Hon. Janet C. Hall<br><br>July 18, 2023 |

**CIGNA'S LOCAL RULE 56(a)(1)
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (together, "Cigna") hereby file this statement of undisputed material facts pursuant to Local Rule 56(a)(1) in support of their motion under Fed. R. Civ. P. 56 for summary judgment in Cigna's favor on each of the claims asserted in BioHealth Medical Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PBL"), and Epic Reference Labs, Inc.'s ("Epic") (together, the "Labs") First Amended Complaint against Cigna. Cigna submits that the following material facts are undisputed:

**A.     Cigna's plans and network of participating providers**

1. Cigna is a managed care company that, among other things, insures and/or administers group employee health and welfare benefit plans (the "Cigna Group Plans") and individual insurance policies (the "Cigna Individual Policies"). *See* Affidavit of Michael Goldfarb ("Goldfarb Aff.") ¶ 5.

2. Most Cigna Group Plans are sponsored by private employers. Goldfarb Aff. ¶ 6.

3. Other Cigna Group Plans provide benefits to government employees (city, county, and state), church employees, and employees of non-profit organizations. Goldfarb Aff. ¶ 7.

4. In addition, Cigna offers Cigna Individual Policies for individuals and families that can be purchased on the private market. Goldfarb Aff. ¶ 8.

5. Cigna controls health-care costs for its members by, in part, entering into agreements with health-care providers that establish fixed rates for health-care services. In exchange for accepting fixed rates, these "participating" providers (also referred to as "in-network" providers) gain access to the members of the Cigna Group Plans and Individual Policies as a source of patients. Goldfarb Aff. ¶¶ 9-10.

6. As part of the agreement, participating providers agree not to bill the members for the difference between the agreed-upon rates and the provider's billed charges. Goldfarb Aff. ¶ 11.

7. Moreover, the Cigna Group Plans and Individual Policies generally require members to pay less in "cost-share" obligations (e.g., co-payments, co-insurance, and deductibles) when the member uses a participating provider as opposed to a non-participating provider. Goldfarb Aff. ¶ 12.

8. Non-participating providers, by contrast, have no agreement with Cigna regarding rates for health-care services. Goldfarb Aff. ¶ 13; Ex. 33, Deposition of Dr. Robert Boorstein ("Boorstein Dep.") 155:22-157:17; Ex. 34, Deposition of Jacqueline Thelian ("Thelian Dep.") 182:13-187:5; Ex. 32, Deposition of Christopher Haney ("Haney Dep.") 61:20-63:2.

9. Instead, non-participating providers can charge and bill Cigna and the Cigna members at rates the providers set independently. Goldfarb Aff. ¶ 13; Ex. 33, Boorstein Dep. 155:22-157:17; Ex. 34, Thelian Dep. 182:13-187:5; Ex. 32 Haney Dep. 63:3-64:8.

10. Coverage and reimbursement for services rendered by non-participating providers is determined by the terms of the Cigna Group Plans and Individual Policies. Goldfarb Aff. ¶ 14; Ex. 33, Boorstein Dep. 155:22-157:17; Ex. 34, Thelian Dep. 182:13-187:5; Ex. 32, Haney Dep. 63:3-64:8.

11. Under the terms of the plans, non-participating providers are not entitled to be paid directly unless the patient chooses to assign its rights under the plan to that particular provider. Goldfarb Aff. ¶ 16; *See, e.g.*, Ex. 56-J, CIGNA19-1326 0009609, at CIGNA19-1326 0009675.

12. On the date Cigna processes a claim, an explanation of payment is automatically generated and sent. Ex. 28, Deposition of Michael Goldfarb ("Goldfarb Dep.") 51:10-19.

**B.     The Labs' drug testing business and relationship with Cigna**

13.     The Labs were commercial toxicology laboratories that performed urine and blood drug testing services. *See* FAC ¶ 11.

