# EXHIBIT 29

```
 1              IN THE UNITED STATES DISTRICT COURT
                             FOR THE
 2                    DISTRICT OF CONNECTICUT

 3
    CONNECTICUT GENERAL LIFE      )
 4  INSURANCE COMPANY, et al,     )
                                  )
 5              Plaintiffs,       )  CIVIL ACTION FILE NO
                                  )  3:19-cv-01324-JCH
 6         vs.                    )
                                  )
 7  BIOHEALTH LABORATORIES,       )
    INC., et al,                  )
 8                                )
                Defendants.       )
 9  _____

10

11                       -  -  -

12                    **CONFIDENTIAL**

13               Videotaped Deposition of

14                  MICHAEL NICHOLSON

15            (Taken on behalf of Defendants)

16               Charlotte, North Carolina

17                  December 13, 2022

18

19

20

21  REPORTED BY:  SHERRY L. MALIA REGISTERED
    PROFESSIONAL REPORTER/NOTARY PUBLIC
22

23

24

25
```

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 3 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                Michael Nicholson on 12/13/2022                Page 2

```
 1    APPEARANCES OF COUNSEL:

 2    On Behalf of the Plaintiffs:

 3         KELSEY KINGSBERY, ESQ.
           ANNE MARTIN, ESQ.
 4         Alston & Bird
           555 Fayetteville Street
 5         Suite 600
           Raleigh, North Carolina 27601
 6         Telephone:  919.862.2227
           Email:      kelsey.kingsbery@alston.com
 7
      On Behalf of the Defendants:
 8
           SCOTT M. HARE
 9         ANTHONY GESTRICH (via Teams)
           Whiteford|Taylor|Preston
10         11 Stanwix Street
           Suite 1400
11         Pittsburgh, Pennsylvania 15222
           Telephone:  412-275-2399
12         Email:      share@wtplaw.com

13
      Also Present:  Ira Lawrence, Videographer
14
                         -  -  -
15

16          Videotaped Deposition of MIKE NICHOLSON,

17    taken on behalf of the Plaintiffs, at Alston and

18    Bird, 101 S. Tryon Street, Suite 4000, Charlotte,

19    North Carolina, on the 13th day of December 2022,

20    at 9:15 a.m., before Sherry L. Malia, Registered

21    Professional Reporter and Notary Public.

22

23

24

25
```

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 4 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                Michael Nicholson on 12/13/2022                Page 80

```
 1      A.   Ziemian, yeah, Steve.
 2      Q.   Did you work with Dr. Diaz?
 3      A.   Yes.  We worked together on occasion.
 4   They had to have sales reports from us as to
 5   their production, so that's how I worked with
 6   them.
 7      Q.   Tell me what you mean by that.
 8      A.   Well, each sales rep had its own
 9   account that they worked with, so we had to
10   provide them with their activity that that
11   particular account was producing.
12      Q.   Do you recall whether any of the three
13   labs was ever in-network with CIGNA?
14      A.   I don't believe any of them were, that
15   I know of.
16      Q.   Do you know why not?
17      A.   It wasn't for lack of trying, but, no,
18   I don't know.  From my knowledge CIGNA would not
19   allow it, because they were under contract with
20   Labcorp or Quest as their preferred lab.
21      Q.   So you know that the labs attempted to
22   go in-network with CIGNA?
23      A.   I attempted on our behalf to go
24   in-network with CIGNA several times.
25      Q.   When did you first start making those
```

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 5 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                  Michael Nicholson on 12/13/2022                    Page 87

1   this date is active or it's terminated.
2      Q.   And once MBC received that information
3   through the system, what did they do with it?
4      A.   It became part of the patient record.
5   So if it came back terminated, then we would go
6   back to the, what they called the Advantage
7   system, and we would notate in there that that
8   patient's policy was terminated.  And it would
9   go to a work group inside that system that the
10  clients end could see that and get us correct
11  information.
12     Q.   And if MBC was able to obtain the
13  benefits information from the system, did MBC
14  place any calls to the insurance company?
15     A.   No.
16     Q.   Would MBC ever place any pre-service
17  calls to the insurance companies?
18     A.   Pre-cert?
19     Q.   Pre-service, prior to services being
20  rendered.
21     A.   No.  Actually, all of this was after
22  services were rendered.  We didn't do anything
23  before services were rendered.
24     Q.   Okay.  So MBC did not have any
25  communications with CIGNA prior to the labs

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 6 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential	Michael Nicholson on 12/13/2022	Page 88

1  rendering services?
2     A.   No. We didn't get the information from
3  the lab until the tests had already been run.
4     **Q.   So what was the purpose of verifying**
5  **the insurance through the system after the**
6  **services were being run?**
7     A.   Well, we wanted to know if it was going
8  to be paid or not before we just sent a claim
9  out and have to wait for a denial to come back
10 in. So we wanted to verify that benefit to make
11 sure it was active, and then, if it was, we went
12 ahead and released the claim out; if it wasn't,
13 then we just put it to a work group to get the
14 information corrected versus having a denial
15 come back in a couple of weeks later.
16    **Q.   So the purpose of verifying the**
17 **insurance was to determine whether to submit the**
18 **claim?**
19    A.   If the claim was going to be covered.
20 Active, if the insurance was active or not.
21    **Q.   And all this was after services were**
22 **rendered?**
23    A.   Yes.
24    **Q.   So in terms of the charge entry process**
25 **for these three laboratories in the 2012-2013**

