# EXHIBIT 32

**CT. GENERAL LIFE INS. CO., ET AL. vs BIOHEALTH MEDICAL LAB. INC., ET AL.**
**Christopher Haney - Vol. I on 06/20/2023**

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3     -----------------------------X

 4     CONNECTICUT GENERAL LIFE        :

 5     INSURANCE COMPANY AND CIGNA     :

 6     HEALTH AND LIFE INSURANCE       :

 7     COMPANY,                        : Case No.

 8              Plaintiffs,     : 3:19-CV-01324-JCH

 9     v.                              :

10     BIOHEALTH MEDICAL LABORATORIES,:

11     INC., PB LABORATORIES, LLC,     :

12     AND EPIC REFERENCE LABS, INC., :

13                  Defendants.        :

14     -----------------------------X

15                      VOLUME I

16

17     VIDEOTAPED VIDEO TELECONFERENCE DEPOSITION OF

18                  CHRISTOPHER HANEY

19                Tuesday, June 20, 2023

20

21

22

23     Job No.:  1324

24     Pages 1 - 227

25     Reported by:  Lisa Barbera, RPR
```

1

2

3

4                          June 20, 2023

5                          9:46 a.m.

6

7

8      VIDEOTAPED VIDEO TELECONFERENCE DEPOSITION of

9  CHRISTOPHER HANEY, an expert witness, taken by the

10   Plaintiffs, pursuant to Notice, held remotely,

11   before Lisa Barbera, RPR, a Shorthand Reporter.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              A P P E A R A N C E S

 2

 3    ON BEHALF OF PLAINTIFFS:

 4         KELSEY L. KINGSBERY, ESQUIRE

 5         KELSEY.KINGSBERY@ALSTON.COM

 6         NICK A. YOUNG, ESQUIRE

 7         NICK.YOUNG@ALSTON.COM

 8         ALSTON & BIRD LLP

 9         555 Fayetteville Street, Suite 600

10         Raleigh, North Carolina 27601

11         (919)862-2200

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      A P P E A R A N C E S   (Continued)

 2

 3   ON BEHALF OF DEFENDANTS, MEDYTOX SOLUTIONS,

 4   INC.:

 5        SCOTT M. HARE, ESQUIRE

 6        SHARE@WHITEFORDLAW.COM

 7        ANTHONY THOMAS GESTRICH, ESQUIRE

 8        AGESTRICH@WHITEFORDLAW.COM

 9        KENNETH J. LUND, ESQUIRE

10        KLUND@WHITEFORDLAW.COM

11        WHITEFORD, TAYLOR & PRESTON, LLP

12        11 Stanwix Street, Suite 1400

13        Pittsburgh, Pennsylvania 15222

14        (412)618-5600

15

16        MATTHEW CHRIST, ESQUIRE

17        MTC@PBGLAW.COM

18        DOMNICK CUNNINGHAM & YAFFA

19        2401 PGA Boulevard, Suite 140

20        Palm Beach Gardens, Florida 33410

21        (561)625-6260

22

23   ALSO PRESENT:

24        Jack McKenzie, Videographer

25
```

1        right or wrong.  I do not have any opinions

2        in that regard.

3            However, to the extent any conclusions

4        are generalized across a broader population

5        based on a sample, I do have opinions.  And

6        as I explained, in cases where Cigna has

7        sought to apply its conclusions broadly

8        across a population based on a sample, I do

9        have opinions that those conclusions are

10       invalid and unreliable, and they are

11       meaningless except for the itemized claims

12       that were reviewed in the samples themselves.

13   BY MS. KINGSBERY:

14       Q.   Okay.  I think that answers, but let me

15   just make sure I understand.

16            You do not have an opinion as to whether

17   any individual claim that Cigna reviewed was

18   medically necessary or not?

19       A.   I do not.

20       Q.   And you were not asked to evaluate the

21   reasonable value of any of the services underlying

22   the claims that you identified in Opinions 2 and 3

23   in your report; is that correct?

24       A.   When you say "reasonable value," I'm not

25   sure what you mean.

1          Q.   Do you have an understanding of the term

2    "reasonable value"?

3          A.   I have a understanding; I'm not sure if

4    it's the same one you're using.  But typically

5    when I hear the term "reasonable value," what that

6    means to me is commonly referred to as usual and

7    customary charges, reasonable and customary

8    charges.

9               If that's what you're asking about, I

10   don't have any opinions about what usual and

11   customary or reasonable customary -- reasonable

12   and customary charges or reimbursements should be

13   for any of the reimbursement for claims in this

14   case.

15         Q.   Do you have any experience calculating

16   the reasonable value for any healthcare services?

17              MR. HARE:  Object to the form.

18              THE WITNESS:  When you say "reasonable

19         value" there again, are you referring to

20         usual and customary charges?

21   BY MS. KINGSBERY:

22         Q.   Sure.

23              Do you have any experience calculating

24   the usual and customary charges for healthcare

25   services?

 1    BY MS. KINGSBERY:

 2         Q.    Mr. Haney, we were going over the scope

 3    of your opinions in this case.

 4              Do you have an opinion as to whether

 5    Cigna improperly denied any of the individual

 6    claims identified in Opinions 2 or 3 of your

 7    report?

