1                        UNITED STATES DISTRICT COURT

2                          DISTRICT OF CONNECTICUT

3    _____
     CONNECTICUT GENERAL )
4    LIFE INSURANCE CO.  )
     AND CIGNA HEALTH    )
5    AND LIFE INSURANCE  )
     CO.                 )
6             Plaintiffs )    NO: 3:19cv1324(JCH)
                         )    NO: 3:19CV1326(JCH)
7     vs.                )    October 31, 2024
                         )    8:45 a.m.
8                        )
     BIOHEALTH MEDICAL   )
9    LABORATORIES INC,   )
     PB LABORATORIES, LLC)
10   and EPIC REFERENCE  )
     LABS, INC.          )
11            Defendants. )
     _____)     141 Church Street
12                            New Haven, Connecticut

13

14            DAY TEN OF TRIAL

15

16   B E F O R E:

17            THE HONORABLE JANET C. HALL, U.S.D.J.

18   A P P E A R A N C E S:

19   For CIGNA:         Edward T. Kang
                        Alston & Bird LLP
20                      950 F Street, NW,
                        Washington, DC 2004-1404
21
                        Michelle Nicole Jackson
22                      Alston & Bird LLP
                        1201 West Peachtree Street
23                      Atlanta, GA 30309

24            -- continued --

25

```
 1                          Alexander Akerman
                            Alston & Bird LLP
 2                          350 South Grand Avenue
                            51st Floor
 3                          Los Angeles, CA 90071

 4    For BioHealth Labs:   Scott M. Hare
                            Anthony Thomas Gestrich
 5                          Raines Feldman Littrell
                            11 Stanwix Street
 6                          Suite 1400
                            Pittsburgh, PA 15222
 7
                            Fred Alan Cunningham
 8                          Matthew Thomas Christ
                            Rafferty Domnick Cunningham & Yaffa
 9                          2401 PGA Boulevard
                            Suite #140
10                          Palm Beach Gardens, FL 33410

11                          John J. Radshaw, III
                            John J. Radshaw, III, Esquire
12                          65 Trumbull Street, 2d Fl.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

2340

```
 1          THE COURT:  We're here this morning in the
 2   matter of the Labs versus Cigna and Cigna versus the
 3   Labs, 19-CV-1324 and 19-CV-1326 respectively.  If I can
 4   have appearances please.
 5          MR. CUNNINGHAM:  Fred Cunningham for the Labs.
 6          MR. CHRIST:  Matthew Christ for the Labs.
 7          MR. GESTRICH:  Anthony Gestrich and Scott Hare
 8   for the Labs.
 9          MR. RADSHAW:  John Radshaw for the Labs.
10          MR. KANG:  Edward Kang of behalf of Cigna.
11          MR. AKERMAN:  Alexander Akerman on behalf of
12   Cigna.
13          THE COURT:  I just have a few housekeeping
14   details.  Thank you for preparing the list that I had
15   requested.  We're double-checking it to be sure it
16   comports with the JERS list.  Maybe I wasn't clear
17   yesterday in court.  JERS list to me is useless.  You
18   have to be Liana's age to read it.  It is so small and
19   jammed together and I think it is better to have separate
20   lists.  Can't be separated.  We have them in the format I
21   like it.  It is being checked to be sure we translated
22   from JERS exactly what's in evidence and before them in
23   the jury room.
24          What I will do is ask you folks if you can do it
25   now or when we're done before the jury is brought out,
```

1   docket your lists including the joint list. I will then

2   make a copy of the docketed list. We will docket ours as

3   well so there will four lists on the docket. Those are

4   what will go into the jury room and I will put on the

5   record which one is which docket number. That will be

6   obvious on its face. I was thinking of marking them as

7   exhibits. I don't like that idea. That's how I will

8   handle getting them into the jury and making a record of

9   what the jury has in the jury room. That I think takes

10  care of that.

11      There's an issue on the last exchange last

12  night. I should put on the record as we discussed, I

13  thought there might be some stray errors in our effort to

14  quickly remove Count One and the two causes of action and

15  to make it consistent throughout the charge. We did not

16  have a lot of time. I believe after we agreed before

17  closings what you had in front of you along with things I

18  specifically identified like cutting the double damages

19  and might have been one or two other things, that would

20  be the final charge I will give. You kindly agreed to

21  allow me to do tiny edits to section numbers, that were

22  in error, things of that sort that were not substantive.

23      We went through that yesterday after court and

24  sent you I believe a redline to reflect every one of

25  those changes that I said I wanted to make that I needed

1    your permission that you didn't think it was substantive

2    or anything like that.  Cigna's response was they were

3    all okay.  I believe The Labs' response was they are all

4    okay.  You shouldn't change 2012 to 2013.  Is that a fair

5    statement of what the correspondence with my clerk was

6    about the charge?

7              MR. GESTRICH:  Yes, Your Honor.

8              MR. KANG:  Yes, Your Honor.

9              THE COURT:  I believe he then, after conferring

10   with me, responded to Attorney Gestrich for the Labs that

11   we would keep 2012.  We have a wager in chambers that the

12   first question the jury will ask us is there's no line

13   for 2012, but whatever, we'll see and I don't remember an

14   argument about course of dealing or whatever, but maybe I

15   missed it.  Be that as it may.  It was more of a change

16   than I indicated I would make so I felt you had a right

17   to object to my changing it to '13 so I kept it at '12.

18             Also the Labs objected that I did not have the

19   phrase "by the preponderance of the evidence" in question

20   2, is it A-2 or Roman 2 -- here it is, in the Labs

21   Verdict Form was it 2-B?

22             THE CLERK:  3-B.

23             THE COURT:  3-B He wanted me to include by a

24   preponderance of the evidence after the word proven.  I

25   believe it was communicated back to the Labs that I did

1    not agree and I would not add those words.  The jury has

2    been specifically instructed that the word prove means by

3    a preponderance of the evidence.  I think it was just --

4    yeah.  I guess I will leave it at that.  I don't see any

5    harm to the Labs by not having that word repeated every

6    where.  You should place your objection on the record,

7    Attorney Gestrich, and explain why you felt it should be

8    done.

9         MR. GESTRICH:  The Labs requested that

10   preponderance of the evidence be added to Sections 3 and

11   4 for the purpose of ensuring that consistency throughout

12   verdict form.  It is stated in instruction one the

13   standard is preponderance of the evidence on the Labs

14   claim and by excluding it from 3 to 4 could give the

15   appearance it is not preponderance of the evidence

16   standard for those affirmative defenses.

17        THE COURT:  All right.  I think that's what I

18   understood.  As I briefly stated, I did not see the need

19   to do that the night before the matter was going to the

20   jury.  There's no error in the verdict form.

21        Before you docket your list, Labs, you didn't

22   put the title of the list on the list so it is a bunch of

23   numbers but doesn't say it's the Labs list.  If you would

24   add to your document either Labs list or

25   Epics/Biohealth/PB Labs.  I don't need the case caption.

1    That's interesting.  That's going to be docketed.  I

2    don't need the case caption.  You will have to put a

3    cover docketing sheet.  I want them to have a list.  They

4    don't need a front page of two captions.  Attach the

5    cover sheet with the captions and call it Labs exhibits

6    in evidence and same thing Cigna will have to do that to

7    docket it.

8            I will be off the bench in a few minutes.  If it

9    can be taken care of so my assistant can see it on the

10   docket.  I can put on the record here what the docket

11   number of what is going into the jury room.  And I guess

12   I would like to ask.  I don't know who was responsible on

13   each team for the preparation of those lists.  I would

14   like a representation even though we checked it that all

15   that's on that list is exhibits that are in evidence

16   according to the JERS system.  Is that correct for the

17   Labs?

18           MR. CHRIST:  That's correct.

19           THE COURT:  For Cigna?

20           MR. KANG:  Yes, Your Honor.

21           THE COURT:  There's a court exhibit list.  I

22   don't know this happened.  But I think it was a

23   stipulation and I probably said we'll mark it as a Court

24   Exhibit so we are making a list that has one exhibit on

25   it that's called a stipulation.  We will show that to you

1    before we docket ours.  There will be four lists going

2    into the jury room but you will have seen them all before

3    they go in and they will be identified by a page of the

4    number on CMECF.  Anything else for either side?

5              MR. KANG:  No, Your Honor.

6              THE COURT:  Quiet at last.

7              MR. CHRIST:  No.  I just want to make sure

8    there's a discussion about providing the court with USB

9    sticks of the deposition videos that were played.

10             THE COURT:  Those are going to be marked for ID.

11             A couple only housekeeping details.  That's one

12   of them.  I think you offered three and they offered one

13   so that applies to both sides.  She may already have

14   these disks.  They need to be marked.  Whether she needs

15   you to do that if she doesn't have a disk USB, zip drive,

16   thumb drive, you have to get it to her so she can mark it

17   and enter it into the system.  It's four transcript

18   portions which were played and spoken through video to

19   the jury as evidence but they are not exhibits that go

20   into the jury.  They have no way to play it and I

21   wouldn't want them to do that in the jury room.  If they

22   want any of the video based testimony, deposition

23   testimony, that they have to request it and come back.

24   Like if they want to hear somebody's testimony on a

25   certain subject, they will request it and Terri will read

2346

1    it from the record.  In the deposition by video

2    situation, we come back, figure out where it is in the

3    deposition and we'll play that portion.

4        There's a couple other housekeeping details and

5    I was going to suggest Friday at ten a.m., I would be on

6    the bench and hopefully somebody from your team will be

7    here.  I will put on the record my rulings of evidentiary

8    rulings that led to the exclusion of testimony or

9    inclusion of testimony over objection.  And I will mark

10   -- it was docketed.  When I do this, I can refer by

11   docket number.  Doesn't have to be marked as an ID

12   exhibit.  I think that's all.

13       The only other thing I have to explain some

14   logistics to the jury.  One of them has to do with if

15   they have a question for the court, they write a note and

16   give to the officer.  It comes to me and I get counsel

17   back in the courtroom.  Then we're able to bring them out

18   and I will address their question.  I explain on the

19   questions or even read backs might take a little while

20   because I have to discuss it with the lawyers.  If the

21   note is something like we want to recess at 3:45,

22   whatever the note is I need to have -- I know if you are

23   not in the courtroom.  A lot of times there aren't rooms

24   available.  The lawyers sit in the courtroom.  If Liana

25   said the judge is coming out in two, minutes that's not a

1    problem.  I know you are in rooms and so I would ask you

2    give Liana a phone number of the person you want to be --

3    how can I put this.  If I'm back on the bench talking

4    about things to say to the jury's questions or even doing

5    read backs to the jury, that's the person you want in the

6    courtroom.  In other words, they have authority to answer

7    my questions, to discuss it with me, to object,

8    et cetera.  You give that phone number to Liana.  The

9    whole team can come back, I don't care.  I'm not rounding

10   up how many of you are left.  I will round up what I need

11   to get the court process going.  That phone number has to

12   be with the ringer ringing and needs to be answered.

13          Liana will tell us when they are all here and

14   they are deliberating in the morning.  She'll let you

15   know that.  Let me know that.  When they say they want a

16   break, she'll let you know that and she'll let me know

17   that and when they want to leave in the afternoon same

18   thing.  Any time in between when they are deliberating,

19   that person with that phone has to be in the building and

20   I suppose in your room.  The problem is I usually tell

21   lawyers they can wander into another trial that's going

22   on.  Let Liana know where you will be.  I guess that's

23   true.  I don't think there are any other trials so I

24   assume you are not going to do that.  We'll contact you

25   by phone or if the back door is open and she sees one of

2348

1    the lawyers that's a contact as well.  I don't want to

2    keep the jury waiting if they have asked a question so I

3    expect that.  I just want to be clear.  Let's see what

4    else.  I can't think of anything else.

5          My expectation is 9:30 bring the jury out.  They

6    will find a 70-page document on the seat and I will begin

7    the charge.

8          The only thing I will say at the beginning that

9    they should have found a copy of the charge on their

10   chair.  Obviously it is for them to take back to the jury

11   room to use during deliberations.  You are welcome to

12   follow along with me as I read the charge to you.  You

13   are welcome to begin to follow and put it down or welcome

14   not to look at it at all.  Just sit back and listen to

15   what I'm saying.

16         The only thing you can't do is jumping from page

17   20 to page 40 back to page 16 while I'm giving you the

18   charge.  It is very important.  You may wonder why I have

19   to speak it to you if I read it.  That's not in my

20   charge.  I will say words to that effect and I will go

21   into the charge.  I occasionally expand on the

22   instructions, not for the law.  I mean instructions like

23   when I'm telling them about if you have a note.  I say

24   something about a Court Security Officer. I sometimes

25   explain that.  Those are the people with blue jackets,

1    somebody outside the door.  Other than that I follow

2    quite closely.  I have it down here.  If he moves, it

3    means I misread something and we'll fix it.  So that is

4    my procedure.  Any concerns or questions?

5              MR. GESTRICH:  None from the Labs.

6              MR. KANG:  No, Your Honor.

7              THE COURT:  What got into you this morning?  All

8    right.  Thank you very much and we'll be back.  I will be

9    back out at 25 past.  We'll come out with the charge and

10   a copy of the verdict forms.  I think we only have two

11   for each side.  Counsel, my assistant came out with that

12   one exhibit list of court exhibits.  If you would take a

13   look at it.  We'll get you a copy.  She's going to docket

14   it if it is all right.

