IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BIOHEALTH LABORATORIES, INC., PB LABORATORIES, LLC, and EPIC REFERENCE LABS, INC.<br><br>Defendants. | Case No. 3:19-cv-01324-JCH<br><br>Hon. Janet C. Hall<br><br>December 26, 2024 |

**CIGNA'S MEMORANDUM IN OPPOSITION TO THE LABS' MOTION TO COMPEL**

Cigna Health and Life Insurance Company ("Cigna") hereby opposes the Labs' Motion to Compel Production of Excluded Documents for *In Camera* Review, and, Thereafter, to Award Sanctions (the "Motion"). (Dkt. 510.)

**INTRODUCTION**

After a nine-day trial, and three days of deliberation, the jury rendered verdicts in favor of Cigna. Now, after the jury has rendered verdicts against them, the Labs seek, for the first time, to compel an *in-camera* review of all 953 documents listed on Cigna's privilege four logs. This request is nothing more than a fishing expedition for any possible reason to overturn the jury's verdicts. The Labs' Motion is hopelessly late, procedurally improper, and lacks any factual basis to justify the relief sought.

First, the Labs' Motion is grossly untimely. The Labs waited almost two years after the close of fact discovery and one month after a jury verdict to file their Motion, and fail to provide any reason for their delay. In the few published decisions addressing post-judgment discovery

-1-

motions, courts have unanimously denied requests where, as here, the moving party could have pursued the discovery and resolved (or attempted to resolve) such disputes during the discovery period. The Labs do not offer any excuse for their dilatory conduct, and they do not even attempt to explain how the requested documents could nullify the jury's verdict at this juncture in the litigation. Final judgment has been entered in the Labs' case, and the Labs are prohibited from filing a motion for a new trial pursuant to Fed. R. Civ. P. 59 at this point. *See* Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 6(b)(2).

Second, the Labs do not even attempt to establish the requisite "good cause" for the Court to consider their belated motion. The Labs offer no reason — let alone a good one — as to why they did not pursue these discovery issues during the discovery process, pretrial proceeding, or before the close of evidence at trial. Further, the Labs fail to explain how any of documents they seek could have changed the outcome of the trial, which is the standard the Labs would need to satisfy for a hypothetical motion for a new trial.

Third, even if the Court were to entertain the Labs' untimely motion, the Labs fail to satisfy their burden to establish that an *in-camera* review is warranted. The Labs fail to supply a factual basis to suggest that the review will uncover any improperly withheld material. Nor do the Labs attempt to explain how the burden they seek to impose is proportional to the post-trial needs of this case.

If the Labs truly had concerns over Cigna's privilege designations, they could have, and should have, raised them long before trial. If the Labs believed the review of these documents was critical to their presentation of evidence at trial, they would have demanded their review before they rested their case. This Motion is nothing more than an attempt to undo the jury verdict and erase their unfavorable trial outcome. Their belated attempt to raise these issues for the first time

post-trial runs afoul of the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure, and the established precedent for timely resolving discovery disputes. The Motion should be denied.

## BACKGROUND

### A.   The Labs failed to challenge the privilege logs during discovery.

Over the course of the nearly two-year discovery period, the Labs never once challenged a single entry on any of Cigna's four, timely served privilege logs.[1] This Court is familiar with the lengthy procedural history of these two consolidated cases.[2] Discovery commenced in September 2021 and continued through May 2023.[3] During that time period, Cigna responded to the Labs' four sets of interrogatories, four sets of requests for production of documents, and three sets of requests for admission.[4] Cigna also produced more than 300,000 pages of documents.[5] Cigna served timely its privilege logs on February 8, 2022, November 10, 2022, December 27, 2022, and May 31, 2023, respectively.[6]

During discovery, the Labs deposed nine of Cigna's fact witnesses, including Stephanie Canto, William Welch and Michael Goldfarb.[7] The Parties engaged in dozens of meet-and-confers,