14.     Between February 2012 and January 2013, Medytox Solutions, Inc. ("Medytox"), through a wholly-owned subsidiary acquired or formed each of the Labs. *See* Ex. 16, LABS01156827, at LABS01156831-832.

15.     Neither the CEO nor the VP of Operations of Medytox had any prior experience working in healthcare. Ex. 30, Deposition of Seamus Lagan, Jan. 27. 2023 ("Lagan I Dep.") 32:13-33:7; Ex. 31, Deposition of Sharon Hollis ("Hollis Dep.") 15:9-16; 19:1-25; 44:2-46:21; 46:23-47:13.

16.     On August 22, 2011, Medytox also acquired Medical Billing Choices, Inc. ("MBC") to perform insurance billing and collecting services for the Labs. Ex., 16, LABS01156827, at LABS01156831-832.

17.     The Labs' primary clients were substance abuse treatment facilities and sober homes. Accordingly, most of the patients for whom the Labs performed drug testing services were patients receiving treatment for substance use disorders or residing in a substance-free residence. Ex. 30, Lagan I Dep. 85:12-16.

18.     The Labs had a team of sales representatives who were responsible for obtaining business from these substance abuse treatment facilities and sober homes. Ex. 30, Lagan I Dep. 108:10-109:19.

19.     If a facility or sober home agreed to have the Labs perform drug testing for patients residing at the facility or home, the Labs would require the client complete a client registration form and a recurring provider standing order form. On this form, the client could select from a

panel of drug tests to be performed on urine specimens from the client's patients. *See* Ex. 30, Lagan I Dep. 206:6-22; *see, e.g.,* Ex. 17, LABS01144674-678 (Lagan I Dep. Ex. 17); Ex. 18, LABS00493304-307; Ex. 19, LABS00490895-898; Ex. 20, LABS00495926 (Lagan I Dep. Ex. 18), at LABS0495934.

C. **The Labs' failure to obtain patient consent or an assignment of benefits**

20. At all times, the Labs were non-participating providers with Cigna. Ex. 30, Lagan I Dep. 83:5-8; Ex. 29, Deposition of Mike Nicholson ("Nicholson Dep.") 80:12-15.

21. Accordingly, coverage and reimbursement for the Labs' drug testing services was determined by the Cigna Group Plans and Individual Policies. Ex. 32, Haney Dep. 64:4-8; Ex. 33, Boorstein Dep. 156:15-20.

22. None of the Labs is an urgent care center, a hospital, or an ambulatory surgical center. Ex. 30, Lagan I Dep. 63:5-17.

23. Before performing drug tests on a patient's specimen, the Labs did not have any communications with Cigna about the tests the Labs planned to perform. Ex. 29, Nicholson Dep. 87:24-88:3; Ex. 30, Lagan I Dep. 66:8-19.

24. The Labs did not have any direct communications with any of the patients whose specimen they were testing before running any tests. Ex. 29, Nicholson Dep. 109:13-17; Ex. 30, Lagan I Dep. 64:10-13.

25. In some instances, the facilities where the patients were residing had the patients execute a "patient consent" form. Ex. 30, Lagan I Dep. 240:2-22; *see, e.g.,* Ex. 21, LABS00550343 (Lagan I Dep. Ex. 4), at LABS00550397; Ex. 22, LABS00490397.

26. The form was a single document that contained both a consent for the Lab to perform drug testing services and an assignment of the patient's benefits to the Lab that was

4

performing services. *See, e.g.*, Ex. 22, LABS00490397. Each of the Labs had substantially similar versions of these forms. *See, e.g.*, Ex. 23, LABS01138512; Ex. 24, LABS00494225; Ex. 25, LABS00965637.

27. This form is the *only* manner in which the Labs obtained the patient's consent. Ex. 30, Lagan I Dep. 240:5-241:5.

28. The Labs have no valid assignment of benefits for any one of the claims for which they are seeking relief. FAC ¶¶ 39-40.