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 7 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                    Michael Nicholson on 12/13/2022                    Page 109

```
 1      Q.   Do you know who was?
 2      A.   It would be the physician's office
 3   where the tests were run at.  The referring
 4   provider would be responsible for getting that
 5   assignment.
 6      Q.   Do you know whether the labs ever
 7   participated in obtaining the assignment?
 8      A.   Not that I'm aware of.
 9      Q.   Did MBC have any communications with
10   the patients that were receiving the lab
11   services prior to rendering the services?
12      A.   No.
13      Q.   Do you know whether the labs had any
14   communications with the patients for which they
15   were rendering the services prior to rendering
16   the services?
17      A.   Not that I'm aware of, no.
18      Q.   Do you -- do you know who was
19   responsible for drafting the assignment of
20   benefits that the labs used?
21      A.   I don't know.
22      Q.   Let me ask you this question:  Was the
23   assignment of benefits standard across all
24   patients, or were you seeing different
25   assignments depending on the referring provider?
```

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 8 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                Michael Nicholson on 12/13/2022                Page 196

1  collections, and I look now for others, Aetna
2  and United Healthcare, to make this very same
3  change any day now."
4      Can you tell me why you thought this was
5  going to have an impact on collections?
6      A.   Well, you are going from maybe 12 codes
7  to one.  Or 80101 code, you could have 24 drug
8  classes, up to 24 classes of drugs, so that
9  could be billed 24 times.  Now you are going
10 down to one code, which is where they are at
11 now, so the insurances are finally catching up.
12     We are looking at this now and where it is
13 today is one code.  Back then you could bill
14 confirmation, you could bill screens.  You
15 could -- wild wild west is what it was and
16 that's why we are sitting here today.
17     But, yeah, that code definitely affects
18 reimbursement because you only have one unit of
19 that code to be billed per encounter.
20     Q.   What do you mean it was the wild wild
21 west?
22     A.   I think it's pretty obvious, even from
23 a person with a billing background like me.
24 When I took over this account, I was like I am
25 in shock that the insurance companies are paying

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 9 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                Michael Nicholson on 12/13/2022                Page 197

 1   this for a blood test.  But I wasn't writing the
 2   checks, but I do know that what we billed out
 3   the tests were run, there was an order for the
 4   test, we did audits, we got a compliance
 5   committee.  We did everything we needed to do on
 6   our end to make sure that what we were sending
 7   out to you guys to pay in my mind was a
 8   legitimate claim and should have been paid.
 9   Most all the other payers paid it.
10        Now, today would you pay that?  Probably
11   not.  It took a long time to catch up, and
12   that's why all of these labs are no longer in
13   business.  But that, going back to this
14   document, the G code, whole new ball game as far
15   as reimbursements.
16        **Q.  So why were you shocked that the claims**
17   **were being paid?**
18        A.  When I am billing for a surgery center
19   who is taking out somebody's appendix and they
20   are getting 600 bucks and I'm seeing a urine
21   sample come in and they are paying 3,000, that's
22   why I was shocked.
23        **Q.  Seamus responds -- mine's cut off a**
24   **little bit -- oh, "That finishes the POLs for**
25   **all facilities too.  Means that the only real**

Case 3:19-cv-01324-JCH   Document 240-1   Filed 07/20/23   Page 10 of 10

CT GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH LABORATORIES, INC., ET AL.
Confidential                Michael Nicholson on 12/13/2022                Page 231

```
 1                    CERTIFICATE OF REPORTER

 2    STATE OF NORTH CAROLINA}

 3    COUNTY OF MECKLENBURG  }

 4

 5        I, Sherry L. Malia, Registered Professional

 6    Reporter/Notary Public, in and for the aforesaid

 7    county and state, do hereby certify that the

 8    foregoing 229 pages are an accurate transcript of

 9    the deposition of MIKE NICHOLSON, which was reported

10    by me, on behalf of Plaintiffs, in machine shorthand

11    and transcribed by computer-aided transcription.

12        The deponent and parties reserved signature of

13    the deposition by the deponent.

14        I further certify that I am not financially

15    interested in the outcome of this action, a

16    relative, employee, attorney or counsel of any of

17    the parties, nor am I a relative or employee of such

18    attorney or counsel.

19        This 23rd day of December 2022.

20              Sherry L Malia

21        _____

22        SHERRY L. MALIA
          Registered Professional Reporter and
23        Notary Public in and for North Carolina.
          My Commission expires: November 22, 2026
24        NC Notary Number: 19952770056

25
```