 8              MR. HARE:  Object to the form.

 9              THE WITNESS:  I don't.  For the purposes

10         of that conclusion, I relied on the expert

11         analysis of Ms. Thelian.

12    BY MS. KINGSBERY:

13         Q.    You do not have an independent opinion

14    as to whether Cigna improperly denied any claims

15    identified in Opinions 2 and 3; right?

16         A.    No.

17         Q.    Are you --

18         A.    No, I do not.  Yes, you are right.

19    Sorry.

20         Q.    Are you familiar with the concept

21    "out-of-network" in the context of healthcare?

22         A.    Generally, yes.

23         Q.    What's your understanding of what that

24    means?

25         A.    So generally my understanding is

1   providers can either be in-network or

2   out-of-network when it comes to a private

3   insurance plan.  To be in-network, that means --

4   my understanding is, more than anything else, they

5   have an agreement amongst themselves about what

6   that provider will do and ultimately what the

7   payer will do in response to that -- what they

8   will pay for claims, what they will not pay for.

9   There is an agreement.

10          For out-of-network providers, they may

11   still accept patients -- my understanding is --

12   can still accept patients for that particular

13   insurance provider private payer, but that that

14   agreement simply does not exist.  So there is less

15   formality to the relationship.  There's less

16   formality to what amounts can be billed, and the

17   protocols for what should be paid can vary as

18   well.

19          Q.   Okay.  And when you say "can vary," what

20   do you mean?

21          A.   So they can vary from what an in --

22   in-network provider would have, from the

23   arrangements that an in-network provider could

24   have.  Now, I'm -- I'm not familiar enough with

25   the difference to be able to talk specifically

1   about what those variations are, but my

2   understanding is there are differences.

3       **Q.   And do you have an understanding of how**

4   **a provider's reimbursement is determined when the**

5   **provider is out-of-network with the private payer?**

6       A.   Again, my understanding is general, but

7   my understanding is there are several

8   considerations as to what will be reimbursed.  For

9   example, the member's benefits plan is something

10  that would be considered.  Their patient

11  responsibility, such as copayment, coinsurance,

12  things like that, would be considered when

13  weighing what should be paid for an out-of-network

14  claim.

15      **Q.   Anything else that should be considered?**

16      A.   So I listed for this case all of the

17  criteria that we found useful for considering in

18  my report.  If you'd like, we can go to that

19  paragraph and I can just double-check that we

20  talked about all of the criteria that I

21  considered.

22      **Q.   That's okay.  I'm actually just talking**

23  **about generally what your understanding is of**

24  **out-of-network reimbursement.**

25      A.   There might be other things.  I think

1    that some of the biggest considerations are what's

2    in the member's plan, what does the member owe,

3    and those kind of considerations.

4         **Q.   So when the provider does not have an**

5    **in-network agreement that sets forth reimbursement**

6    **rates, you agree that reimbursement is determined**

7    **in part by the patient's benefit plan?**

8         A.   That's my understanding, yes.

9         **Q.   And then would you also agree that any**

10   **coverage policy that applies to the services will**

11   **also dictate whether the services are covered or**

12   **not?**

13        A.   Where we're -- I think that question is

14   a little out of my depth and my understanding of

15   what's required to process payment there.

16        **Q.   So you don't know whether coverage**

17   **policies might play a role in whether a claim is**

18   **covered?**

19        A.   So you would -- I can't tell you as we

20   sit here right now what's included in a coverage

21   policy to begin with.  So I can't tell you whether

22   it's included or not.  At the end of the day, I'm

23   just not an expert in how out-of-network claims

24   should be processed and how that adjudication is

25   ultimately performed.

1    apply to the claims in Opinion 2; right?

2        A.    I don't know how many.

3        Q.    And you didn't -- didn't review any of

4    those plans to confirm whether the allowed amount

5    in the claims data is consistent with the allowed

6    amount set forth in the benefit plan?

7        A.    No.  I didn't confirm that the data

8    provided to us by Cigna was accurate.  I trusted

9    Cigna in that sense.

10       Q.    Do you believe, based on all of your

11   experience in the healthcare field, that Cigna

12   determined that these 15,842 claims, if they were

13   payable, Cigna would have paid 100 percent of the

14   labs' billed charges?

15           MR. HARE:  Object to the form.

16           THE WITNESS:  That's what the data

17       shows.

18   BY MS. KINGSBERY:

19       Q.    And so you believe that had Cigna

20   determined that these claims were payable, Cigna

21   would have paid 100 percent of the labs' billed

22   charges; is that your testimony?

23       A.    That's what the data shows.

24       Q.    Is that your testimony?

25       A.    That's what the data shows.

1              CERTIFICATE OF SHORTHAND REPORTER

2

3              I, Lisa Barbera, Shorthand Reporter, the

4         officer before whom the foregoing deposition

5         was taken, do hereby certify that the

6         foregoing transcript is a true and correct

7         record of the testimony given; that said

8         testimony was taken by me stenographically

9         and thereafter reduced to typewriting under

10        my supervision; and that I am neither counsel

11        for or related to, nor employed by any of the

12        parties to this case and have no interest,

13        financial or otherwise, in its outcome.

14

15             IN WITNESS WHEREOF, I have hereunto set

16        my hand this 25th day of June, 2023.

17

18        _Lisa Barbera_

19        _____

20        LISA BARBERA

21        STENOGRAPHER

22

23

24

25