15             I'm sorry I wasn't clear.  I told her to put

16   that on.  It is currently 2 for identification but as I

17   said about four minutes ago, there's three more that have

18   to be marked.  My view is three of them are your

19   evidence.  One is Cigna and that they would be marked as

20   ID to your list so I apologize we haven't had time to get

21   Nicholson off the court list.  As of now, the only thing

22   is the stipulation -- not as of now.  What the jury is

23   going to get which is what that list is supposed to

24   reflect even with Nicholson.

25             I am taking a Nicholson off.  I'm putting him on

1   your list as ID and putting Ligotti on the Cigna list.

2   I'm putting Borden on your list as ID and Ziemian on your

3   list.  Okay.  So you each have two.

4           MR. CHRIST:  The list that go back with the jury

5   that we're about to docket, those are only admitted

6   exhibits so we don't list any of the ID only.

7           THE COURT:  No.  The whole point of creating a

8   separate list is so they are going to be able to search

9   in their giant Ipad and find where an exhibit is instead

10  of going through the data that's in there and trying to

11  find what it is.  They can say number this.  Let's open

12  that one up.  That's what it is for.

13          MR. CHRIST:  Thank you.

14          (Whereupon, a recess was taken from 9:07 a.m. to

15  9:23 a.m.)

16          THE COURT:  We can't see the Cigna list on the

17  docket.

18          MS. JACKSON:  I'm filing it right now.

19          THE COURT:  What are you doing right now?

20          MS. JACKSON:  I'm filing the list right now.

21          THE COURT:  I needed it filed when I left the

22  bench, ma'am.  I need them in my hands before I let the

23  jury out.

24          I need confirmation that the JERS list of full

25  exhibits that Liana gave you several days ago, I think

1   more than that, but it is changing over time.  That is

2   what is now on the JERS list accurately reflects what is

3   in evidence and will go to the jury.

4           MR. CHRIST:  Yes, Your Honor.

5           MR. KANG:  Yes, I don't object. Thank you very

6   much.

7           THE COURT:  You have gotten two of the lists to

8   go into the jury.  We're waiting for Cigna to docket the

9   joint list.  You can make one docket item.  They are not

10  going to get the cover sheet.  I will refer to the number

11  that will be page 2, 3, whatever of 2, but I would like

12  to put that on the record before we start.

13          MR. CHRIST:  Your Honor, the parties discussed

14  during the break and the Labs filed a joint notice.  The

15  joint exhibit list we're fine for that just to be the

16  list unless the court wants a Cigna file.

17          THE COURT:  No.  We didn't get it.

18          MR. KANG:  It just got docketed.

19          I think we all have them now.

20          THE COURT:  Tell Bern refresh coming through and

21  print four copies of two lists as soon as possible.

22          Everybody there.  It will be another minute.

23  That's done as soon as you have them and lay your eyes

24  that it is what you think you docketed.  What the other

25  side thinks they reviewed.  We will be ready to bring the

1    jury out.  Has everybody got their third and fourth list

2    that's going to go into the jury room as I previously

3    described?  Anybody have any questions as to whether it

4    might not be what you previously reviewed and you

5    submitted?  It should look exactly like.

6              MR. KANG:  No issues, Your Honor.

7              MR. CHRIST:  No issues, Your Honor.

8              THE COURT:  Liana let's get this going.

9              (In the presence of the jury at 9:33 a.m.)

10             THE COURT:  Everybody be seated please.  Good

11   morning, ladies and gentlemen.  We're ready for the last

12   step before you begin your steps towards two verdicts.  I

13   think you have all found a thick document on your seats

14   and you will recall that's the charge as I will give it

15   to you this morning.  I'm sure jurors wonder why do you

16   have to sit and listen to me read this to you when you

17   have a copy.  Why can't you just go to the jury room and

18   start deliberating?  The reason is that I have to be

19   certain that you have gotten the entire charge, that you

20   are aware of everything in the charge and if I sent you

21   back with a copy, no one has any assurance you wouldn't

22   let's look at that part of the count, okay, that will

23   take care of that without having taken in all of a

24   charge.  You have to understand other than my

25   instructions about which ones go to the Labs' case and

 1   which goes to Cigna.  There's a lot of other charges that

 2   cover both cases so I have to be sure you have heard all

 3   of them.

 4         Jurors approach this next hour plus or so in

 5   many different ways.  Some jurors follow me all the way

 6   from page 1 to the last page as I read that.  Other

 7   jurors just put it on their lap, sit back and listen

 8   knowing they can read it later.  Others start to read.

 9   At some point, stop and put it on their lap.  I don't

10   really care which of those you do.  What I do care which

11   I don't want you to be flipping through it again picking

12   out certain ones while I'm probably going to go to

13   reading a different one.  Again that would lead to your

14   not hearing and not having heard all of your charges.

15   Whatever you want to do other than jumping around, feel

16   free to do that.   You have now heard the evidence in

17   these two consolidated cases, as well as the closing

18   arguments of counsel.  This brings us to a stage in the

19   trial when you will soon undertake your final function as

20   jurors.  First, however, it is my duty to instruct you

21   concerning the law that applies to each of these two

22   cases.

23         At the outset of the trial, I gave you some

24   preliminary instructions that were intended to serve as

25   an introduction and to orient you to the two cases under

1    consideration.  Listen closely to these charges because

2    some things have changed.  I believe it was I told you

3    yesterday there was a count dropped or two causes of

4    action so these are going to be somewhat different. These

5    are the instructions I'm now giving you must guide your

6    deliberations in these cases.  You should not rely on

7    anything different that I may have said in the

8    preliminary instructions if it's different from what I'm

9    saying here.

10         Now, these are instructions are the complete

11   instructions.  You shouldn't single out any one of the

12   instructions, or fail to follow another, unless I

13   specifically instruct you to do so.

14         When you recess to deliberate, as I said, you

15   will take your copy of your instructions with you so you

16   can refer to it as you go through your deliberations.

17          Remember, at the beginning of the trial, I told

18   you that there were two cases before you: one, brought by

19   three laboratory testing companies, Epic Reference Labs,

20   Inc., BioHealth Medical Laboratory, Inc. and PB

21   Laboratories, LLC, referred to collectively as "the

22   Labs", against two insurance companies originally

23   Connecticut General Life Insurance Company, and Cigna

24   Health and Life Insurance Company, referred to together

25   as "Cigna".  The other case was brought by the two Cigna

1    companies against the three Labs.

2    However, In the time since I gave you those initial

3    instructions, the parties have reached a stipulation, or

4    an agreement, that dismissed Connecticut General Life

5    Insurance Company from both cases.  Now you must only

6    deliberate, decide your verdict, with respect to one

7    Cigna company, Cigna Health and Life Insurance Company.

8    So when I say "Cigna", I mean Cigna Health and Life

9    Insurance Company.

10           So now the Labs' case has three Labs as

11   plaintiffs, and one Cigna company as a defendant.  The

12   Cigna case has only one plaintiff, Cigna Health and Life

13   Insurance Company, and three defendants, the three Labs I

14   named.

15   Now, I will give you general instructions to guide your

16   deliberations

17   My instructions will proceed in two parts.

18   First, they will include general instructions on your

19   role as jurors, on evaluating the evidence, and on the

20   burden of proof in a civil case.  These instructions are

21   general instructions; they are applicable to both cases.

22   Then, I'm going to instruct you on the law of each case.

23   This will result in one set of instructions specific to

24   the three Labs case against Cigna, and one set of

25   instructions specific to Cigna's case against the Labs.

1    Each set of instructions is specific to each of the two

2    cases under consideration.

3    You not use any instruction from the Labs' case against

4    Cigna, for example, in Cigna's case against the Labs.

5    Instead, for the Labs' case, the set of instructions I

6    give you for the Labs' case, together with the general

7    instructions, constitute the complete law of the Labs'

8    case.

9         Likewise, for Cigna's case against the Labs, the

10   set of instructions I give you for Cigna's case, together

11   with my general instructions, constitute the complete law

12   on Cigna's case.  I will give you further instructions on

13   how to treat these two separate cases, but I am going to

14   turn first to my general instructions, which apply to

15   both cases.

16       Regardless of any opinion you may have as to what

17   the law is or ought to be, it would be a violation of

18   your sworn duty to base a verdict upon any view of the

19   law other than the view as instructed by me.  If any

20   attorney or any witness or any exhibit has stated a legal

21   principle different from one that I state to you in these

22   instructions, it is my instructions that you must follow.

23       Witness testimony concerning the law was

24   testimony only of that witness's understanding of the law

25   and is to be considered by you only with regard to that

1  witness's understanding, what he understood something to

2  be or what he thought it was, his knowledge.  You did

3  hear testimony in this case from witnesses that might

4  appear to you to have been testimony on the law.  You

5  should not have heard such testimony and you should

6  disregard it.

7  My Instructions alone establish the law for your

8  deliberations.  You must take the law as I give it to

9  you.  You must carefully and impartially consider all of

10  the evidence in these cases and apply the law as stated

11  by the court to reach a just verdict in each case.

12  As members of the jury, you are the sole and exclusive

13  judges of the facts.

14  You pass upon the evidence.  You determine the

15  credibility of the witnesses.

16  You resolve such conflicts as there may be in the

17  testimony.  You draw whatever reasonable inferences you

18  decide to draw from the facts as you have determined

19  them.  In determining these issues, no one may invade

20  your province or function as jurors.  In order for you to

21  determine the facts, you must rely upon your own

22  recollection of the evidence.

23  In determining the facts, you are reminded that you took

24  an oath to render judgment impartially and fairly,

25  without bias, prejudice, or sympathy, solely upon the

1    upon the evidence in the case and the applicable law.  I

2    know that you will do this and, in so doing, you will

3    reach a just and true verdict in both cases.

4    You should be guided solely by the evidence presented

5    during trial, without regard to the consequences of your

6    decisions.  You have been chosen to try the issues of

7    fact and to reach a verdict in each case on the basis of

8    the evidence or lack of evidence.  If you let sympathy or

9    bias interfere with your clear thinking, there is a risk

10   that you will not arrive at fair and just verdicts.

11        Now because you are the sole and exclusive

12   judges of the facts, I do not mean to indicate in these

13   instructions, nor have I meant at any time to indicate

14   during the trial, any opinion as to the facts or as to

15   what your verdicts should be.  The rulings I have made

16   during the trial are not any indication of a view I have

17   of your decision and what it should be.  Of course, you

18   will dismiss from your mind completely any evidence which

19   I said should be stricken or excluded by the court.  You

20   will refrain from speculation or conjecture or any

21   guesswork about the nature and effect of any discussion

22   between myself and the counsel held outside your hearing.

23        Now during the trial, One cannot help becoming

24   involved with the personalities and styles of the

25   attorneys, but it is important for you as jurors to

1   recognize that this is not a contest among attorneys.

2   You are to decide this case solely based on the evidence.

3   Remember, statements and characterizations of the

4   evidence by the attorneys are not evidence.  Insofar as

5   you find their closing arguments helpful, take advantage

6   of them, but it is your memory and your evaluation of the

7   evidence that counts.

8        Furthermore, it is the duty of the attorney for each

9   side to object when the other side offers testimony or

10  other evidence which the attorney believes is not

11  properly admissible.  Counsel also has the right and duty

12  to ask the court to make rulings of law and to request

13  conferences at the side bar out of the hearing of the

14  jury.  All those questions of law must be decided by me.

15  You should not show any prejudice against an attorney or

16  his or her client because the attorney objected to the

17  admissibility of evidence, asked for a conference out of

18  the hearing of the jury, or asked the court for a ruling

19  on the law.

20          Do not attempt, moreover, to interpret my

21  rulings on objections as somehow indicating my view of

22  what your two verdicts should be.  Please understand, I

23  have no such view.  As I already indicated, my rulings on

24  the admissibility of evidence do not indicate any opinion

25  about the weight or effect of such evidence.  You are the

1    sole judges of the credibility of all witnesses and the

2    weight and effect of all evidence.

3              Now, both of the cases in this trial are

4    civil cases.  In a civil case, the plaintiff, who is the

5    party bringing claims, has the burden of proving each

6    element of its claim by a preponderance of the evidence.

7         In determining whether a plaintiff has carried

8    that burden, bear in mind that you may consider the

9    testimony of all witnesses, regardless of who may have

10   called the witness to come testify and all exhibits

11   received in evidence, regardless of who may have

12   introduced them.

13             If, upon consideration of all the facts at

14   issue, you find that a plaintiff has failed to sustain

15   its burden, then you should proceed no further and your

16   verdict should be for the defendant in that case or

17   defendants.  If, however, you find that a plaintiff has

18   proven the elements of its claims by a preponderance of

19   the evidence, you should proceed to consider the

20   affirmative defenses raised by the defendants --

21   defendants.

22        In both cases, where they are defendants, the

23   Labs and Cigna have raised such defenses.  While the

24   burden of proving claims rests on the plaintiff, the

25   burden of proving an affirmative defense by a

1    preponderance of the evidence rests on the defendant.

2        To avoid confusion, I will soon provide more

3    specific instructions separately in my instructions on

4    each case.  For now, in my general instructions, I want

5    to instruct you what it means to prove a fact by a

6    "preponderance of the evidence", which applies to both

7    cases.

8        To prove a fact by a preponderance of the evidence

9    means to prove that the fact is more likely true than not

10   true.  Therefore, the party that has the burden must

11   prove more than simple equality of evidence.  If, after

12   considering all of the evidence and testimony on a given

13   issue, you find that both sides of the issue are equally

14   probable, then that party has failed to sustain its

15   burden, and you must decide that issue against that

16   party.