---

[1] *See* Declaration of Edward T. Kang, ("Kang Decl."), at ¶ 6, attached hereto as **Exhibit A**. The Parties agreed upon the date and information that should be included on the privilege log in their Stipulation Regarding the Collection and Production of Documents of Electronically Stored Information ("ESI Agreement"). Dkt. 32-2, at 26-27.
[2] *See* Dkt. 271 (filed in 3:19-cv-1324), Ruling on Motions for Summary Judgment, at 24-28 (describing procedural history of two cases and consolidation leading up to summary judgment).
[3] Dkts. 79, 179.
[4] *See* Kang Decl. at ¶ 3.
[5] *See* Dkt. 149, ¶ 8; Kang Decl. at ¶ 4-5. Cigna's Privilege Log was served February 8, 2022, Cigna's Supplemental Privilege Log was served November 10, 2022, Cigna's Second Supplemental Privilege Log was served December 27, 2022, and Cigna's Third Supplemental Privilege Log was served May 31, 2023. Kang Decl. at ¶ 5.
[6] Kang Decl. at ¶ 5.
[7] During his February 16, 2023 deposition, the Labs learned the details of Mr. Goldfarb's job history at Cigna.

many of them supervised by Parajudicial Officer James Hawkins, and submitted eighteen joint status reports updating the Court on the Parties' progress toward completing discovery and resolving any discovery disputes.[8] The Parties filed multiple motions to compel over the course of discovery, including three filed by the Labs.[9] The Labs did not challenge any privilege designations in any of the eighteen joint status reports, in any hearings with Parajudicial Officer Hawkins, in any meet-and-confers with Cigna, or in any depositions of Cigna's witnesses, including the depositions of Stephanie Canto, William Welch, and Michael Goldfarb.[10] Fact discovery closed in May 2023.[11]

Following the Court's summary judgment rulings on March 1, 2024, the Labs did not raise any privilege issues at any point during the six months the parties were preparing for trial.[12] As part of the Court's pretrial procedures, the Labs were required to disclose any outstanding evidentiary issues.[13] Again, the Labs failed to mention any issues with the privilege logs in any pretrial filings or during any one of the eight days of pretrial conferences.

**B.      The Labs did not seek leave to file a motion to compel before resting their case.**

For the very first time, on October 25, 2024, during the sixth day of trial, the Labs raised a privilege issue at side bar.[14] The Labs did not cite any new information disclosed during the trial (or otherwise unknown to the Labs before trial) giving rise to their sudden skepticism regarding Cigna's privilege assertions. Rather, the Labs' counsel suggested only that he "believed" he should

---

[8] *See, e.g.*, Eighteenth Joint Discovery Status Report, Dkt. 152.
[9] *See* Dkt. 93, Dkt. 125, Dkt. 158.
[10] Kang Decl. at ¶ 6. The Labs did not challenge any privilege designations during summary judgment, during the months leading up to trial, or during the eight days of pretrial conference. Kang Decl. at ¶ 7.
[11] Dkts. 179-180, Order Granting Motion to Amend/Correct Scheduling Order.
[12] Kang Decl. at ¶ 7.
[13] *See* Dkt. 42, Addendum – Pretrial Order, at ¶ 12.
[14] Dkt. 497, October 25, 2024 Trial Transcript at p. 1473-75.

-4-

be able to review documents on the privilege log "on the basis of waiver,"[15] but was unable to answer the Court's questions regarding the basis for his assertion.[16]

Following this side bar, the Labs did not seek to

- confer with Cigna about the issue,
- follow up to answer any of the Court's questions,
- file any motion with respect to any of the documents in question,
- move for a mistrial, or
- seek leave file any post-trial motion on the issue.[17]

Instead, the Labs elected to proceed to a jury verdict. The jury returned a verdict against the Labs and in Cigna's favor in the Labs' case on November 4, 2024.[18] Still, the Labs made no motion regarding any documents on Cigna's privilege log. Accordingly, the Court entered final judgment in the Labs' case on November 19, 2024, and closed the case.[19]

Two weeks later, the Labs filed this Motion,[20] and simultaneously filed a motion asking the Court to vacate the final judgment in their case pending resolution of this Motion.[21] The Labs seek an *in-camera* review of **all** 872 documents contained on all four of Cigna's privilege logs.[22] The Labs point to two facts in support of their request for an *in-camera* review of 6,252 pages of

---

[15] The Labs have never provided any support for this "waiver" argument. Neither at sidebar during the trial nor during any post-trial brief have the Labs explained what testimony they believe constituted a waiver of privilege and why that to be the case.