29. Because the Labs concede they have no valid assignment from any patient at issue in this case, the Labs necessarily have no patient consent either. FAC ¶¶ 39-40.

**D.    The rise of health-care insurance fraud in the fields of substance use disorder treatment and laboratory drug testing**

30. Mike Nicholson testified ". . . you could bill confirmation, you could bill screens. You could – wild wild west is what it was and that's why we are sitting here today." Ex. 29, Nicholson Dep. 196:13-16.

31. Mr. Nicholson testified that when he began billing for the Labs, he was "in shock that the insurance companies are paying this for a blood test." Ex. 29, Nicholson Dep. 196:24-197:1. As he explained, "[w]hen [he was] billing for a surgery center who is taking out somebody's appendix and they are getting 600 bucks and I'm seeing a urine sample come in and they are paying 3,000, that's why I was shocked." Ex. 29, Nicholson Dep. 197:18-22.

32. In 2014, for a single patient, BioHealth billed Cigna $341,947 over the course of three months solely for urine drug testing. Goldfarb Aff. ¶ 21.

**E.    The Labs' practice of fee-forgiving**

33. "Fee forgiving" occurs when a non-participating provider, like the Labs, does not obligate a member to pay its full billed charges and/or when such provider fails to bill, waives,

5

reduces or "forgives" the member from having to pay any portion of the member's required deductible, coinsurance and/or "balance bill" amounts (i.e., any portion of the billed charges that exceed the Allowable amount set forth in the member's health-benefit plan). Goldfarb Aff. ¶ 15; Ex. 34, Thelian Dep. 190:18-191:6.

34.     Because the practice of fee forgiving destroys incentives to seek participating providers and, ultimately, drives up medical costs for plans, Cigna Group Plans and Individual Policies include language that excludes coverage when a health-care provider does not obligate members to pay their required portion of the full amount of charges submitted to Cigna (*i.e.*, the patient's cost-share obligation). *See* Ex. 34, Thelian Dep 190:18-193:2; Goldfarb Aff. ¶¶ 16-17.

35.     The Cigna Group Plans and Individual Policies all contain to the same or substantially similar language: "In addition to any other exclusions and limitations described in this Policy, there are no benefits provided for . . . Services for which You have **no legal obligation to pay** or for which no charge would be made if You did not have health plan or insurance coverage." Goldfarb Aff. ¶ 18; Ex. 56-J, CIGNA19-1326 0009609, at CIGNA19-1326 0009654.

36.     The Labs did not send any invoices to patients for any amounts for the services at issue prior to December 15, 2014. Ex. 34, Thelian Dep. 195:19-197:2; 198:11-18.

37.     The system MBC utilized for claim processing did not permit the Labs to generate patient statements. Beginning in January 2014, the Labs invested in a new system that would allow the Labs to generate patient statements. But it took a significant amount of time for that system to be operational. Ex. 27, LABS00643229; LABS00643279-280.

38.     The Labs' Chief Financial Officer submitted a memorandum on December 10, 2014, confirming that as of that date, the Labs have "yet to be able to bill patients for their portion of the services rendered." Ex. 27, LABS00643229; LABS00643279-280.

39. Email correspondence confirms that as of January 2015, the Labs still had not sent bills to Cigna Patients for 2013 for BioHealth. Ex. 26, LABS00534343. Mike Nicholson stated that they might as well get the process moving because "Cigna will be looking at our patient billing practices for ALL labs soon enough." *Id.*

40. Cigna requested that the Labs produce all statements sent to patients for any services at issue in the case. Ex. 3-A, BioHealth's Resp. to Cigna's Req. for Prod. ("RFP") No. 46, at 9-10; Ex. 3-B; PBL's Resp. to Cigna's RFP No. 46, at 9; Ex. 3-C, Epic's Resp. to Cigna's RFP No. 46, at 9.