17       However, when the burden is a preponderance of the

18   evidence, the party that has the burden of proof need

19   prove no more than a preponderance.  As I indicated, a

20   preponderance of the evidence means the greater weight of

21   the evidence; it refers to the quality and persuasiveness

22   of the evidence, not to the number of witnesses or

23   exhibits.  So long as you find that the scales tip,

24   however slightly, in a plaintiff's favor on an element of

25   their claim that it must prove, then that element will

1    have been proven by a preponderance of the evidence.

2         You have heard the phrase "proof beyond a reasonable

3    doubt."  That standard is the proper standard of proof in

4    a criminal trial.  The cases before you are civil cases,

5    and that "reasonable doubt" standard does not apply in a

6    civil case.  Therefore, you should not consider the

7    criminal burden of proof in these case.  Put it out of

8    your mind.

9         Throughout these instructions to you, I may use the

10   word "prove" from time to time, with reference to this

11   burden of proof that I just explained.  I may also speak

12   of your "finding" various facts as to elements of a claim

13   made in this case.  You are to understand my use of the

14   word "prove" to mean "prove by a preponderance of the

15   evidence," even if I do not always repeat all these exact

16   words.  Similarly, when I say that you must "find" a fact

17   in order to return a verdict in favor of a party, you

18   must find that fact to have been proved by a

19   preponderance of the evidence, even if I simply use the

20   word "find." I mean that whole phrase

21        The evidence in this trial consists of the sworn

22   testimony of the witnesses and the exhibits received in

23   evidence as full exhibits, without regard to which side

24   called the witness or offered the exhibit.

25        It is the witnesses' answers and not the lawyers'

questions that are evidence.  At times, a lawyer may have
incorporated into a question a statement which assumed
certain facts to be true, and then asked the witness if
the statement was true.  If the witness admitted the
truth of the statement, then you may consider it as
evidence.  If the witness denied the truth of the
statement, and if there is no other evidence in the
record proving that assumed fact to be true, then you may
not consider the assumed fact to be true simply because
it was contained in the lawyer's question.  Similarly, if
an attorney described a witness's testimony, you should
not accept that as the witness's testimony.  It is your
recollection of the witness's testimony on which you
should rely.

     The lawyers are not witnesses.  What a lawyer has
said in his question is not evidence unless the witness
adopts the question in the witness's answer to that
question.  Moreover, what the lawyers have said in their
opening statements, in their closing arguments, in their
objections, or in statements made to the court, is not
evidence.  What the lawyers have said in their closing
arguments is intended to help you understand the evidence
and to reach your two verdicts.  However, if your
recollection of the facts differs from what a lawyer
says, it is your recollection on which you should rely.

1   Exhibits which have been marked for identification may

2   not be considered by you as evidence unless and until

3   they have been received as full exhibits in evidence by

4   the court.  Materials brought forth only to refresh a

5   witness's recollection are not evidence.  Testimony that

6   has been excluded, stricken, or that you have been

7   instructed to disregard is not evidence.

8   Anything I may have said during the trial, or that I may

9   convey in these Instructions, is not evidence.  My

10  rulings on the admissibility of evidence do not, unless

11  expressly stated by me, indicate any opinion as to the

12  weight or effect of such evidence.  Finally, anything you

13  may have seen or heard outside the courtroom or while the

14  court was not in session is not evidence and must be

15  disregarded completely.  You are to decide these cases

16  solely on the evidence admitted at trial.

17      You, as jurors, are the judges of the facts. But in

18  determining what actually happened—that is, in reaching

19  your decision as to the facts—it is your sworn duty to

20  follow all of the rules of law as I explain them to you.

21      When I say that I will explain the "rules of law" to

22  you, that includes the general instructions, the law as

23  it applies to both cases, and the law as it applies to

24  the claims and affirmative defenses brought by the Labs

25  and Cigna in each case.  My instructions on the law will

1    also include instructions to you about the meaning of

2    contracts, the interpretation of which involves questions

3    of law.  That means I will instruct you, as needed, on

4    the law as it relates to the meaning of Cigna's insurance

5    policies in these cases.  You are sworn to follow the law

6    as I instruct you.

7        We have heard testimony from witnesses in this case

8    that purports to explain to you what Cigna's insurance

9    policies say.  You are to follow my instructions on any

10   language of the insurance policies that I instruct you

11   on, not what a witness testified.

12   You are sworn to follow my instructions.  Anything you

13   heard from a witness that contradicts my instructions

14   about what the law is should be disregarded.  You must

15   not substitute or follow any notion or opinion as to what

16   the law is as given to you by a witness.

17   You must not substitute or follow your own notion or

18   opinion as to what the law is or ought to be.  Instead,

19   follow my instructions on the law as I give them to you.

20

21       You were permitted to take notes during the course

22   of the trial.  Any notes you have taken should be used

23   only as memory aids; do not give your notes precedence

24   over your independent recollection of the evidence.  If

25   you did not take notes, you should rely on your own

2366

1   recollection of the proceedings and should not be

2   influenced by the notes of other juror

3        In the argument, you may have heard reference to a

4   "stipulation" or that some fact is "stipulated."  A

5   stipulation of fact is an agreement between the parties

6   that a certain fact is true.  Stipulations are evidence.

7   The effect of a stipulation is to relieve the party with

8   the burden of proving that fact from having to introduce

9   evidence to prove it.

10  Because the parties have agreed, you must regard such an

11  agreed fact as true for the purposes of these cases.

12       You have heard and seen evidence in this case which

13  is in the form of interrogatories.

14  Interrogatories are written questions posed by one side

15  which call for written answers under oath from the other

16  side. Both the questions and answers are made prior to

17  trial after the case has begun in what is called pretrial

18  discovery, and each side is entitled to seek such

19  discovery from the other.

20  You may consider a party's answers to interrogatories as

21  evidence against a party who made the answer, just as you

22  would any other evidence which has been admitted in this

23  case.

24  In this regard, you are not required to consider a

25  party's answers to interrogatories as true, nor are you

1    required to give them more weight than any other

2    evidence. It is up to you to determine what weight, if

3    any, should be given to the interrogatory answers which

4    have been admitted as evidence.

5    One cautionary word on this subject: while you may

6    consider the interrogatory answers as evidence against

7    the party who gave the answers, you may not consider

8    those answers against any other party, nor may you

9    consider the answers as evidence against the party who

10    posed the interrogatory questions. You may only consider

11    the interrogatory answer as evidence against the party or

12    parties who gave the answer.)

13        Some of the testimony before you has been in the

14    form of depositions which have been received in evidence.

15    A deposition is simply a procedure where, prior to trial,

16    the attorneys for one side may question a non-party

17    witness or an adversary party under oath before a court

18    stenographer. This is part of pretrial discovery, and

19    each side is entitled to take such depositions. You may

20    consider the testimony of a witness given at a deposition

21    according to the same standards you would use to evaluate

22    the testimony of a witness given at trial.

23        Generally speaking, there are two types of evidence.

24    One type of evidence is direct evidence.  Direct evidence

25    is evidence presented by a witness who testifies to what

1    he saw, heard, or observed.  In other words, when a

2    witness testifies about something he knows by virtue of

3    his own senses, such as seeing, touching, or hearing,

4    that is called direct evidence.  Direct evidence may also

5    be in the form of an exhibit where the fact to be proved

6    is the existence or content of the exhibit.

7         Circumstantial evidence is evidence that tends to

8    prove a disputed fact by proof of other facts.  That is,

9    circumstantial evidence is proof of facts from which you

10   may infer or conclude that other facts exist.  Remember

11   my rain example.  On the combination of facts that I

12   asked you to assume, it would be reasonable and logical

13   for you to conclude that it is raining.  It is not the

14   only conclusion you could reach, nor would you have to

15   reach that conclusion, but you could do so reasonably and

16   logically.  All there is to circumstantial evidence is

17   that you infer, on the basis of reason, experience, and

18   common sense, from one or more established facts.  In my

19   example, a forecast and people with wet umbrellas and wet

20   hair, the existence or non-existence of some other fact.

21   Again, in my example, that it had been raining.

22        Circumstantial evidence is of no less value than

23   direct evidence.  It is a general rule that the law makes

24   no distinction between direct and circumstantial

25   evidence, but simply requires that a verdict must be

1    based on a preponderance of all the evidence.

2    During the trial you may have heard the term "infer" or

3    "inference."  Further, in the attorneys' arguments, they

4    have asked you to infer, on the basis of your reason,

5    experience, and common sense, from one or more proven

6    facts, the existence of some other fact.

7    An inference is not a suspicion or a guess.  It is a

8    reasoned, logical conclusion that a disputed fact exists

9    on the basis of another fact that has been proven to

10   exist.  There are times when different inferences may be

11   drawn from facts, whether proven by direct or

12   circumstantial evidence.  A plaintiff may ask you to draw

13   one set of inferences, while a defendant may ask you to

14   draw another.  It is for you, and you alone, to decide

15   what inferences, if any, you will draw.  In drawing

16   inferences, you should exercise your common sense.

17   You have had the opportunity to observe all the

18   witnesses.  It is now your job to decide how believable

19   each witness was in his testimony.  You and you alone are

20   the judges of the credibility of each witness, which

21   testimony to believe and which not to believe, and the

22   importance of any one witness's testimony.

23   In making these judgments, you should carefully

24   scrutinize all of the testimony of each witness, the

25   circumstances under which each witness testified, and any

1    other matter in evidence that may help you decide the

2    truth and the importance of each witness's testimony.

3    How do you determine truthfulness?  When you watched a

4    witness testify, everything a witness said or did on the

5    witness stand counts in your determination.  What

6    impression did the witness give you?  Did he or she

7    appear to be frank, forthright, and candid, or evasive

8    and edgy as if hiding something?  How did the witness

9    appear?  What was the witness's demeanor, that is, his or

10   her carriage, behavior, bearing, manner, and appearance

11   while testifying?

12   You should use all the tests for truthfulness that you

13   would use in determining matters of importance to you in

14   your everyday life.  In evaluating the testimony of any

15   witness, you may consider, among other things: the

16   witness's intelligence; the ability and opportunity the

17   witness had to see, hear, or know the things that the

18   witness testified about; the witness's memory; any

19   interest, bias, or prejudice the witness may have; the

20   manner of the witness while testifying; and the

21   reasonableness of the witness's testimony in light of all

22   the evidence in this case.

23   Inconsistencies or discrepancies in the testimony of a

24   witness, or between the testimony of different witnesses,

25   may or may not cause you to discredit such testimony.

1   Two or more persons participating in an event or

2   witnessing an incident or transaction may see or hear it

3   differently; an innocent mis-recollection, like failure

4   of recollection, is not an uncommon experience.  In

5   weighing the effect of a discrepancy, always consider

6   whether it pertains to a matter of importance or an

7   insignificant detail, and whether the discrepancy results

8   from innocent error or from intentional falsehood.

9   You are not limited to just the factors I have mentioned.

10  You should use all the tests for truthfulness that you

11  would use in determining matters of importance to you in

12  your everyday life.  Always remember that, in assessing a

13  witness's testimony, you should use your common sense,

14  your good judgment, and your own life experience.

15  A witness may be discredited or "impeached" by

16  contradictory evidence, by a showing that the witness

17  testified falsely concerning a matter, or by evidence

18  that, at some other time, the witness said or did

19  something inconsistent with the witness's present

20  testimony.  A witness may also be impeached by evidence

21  that tends to show the witness is biased for or

22  prejudiced against one of the parties.  It is your

23  exclusive duty to give the testimony of each witness such

24  credibility or weight, if any, as you think it deserves.

25  If you find that a witness testified untruthfully in some

1   respect, you may consider that fact in deciding what

2   credit, if any, you will attach to that witness's

3   testimony.  Considering that fact and all other relevant

4   evidence, you may accept or reject the testimony of such

5   a witness, in whole or in part.

6   In making this determination, you may consider whether

7   the witness purposely made a false statement or whether

8   it was an innocent mistake; whether the inconsistency

9   concerns an important fact, or whether it had to do with

10  a small detail; and whether the witness had an

11  explanation for the inconsistency and whether that

12  explanation made sense to you.

13  In evaluating the credibility of a witness, you should

14  take into account any evidence that the witness who

15  testified may benefit in some way from the outcome of

16  this case.  Such an interest in the outcome creates a

17  motive to testify falsely and may sway the witness to

18  testify in a way that advances his own interests.

19  Therefore, if you find that witness whose testimony you

20  are considering may have an interest in the outcome of

21  this trial, you should bear that factor in mind when

22  evaluating the credibility of that witness's testimony

23  and accept it with great care.  Keep in mind, though,

24  that it does not automatically follow that testimony

25  given by an interested witness is to be disbelieved.  A

1  witness's interest in a case is just one factor to

2  consider in judging the witness's credibility.  It is for

3  you to decide, based on your own perceptions and common

4  sense, to what extent, if at all, the witness's interest

5  has affected his or her testimony.

6  We have had the testimony of expert witnesses in this

7  case.  Expert witnesses are people who, because of their

8  training, education, and experience, have knowledge

9  beyond that of the ordinary person.  Because of that

10  expertise in the field they are in, expert witnesses are

11  allowed to give their opinions.  Ordinarily, a witness

12  cannot give an opinion about any thing, but rather is

13  limited to testimony as to the facts in that witness's

14  personal knowledge.  The experts in this case have given

15  opinions.  However, the fact that these witnesses may

16  qualify as experts does not mean that you have to accept

17  their opinions.  You can accept their opinions or reject

18  them.