[16] *Id.* at 1474-1475 ("The Court: Well, I'm concerned, too, because we're three days away from this going to a jury. But I don't know because you haven't told me the answer, so I cannot answer this. I can't hear this argument.").

[17] Kang Decl. at ¶ 15.

[18] Dkt. 108 (filed in 3:19-cv-1326).

[19] Dkt. 117 (filed in 3:19-cv-1326).

[20] Dkt. 510.

[21] Dkt. 140 (filed in 3:19-cv-1326).

[22] *See* Kang Decl. at ¶ 16-17.

documents: (1) the Court's *sua sponte* review of Joint Trial Exhibit 146A during trial, and (2) the fact Mr. Goldfarb joined the SIU in 2017—a fact that had been previously disclosed during discovery and that the Labs have known for years.[23]

## ARGUMENT

**I.      The Labs' Motion is untimely and procedurally improper.**

The Labs' discovery motion – filed nearly two years after the close of discovery, after the Labs rested their case, following jury verdict, and following the entry of final judgment in the Labs' case – is exceptionally untimely. The Motion should be denied on that basis alone. *See, e.g.*, *Richardson v. City of N.Y.*, 326 F. App'x 580, 582 (2d Cir. 2009) ("[T]he district court did not abuse its discretion in denying Plaintiff's motion to compel discovery, which was filed over one month after the close of discovery, as untimely."); *Rogers v. Cusson*, No. 3:21-CV-1710 (OAW), 2023 U.S. Dist. LEXIS 213919, at *4 (D. Conn. Dec. 1, 2023) (denying motion to compel filed after the close of discovery); *Jo v. JPMC Speciality Mortg. LLC*, No. 08-CV-0230-EAW-MJR, 2016 U.S. Dist. LEXIS 199561, at *9 (W.D.N.Y. Feb. 24, 2016) (denying motion to compel filed after the close of discovery as untimely).

The Labs' motion is extraordinary. Not surprisingly, there is no precedent allowing new merits discovery at this late stage in the proceedings. *In re Wyatt, Inc.*, 168 B.R. 520, 523 (Bankr. D. Conn. 1994) (noting "[t]here is a dearth of cases discussing a party's right to post-trial or post-judgment discovery other than discovery pursuant to Fed. R. Civ. P. 69(a) in aid of enforcing a judgment or execution"). In the few instances in which a party has sought such extraordinary relief, courts have uniformly rejected such requests as untimely. *See, e.g., Rusk v. N.Y. State Thruway Auth.*, No. 10-CV-544-FPG, 2021 U.S. Dist. LEXIS 193840, at *11-12 (W.D.N.Y. Oct. 6, 2021)

---

[23] Motion at 3-4; *see* Decl. at ¶ 17.

-6-

("Accordingly, whether it is viewed as a formal prerequisite to post-judgment discovery, or simply as one factor among many, the Court finds Plaintiff's unexcused failure to obtain the discovery during pretrial proceedings relevant and, in this case, dispositive."); *Signtech USA, Ltd. v. Vutek, Inc.*, No. 95-CV-226, 1999 U.S. Dist. LEXIS 23501, at *14 (W.D. Tex. Aug. 9, 1999) ("There is little case law directly addressing reopening discovery after a final judgment has been entered by the court. However, the cases on point have held that the parties should not be given the opportunity to reopen discovery for the purpose of discovering information which could have been gained before trial."); *Alston v. Prairie Farms Dairy, Inc.*, No. 4:16-CV-245-DMB-JMV, 2018 U.S. Dist. LEXIS 181373, at *12-13 (N.D. Miss. Oct. 23, 2018) ("Alston does not cite any legal authority for the proposition that [a motion to compel] is justified after the close of discovery and the entry of final judgment. Alston's motion to compel, therefore, will be denied as untimely."); *Fharmacy Records v. Nassar*, No. 05-72126, 2010 U.S. Dist. LEXIS 157821, at *10-11 (E.D. Mich. Feb. 18, 2010) (denying discovery motion where the Court had "rendered its judgment on the merits, dealt extensively with at least fourteen of the plaintiffs' post-judgment motions, and where the matter is now on appeal before the Sixth Circuit"); *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976) (denying request for post-judgment discovery and noting that the Court "did not consider the granting of post-judgment discovery a proper vehicle for reviewing the integrity of pretrial discovery").