F.   **Cigna's SIU investigation into the Labs**

41. On February 22, 2013, Cigna's SIU received a referral from a client regarding suspicious billing patterns by PBL. Ex. 8, CIGNA19-1326 0290090, at CIGNA19-1326 0290095; Ex. 9, CIGNA19-1326 0004545; Ex. 28, Goldfarb Dep. 95:2-15.

42. In April 2013, Cigna's SIU opened an investigation into PBL's billing practices, including a review of medical records underlying certain claims for reimbursement to Cigna. Ex. 9, CIGNA19-1326 0004545-48.

43. In September 2013, based in part on analysis from one of its medical directors, Cigna's SIU determined that PBL was performing medically unnecessary drug testing services. Ex. 12, CIGNA19-1326 0289606, at CIGNA19-1326 0289607; Ex. 9, CIGNA19-1326 0004545, at CIGNA19-1326 0004545-47.

44. On October 30, 2013, Cigna's SIU informed Mark Hicks, who worked for Medical Billing Choices, during a phone call of the results of Cigna's investigation and that a "Cigna medical director reviewed information supplied by [PBL] and determined that the information

7

provided within the record documentation did not substantiate the claim information billed to Cigna." Ex. 10, CIGNA19-1326 0289782.

45. Cigna's SIU confirmed this conversation via email to Mr. Nicholson and indicated that Cigna would seek a refund for the medically unnecessary drug testing. *See* Ex. 11, CIGNA19-1326 0289800-803; Ex. 30, Lagan I Dep. 189:4-190:9.

46. In April 2014, Cigna's SIU began investigating PBL for waiving its patients' cost-share obligations—a practice prohibited by the Cigna Group Plans and Individual Policies. Ex. 9, CIGNA19-1326 0004545, at CIGNA19-1326 0004547-48.

47. In December 2014, Cigna's SIU concluded that PBL was engaged in the practice of fee-forgiving and informed PBL on December 12, 2014, that Cigna expects PBL to submit documentary proof of customer payment as required by the Group Plans and Individual Policies when PBL submits claims for medical benefits to Cigna. Ex. 13, CIGNA19-1326 0292075-78.

48. In December 2013, Cigna's SIU was independently notified of a customer complaint regarding an enormous volume of charges associated with BioHealth and Angel's Recovery. Ex. 14, CIGNA19-1326 0004762 at CIGNA19-1326 0004762-64; Ex. 28, Goldfarb Dep. 95:18-22.

49. In April 2014, Cigna began investigating BioHealth. Ex. 14, CIGNA19-1326 0004762, at CIGNA19-1326 0004762-64. Cigna determined that BioHealth was also engaged in fee-forgiving. Ex. 14, CIGNA19-1326 0004762, at CIGNA19-1326 0004762-64.

50. On May 28, 2015, Cigna informed BioHealth of its findings. Ex. 15, CIGNA19-1326 0004737-40.

8

51.     Cigna also investigated Epic for fee-forgiving but did not deny any claims from Epic on this basis in light of strategic considerations due to litigation that Epic's sister companies, BioHealth and PBL, had initiated against Cigna. Ex. 28, Goldfarb Dep. 196:1-25.

52.     Cigna was not paying the Labs consistently throughout the relevant time period. Ex. 30, Lagan I Dep. 257:20-24.

### G.     Other additional undisputed material facts

53.     The Labs have identified 6,458 claims to which they contend Cigna never responded. Ex. 35, Expert Report of Christopher Haney ("Haney Rep.") at 30.

54.     The Labs' expert witness Christopher Haney agreed that he had no opinion as to the reasonable value of the Labs' services. Haney Dep. 55:20-56:14.