19  In making your decision whether to believe an expert's

20  opinion, you should consider the expert's education,

21  training, and experience in the particular field; the

22  information available to the expert, including the facts

23  the expert had and the documents or other physical

24  evidence available to the expert; the expert's

25  opportunity and ability to examine those things; the

1  expert's ability to recollect the activity and facts that

2  form the basis for the opinion; and the expert's ability

3  to tell you accurately about the facts, activity, and the

4  basis for the opinion.

5  You should consider yourselves the methods employed by

6  the expert and the reliability of the result.  You should

7  further consider whether the opinions stated by the

8  expert are based on facts that have a rational and

9  reasonable basis in the evidence.  Based on those

10  considerations, together with your consideration of the

11  matters addressed by the court in its instruction on

12  witnesses, see section 15, it is then up to you to decide

13  whether or not to accept the opinion.  You may believe

14  all, some, or none of the testimony of an expert witness.

15  In other words, an expert's testimony is subject to your

16  review like that of every other witness.

17  In the Labs' case against Cigna, there are three

18  plaintiffs – the three Labs – and one defendant, Cigna.

19  Although there are multiple plaintiffs in the Labs' case,

20  it does not follow from that fact alone that, if one Lab

21  is entitled to recover, all are entitled to recover.

22  Similarly, in Cigna's case against the Labs, there are

23  multiple Labs as defendants but only one plaintiff,

24  Cigna.  The mere fact that there are multiple defendants

25  in that case does not mean that, if one defendant

1  prevails in its defense, all defendants do likewise.  The

2  same applies to damages.  In a case with multiple

3  plaintiffs, if you decide to award damages to one

4  plaintiff in a certain amount, it does not follow from

5  that fact alone that all plaintiffs are entitled to

6  recover, or that the defendant is required to pay each

7  plaintiff the same amount.

8  In these instructions, I may at times, for ease of

9  discussion, refer to what the plaintiffs in one case must

10 prove in order to prevail as to the defendants in that

11 case.  For example, I will refer to what "the Labs" must

12 prove to prevail under their cause of action against

13 Cigna.  Keep in mind that what I mean is that that

14 standard of proof applies to the proof of each Lab's

15 cause of action against Cigna.  Bear in mind that you

16 must give separate consideration to each Lab's Count

17 against Cigna.  You may not favor one Lab's Count because

18 you found for another Lab on the same Count.  Further, in

19 Cigna's case, you may not prejudice one Lab because you

20 found another Lab liable.

21     This is a trial of two cases which have been

22 consolidated for trial.  Remember that in an ordinary

23 civil case, we refer to the party bringing the claims as

24 the "plaintiff."  We refer to the party defending against

25 those claims as the "defendant."  I have avoided using

1    these terms throughout the trial because they would be

2    confusing here.

3    In one case, the Labs brought one claim against Cigna.

4    In that case, the three Labs are each a plaintiff, and

5    Cigna is the defendant.  In the other case, Cigna brought

6    a claim against the three Labs.  In that case, Cigna is

7    the plaintiff, and each of the three Labs are defendants.

8    I am soon going to instruct you on the law specific to

9    each of these cases.  In my instructions specific to each

10   of these cases, I will use the words "plaintiff" and

11   "defendant", because as you consider each of these cases,

12   it is important to understand who is bringing the claims,

13   the plaintiffs, and who is raising defenses, the

14   defendants, and who bears the burden of proof as to those

15   claims and defenses.

16   Although these cases have been tried together, each is

17   separate from the other.  This is a trial of two cases,

18   which, in one, the Labs are suing Cigna, and which, in

19   the other, Cigna is suing the Labs.  In each case, each

20   party is entitled to have you separately consider each

21   claim and defense as it affects that party.  Therefore,

22   in your deliberations, you should consider the evidence

23   as it relates to each case separately, as you would have

24   had each case been tried before you separately.

25        Because this is a trial of two separate cases, I

1   will ask you to reach two separate verdicts.  Unless I

2   have instructed you otherwise, all of the evidence you

3   have heard may be considered in reaching each verdict in

4   each case.  For example, if you found a particular

5   witness's testimony credible and persuasive, you may

6   consider that testimony as it relates to both verdicts.

7   However, these two cases involve different types of legal

8   claims.  Therefore, the law in each case is different.

9   While my general instructions about your duties as a

10  juror and about the trials apply equally to both of the

11  cases, the specific instructions I give you about the law

12  of one case must only be applied in that case.  Do not

13  consider the instructions I give you specific to one case

14  as you deliberate on the outcome of the other case.

15  Consider only the general instructions I have given,

16  Sections 1-19, and my closing remarks, section 52 as well

17  as the specific instructions I give you for that case.

18  In the Labs' case that would be sections 20 to 34, and in

19  Cigna's case it would be sections 35 to 51.

20          In reaching a verdict, you must treat each

21  verdict as separate and independent from the other

22  verdict.  Therefore, you should not consider the outcome

23  of one verdict in reaching the other verdict.

24  Additionally, if you reach the issue of damages with

25  regard to one or both cases, you should not consider the

1    damages awarded in one case in reaching a decision on

2    damages in the other case.  You should not, for example,

3    try to offset the damages you award in one case by adding

4    or subtracting damages in the other case.  In each case,

5    the parties are entitled to separate consideration of

6    their claims and defenses.  You are to consider these two

7    verdicts, and any damages awarded, independently of one

8    another.

9    That concludes my general instructions.  I am now going

10   to give you instructions on the law specific to each

11   lawsuit.  I will begin with the Labs' lawsuit against

12   Cigna.

13   These specific instructions, together with my general

14   instructions, form the complete instructions for the Labs

15   lawsuit against Cigna.  You should not single out any one

16   instruction, or fail to follow another.  In consideration

17   of this case, however, you must not consider in the Labs'

18   case against Cigna, any of the instructions I will later

19   give you about Cigna's lawsuit against the Labs.

20        Further, when you later proceed to consider

21   Cigna's lawsuit against the Labs, you should not consider

22   any of the instructions I now give you in connection with

23   the Labs' lawsuit against Cigna.

24        In the Labs' lawsuit against Cigna, the three

25   Labs are the plaintiffs, and Cigna is the defendant.

1    From 2012-2017, one or more of the Labs billed Cigna for

2    services that the Labs allege they performed for patients

3    insured under Cigna's health insurance policies that

4    Cigna issued or administered.  The Labs have brought one

5    Count against Cigna challenging non-payment of certain of

6    their bills.  The one Count asserts a third-party

7    beneficiary cause of action.  In this Count, the Labs

8    assert that each of them are beneficiaries of Cigna's

9    insurance contracts with Cigna's insured, or which Cigna

10   administers.  As such, they have a right to payment under

11   those contracts between Cigna and the insured patient.

12   Cigna asserts two affirmative defenses to the Labs' cause

13   of action.  First, Cigna claims that the Labs' damages

14   should be reduced because they excessively billed for

15   "unbundled" claims.  Second, Cigna asserts an affirmative

16   defense of failure to mitigate damages.

17   I will instruct you on these affirmative defenses after I

18   have instructed you on the Labs' Count against Cigna.

19        In the Labs' case, as the plaintiffs, the three Labs

20   each have the burden of proving each element of its claim

21   by a preponderance of the evidence.  If, upon

22   consideration of all the facts at issue, you find that

23   one or more of the Labs have failed to carry this burden

24   on an element of their Count, then you should proceed no

25   further on that Count, as to that Lab or Labs: your

1    verdict on that Count with respect to any such Lab should

2    be for the defendant, Cigna.

3    If, however, you find that one or more of the Labs has

4    proven the elements of their cause of action by a

5    preponderance of the evidence, you should proceed to

6    consider the affirmative defenses raised by Cigna that

7    apply.  While the burden of proving a claim rests on the

8    Labs, the burden of proving an affirmative defense rests

9    on Cigna.

10   If you find that Cigna has failed to prove one or more of

11   its affirmative defenses with respect to one or more of

12   the Labs, you would then proceed to consider what damages

13   the prevailing Lab is entitled.

14   As I previously told you, as to the Labs' case against

15   Cigna, there are three Labs who are the plaintiffs in

16   that case, and Cigna is the defendant.  Remember that,

17   although there are multiple plaintiffs in the Labs' case,

18   it does not follow from that fact alone that, if one Lab

19   is entitled to recover, all are entitled to recover.

20   Likewise, if you decide to award damages to one Lab in a

21   certain amount, it does not follow that another Lab

22   should be awarded the same amount.  You must give

23   separate consideration to each Lab's legal claims against

24   Cigna.

25   In the Labs' case against Cigna, each Lab has brought the

1    same cause of action against Cigna.  Likewise, with

2    respect to each Lab, Cigna has raised the same

3    affirmative defenses.  Thus, to save time, when I

4    instruct you on the Labs' cause of action and Cigna's

5    affirmative defenses in the Labs' case against Cigna, I

6    will not instruct you three times.  Instead, I will

7    instruct you once on the cause of action, which is common

8    to all three Labs.  I will refer to what "a Lab" must

9    prove to satisfy its burden of proof.  When I instruct

10   you on Cigna's affirmative defenses, I will not instruct

11   you three times, I will instruct you on these affirmative

12   defenses once.  I will instruct you on what Cigna must

13   prove on its affirmative defenses with respect to "a Lab"

14   or "each Lab".

15   I recommend that, during your deliberations, you go

16   through the following instructions on this Count and

17   affirmative defenses, sections 25-33, three times – first

18   as to one of the Labs, then as to a second Lab, and then

19   finally, as to the third Lab.  Doing so will ensure that

20   you give separate consideration to each Lab's case

21   against Cigna, and to each affirmative defense asserted

22   by Cigna as to each Lab's case.

23   Let me now turn to the specific cause of action in the

24   Labs' case.  Count Two of the Labs' Complaint asserts a

25   third-party beneficiary contract cause of action.  This

1  cause of action alleges that Cigna violated its own

2  contracts with its insureds by not paying the Labs for

3  their services.

4  None of the Labs are parties to these contracts and, as

5  out-of-network providers, they have no contracts of their

6  own with Cigna. However, the Labs may be entitled to

7  damages for breach of their patients' contracts if they

8  can prove that Cigna and its Insureds intended that the

9  Labs, as medical services providers, benefit from the

10  insurance policies the insureds had with Cigna.

11  To prevail on their third-party beneficiary claim, each

12  of the Labs must prove the following elements by a

13  preponderance of the evidence:

14  that Cigna was obligated to make payments under the terms

15  of its policies,

16  the Labs, as medical services providers, were clearly and

17  manifestly intended to benefit primarily and directly

18  from these policies,

19  that Cigna breached that obligation, and

20  that the Labs were damaged by Cigna's non-payment.

21  Let me now explain each of these elements in greater

22  detail.

23  The first element that a Lab must prove to prevail on its

24  cause of action in Count Two is that Cigna was obligated

25  to make payments under the terms of its policies.  This

1    element requires a Lab to prove by a preponderance of the

2    evidence that the tests it performed were medically

3    necessary.  In order to be "medically necessary", as that

4    term is defined in a Cigna plan, the services must be:

5    appropriate and necessary for the symptoms, diagnosis or

6    treatment of the condition;

7    provided for the diagnosis or direct care and treatment

8    of the medical condition; within the standards of good

9    medical practice; and not primarily for the convenience

10   of any insured person, physician, or another provider.

11           If you find that a Lab has failed to prove that

12   the services it performed for Cigna insureds were

13   medically necessary, that completes your deliberations on

14   Count Two as to that Lab, and you should return a verdict

15   for Cigna with respect to that Lab's third-party

16   beneficiary claim.

17           Excuse me for a minute.  I'm sorry.  I don't

18   know if any of you have pencils, but the sentence there

19   you would turn to the affirmative defenses, the one that

20   I stopped at, is incorrectly there.  It's at the end of

21   the next paragraph.  In other words, if you don't find

22   that element one of the third party beneficiary claims,

23   that completes your deliberations on that claim for that

24   lab.

25            If a Lab has proven that some or all of the

1    services for which it billed were medically necessary,

2    then it has proven the first element with respect to

3    those reimbursement claims, and then you should then

4    proceed to consider the second element, whether the Labs

5    are third-party beneficiaries to Cigna's contract.

6           The last sentence in the second to the last

7    paragraph should be stricken.  That was a mistake on my

8    part and I apologize.

9            So that's the first element.  If you found a

10   Lab has proven that element, you then turn to the next

11   element.  The second element a lab must prove to prevail

12   on its third-party beneficiary cause of action is that it

13   is a third-party beneficiary of the contracts of

14   insurance between Cigna and its insureds.  Hereinafter

15   referred to in this section as "Policies" or "Insurance

16   Policies".

17          A third-party beneficiary is a party that stands

18   to benefit under a contract even though it was not one of

19   the parties that expressly agreed to the contract.  As I

20   have said, the Labs are out of network providers who do

21   not have a contract with Cigna. Instead, the contracts

22   are between Cigna and its insureds.  In order to prove

23   that the Labs are a third-party beneficiary of these

24   contracts, the Labs must prove by a preponderance of the

25   evidence that Cigna and its insureds clearly and

1  manifestly intended that the Labs, as providers,

2  primarily and directly benefit from the contract of

3  insurance.

4  It is not necessary for a Lab to have been named in the

5  contract, that is, the Insurance Policy. In deciding what

6  Cigna and its insureds intended, you should consider the

7  Insurance Policies as a whole, the circumstances under

8  which they were made, and the apparent purpose the

9  parties were trying to accomplish.  You may also consider

10  language in the Insurance Policies that indicates how

11  benefits may be paid to doctors and other medical

12  providers, in evidence, in your determination of whether

13  a Lab, as a provider, is a clearly intended beneficiary

14  of the contract of insurance.