In accord, at trial this Court ruled that it is improper for a party to seek to introduce evidence after having rested, even if the request is made before closing argument.[24] It is by the same token improper to try move to reopen discovery and introduce new evidence after an adverse jury verdict. *See, e.g., Watson v. Police Officer John Guerra*, No. 22-1364-cv, 2024 U.S. App. LEXIS 32309,

---

[24] Dkt. 500, October 30, 2024 Trial Transcript at p. 2193:3-19.

at *4 (2d Cir. Dec. 20, 2024) (ruling that party waived right to seek introduction of evidence after knowingly failing to attempt to introduce evidence before the close of evidence.). The jury members devoted more than two weeks of their time to this case. If the Labs thought there was critical information the jury should have the ability to review that Cigna improperly withheld, the Labs should have timely moved to secure that information for the jury, at minimum making an objection to evidence closing before an *in-camera* review and asked for a mistrial. The Labs made a strategic decision not to do so.

Moreover, the Labs never conferred with Cigna on any of these issues — in violation of the Federal Rules and this Court's Local Rules. Under the Federal Rules, a moving party must provide "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Likewise, Local Rule 37(a) prohibits the filing of any discovery motion "unless counsel making the motion has conferred, in person or by telephone, with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution." A violation of this requirement is alone a sufficient basis to deny the motion. *See Fiore v. Univ. of Saint Joseph*, No. 3:21cv1060(AWT), 2023 U.S. Dist. LEXIS 41459, at *1-2 (D. Conn. Mar. 13, 2023) ("The failure to have a meet and confer session before filing a motion to compel can and often does justify a court's decision to deny a motion to compel."); *Saliga v. Chemtura Corp.*, No. 3:12cv832(VAB), 2015 U.S. Dist. LEXIS 23202, at *5 (D. Conn. Feb. 26, 2015) (denying motion to compel *in-camera* review for failure to comply with the meet-and-confer requirement).

Not once during the five years of this litigation did the Labs ever raise any concern with Cigna regarding its privilege logs.[25] In the more than three years since Cigna provided the Labs with its first privilege log, the Labs have not asked a single question about any one of them. The eighteen joint status reports make no mention of Cigna's privilege logs. The Labs never asked Cigna for clarification about a single entry or to requested additional detail to better assess the privilege claim.[26] Nor did the Labs ever ask whether Cigna would agree to an *in-camera* inspection of certain documents to resolve their concerns.

Simply put, what the Labs seek to do with their Motion is unprecedented. *See In re Levensaler*, 13 B.R. 140, 143 (Bankr. D. Conn. 1981) (denying motion to permit post-judgment discovery leading to a new trial and noting that "[n]othing in the law or rules of which I am aware authorizes the granting of such a request"). They failed to confer with Cigna at any point during discovery, failed to timely bring a motion during discovery, and failed to bring these issues to the Court's attention during any of the eight pretrial conferences. Instead, the Labs waited until *after* trial, *after* the jury rendered a verdict against them, and *after* the Court entered a judgment, to raise these discovery issues for the first time. This is the opposite of a good faith attempt to timely resolve discovery disputes.

Last—but certainly not least— the Labs argue that the purpose of the *in-camera* review would be to uncover documents that might possibly provide the basis for a motion for a new trial

---

[25] Kang Decl. at ¶¶ 6-7.
[26] Kang Decl. at ¶ 6. The parties agreed to a process for requesting additional information needed to evaluate a claim for privilege in the ESI Agreement. *See* Dkt. 32-2, ESI Agreement, at 14 ("If the requesting party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for it seeks which this information."). This procedure also mandates "a conference with the Court before any motions may be filed." *Id.*

under Fed. R. Civ. P. 59(e).[27] Yet again, the Labs are too late. Regarding the Labs' case against Cigna, Rule 59(e) requires that any motion for a new trial be filed within 28 days of final judgment. Fed. R. Civ. P. 59(e). As a matter of law, the Court is unable to extend this deadline. Fed. R. Civ. P. 6(b)(2). Thus, as of December 17, 2024 (28 days after judgment was entered on November 19, 2024), the Labs are prohibited from filing a motion for a new trial in any event. Consequently, with respect to the Labs' case, the *in-camera* review would serve no purpose at all. And as to both cases, the Labs have provided no authority that would allow them to strategically delay seeking the requested relief until after an adverse verdict.