55.     The complete factual basis for the Labs' position that Cigna and its members had "clear and manifest intent" to benefit the Labs is the incorporation of Florida Statute § 627.6131 "by operation of law" into the plans and policies at issue. Ex. 4-A, BioHealth's Suppl. Resp. to Interrog. Nos. 11 and 12, at 2; Ex. 4-B, PBL's Suppl. Resp. to Interrog. Nos. 11 and 12, at 2; Ex. 4-C, Epic's Suppl. Resp. to Interrog. Nos. 11 and 12, at 2.

56.     The only provision in the Cigna Group Plans and Individual Policies that the Labs contend Cigna breached is Florida Statute Sections 627.6131, 627.638, and 627.64194. Ex. 5-A, BioHealth's Suppl. Resp. to Cigna's Interrog. No. 13, at 1-2; Ex. 5-B, PBL's Suppl. Resp. to Cigna's Interrog. No. 13, at 1-2; Epic's Suppl. Resp. to Cigna's Interrog. No. 13, at 1-2.

57.     A valid contract exists governing reimbursement for the services underlying the claims at issue. FAC ¶¶ 78-79.

58.     The only purported benefit the Labs contend was conferred on Cigna was the "payment for the insurance policies issued in favor of its members." Ex. 4-A, BioHealth's Suppl.

9

Resp. to Cigna's Interrog. Nos. 11 and 12, at 1-2; Ex. 4-B, PBL's Suppl. Resp. to Cigna's Interrog. Nos. 11 and 12, at 1-2; Ex. 4-C, Epic's Suppl. Resp. to Cigna's Interrog. Nos. 11 and 12, at 1-2.

59. All but one of the Florida individual plans expressly provide that "[m]edical benefits are assignable to the provider." *See* Group Ex. 56, CIGNA19-1326 0005794, at CIGNA19-1326 0005848; CIGNA19-1326 0005852, at CIGNA19-1326 0005906; CIGNA19-1326 0005910, at CIGNA19-1326 0005976; CIGNA19-1326 0005980, at CIGNA19-1326 0006046; CIGNA19-1326 0009240, at CIGNA19-1326 0009294; CIGNA19-1326 0009365, at CIGNA19-1326 0009419; CIGNA19-1326 0009481, at CIGNA19-1326 0009535; CIGNA19-1326 0009539, at CIGNA19-1326 0009605; CIGNA19-1326 0009609, at CIGNA19-1326 0009675; CIGNA19-1326 0009679, at CIGNA19-1326 0009745; CIGNA19-1326 0009749, at CIGNA19-1326 0009815; CIGNA19-1326 0009819, at CIGNA19-1326 0009885; CIGNA19-1326 0009889, at CIGNA19-1326 0009955; CIGNA19-1326 0009959, at CIGNA19-1326 0010025; CIGNA19-1326 0010029, at CIGNA19-1326 0010095; CIGNA19-1326 0010801, at CIGNA19-1326 0010868; CIGNA19-1326 0010169, at CIGNA19-1326 0010235; CIGNA19-1326 0010239, at CIGNA19-1326 0010305; CIGNA19-1326 0010309, at CIGNA19-1326 0010375; CIGNA19-1326 0010379, at CIGNA19-1326 0010445; CIGNA19-1326 0010449, at CIGNA19-1326 0010515; CIGNA19-1326 0010519, at CIGNA19-1326 0010585; CIGNA19-1326 0010589, at CIGNA19-1326 0010655; CIGNA19-1326 0010659, at CIGNA19-1326 0010726; CIGNA19-1326 0010730, at CIGNA19-1326 0010797.

60. None of the Florida individual plans at issue contain an anti-assignment provision. *See* Group Ex. 56.

61. The Florida myCigna Copay Assure Silver-200 Plan includes language stating: "The benefits described in the following sections are provided for Covered Expenses incurred

10

while covered under this Policy. An expense is incurred on the date the Insured Person received the service or supply for which the charge is made." *See* Ex. 56-J, CIGNA19-1326 0009609, at CIGNA19-1326 0009638.