15  I have a further instruction for you based on my

16  determination of the law in this case.  The provisions of

17  two statutes of Florida insurance law are a part of these

18  contracts as a matter of law, even if the language does

19  not appear in any of Cigna's insurance policies.

20  The statutes state:

21  "After receiving written proof of loss, the insurer will

22  pay monthly all benefits then due for [covered services].

23  Benefits for any other loss covered by this policy will

24  be paid as soon as the insurer receives proper written

25  proof. . . Failure to pay or deny a claim within 120 days

1   after receipt of the claim creates an uncontestable

2   obligation to pay the claim."

3

4   And:

5

6   "Whenever, in any health insurance claim form, an insured

7   specifically authorizes payment of benefits directly to

8   any recognized hospital. . . physician . . . or other

9   person who provided the services in accordance with the

10  provisions of the policy, the insurer shall make such

11  payment to the designated provider of such services."

12

13      Again, even if these words do not appear in the

14  contracts for insurance that are in evidence, it is my

15  instruction to you that you should treat insurance

16  policies as if they contain those provisions.

17          If a Lab has failed to prove by a preponderance

18  of the evidence that it is a third-party beneficiary,

19  that completes your deliberations on Count Two as to that

20  Lab.  You would then turn to consider Cigna's affirmative

21  defenses as to that lab that you have found has proven

22  that cause of action.

23      If a Lab has proven the first and second elements of

24  Count Two by a preponderance of the evidence, then you

25  would then proceed to consider the third element of the

1    cause of action as to that Lab in Count Two, that is,

2    whether Cigna was obligated to make payments under the

3    terms of its policies.

4        The Third Element the Labs must prove is that Cigna

5    breached its obligation to pay under the terms of those

6    policies.

7    If a Lab has proven the first two elements, then it has

8    proven that Cigna promised to pay a provider when an

9    insured received covered services, in this case lab

10   testing.  In order to prove the third element, that Cigna

11   breached its obligation to pay under the terms of those

12   policies, I instruct you that a Lab must prove that Cigna

13   did not pay claims as to which you have found a Lab

14   proved the first two elements.

15   If a Lab failed to prove by a preponderance of the

16   evidence that Cigna breached its obligation to pay as to

17   any of that Labs' claims at issue in Count Two, that

18   completes your deliberations on Count Two as to that Lab,

19   and you should return a verdict for Cigna with respect to

20   that Lab's third-party beneficiary cause of action in

21   Count Two.

22   If you find that a Lab has proven this element with

23   respect to some or all of its claims for reimbursement,

24   then you should proceed to consider the fourth element,

25   whether that Lab was damaged by non-payment.

1        The fourth and final element a Lab must prove as to

2    its third-party beneficiary cause of action is that it

3    was damaged by Cigna's non-payment.  I instruct you, as a

4    matter of law, that, if a Lab has proven that it was

5    entitled to be paid as a third-party beneficiary, and

6    that it was not paid, then it has proven that it was

7    damaged by not being paid.  Therefore, it has proven the

8    fourth element of its cause of action in Count Two.

9    If you find that a Lab has failed to prove any one of

10   these four elements of its third-party cause of action

11   under Count Two by a preponderance of the evidence, then

12   you should return a verdict for Cigna, and your

13   deliberation on this claim is complete as to that Lab.

14   However, if you find that a Lab has proven all four of

15   the elements with respect to at least some, if not all,

16   of that Lab's claims for payment, then that Lab has

17   proven this cause of action with respect to those claims

18   for payment.

19   If you have found that a Lab has proven all four elements

20   of the cause of action in Count Two with respect to some

21   or all of its claims for reimbursement, then that Lab has

22   proven this cause of action with respect to those

23   reimbursement claims.  You would then turn to consider

24   Cigna's affirmative defenses with respect to those claims

25   for payment which satisfy all four elements.

1    If a Lab has proven by a preponderance of the evidence

2    that Cigna is liable on  its claim, you must then

3    determine the damages to which that Lab is entitled to

4    receive. The fact that I charge you on the issue of

5    damages does not mean that any Lab is entitled to

6    prevail—that is for you to decide. It is exclusively your

7    function to decide upon liability.  I instruct you on

8    damages only now so that you will have guidance if you

9    decide that the Labs are entitled to recovery.

10   The purpose of the law of damages is to award, as far as

11   possible, just and fair compensation for the loss, if

12   any, which resulted from the Cigna's violation of any

13   Lab's rights. If you find that Cigna is liable to one or

14   more Labs on its cause of action asserted by such a Lab,

15   then you must consider and award that Lab sufficient

16   damages to compensate it for any injury caused by Cigna's

17   conduct.

18   These damages are known as "compensatory damages."

19   Compensatory damages seek to make a plaintiff whole—that

20   is, to compensate them for the damage suffered.  I remind

21   you that you may award compensatory damages only for

22   injuries that the Labs have proven were proximately

23   caused by Cigna's allegedly wrongful conduct. The damages

24   that you award must be fair and reasonable, neither

25   inadequate nor excessive.

1    In all instances, you are to use sound discretion in

2  fixing an award of damages, drawing all reasonable

3  inferences, where you deem it appropriate, from the facts

4  and circumstances in evidence.

5    In calculating past damages, just remember that a

6  prevailing party here, in this case, for this cause of

7  action, if a Lab prevails, then that Lab is entitled to

8  recover an amount that will fairly and adequately

9  compensate it for any damages suffered to date.

10    I will turn now to Affirmative Defenses.  I will

11  instruct you on it, but if you remember, in two places in

12  the charges I just read to you, I told you to disregard a

13  sentence.

14    Those circumstances were if you happen to find

15  an element was not proven by a plaintiff in the

16  instructions I gave, that would be a Lab, you don't need

17  to consider the affirmative defenses because an

18  affirmative defense is basically -- I guess this is all I

19  should say.

20    An affirmative defense is an argument in

21  evidence offered that, in effect, seeks you to conclude

22  even though the Labs proved their elements in this case,

23  Cigna has other reasons that you shouldn't award them

24  damages or you shouldn't find Cigna liable.

25    The same will be true when I get to Cigna's case.  I

1    don't know if these stray sentences are in there as well,

2    but if they are, I will tell you to disregard them

3    because those two sentences told you to continue to

4    affirmative damages even though it was the assumption of

5    the sentence before was a claim had not been proven.  You

6    don't have to consider affirmative defenses.

7         Cigna raises to affirmative defenses.  Cigna has

8    the burden of proving each of its affirmative defenses as

9    to the cause of action which you found were proven by a

10   Lab.  If a Lab has not proven a cause of action or you

11   have not awarded damages, then you do not need to

12   consider an affirmative defense with respect to that

13   cause of action.  Both of Cigna's affirmative defenses go

14   to the issue of damages.  That is, if Cigna proves this

15   affirmative defense with respect to a Lab, you would

16   consider how to reduce that Lab's damages accordingly.

17   Cigna's first affirmative defense is related to its

18   "unbundling" allegations, the second is an affirmative

19   defense called the failure to mitigate damages.

20        I will now instruct you on Cigna's first affirmative

21   defense.

22        Cigna's first affirmative defense is based on its

23   allegation that the three Labs engaged in "unbundling".

24   Cigna argues that the Labs should not be able to recover

25   excessive amounts that they billed Cigna because they

1    engaged in "unbundling".

2    Unbundling occurs when a provider bills for certain

3    "bundled" services separately, i.e. "unbundling", instead

4    of billing for them together as a discounted bundle at a

5    lower cost.  Unbundling can also include when a provider

6    bills both a "bundled" code and an "unbundled" code for

7    the same service.

8    In order to prove the "unbundling" defense with respect

9    to damages a Lab has proven, Cigna must prove by a

10   preponderance of the evidence that a Lab billed for those

11   services separately, or double-billed, when they should

12   have billed with a "bundled" code.

13   If Cigna proves, by a preponderance of the evidence, that

14   a Lab engaged in unbundling with respect to certain

15   insurance claims, then with respect to those insurance

16   claims for which Cigna has proven unbundling, you should

17   reduce the amount of a Lab's damages to what Cigna proves

18   it would have received had it billed for that service

19   using "bundled" billing codes.

20   If Cigna has not proven that a Lab engaged in unbundling

21   by a preponderance of the evidence, then this affirmative

22   defense does not apply, and the jury should proceed to

23   consider Cigna's final affirmative defense.

24        Cigna's second affirmative defense is called the

25   failure to mitigate damages.  Cigna argues that the Labs

1    failed to take reasonable steps to mitigate, that is, to

2    lessen or reduce, their damages.  Generally, the

3    affirmative defense prevents a party from recovering

4    those damages caused by a wrongdoer when the injured

5    party could have reasonably avoided the damage.  If you

6    find that a Lab could have taken reasonable steps to

7    avoid certain damages, then the Labs may not recover

8    those damages.

9    If you find that Cigna is liable and that a Lab has

10   proven damages, that Lab may not recover for any item of

11   damage it could have avoided through such reasonable

12   effort. If that Lab unreasonably failed to take advantage

13   of an opportunity to lessen its damages, you should deny

14   recovery for such damages which it would have avoided had

15   it taken advantage of the opportunity.

16        At trial you have heard evidence about a practice

17   Cigna calls "fee forgiveness". Fee forgiveness is when a

18   provider waives, that is "forgives" or does not attempt

19   to collect, a patient's cost-share obligations under

20   their insurance policy, such as a copay, deductible, or

21   co-insurance.

22        I instruct you that fee forgiveness is not relevant

23   in any way to the Labs' case against Cigna.  It is not a

24   defense to any of the Labs' claims and should not be

25   considered by you when you are deliberating or

1    considering each Labs' case.

2        That last sentence -- I'm sorry.  These little

3    errors resulted from the last minute editing of the

4    charge to reflect a one cause of action.  That last

5    section we've already discussed damages so we don't need

6    to turn to them.

7        In summary, the Labs bring claims under one Count,

8    which I have been calling Count Two.

9        Count Two asserts a cause of action known as a

10   third-party beneficiary claim.  To prevail on that cause

11   of action, the Labs must prove:

12         One, that Cigna was obligated to make payments

13   under the terms of its policies.

14         Two, the Labs, as medical services providers,

15   were clearly and manifestly intended to benefit primarily

16   and directly from these policies,

17         Three, that Cigna breached that obligation, and

18         Four, that the Labs were damaged by Cigna's

19   non-payment.

20       If any of the Labs prevail on this Count, even in

21   part, then you must consider whether to award damages.

22   If you award damages for this cause of action that a Lab

23   has proven, you must consider Cigna's affirmative

24   defenses as to those damages.

25   The first defense raised by Cigna is that the Labs

1    charged excessive amounts through a billing practice

2    called "unbundling".  If Cigna proves that a Lab engaged

3    in unbundling with respect to certain insurance claims,

4    then you would reduce the amount of a Lab's damages to

5    what Cigna proves it would have received had it billed

6    for that service using "bundled" billing codes.

7    Second, Cigna has also raised an affirmative defense

8    known as the failure to mitigate damages.

9    A Lab may not recover for any item of damage it could

10   have avoided through reasonable effort.

11         That concludes my instructions for the Labs' case

12   against Cigna.

13          At which point I will do one of my classic

14   stretches and I invite you all to do the same.

15          That concludes my instructions on the Labs'

16   lawsuit against Cigna.  I am now going to give you

17   instructions on the law specific to Cigna's lawsuit

18   against the Labs.  These specific instructions, together

19   with my general instructions, see sections 1-19, form the

20   complete instructions for Cigna's lawsuit against the

21   Labs.  You should not single out any one instruction, or

22   fail to follow another.  In consideration of this case,

23   however, you should not follow any of the instructions I

24   have given you previously about the Labs' lawsuit against

25   Cigna, unless I specifically incorporate that section in

1    this charge of Cigna's lawsuit against the Labs.

2    In Cigna's lawsuit against the Labs, Cigna is the

3    plaintiff, and the Labs are each a defendant.  From

4    2012-2017, the parties agree that Cigna paid monies to

5    the Labs on account of billings for testing services

6    provided by the Labs to Cigna's insureds and

7    beneficiaries of Cigna health plans.  Cigna claims that

8    the Labs were unjustly enriched and that it is unfair for

9    the Labs to keep any of the this money.

10   Cigna offers three reasons that it is unfair for the Labs

11   to retain payments. First, Cigna asserts that the

12   services for which the Labs' billed were not medically

13   necessary.  Second, Cigna argues that the Labs engaged in

14   "unbundling". Third, Cigna argues that it is unfair for

15   the Labs to retain payments because they allegedly

16   engaged in "fee-forgiveness."

17   The Labs deny that it is unfair for them to retain

18   Cigna's payments. The Labs also raise an affirmative

19   defense to Cigna's cause of action, that is voluntary

20   payment defense.

21          In Cigna's case, as the plaintiff, Cigna has

22   the burden of proving each element of its claims by a

23   preponderance of the evidence.  If, upon consideration of

24   all the facts at issue, you find that Cigna has failed to

25   carry their burden, then you should proceed no further

1    and your verdict should be for the three defendant Labs.

2         It would only be for the three Labs, if after

3    you considered each individually, you find that Cigna has

4    failed to carry their burden.