The Motion should be denied on any one of these grounds.

**II.    The Labs do not — and cannot — demonstrate "good cause" for their belated Motion.**

Because the Labs have filed their discovery motion more than two years after the close of discovery, they must establish "good cause" for the Court to even consider their belated filing. *See Seymour v. Jasami Trucking LLC*, No. 3:16cv05(AWT), 2019 U.S. Dist. LEXIS 245441, at *7 (D. Conn. Aug. 1, 2019) ("[W]here as here, a party has filed a motion to compel after discovery has closed, that party must establish good cause for the late filing."); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2013 U.S. Dist. LEXIS 27221, at *8-9 (W.D. Pa. Feb. 28, 2013) ("Motions to Compel filed after the discovery deadline are untimely and prohibited, absent good cause.").

Notably, the Labs do not even attempt to argue "good cause" for the Court to consider their untimely Motion. *See generally*, Motion. For this additional reason, the Court should summarily deny the Motion. *See, e.g., Baltas v. Frenis*, No. 3:18-cv-1168 (VAB), 2024 U.S. Dist. LEXIS 221030, at *28-29 (D. Conn. Dec. 6, 2024) (denying motion to compel filed after discovery for

---

[27] Motion at 9.

failure to show good cause); *Oliver v. Am. Express Co.*, No. 19-CV-566, 2022 U.S. Dist. LEXIS 149681, , at *5 (E.D.N.Y. Aug. 12, 2022) ("[T]his was a post-discovery deadline motion. Under these circumstances, there is no good cause to permit a belated motion to compel and this provides an independent basis to deny the motion."). Indeed, the Labs lack any such good cause for their improper motion.

> A. **The Labs' lack of diligence and strategic delay precludes finding "good cause" to consider their belated Motion.**

The Second Circuit has emphasized that "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Significantly, "[c]ourts generally find that a party has not been diligent when a request 'rests on information that the [moving] party knew, or should have known, in advance of the deadline.'" *Aggarwal v. Costco Wholesale Corp.*, No. 3:22-cv-1588(RNC), 2024 U.S. Dist. LEXIS 147419, at *7 (D. Conn. Aug. 19, 2024) (quoting *Owens v. Conn. Jud. Branch*, No. 3:16cv898(RNC), 2018 WL 460972, at *2 (D. Conn. Jan. 17, 2018).); *see also Carnegie Mellon Univ.*, 2013 U.S. Dist. LEXIS 27221, at *10 (denying motion to compel filed after a jury verdict where moving party "offered no argument or evidence of good cause to show that diligent discovery of this material was not possible" during discovery); *H. K. Porter Co.*, 536 F.2d at 1118 (noting that party moving for post-trial discovery was "plainly not entitled to discovery of documents it did not request in pretrial discovery"). Although the Labs refer to discussions regarding privilege at trial, the Labs already knew, or should have known, about these issues long before trial.

First, the Labs contend that Joint Trial Exhibit 146A—Stephanie Canto's case notes—contain information that, they allege, was improperly redacted for privilege.[28] This document was produced to the Labs early in discovery on September 13, 2022, with privileged portions of the document redacted.[29] The Labs deposed Cigna's in-house counsel, William Welch, on February 10, 2023, and asked about the redacted portions of this document.[30] The Labs did not challenge the privilege designations before, during, or after Mr. Welch's deposition.[31] The Labs had the opportunity but did not question Ms. Canto about this document during her deposition on October 27, 2022 or during her continued deposition on February 2, 2023.[32] If the Labs had concerns regarding the redacted portions of Ms. Canto's case notes, the Labs had every opportunity to resolve that issue during the course of discovery. They failed to do so.