62. Cigna never made any oral promises regarding payment prior to rendering services. Ex. 29, Nicholson Dep. 87:16-88:3; Ex. 30, Lagan I Dep. 66:9-19.

63. The Labs' corporate representative confirmed the Labs have no additional information to add to their interrogatory responses. Ex. 30, Lagan I Dep. 294:8-18.

**H.    Categories of claims at issue**

64. Exhibit 1-C reflects all line-level charges on Haney Appendix C or G governed by Cigna Group Plans or Individual Policies that were not delivered in or issued for delivery in Florida. *See* Ryan Aff. ¶ 8; Goldfarb Aff. ¶ 22.

65. Exhibit 1-D reflects all line-level charges on Haney Appendix C or G that are governed by group plans. *See* Ryan Aff. ¶ 9; Goldfarb Aff. ¶ 22.

66. Exhibit 1-G reflects all line-level charges on Haney Appendix C or G that were processed by Cigna on or before July 25, 2014. *See* Ryan Aff. ¶ 12; Goldfarb Aff. ¶ 22.

67. Exhibit 1-A reflects all line-level charges on Haney Appendix C or G that are governed by ERISA plans. *See* Ryan Aff. ¶ 6; Goldfarb Aff. ¶ 22.

68. Exhibit 1-E reflects all line-level charges on Haney Appendix C or G that are governed by a Florida Individual Policy. *See* Ryan Aff. ¶ 10; Goldfarb Aff. ¶ 22.

69. Exhibit 1-F reflects all line-level charges on Haney Appendix G that are governed by a Florida Individual Policy. *See* Ryan Aff. ¶ 11; Goldfarb Aff. ¶ 22.

70. Exhibit 1-I reflects all line-level charges on Haney Appendix C or G where the "Service Code" field reflects 80100, 80101, or 80104 and the "Date of Service" field reflects a date on or after August 18, 2013, in Cigna's Line-Level Data. *See* Ryan Aff. ¶ 14.

71. Exhibit 1-J reflects all line-level charges on Haney Appendix C or G where the "Service Code" field reflects 80100, 80101, or 80300 - 80304 and the "Date of Service" field reflects a date on or after January 1, 2015, in Cigna's Line-Level Data. *See* Ryan Aff. ¶ 15.

## I. Cigna's Coverage Policies

72. Effective August 19, 2013, Cigna excluded coverage for qualitative drug screen testing services that were billed to Cigna using CPT Codes 80100, 80101, and 80104. Ex. 57, LABS00535783.

73. Beginning January 1, 2015, Cigna extended its coverage policy to exclude new CPT Codes 80300-80304, which replaced CPT Codes 80100, 80101, and 80104, which were deleted effective January 1, 2015. Ex. 58, LABS00642392 – LABS00642396.

74. Ms. Thelian testified that any charges billed with these 80100, 80101, and 80104 codes on or after August 19, 2013, would not be covered and properly denied. Ex. 34, Thelian Dep. 162:15-166:19.

75. Ms. Thelian also testified that any charges billed with 80300-80304 codes on or after January 1, 2015, were properly denied. Ex. 34, Thelian Dep. 168:18-169:7.

DATED: July 18, 2023

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (CT26653)
EMILY COSTIN (PHV No. 10291)
950 F Street, NW
Washington, DC  20004
Telephone:  202-239-3300
Facsimile:  202-239-3333
E-mail:  edward.kang@alston.com
E-mail:  emily.costin@alston.com

KELSEY L. KINGSBERY
(PHV No. 10282)
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
Telephone: 919-862-2200
Facsimile: 919-862-2260
E-mail: kelsey.kingsbery@alston.com

*Attorneys for Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that this day, July 20, 2023, I electronically filed the foregoing using the CM/ECF system, which will automatically effectuate service upon all counsel of record in this matter.

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (No. CT26653)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com

*Counsel for Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company*