5         If, however, you find that Cigna has proven the

6    elements of its cause of action by a preponderance of the

7    evidence with respect to one or more of the Labs, you

8    should proceed to consider the defense asserted by that

9    Lab.  While the burden of proving its cause of action is

10   on the Cigna, the burden of proving an affirmative

11   defense is on the Labs.

12       At the outset of the trial, I told you that there

13   are two Cigna companies who are named as plaintiffs in

14   Cigna's lawsuit against the Labs.  The first was the

15   Connecticut General Life Insurance Company, the second

16   was the Cigna Health and Life Insurance Company.

17   However, after my opening instructions to you, I believe

18   last Monday, the parties stipulated, that is, reached an

19   agreement, to dismiss Connecticut General Life Insurance

20   Company from this case.  As a result, there is only one

21   plaintiff company, Cigna Health and Life Insurance

22   Company, in Cigna's case.  I will refer to that one

23   remaining plaintiff in this case as "Cigna."

24   However, in Cigna's case against the Labs there are still

25   three defendant Labs.  Keep in mind that you must still

give separate consideration to Cigna's cause of action

against each of the three defendants.  Cigna brings the

same cause of action against each of the three Labs, and

each of the three Labs have raised the same affirmative

defense to that cause of action.  Therefore, to save

time, I will not instruct you separately with respect to

each Lab.  I will instruct you on what Cigna must prove,

in order to prove its claim against "a Lab".  Likewise, I

will refer to what "a Lab" must prove to prove its

affirmative defense.

I recommend that, during your deliberations, you go

through the following instructions on this cause of

action and affirmative defenses, sections 38-51, three

times – one for each defendant Lab.  Doing so will ensure

that you give separate consideration to each of the three

Labs.

Let me now turn to the specific cause of action asserted

in this case.  Cigna brings one count of unjust

enrichment against each of the three Labs.  The idea

behind this cause of action is that if someone unfairly

receives a benefit, in this case, payment, they may be

unjustly enriched at the expense of another, and should

therefore be liable in restitution.  In their unjust

enrichment Count, Cigna alleges the three Labs collected

and retained payments from Cigna by representing that

1    their services were covered under Cigna plans.  Cigna

2    asserts that the Labs owe them reimbursement of monies

3    that Cigna has paid to the three Labs, starting in 2012.

4    To prove a cause of action for unjust enrichment, Cigna

5    must prove the following elements:

6    (1) that Cigna paid a Lab;

7    (2) that that Lab voluntarily accepted and retained the

8    payments made to it by Cigna, and

9    (3) the circumstances are such that it would be unfair

10   for that Lab to retain those payments they received from

11   Cigna.

12        I instruct you that the parties have stipulated,

13   that is agreed, that the first two elements have been

14   proven by Cigna as to all three Labs.  Thus, as to

15   Cigna's cause of action for unjust enrichment, the only

16   element Cigna must prove as to each Lab is the third

17   element.

18        The third element Cigna must prove in its unjust

19   enrichment claim is that the circumstances are such that

20   it would be unfair for a Lab to retain the payments Cigna

21   made to it.

22        I will now instruct you further on element

23   three.

24        When I state the third element by saying that:

25   "the circumstances are such that it would be unfair for a

1    Lab to retain the payments . . . ", the word

2    "circumstances" refers to the specific circumstances of

3    this case.  It does not refer to a generic situation

4    where repayment may be warranted.

5    You should consider all relevant evidence in Cigna's case

6    against each Lab, and the totality of the circumstances,

7    and only then decide whether, in these particular

8    circumstances, it would be unfair for a Lab to retain a

9    Cigna payment.

10   I want to instruct you on what is meant in this third

11   element by the word "unfair."  The Miriam Webster

12   Dictionary defines the word "unfair" as "marked by

13   injustice, partiality, or deception: unjust."  It also

14   defines the word as "not equitable in business dealings."

15   The notion of "unfairness" in an unjust enrichment action

16   is not based upon any finding of an enforceable agreement

17   between the parties, either written or implied. Indeed,

18   because the Labs are all out of network providers, the

19   parties agree that there is no agreement or contract

20   between Cigna and any of the Labs.  Therefore, you should

21   not look to any agreement to define what is "unfair."

22   While Cigna does not have any agreement with the Labs,

23   Cigna does have written agreements with its insureds.

24   There are insurance policies under which the parties

25   agree that the Labs billed Cigna for tests.  I instruct

1    you that the terms of these policies do not necessarily

2    define what is "unfair" in the Labs' dealings with Cigna.

3    You may consider the terms of these policies, however,

4    among other circumstances, in determining whether "the

5    circumstances are such that it would be unfair" for any

6    Lab to retain payment.

7    Cigna asserts three bases, as part of the circumstances

8    to consider with respect to whether it is unfair for the

9    Labs to retain Cigna's payments.  I will now instruct you

10   further on these three bases.

11   The first basis Cigna asserts for why it is unfair for a

12   Lab to retain payments is that the services were not

13   medical necessary.  Cigna argues that none of the tests

14   for which these Labs billed Cigna were medically

15   necessary, and that under the terms of their policies,

16   Cigna only pays claims for services that are medically

17   necessary.  Second, Cigna argues that it is unfair for a

18   Lab to retain payment when the Labs engaged in

19   unbundling.  Third, Cigna claims that the Labs engaged in

20   fee forgiveness, which it claims violated some of its

21   policies after January 1, 2015.

22   It is up to you to determine, whether, in your view of

23   the evidence, any one or more of these bases provides a

24   reason to find unfairness as is required by the third

25   element of Cigna's Count One cause of action for unjust

1    enrichment against a Lab.

2    You should consider all of the circumstances, including

3    the three reasons that Cigna argues expressly, in

4    deciding whether it is "unfair" for a Lab to retain the

5    money Cigna paid to it for services.

6    I will now instruct you on the first of these bases,

7    medical necessity.

8    The first reason Cigna asserts for it being unfair for

9    the Labs to retain payments is that the services were

10   medically unnecessary.  Cigna argues that none of the

11   tests for which the Labs billed Cigna were medically

12   necessary, and that under the terms of their policies,

13   Cigna only covers claims for services that are medically

14   necessary.

15        As this is Cigna's claim, it is Cigna's burden to

16   prove the facts underlying this basis, namely, that some

17   or all of the Labs' tests were not medically necessary.

18   If you find that Cigna has not carried its burden with

19   respect to the lack of medical necessity, then you should

20   not consider it as reason why it is unfair for the Labs

21   to retain payment.

22   If you find that Cigna has carried this burden with

23   respect to proving the lack of medical necessity, you may

24   consider it in your determination as to whether Cigna has

25   proven the third element of its cause of action for

1   unjust enrichment, that is, for whether the circumstances

2   are such that it would be unfair for a Lab to retain

3   those payments.  Whether you find this reason sufficient

4   or insufficient, or how much it contributes to your

5   determination of unfairness, is for you, the jury, to

6   decide.

7   I will now instruct you on the second reason that Cigna

8   argues that their claim that it is unfair for the Labs to

9   retain payments, that is "unbundling."

10  Second, Cigna claims that it is unfair for a Lab to

11  retain payment if that Lab engaged in unbundling.

12  Cigna's insurance policies do not contain an express

13  prohibition on unbundling, but Cigna nonetheless argues

14  that it is unfair for the Labs to retain payment when

15  they engaged in unbundling.  For you to consider this

16  basis with respect a Lab, Cigna must prove by a

17  preponderance of the evidence that that Lab engaged in

18  unbundling.

19  If you find that Cigna has not proven that a Lab engaged

20  in unbundling, then you should not consider it a basis as

21  to why it is unfair for a Lab to retain payment.  If you

22  find that Cigna has carried its burden with respect to

23  proving a Lab engaged in unbundling, you may consider

24  unbundling in your determination as to whether Cigna has

25  proven the third element of its unjust enrichment cause

1    of action with respect to that Lab, namely, that the

2    circumstances are such that it would be unfair for that

3    Lab to retain payment.

4    With respect to the issue of unbundling, I have a special

5    instruction to the jury based on my determination of the

6    law in Cigna's case.  These instructions relate to the

7    timing of the unbundling Cigna alleges took place.

8    First, the evidence has shown that Cigna did not inform

9    the Labs that claims must be filed with "bundled" "G

10   codes" until August 19, 2013.  Therefore, you should not

11   consider any unbundling prior to that date in your

12   deliberations on element three, either in connection with

13   "unfairness" or in any damages you would award if you

14   have found Cigna proved its cause of action.

15   Second, in your deliberations on the unfairness with

16   respect to PB Laboratories only, the jury should not

17   consider as a basis for unfairness, any unbundling proven

18   by Cigna that took place on or after October 1, 2013.

19   With respect to the other two Labs, you may consider any

20   unbundling that was proven by Cigna with respect to that

21   Lab.

22   If you find that Cigna has carried its burden with

23   respect to proving a Lab engaged in unbundling, then you

24   may consider that issue in your determination as to

25   whether Cigna has carried its burden in regard to the

1   third element of its unjust enrichment cause of action,

2   namely, that the circumstances are such that it would be

3   "unfair" for the Labs to retain payment.

4   Whether you find the unbundling basis sufficient or

5   insufficient, or the weight you will assign to this

6   basis, is for you, the jury, to decide.

7   I will now instruct you on the third reason that Cigna

8   argues that it is unfair for the Labs to retain payments,

9   that is "fee forgiveness."

10  The third reason that Cigna assert as a basis for the

11  jury to find it is unfair for each Lab to retain payments

12  is "fee forgiveness."  Fee forgiveness is the practice of

13  waiving, or "forgiving", patient cost-sharing

14  obligations, which is the balance of a Lab's charge after

15  Cigna's payment, such as copays, deductibles,

16  coinsurance, or other insurance payments.  Cigna claims

17  that all three Labs engaged in fee forgiveness by not

18  collecting the cost share obligations of their patients.

19  As a result, Cigna argues, it is "unfair" for each Lab to

20  retain payments made to them.

21  I previously instructed you, in the Labs' case against

22  Cigna, that fee forgiveness is not an issue in the Labs'

23  case.  I want to be clear on this: Fee forgiveness is

24  part of Cigna's case against the Labs.  In Cigna's unjust

25  enrichment cause of action, Cigna offers fee forgiveness

1  as a reason that it is "unfair" for the Labs to retain

2  payment.

3  For you to consider this basis, Cigna must prove, by a

4  preponderance of the evidence, that a Lab engaged in fee

5  forgiving.  Fee forgiveness occurs when a provider of

6  medical services waives, reduces, or forgives an

7  insured's cost-share obligations as set forth under the

8  applicable insurance policy. When determining whether fee

9  forgiveness occurred, you may consider whether a Lab

10  failed to bill, waived, reduced, or failed to make good

11  faith efforts to collect on a Cigna insured's cost-share

12  obligations.  If Cigna fails to prove that a Lab engaged

13  in fee forgiveness, then you may not consider fee

14  forgiveness as a basis for unfairness with respect to

15  that Lab.

16  I have two further instructions for you on the issue of

17  fee forgiveness.  First, as I previously instructed you,

18  the terms of Cigna's policies do not necessarily define

19  what is "unfair" for the purposes of the third element.

20  You may consider the terms of these policies, however,

21  among other circumstances, in determining whether "the

22  circumstances are such that it would be unfair" for any

23  Lab to retain payment.

24  My first instruction to you, based on the law as I have

25  determined in this case, is that, to the extent you wish

1  to consider the language in Cigna's insurance policies

2  with respect to the issue of fee forgiveness, which you

3  may or may not decide to do, the court has determined

4  that none of Cigna's insurance policies before January 1,

5  2015, include language concerning fee forgiveness.  Most,

6  but not all, of their policies after that date do exclude

7  insurance coverage for fee forgiveness.  You are to

8  disregard anything else you heard about fee forgiveness

9  language in a Cigna policy.  Again, I want to be clear:

10 The terms of Cigna's policies do not necessarily define

11 what is "unfair" for the purposes of the third element.

12 My second instruction, based on my determination of the

13 law in Cigna's case, relates to the timing the alleged

14 fee forgiveness took place.  In your deliberations on

15 this basis of "unfairness" with respect to a particular

16 Lab, the jury should not use, in connection with

17 considering fee forgiveness as a basis for unfairness,

18 any fee forgiveness that took place on or after a certain

19 date.  That date, for each of the Labs, is:

20 PB Laboratories, LLC:  December 11, 2014;

21 BioHealth Laboratories, Inc: May 22, 2015; and

22 Epic Reference Labs, Inc: January 1, 2017.

23 If you find that Cigna has carried its burden with

24 respect to proving a Lab engaged in fee forgiving, and

25 that fee forgiving took place as to that Lab before the

1  above date with respect to the Lab you are deliberating

2  about, then you may consider that issue in your

3  determination as to whether Cigna has carried its burden

4  in regard to the third element of its unjust enrichment

5  cause of action, namely, that the circumstances are such

6  that it would be "unfair" for the Labs to retain payment.

7  Whether you find this reason sufficient or insufficient,

8  or the weight you will assign to this basis, is for you

9  to determine.

10  Cigna asserts three bases as part of its evidence in

11  connection with the third element of its unjust

12  enrichment claim—that the circumstances are such that it

13  would be "unfair" for the Lab at issue to retain those

14  payments.  You should not consider any basis unless you

15  find that Cigna has proven that basis as to the Lab at

16  issue.  The three bases are a lack of medically

17  necessity, unbundling, and fee forgiveness.