Second, the Labs believe that certain communications involving Mr. Goldfarb may have been improperly withheld based on privilege.[33] The Labs argue that because Mr. Goldfarb assumed a business role at the company beginning in 2017, his communications may not be privileged.[34] Here too, the Labs fail to cite any reason why they did not raise this issue during discovery. The Labs deposed Mr. Goldfarb on February 16, 2023. At his deposition, Mr. Goldfarb explicitly set

---

[28] Motion at 2-3.
[29] Kang Decl. at ¶ 9. (produced as CIGNA19-1326 0290560 – CIGNA19-1326 0290568).
[30] **Exhibit B**, Deposition Transcript excerpt of Bill Welch, pp. 96:17-98:4.
[31] Kang Decl. at ¶ 12.
[32] Kang Decl. at ¶ 13.
[33] Motion at 3-5.
[34] *Id.* On October 25, 2024, during Mr. Goldfarb's trial testimony, Attorney Gestrich argued that there were some 40 documents withheld as privileged involving Mr. Goldfarb, which the Labs believed they should have the opportunity to review on the basis of *waiver*. Dkt. 497, October 25, 2024 Trial Transcript at p. 1473. The Labs argued Mr. Goldfarb's testimony about the investigation into the Labs constituted a subject-matter waiver of all privileged documents about the investigation. *Id.* The Labs' Motion raises no arguments about *waiver* of privilege. The Labs' Motion only questions whether privileged communications involving Mr. Goldfarb contain business advice, as opposed to legal advice, based on his role with the SIU after 2017.

out the timeline of his employment history with Cigna.[35] The Labs' Motion gives no explanation for why the Labs could not have evaluated claims of privilege involving Mr. Goldfarb during discovery, despite having all requisite information about his employment history to do so. The Labs also fail to explain why they did not seek to compel production of the materials in dispute during trial. They elected to release Mr. Goldfarb from the stand after the privilege log issue was raised, instead of keeping him on the stand and pursuing their belatedly raised privilege challenge.

### B. The discovery sought would be futile.

The requested *in-camera* review would not lead to any relevant evidence — in fact, the review would be wholly futile for the reasons discussed, *supra* at p. 10. Fed. R. Civ. P. 59(e); 6(b)(2). Further, the Labs fail to explain how the unidentified documents on Cigna's privilege log will lead to any relevant evidence that could be used in a post-trial setting. *See Singh v. Mem'l Sloan Kettering Cancer Ctr.*, No. 23-63-cv, 2024 U.S. App. LEXIS 27244, at *3 (2d Cir. Oct. 28, 2024) (explaining that a new trial under Rule 59(a) is justified only if the court is "convinced that the jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice."). In particular, "[w]hen the motion for a new trial is based on newly discovered evidence, the criteria for granting same are that the new evidence . . . (1) [must] be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." *Hunter Douglas, Inc. v. Comfortex Corp.*, 98-CV-0479 (LEK/DNH), 1999 U.S. Dist. LEXIS 10907, at *22-23 (N.D.N.Y. May 10, 1999).

The Labs do not—and cannot—satisfy any of these factors. The Labs do not identify any particular documents on Cigna's privilege log that they contend were improperly withheld. They

---

[35] **Exhibit C**, Deposition Transcript excerpt of Mike Goldfarb at pp. 8:18-9:4.

do not even attempt to speculate what hypothetical documents exist that were not only wrongly withheld, but also so critical to the case that they would call into question the integrity of the jury's verdict. To the contrary, in the portion of the record where the Labs believe the Court questioned Cigna's privilege assertion, the Court specifically noted that the information was "probably not significant."[36]

### C. Cigna would be prejudiced by an *in-camera* review of all of its privileged communications.

Finally, in evaluating whether good cause exists, courts also focus on prejudice to the non-moving party. *See Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*, No. 3:19cv1324 (JCH), 2023 U.S. Dist. LEXIS 154253, at *14 (D. Conn. June 12, 2023) (J. Hall). Obviously, disclosure of all of Cigna's privileged communications in this case should not be taken lightly. *6340 NB LLC v. Cap. One, N.A.*, No. 20-CV-02500 (OEM) (JMW), 2023 U.S. Dist. LEXIS 205692, at *15 (E.D.N.Y. Nov. 16, 2023) ("Undertaking an *in camera* review should not be taken lightly. For in reviewing for privilege, the Court is given unfettered access to privileged communications between attorney and client."). Moreover, vacating the jury's verdict after a time-and-resource-intensive trial because the Labs failed to timely raise a discovery issue would be highly prejudicial.