18       It is up to the jury to determine which, if any, of

19  these bases are persuasive in support of Cigna carrying

20  its burden of proving "that the circumstance are such

21  that it would be unfair for the Labs to retain those

22  payments." The jury should consider each of these bases

23  and determine, whether, in its view, Cigna has proven a

24  basis and, if so, whether the one or more of these bases

25  support, in part on in whole, a finding that it would be

1    unfair for a Lab to retain payments.

2    If the jury decides that Cigna has failed to prove the

3    third element of its cause of action, either with respect

4    to some payments or all of the payments to a Lab, then

5    your verdict should be for that Lab on those payments

6    involved.  You must consider Cigna's cause of action and

7    its elements with respect to each Lab, separately.  If

8    you conclude that Cigna has proven the third element of

9    its cause of action based on one or more proven bases,

10   then you should proceed to consider the Labs' affirmative

11   defense, which I will instruct you on now.

12   I will turn now to an affirmative defense that each Lab

13   asserts against Cigna on Count One.  Because this defense

14   is an affirmative defense pled by the Labs, the Labs bear

15   the burden of proof on it by the preponderance of the

16   evidence.

17   The Labs' affirmative defense is a defense under the

18   Florida voluntary payment doctrine.  The voluntary

19   payment defense prevents someone who makes a voluntary

20   payment, with full knowledge of the facts, from

21   recovering that payment.  To prevail on this affirmative

22   defense, a Lab must prove, by a preponderance of the

23   evidence, that at the time Cigna made a particular

24   payment to it, that payment was:

25   (1) voluntary; and,

1    (2) was made with full knowledge of the relevant facts.

2    With respect to the first element, I am

3    instructing you that all payments Cigna made to the Labs

4    were voluntary for the purposes of this affirmative

5    defense.

6    Therefore, the Labs must prove the second

7    element, that a payment was made "with full knowledge of

8    the facts." I will now instruct you on that second

9    element.

10    The phrase "full knowledge of the relevant

11    facts" means that Cigna had full knowledge or awareness

12    that the Lab at issue was engaged in a behavior Cigna now

13    claims provides a basis for Cigna's cause of action for

14    unjust enrichment.

15    If you have found one or more bases or

16    circumstances supported the third element of Cigna's

17    unjust enrichment claim, namely, that the circumstances

18    are such that it would be unfair for a Lab to retain

19    those payments, if that Lab has then proven that Cigna,

20    at the time of making a payment, had full knowledge of

21    any such bases, and as well as all circumstances, then

22    Cigna had "full knowledge of the relevant facts" for the

23    purposes of this affirmative defense.

24    If a Lab cannot meet this burden, it has failed

25    to prove this affirmative defenses, and you should

1  proceed to consider the issue of damages for Cigna.  If a

2  Lab proves that Cigna had "full knowledge of the relevant

3  facts" at the time Cigna made any particular payment,

4  then Cigna may not recover that payment made to that Lab.

5  Let me now turn to the question of damages.

6       If Cigna has proven by a preponderance of the

7  evidence its cause of action of unjust enrichment as to a

8  Lab, then you must next determine the damages to which

9  Cigna is entitled from that Lab.  The fact that I charge

10  you on the issue of damages does not mean that Cigna is

11  entitled to prevail—that is for you to decide. It is

12  exclusively your function to decide upon liability.

13       I am instructing you now on damages only so that

14  you will have guidance should you find that Cigna is

15  entitled to recovery of payments from one or more of the

16  Labs.

17       If you decide to award damages, under Florida

18  law, the measure of damages for unjust enrichment is the

19  value of the benefit conferred.  Damages are not based

20  on the amount Cigna hoped to receive or the cost to

21  Cigna, nor are the damages intended to punish a Lab.

22

23       When, as here, the benefit conferred is money,

24  damages are measured by the extent to which a Lab has

25  been unjustly enriched at the expense of Cigna.

1    Therefore, it is my instruction to you that, if you

2    decide to award damages to Cigna as to any one or more of

3    the Labs based on its unjust enrichment cause of action,

4    those damages should be in the amounts you determine were

5    paid to and retained unfairly by a Lab, if any.

6    In summary, Cigna brings one count of unjust enrichment

7    against each of the Labs. To prove a cause of action for

8    unjust enrichment, Cigna must prove the following

9    elements:

10   (1) that Cigna paid a Lab;

11   (2) that that Lab voluntarily accepted and retained the

12   payments made to it by Cigna; and

13   (3) the circumstances are such that it would be unfair

14   for that Lab to retain those payments it received from

15   Cigna.

16          The parties stipulate, or agree, that the first

17   two elements are proven.  However, for each Lab, Cigna

18   must prove the third element: whether the circumstances

19   are such that it would be unfair for a Lab to retain

20   those payments it received from Cigna.  Cigna offers

21   three bases it claims prove the third element: the lack

22   of medical necessity, unbundling, and fee forgiveness.

23          For you to consider whether any of these bases

24   prove the third element, Cigna must prove that underlying

25   factual basis by a preponderance of the evidence.  That

1    means, to consider medical necessity as a basis of proof

2    for the third element, Cigna must prove by a

3    preponderance of the evidence that a Lab's tests were

4    medically unnecessary.  Likewise, for you to consider

5    unbundling or fee forgiveness as bases of proof for the

6    third element of Cigna's unjust enrichment cause of

7    action, Cigna must prove that the Lab engaged in

8    unbundling or fee forgiveness, respectively.

9         If you find that Cigna has proven the elements

10   of its unjust enrichment cause of action with respect to

11   some or all of the payments it made to any of the three

12   Labs, then you should consider the Labs' voluntary

13   payment affirmative defense. If the Labs can prove that

14   Cigna made payments "with full knowledge of the relevant

15   facts," it cannot recover those payments.

16      If Cigna has proven the elements of its unjust

17   enrichment cause of action and the Labs have failed to

18   prove their voluntary payment defense with respect to any

19   payments, then Cigna is entitled to recover those

20   payments.  If you decide to award damages, under Florida

21   law, the measure of damages for unjust enrichment is the

22   value of the payments conferred.

23      That concludes my instructions specific to both

24   cases. Let me now say a few words about your

25   deliberations.  First, keep in mind that nothing I have

1   said in these instructions - indeed, nothing I have said

2   or done during this trial - is intended to suggest to you

3   in any way what I think your verdicts should be.  That is

4   entirely for you to decide.

5       It is important that you reach a verdict in each of

6   the two cases, if you can do so, conscientiously.  You

7   should not hesitate to reconsider your own opinions from

8   time to time and to change them if you are convinced that

9   they are wrong.  However, do not surrender an honest

10  conviction as to the weight and effect of the evidence

11  simply to arrive at a verdict.

12  When you retire to the jury room, it is your duty to

13  discuss each of these cases with your fellow jurors for

14  the purpose of reaching agreement if you can do so.  Each

15  of you must decide the cases for yourself, but you should

16  do so only after considering all the evidence, listening

17  to the views of your fellow jurors, and discussing the

18  two cases each fully with the other jurors when all

19  jurors are present.

20  In reaching each of your verdicts, you must be unanimous.

21  In the Labs' case against Cigna, for each Lab, you must

22  be unanimous in finding that a Lab has proven by a

23  preponderance of the evidence every element of as to each

24  proven cause of action.  If you are unanimous that a Lab

25  has not carried its burden as to any element of any cause

1   of action it has against Cigna, then you must return a

2   verdict for Cigna as to that Lab on that cause.  You

3   would then continue to consider the same cause of action

4   as to the second Lab, and the third Lab.

5   However, if you are unanimous that a Lab has carried its

6   burden as to each and every element of a cause of action,

7   then you should return a verdict for that Lab in part or

8   in whole.  If you take a vote during deliberations and

9   you are not unanimous, then you have not reached a

10  verdict, and you should continue to deliberate.

11  You would proceed the same way in Cigna's case against

12  the Labs.  You must be unanimous in finding that Cigna

13  has proven by a preponderance of the evidence every

14  element of Cigna's unjust enrichment claim against each

15  Lab.  If you are unanimous that Cigna has not carried its

16  burden as to an element of its cause of action against a

17  Lab, then you must return a verdict for that Lab.  You

18  would then continue considering the other two Labs,

19  separately.  If you are unanimous that Cigna has carried

20  its burden as to each and every element of its cause of

21  action, then you should return a verdict for Cigna,

22  either in whole or in part.

23  If you take a vote during deliberations and you are not

24  unanimous, then you have not reached a verdict, and you

25  should continue to deliberate.

1    Remember also that your verdicts must be based solely on

2    the evidence presented to you during trial, and the law

3    as I have given it to you, and not on anything else.

4    Closing arguments, or other statements or arguments of

5    counsel, are not evidence.  If your recollection differs

6    from the way counsel has stated the facts, then your

7    recollection controls.

8    Remember at all times that you are not partisan.  Rather,

9    you are the judges of the facts, and your sole interest

10   is to evaluate the evidence in this case to determine if

11   Cigna or a Lab has carried its burden of proof.

12   The Instructions that I gave you at the beginning of the

13   case about outside factors apply during your

14   deliberations.  Do not discuss this case with anyone

15   outside the jury deliberation room, even with your fellow

16   jurors.  Do not read or listen to any outside information

17   about the case during your deliberations.  Do not try to

18   do any research or make any investigation.  And, of

19   course, continue to refrain from speaking to the parties,

20   their attorneys, the witnesses, my law clerks, and me.

21   Upon retiring to the jury room, you should first elect

22   one among you to act as your foreperson who will preside

23   over your deliberations and will be your spokesperson

24   here in court.

25   Two Verdict Forms have been prepared.  The Verdict Forms

1   are not evidence in this case, you should not view them

2   as supplementing or modifying in any way my Instructions

3   to you on the law.  Your answers must reflect the

4   conscientious judgment of each juror and must be

5   unanimous.  I suggest you start at the beginning of each

6   Verdict Form and work your way through, but the

7   deliberations and how they proceed is up to you.  That is

8   merely a suggestion.

9   You should answer the questions asked.  When you have

10  reached unanimous agreement as to one of the verdicts,

11  you will have your foreperson fill in your answers, and

12  then date and sign the Verdict Form.  Once you have done

13  that with both Verdict Forms, inform the Court Security

14  Officer seated outside the jury room that you have

15  reached both verdicts.  I stress that each of you must be

16  in agreement with the verdict and answers as contained in

17  the Verdict Form for each case and as announced in court.

18  Your verdicts must be unanimous.

19  You are about to go into the jury room to begin your

20  deliberations.  Please wait to begin deliberations until

21  the Deputy Clerk brings the Verdict Forms and sends the

22  exhibits in to you.  It will take some time for her to do

23  so.

24  If you need any of the testimony read back, you should

25  request that.  Please understand that it is not always

1   easy to locate what you might want.  It can take a while

2   for us to find it.  If you feel you need testimony read

3   back, be as specific as possible in your request.

4   Any communication with the court should be made to me in

5   writing, signed by your foreperson, and given to the

6   Court Security Officer.  If you send out a question, I

7   will consult with the parties before answering it, which

8   may take some time.  You may, if you can, continue your

9   deliberations while waiting for the answer to any

10  question posed to the court.  I will respond to your

11  request as promptly as possible either in writing or by

12  having you return to the courtroom so that I can address

13  you orally.

14  I must also caution you that, in your communications with

15  the court, you should not disclose to anyone—not even to

16  me—how the jury stands, numerically or otherwise, until

17  after you have reached two unanimous verdicts.  Never

18  disclose any vote count in any note to the court.  When

19  you have completed the Verdict Forms, do not give the

20  Verdict Forms to the Deputy Clerk, but rather, have the

21  foreperson bring the Verdict Forms with him or her when

22  you return to the courtroom.

23  It is proper to add a final caution.  Nothing that I have

24  said in these Instructions—and nothing that I have said

25  or done during the trial—has been said or done to suggest

1    to you what I think your verdicts should be.  What the

2    verdicts shall be is your exclusive duty and

3    responsibility.

4    This completes my Instructions to you.  The jury should

5    now accompany the Deputy Clerk to the jury room to

6    consider your two verdicts.

7    Thank you for your service so far and thank you in

8    advance for what I know will be your careful and

9    thoughtful deliberations.

10             (In the absence of the jury at 11:23 a.m.)

11             THE COURT:  Thank you, Liana.  Everybody be

12   seated.  My apologies.  There were some portions I had to

13   question.  Is there any objection?  Obviously, as I told

14   you, prior objections have been preserved.  I think we

15   went through a particular list of what anybody thought

16   they preserved a day or two ago.  So I guess I have to

17   ask you is there any objection to how I tried to fix even

18   the typo, to remove a sentence things of that sort.  Is

19   there any objection from the Labs?

20             MR. CHRIST:  No objection, Your Honor.

21             THE COURT:  Attorney Kang?

22             MR. KANG:  No, Your Honor.

23             THE COURT:  Thank you.  Just for the record,

24   liana will be taking into the jury room with her Docket

25   Number 463 in case 3:19-CV-1324 which is the number of

1    the consolidated cases.

2                (Discussion Off the Record.)

3                THE COURT:  My judicial assistant, who should be

4    the judicial assistant of the century in the federal

5    court, went through your list while we were doing the

6    charge and I think she's found more but we'll start with

7    the problem on a Labs list.  She believes that you

8    mistakenly failed to include Labs 695.  She found it in

9    the transcript of 10-23-24.  Mr. Hare says may we now see

10   Lab Exhibit 6965 and I understand that's offered without

11   objection by Mr. Hare.  He then proceeds to question so

12   that means Attorney Kang did not stand up in his three

13   seconds so it was received as an exhibit.  Number 6965.