## III. The Labs fail to meet their burden for an *in-camera* review of *all* of Cigna's withheld documents.

### A. The Labs fail to provide a sufficient factual basis to justify an *in-camera* review.

The Labs bear the burden to justify the *in-camera* review they seek. *See United States v. Zolin*, 491 U.S. 554, 572 (1989). An *in-camera* review is not appropriate merely because a party objects to assertions of privilege. *See id.* at 571-572. A mere objection, or even a suspicion, is not

---

[36] Motion at 3.

enough basis to shift a burden to the Court that they should bear themselves. *Id.* A court should only conduct an *in-camera* review if the moving party has provided a sufficient factual basis to support a good faith belief that *in-camera* review will reveal improperly withheld material. *Id.* at 572; *see also 6340 NB LLC*, 2023 U.S. Dist. LEXIS 205692, at *15 ("In order to justify such a review, the movant must make an evidentiary showing that there is some basis to suspect the communications withheld are in fact not privileged."); *Willoughby v. Gov't Emps. Ins. Co.*, No. 8:23-cv-1260-KKM-NHA, 2024 U.S. Dist. LEXIS 112252, at *13-14 (M.D. Fla. June 26, 2024) (denying request for *in-camera* review where moving party failed to demonstrate sufficient facts to create a reasonable belief that hundreds of documents were improperly withheld). The Labs fail to satisfy this standard. Neither of the two purported bases for their motion support a good faith belief that *in-camera* review will reveal improperly withheld material.

First, the Labs state that the Court found that Joint Trial Exhibit 146A had information "improperly withheld on privilege grounds."[37] This is not accurate. After the conclusion of the first day of trial, and off the record, the Court *sua sponte* asked Cigna to provide an unredacted copy of Joint Exhibit 146A, which Cigna did.[38] The Court did not discuss the document again until several days later in the context of a discussion about attorney-client privilege concerns implicated in the trial testimony of Mr. Welch:[39]

> I don't understand how he's going to testify about I guess . . . I guess here on the list, SIU investigation into the Labs, if everything he's written, and a lot of stuff that people wrote to him, which I have to say – I don't know, I have to look more carefully. But I would say there's at least a few items, probably not significant, that were not privileged that people wrote to him.[40]

---

[37] *See* Motion at 3 (citing Dkt. 498, October 28, 2024 Trial Transcript at pp. 1502-1503).
[38] Kang Decl. at ¶ 8.
[39] Dkt. 498, October 28, 2024 Trial Transcript at pp. 1502-1503.
[40] *Id.* at p. 1502.

It is unclear from this statement whether the Court was referring to Joint Trial Exhibit 146A or generally stating that there were likely communications involving Mr. Welch that were not privileged. The Court did not ever state that Joint Trial Exhibit 146A contained material that was "improperly withheld on privilege grounds." And the Labs fail to offer any facts to support their challenge to the privileged material. Indeed, the Labs fail to even articulate their theory for why the redactions were improper.[41] And even if the Labs had articulated some theory for why communications between Ms. Canto and Mr. Welch for the purpose of seeking legal advice were improperly redacted as privileged—which they do not—that still would not justify a blanket review of thousands of pages of other privileged documents. The Labs cite no case law for such a proposition.

Second, the Labs suggest that Cigna may have withheld Mr. Goldfarb's communications on the basis of privilege during the time period in which Mr. Goldfarb was not acting in a legal capacity.[42] Although Cigna's privilege logs contain all the information necessary to determine whether that was the case, the Labs fail to cite a single entry in which they believe Cigna improperly attributed a legal role to Mr. Goldfarb during the time he was no longer serving in a legal capacity. And the privilege logs themselves confirm that Cigna did not. Mr. Goldfarb transitioned from the legal department to SIU on January 1, 2017. As evidenced by the logs, the last document involving Mr. Goldfarb that Cigna withheld as privileged is dated May 9, 2016,

---

[41] Ms. Canto testified during trial that portions of the document were redacted as privileged because they were seeking legal advice from Bill Welch, who served as legal counsel for Cigna at the time. Dkt. 492, October 18, 2024 Trial Transcript at p. 208:15-24. The **only** purpose for Ms. Canto's communications with Mr. Welch was to seek legal advice related to the SIU investigation – particularly as the Labs had secured legal counsel and sent demand letters to Cigna. *See generally* Joint Exhibit 146A.