14   Is there any disagreement that that number should be on

15   the list because it is going to be -- it is going to be

16   sent to the jury in a few minutes.

17                MR. CHRIST:  No objection, Your Honor.

18                THE COURT:  Attorney Kang, do you agree with

19   this?

20                MR. KANG:  If I may quickly check our notes.

21                THE COURT:  Someone on your staff did review the

22   JERS list.  Fine.  I don't mind you taking a moment to

23   check.

24                MR. CHRIST:  Your Honor, assuming --

25                THE COURT:  It's been fixed by my judicial

1    assistant.  I can show you the list as corrected.

2          (Discussion Off the Record.)

3          MR. KANG:  No objection, Your Honor.

4          THE COURT:  My assistant is showing you her

5    amendment on the Labs list you've previous seen.  Labs

6    are looking at it now to make sure she's correctly edited

7    consistent with what I just described.  Once they are

8    done, then Attorney Kang should have a chance to see it.

9          MR. CHRIST:  Your Honor, there's no problem.

10   Should we file an amended list on the docket?

11         THE COURT:  You should once both of you have

12   confirmed that that the corrected list you just looked at

13   to which I describe the addition of 6965 is now on that

14   list.  You don't have to file it in the next 30 seconds.

15   It is this document will be given to the jury.  However,

16   the LABS are ordered to file an amended list which, of

17   course, won't be the right docket number, but at some

18   later point maybe 10:00 tomorrow, I will put on the

19   record the docket number of what went into the jury which

20   is the amended list that you just described.

21         Attorney Kang, any problem?

22         MR. KANG:  Your Honor, I think there's an issue

23   with the Joint.

24         THE COURT:  We're going to get to that in a

25   minute.  I want to get past the Labs.  As my assistant

1   said and whispered in my ear, there's a number of

2   problems with the Joint list.  That was supposed to have

3   been checked by both of you and you told me it was fine.

4   Whatever we'll deal with the Labs first. Any objection to

5   adding 6965?

6           MR. KANG:  No, Your Honor.

7           THE COURT:  My list says it was used with Ms

8   Thelian.  More importantly, I can see the words in the

9   transcript.  It should be on the list.  The Court will

10  make certain that the copy you just laid your eyes on

11  which has 6965 on the Labs list will be the one that goes

12  into the jury and subsequently, we'll identify the JERS

13  number when counsel files an amended list.

14          MR. CHRIST:  Your Honor, I think I know the

15  source of the problem.

16          THE COURT: What would that be?

17          MR. CHRIST:  That would be me.  In the rush to

18  file the Joint list the parties were discussing, I

19  obviously just attached the wrong document at the last

20  moment.  We have the right list.

21          THE COURT:  Wait a minute.  We have to see it

22  and see if it is the right list.  Is this just the Joint?

23  You should give this to both sides.  If they want a

24  second copy.

25          She'll be on the look out to print it so that we

1    have it.  If it is not in accordance with your list, even

2    though it is there on JERS.  Apparently Liana had been

3    given lists from Cigna's paralegal in the course of

4    reviewing exhibits and the status and her list

5    agrees with the JERS list.  I assume you told me that

6    someone from your team told Liana the JERS list on all

7    exhibits that were in which would include Joint Exhibits

8    is accurate.  I hope you will tell me that you did

9    prepare the proper list and you just attached the wrong

10   one then we'll have an issue we can solve it in five

11   minutes.

12        MR. CHRIST:  That's right.

13        THE COURT:  Otherwise there's a lot of circled

14   exhibits on here we would have to go through and reach

15   agreement.  I will sit and wait for the hopes that you

16   can -- would counsel please review the JERS list which is

17   the list of admitted Joint Exhibits and tell me.  Answer

18   the question I asked earlier does it accurately reflect

19   your understanding of what's in evidence via the Joint

20   list.

21        MR. CHRIST: Your Honor, it looks like the list

22   that we reviewed earlier.  May be excused to get a device

23   to connect to the Internet.

24        THE COURT:  Yes.

25        Is it possible for you to upload your amended

1    list now?  Can you do that now?  That way it will look

2    like -- I'm sorry we're waiting to get confirmation that

3    the Joint Exhibit list is agreed to by Labs as it is in

4    JERS versus -- I guess you will give me or you will

5    docket what you think.  Is it docketed yet?

6              MR. CHRIST:  No.

7              THE COURT:  You will tell me when it is

8    docketed.

9              MR. CHRIST: Yes.

10              THE COURT:  I can see an intense look on your

11   face, I assume you are in the process of docketing.

12              MR. CHRIST:  Yes.

13              THE COURT:  Have you looked through the Joint

14   list?  Have you compared with what you think is right

15   with what Bernadette raised or showed you would be the

16   correct one?

17              MR. CHRIST:  Both Attorney Kang and I are doing

18   that right now.

19              THE COURT:  I want be sure we haven't lost sight

20   of two things to be done.  Thank you.

21              (Pause.)

22              THE COURT:  Attorney Christ, I don't ever docket

23   things so I may be don't appreciate it.  She said she's

24   not seeing it on the docket.

25              MR. CHRIST:  I'm hitting file right now.

1          THE COURT:  I will leave you alone.  My

2     apologies.

3          May I interrupt?  Will you confirm that you hit

4     the docket button?

5          MR. CHRIST:  Yes.  I think we reached a

6     consensus on the Joint Exhibit.  The Joint Exhibit list

7     that the parties exchanged last night we were in

8     agreement with.  It was based off of a JERS form we were

9     reviewing.  The form does not list many of those

10    exhibits.  I think Mr. Kang --

11         THE COURT:  That doesn't make any sense.

12         MR. KANG:  The parties are in agreement, Your

13    Honor, there's 50 Joint Exhibits.  But there are 14 of

14    those 50 are missing from the list that Bernadette just

15    circulated.

16         THE COURT:  You think in total there should be

17    50 in evidence but 14 are missing.  Can you give me the

18    numbers?

19         MR. KANG:  Joint Exhibit 2, 4, 7, 10, 37, 41,

20    130, 132, 141, 146, 157, 159, 162, and 163.

21         (Discussion off the record.)

22         THE COURT:  The circled ones are the one my

23    assistant said in her review this morning are not on the

24    JERS list.  2 and 4 which were the first two Attorney

25    Kang listed as a mistake are on the list.  They were not

1   circled.  Circled means not in evidence according to the

2   check this morning.

3          MR. CHRIST:  I think the mistake was there are

4   the joint list that was docketed was the wrong list.

5          THE COURT:  We are throwing it out.

6          MR. CHRIST:  Throwing it out.  So the list the

7   parties have exchanged and have agreed were the Joint

8   Exhibits do include 2 and 4.  That is based off of in the

9   last Mr. Kang just provided.

10          THE COURT:  Bernadette concluded 2 and 4 are in

11   evidence according to this list she showed you so we can

12   cross those two off as a problem.

13          They are in evidence which is what you and

14   Attorney Kang are saying and what she's saying and that's

15   what should be on the lis.  Okay.

16          1, 3, 5, 6, 8, 9 are not.

17          MR. CHRIST:  We have docketed the Labs.

18          THE COURT:  She'll print it right now and will

19   check it right now.  So I will throw away the list you

20   gave me, Attorney Kang.  Those are all the ones she

21   identified were wrong from the list that said Joint

22   Exhibit list which is not the correct Joint Exhibit list.

23   Go see if she can hit the button four times and she

24   doesn't have -- why doesn't she go through and see if the

25   new list is correct versus the JERS list she's been using

1    from this one.

2             MR. CHRIST:  We're docketing the joint list

3    right now.  We've only docketed the Labs' list.

4             THE COURT:  Let me predict Liana is going to

5    come through that door in 30 seconds and say Judge, it is

6    not on the docket.

7             MR. KANG:  This is fine, Your Honor.

8             THE COURT:  Whenever it is docketed, you will

9    get a copy of what I understand to be the attachment to

10   that file by Cigna on the Amended Joint Exhibit List.

11   It doesn't say that on attachment but in terms of your

12   file should have said it.  That's okay.  I don't care I

13   will put on the record the following four documents,

14   paper documents, will be provided to the jury to assist

15   them in locating exhibits in the JERS system.  These are

16   lists of the court exhibit which contains one exhibit in

17   evidence.  That's docketed at 463 page 2 of 2.  The next

18   one is 464-1, page 2 of 7 Cigna's admitted exhibit list.

19   The next is document 466-1, page 1 of 2 list of labs

20   admitted exhibits and the fourth one is docket 467-1

21   pages 2 and 3 of that document and it is the admitted

22   joint exhibits.  Everybody have in mind what I just

23   described is going into the room.

24             Liana, on your way past the tables offer them an

25   opportunity to lay their eyes on what you are carrying.

1    That's a copy of what Bernadette should be making.  You

2    can go do that now.  I think you can recess for me.

3    Anything else?  No.

4              MR. CHRIST:  No, Your Honor.

5              THE COURT:  Thank you very much.  We're in

6    recess until we hear from the jury.  I think I mentioned,

7    maybe not on the record, but the jury has advised they

8    will take their lunch from 12:30 to 1:15.  As you heard

9    me explain, you are free to be anywhere in that time

10   period.

11             MR. CUNNINGHAM:  One quick question.  Does that

12   mean they don't deliberate over lunch?

13             THE COURT:  I don't know.  They can if they

14   wanted to deliberate.  I don't think I told them not to.

15   I just said they should understand that we don't be

16   available.  I also said if they take a break, so we know

17   they might be in the hallway.

18             MR. CUNNINGHAM:  We're so used to working

19   lunches, we can't imagine anybody else does that.

20             (Whereupon, a recess was taken from 12:10 p.m.

21   to 3:42 p.m.)

22             3:41 p.m.

23             THE COURT:  It is a few minutes before they

24   asked to be excused.  I think by the time the that Liana

25   gets down the hallway.  That's a bit of a distance and

1    gets them lined up and out and they want to leave.  Can

2    you give me the note?

3         We did receive a note.  The officer reported it

4    was received at 3:20 on today's date and writes reads we

5    plan to finish at 3:45 so that will be marked as Court

6    Exhibit 2 I guess.  Whatever if you need to double-check

7    that for your notes.  Liana will tell you when the jury

8    leaves.  Somebody needs to remind me to have the jury

9    that the foreperson has to sign their number.  That's one

10   thing you get to know about what they have done so far.

11   Do you have anything?  I can't take it up now.  She'll be

12   here shortly.  We'll see you.  You have to be where Liana

13   expects with your phone on at 9:30.  If you want to,

14   she'll be in the courtroom or that room all the time they

15   deliberate so but she needs to let everybody know and

16   myself that they are deliberating.  I assume it will be

17   9:30 and yeah.  We'll go from there.

18        As I said, I would like to see you folks at some

19   point or somebody from your team just to put things on

20   the record so you have a record of why I ruled the way I

21   did especially on the 403 ones.  And so I will do that at

22   ten just to get it off of my to do list.

23        (3:45 p.m. in the presence of the jury.)

24        THE COURT:  For recesses, you can sit anywhere.

25   A question or a verdict probably I would rather have you

1    sit where I'm used to seeing you.  This time of day it

2    doesn't matter.  Everybody be seated.  Welcome back,

3    ladies and gentlemen.

4         We received a note from the foreperson

5    indicating that you wanted to break at 3:45.  I'm right

6    on time so I will excuse you at this point.  You are due

7    back at 9:30 at which point you will report to the

8    deliberation room.  Don't start talking if there's a few.

9    Liana will count that you have nine.  Now you can go and

10   I will leave you alone.

11        THE CLERK:  They want to start at nine.

12        THE COURT:  That's fine.  Nine is fine.  That's

13   great.  So she'll count you at 9:00 or five minutes to

14   nine.  As soon as she sees all of you are there and

15   settled, she'll tell you you may begin.  After that, of

16   course, if you want a morning break, you need to give us

17   a note that you may be out a hallways, lunch you will

18   have told Liana what you want.  I will assume when it is

19   delivered is your 45 minutes you will take so we'll tell

20   the lawyers what you pick for the delivery time and go

21   from there.  All right.

22        Now it is very tempting now that you have begun

23   to talk among yourselves.  This is an interesting time in

24   the process of being a juror.  The first day of

25   deliberations so you might have a greater temptation to

1    talk to somebody else.  Somebody you are close to or you

2    talk to about things that are important in your lives,

3    resist it.  Do not talk to anyone and I'm sorry if it is

4    making you uncomfortable and frustrated and that there's

5    nothing I can do.  You cannot talk to anyone.  You still

6    can't research or communicate with anyone.  With that, I

7    need to give the full instructions.  I know you heard it

8    so many times.  Bear that in mind.  Don't slip tonight.

9    I won't see you at nine.  We'll be told that you are all

10   here.  Thank you very much.

11              (In the absence of the jury at 3:48 p.m.)

12              THE COURT:  We'll be back at nine.  As I said,

13   we'll come out at ten to put the rulings on the record.

14              (Adjourned:  3:50 p.m.)

15

16

17

18

19

20

21

22

23   COURT REPORTER'S TRANSCRIPT CERTIFICATE

24   I hereby certify that the within and foregoing is a true

25   and correct transcript taken from the proceedings in the

1    above-entitled matter.

2

3    /s/  Terri Fidanza

4    Terri Fidanza, RPR

5    Official Court Reporter