[42] Motion at 7.

when he was still working in the litigation section of Cigna's legal department.[43] Cigna did not withhold or redact any documents involving Mr. Goldfarb *after* he joined the SIU in 2017, and the Labs fail to offer any evidence that Cigna did.[44]

At bottom, the Labs' demand for an *in-camera* review is nothing more than a fishing expedition. *See 6340 NB LLC*, 2023 U.S. Dist. LEXIS 205692, at *13 (denying request where "conducting an *in-camera* review would be a mere fishing expedition and would not yield any further information than 6340 NB already possesses"). Their request is untimely, procedurally improper, and factually unsupported.

### B. The Labs' extraordinary request is not proportional to the needs of the case.

Not only is the Labs' request procedurally defective and factually baseless, it is exceedingly burdensome. Particularly at this juncture in the case—following a final jury verdict—the *in-camera* review the Labs demand is not proportional to the needs of the case. Parties are only entitled to discovery that is "proportional to the needs of the case," considering (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed

---

[43] Kang Decl. at ¶ 19-20.
[44] *Id.* The Labs also claim that the *in-camera* review might uncover information that would allow the Labs to seek unspecified sanctions against Cigna for unidentified reasons. This desire does not justify a review of every document Cigna has withheld. And it is particularly concerning given when the Labs chose to make the request. *See Nemec v. Shrader*, No. 09 Civ. 7466 (LAK), 2015 U.S. Dist. LEXIS 51221, at *8 (S.D.N.Y. Apr. 13, 2015) (denying motion for sanctions for alleged discovery abuse brought on the eve of trial and noting that granting the motion "would encourage parties to stay silent as to some discovery disputes during pretrial proceedings, and thus to lie in wait until long after discovery is complete only to ambush their unsuspecting adversaries with charges of wrongdoing on the eve of trial").

discovery outweighs its likely benefit. *Su v. Versa Cret Contracting Co., Inc.*, No. 21-cv-05697 (JMA)(JMW), 2024 U.S. Dist. LEXIS 72011, at *15-16 (E.D.N.Y. Apr. 19, 2024).

The Labs ask this Court to review every single one of the nearly 1,000 documents (6,252 pages) withheld in whole or in part on the basis of privilege.[45] *See Smith v. Shelter Mut. Ins. Co.*, No. 15-357-SDD-RLB, 2018 U.S. Dist. LEXIS 39615, at *6 (M.D. La. Mar. 12, 2018) (holding a blanket review of every document identified on a privilege log "would constitute a great and unnecessary expenditure of judicial resources."). And the Labs demand this extraordinary strain on judicial resources without even attempting to make out a case for proportionality. As discussed, because the trial is over, these documents could only be useful if they are so critically important that they "would have changed the outcome of the trial." *Hunter Douglas*, 1999 U.S. Dist. LEXIS 10907, at *22-23. The Labs do not even attempt to argue their relevance, much less their ability to alter the jury verdict. In this way, the Labs fail to establish that the immense burden they seek to impose at this late stage is somehow outweighed by the likely benefit.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Labs' Motion to Compel.

---

[45] *See* Kang Decl. at ¶¶ 16-17.

DATED this 26th day of December, 2024.

Respectfully submitted,

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (CT26653)
EMILY COSTIN (PHV No. 10291)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com
E-mail: emily.costin@alston.com

KELSEY L. KINGSBERY
(PHV No. 10282)
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
Telephone: 919-862-2200
Facsimile: 919-862-2260
E-mail: kelsey.kingsbery@alston.com

MICHELLE JACKSON
(PHV No. 207777)
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777
E-mail: michelle.jackson@alston.com

ALEXANDER AKERMAN
(PHV No. 07647)
350 South Grand Ave., 51st Floor
Los Angeles, California 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
E-mail: alex.akerman@alston.com

*Counsel for Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that this day, December 26, 2024, I electronically filed the foregoing CIGNA'S MEMORANDUM IN OPPOSITION TO LABS' MOTION TO COMPEL using the CM/ECF system, which will automatically effectuate service upon all counsel of record in this matter.

**ALSTON & BIRD LLP**

*/s/ Edward T. Kang*
EDWARD T. KANG (No. CT26653)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com

*Counsel for Cigna Health and Life Insurance Company*