UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EPIC REFERENCE LABS, INC., <br> BIOHEALTH LABORATORIES, INC, and <br> PB LABORATORIES, LLC, <br>    Plaintiffs, <br><br> v. <br><br> CIGNA HEALTH AND LIFE <br> INSURANCE COMPANY, <br>    Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL CASE NO. <br> 3:19-CV-1326 (JCH) |
| CIGNA HEALTH AND <br> LIFE INSURANCE COMPANY <br>    Plaintiff, <br><br> v. <br><br> BIOHEALTH LABORATORIES, INC., <br> PB LABORATORIES, LLC, and <br> EPIC REFERENCE LABS, INC., <br>    Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL CASE NO. <br> 3:19-CV-1324 (JCH) <br><br><br><br> MARCH 7, 2025 |

**Order For Response and Order to Show Cause**

**I.    INTRODUCTION**

On January 14, 2025 in the above-captioned cases, the court ordered Cigna Health and Life Insurance Company ("Cigna") to provide a designated sample of documents listed on their privilege log to the court for an <u>in camera</u> review.  <u>See</u> Order (Doc. No. 516).[1]

After a thorough review of the sample that Cigna produced, the court finds that most of the privilege assertions contained therein are either overbroad or inappropriate. For reasons explained below, the court is concerned, but has not decided, that certain

---

[1] Docket numbers refer to the case No. 3:19-cv-1324, unless specified to the contrary.

1

privilege assertions could potentially rise to the level of a manifest injustice. The court orders Cigna to respond and show cause as described below.

## II. BACKGROUND

This Order results from two cases which were consolidated for the purposes of trial and tried together. The court provides only an abbreviated version of the facts and procedural history as they pertain to the present Order.

BioHealth Laboratories, Inc., PB Laboratories, LLC, and Epic Reference Labs, Inc. (together, "the Labs") were three commercial toxicology laboratories all located in Florida. See Joint Trial Memo at 15 ("Stipulation of Facts") (Doc. No. 351) at (ii). The Labs provided drug testing services for substance abuse treatment facilities, primarily urine and blood tests. Cigna is a managed care company that insures individual insurance policies and administers group employee health insurance benefit plans. See Stipulation of Facts at (i). Under Cigna's insurance policies, the Labs were "out of network" providers for Cigna, meaning that they did not have a provider contract with Cigna that set forth terms of reimbursement. See id. at (iii). Starting in 2012, Cigna paid $16,303,315 to the Labs on account of invoices for testing services provided to Cigna's subscribers and beneficiaries. See id. at (iv). Cigna had an internal investigations unit called the "Special Investigations Unit" ("SIU"), which investigates claims submitted by medical providers. See id. at (vi). Beginning in 2013, the SIU began to investigate claims submitted by the Labs. Eventually, Cigna stopped paying certain of the Labs' claims.

On July 25, 2019, the Labs commenced an action against Cigna in Connecticut Superior Court, alleging that non-payment of their claims violated common law and the

statutory insurance law of Florida.  See Epic Reference Labs, Inc. v. Cigna Health & Life Ins. Co., Notice of Removal, No. 19-cv-1326 (Doc. No. 1); State Complaint, No: 19-cv-1326 (Doc. No. 2-1).  In August 2019, Cigna removed the action to federal court and commenced its own action against the Labs, alleging that the Labs unjustly enriched themselves by billing Cigna for medically unnecessary services, failing to collect patient cost-share payments, and using other improper billing practices.  See Complaint (Doc. No. 1).  Both cases were consolidated for pretrial purposes, and later for trial.  See Notice of Consolidation (Doc. No. 94); see Order (Doc. No. 477) (consolidating cases for trial).

The initial Scheduling Order in this case called for the completion of discovery by November 20, 2020.  See Scheduling Order (Doc. No. 38).  That Scheduling Order was amended several times.  See, e.g., Order Granting Motion for Entry of Amended Scheduling Orders (Doc. No. 111). To assist the court through a long and contentious discovery process, the court appointed James R. Hawkins II as a Para-Judicial Officer ("P.J.O.").[2]  P.J.O. Hawkins donated hundreds of hours of his time to the case without compensation, supervising meet and confers, and authored at least four recommended Rulings.  See Doc. Nos. 146, 183, 184, 198.  Fact discovery closed on January 31, 2023.  See Order Granting Motion to Amend/Correct Scheduling Order (Doc. No. 156).  However, the parties continued to litigate discovery motions after that deadline, which

---

[2] Mr. Hawkins is an attorney with more than four decades of experience in commercial litigation. He began his career as an associate at Shearman & Sterling in 1968. He joined Cummings & Lockwood as a partner in 1975, before moving to Robinson and Cole LLP, from 1981 to 1995.  He joined Finn, Dixon, & Herling LLP as a partner in 1995, where he remained until his retirement from the practice of law in 2006. Since 2006, he has served on a volunteer basis as a para-judicial officer in the District of Connecticut.  He is a two-time winner of District of Connecticut's Murphy/Cousins Award, first in 2010, and most recently in 2024, for his outstanding service as a para-judicial officer. His service throughout discovery in these consolidated cases has been outstanding and invaluable to the court.

concluded with the court declining to extend fact discovery in July of 2023.  See Order on Recommended Ruling (Doc. No. 202).

At various times during discovery, Cigna turned over four privilege logs.  The logs were dated February 8, 2022 (2 pages), November 10, 2022 (36 pages), December 27, 2022 (11 pages), and May 31, 2023 (121 pages).  These logs, taken together, combine to assert privilege in whole or in part for 872 documents, totaling 6,252 pages.  See Memorandum in Opposition to the Labs' Motion to Compel ("Cigna Opp.") (Doc. No. 515) at 5.  The majority of these documents are listed on the fourth of Cigna's logs, which was turned over several months after the formal close of fact discovery.  Cigna claims that the Labs never challenged any assertions of privilege until trial.  See Cigna Opp.

Cigna's privilege logs repeatedly reference two in-house Cigna lawyers, Michael Goldfarb, and William Welch,[3] as the basis for their assertions of privilege.[4]  During the eight day jury trial in October and November of 2024, Cigna called Mr. Goldfarb and Mr. Welch as fact witnesses.  Both testified about the SIU investigation that Cigna conducted into the Labs. See, e.g., Trial Transcript at 1288:9-1294:19; 1594:18-1599:16.

---

[3] In his trial testimony, Mr. Goldfarb testified he was hired to work in Cigna's legal department in 2015 and assigned to assist the SIU.  See Trial Transcript at 1274:16-1275:11. Mr. Welch was his immediate supervisor and was also assigned to assist the SIU.  See id. Later, in 2017, Mr. Goldfarb began working in the business unit of SIU and held the title "senior manager." See id. at 1277:10-23.  Mr. Goldfarb testified that after he moved to SIU, he did not continue to work and function as a lawyer for Cigna, and instead personally worked on SIU investigations. See id. at 1278:3-8. Mr. Welch testified that he left Cigna in the summer of 2016. See id. at 1594:4-8.

[4] By the court's count, Cigna's privilege logs use Mr. Goldfarb's name in connection with 46 entries across their four logs.  The logs use Mr. Welch's name in connection with 307 entries.

On more than one occasion, the Labs questioned whether the testimony of Mr. Goldfarb or the testimony of Mr. Welch waived attorney-client privilege, or whether prior assertions of privilege had prejudiced their ability to cross examine Mr. Goldfarb or Mr. Welch.  See Trial Transcript at 1377:20-21; 1473:7-1475:2; 1480:4-1482:24; 1501:1-1504:4.  The court could not address the issue during the trial and instructed the Labs to address it, as they saw fit, in post-trial Motions.

The jury returned two verdicts, one for each case.  In the Labs' case against Cigna, the jury found Cigna not liable.  See Jury Verdict, No. 3:19-cv-1326 (Doc. No. 108).  In Cigna's case against the Labs, the jury found the Labs liable and awarded $2.4 million in damages against each of the three defendant Labs.  See Jury Verdict (Doc. No. 483).

On December 4, 2024, the Labs filed a Motion styled as a "Motion to Compel Production of Excluded Documents for In Camera Review, and, Thereafter, to Award Sanctions."  See Motion to Compel (Doc. No. 510).  Cigna has opposed the Motion.  See Cigna Opp.

On January 14, 2025, the court ordered Cigna to produce, for in camera review, redacted and unredacted copies of a small sample of its privileged documents.  See Order (Doc. No. 516).  The court ordered Cigna to produce every 25th document on its privilege logs, starting with the seventh document.  See id. The court chose to examine every 25th document to create a significant but manageable sample of documents for the court's review.  It selected the seventh document at random.  The court also ordered four additional documents produced, which were referenced in the privilege log as

5

involving Mr. Goldfarb and/or Mr. Welch. The court reviewed each of these documents carefully.

### III. LEGAL STANDARD

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 207 (2d Cir. 2012), quoting United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). "[T]he mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged." U.S. Postal Serv. v. Phelps Dodge Ref. Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994). To be privileged, the "predominant purpose of the communication" must be "to render or solicit legal advice." In re Cnty. of Erie, 473 F.3d 413, 420 (2d Cir. 2007). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." Id. at 419, citing 1 Paul R. Rice, Attorney Client Privilege in the United States § 7:9 (2d ed.1999). "It is well-recognized that in-house counsel may serve both legal and business functions, and courts will scrutinize the nature of their communications before finding that those communications are privileged." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).

The party asserting the privilege bears the burden of establishing its essential elements. See Mejia, 655 F.3d at 132.

**IV.     ORDER**

The court conducted a thorough review of the sample of documents that Cigna provided to the court in camera. For a majority of the documents where Cigna asserted privilege, the court finds the assertion to be overbroad or outright inappropriate. In certain cases, documents were withheld in their entirety when light redactions would have been appropriate. In a large number of cases, it appeared to the court that Cigna reflexively redacted or withheld any communication involving a lawyer, without attempting to discern whether the predominant purpose of the communication was to seek or provide legal advice.

In several instances, for example, the court noted that documents were withheld in their entirety because lawyers appeared on an email chain. For example, the document listed on Cigna's privilege logs at bates number CIGNA19-1326-0327206, listed on page 80 of Cigna's fourth privilege log, is an email message to a large list of recipients within Cigna, a few of whom are Cigna lawyers. Without discussing the content of this communication, the court can discern no indication of the giving or the seeking legal advice whatsoever. However, the document was withheld in its entirety, on the basis that it was a "privileged and confidential communication between Cigna employees and Cigna in-house counsel seeking legal advice regarding [a] potential policy change." Fourth Privilege Log at 80.

The court proposes two paths forward. First, the court would order Cigna to produce a larger sample of documents to P.J.O. Hawkins for him to conduct an in camera review. Cigna would be ordered to produce every fourth document starting with a randomly selected number. Officer Hawkins would review those documents at a rate

of compensation of $800 per hour, at Cigna's expense.  P.J.O. Hawkins would write a report to the court detailing his findings.  If P.J.O. Hawkins finds, and the court agrees upon its own review, that Cigna's assertions of privilege in this sample were overbroad, then the court would order that every document listed on Cigna's privilege logs should be turned over, unredacted, to the Labs. The Labs could then supplement their post-trial briefing to move for a new trial, under Fed. R. Civ. P. 59, and Cigna could supplement its opposition.

The second path forward, as the court sees it, would be to have Cigna turn over each document, in redacted and unredacted form, for Mr. Hawkins to review.  Mr. Hawkins would then review them, at a rate of $800 an hour, and recommend to the court which documents should be withheld, which should be redacted, and which should be produced fully.  The court would review his recommended ruling and enter an order directing production as appropriate.  The Labs could then supplement their post-trial briefing to move for a new trial, and Cigna could file a supplemental opposition.

Cigna is ordered to respond as to which of the above two options the court should pursue in light of its initial finding, see supra, at 6-7, with responses within seven days of this Order.

Both of these options would require the court to appoint P.J.O. Hawkins as a special master.  The parties are notified that the court intends to appoint James R. Hawkins II as a special master for the purpose of conducting this review pursuant to Rule 53.  See Fed. R. Civ. P. 53(a)(1)(C) (A court may appoint a special master to "address . . . posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district").  If either party objects to Mr.

Hawkins's appointment, that party shall file an objection to his appointment within seven days of this Order.

Finally, it is not clear to the court why the fourth of these logs, which is by far the longest and contains the majority of Cigna's privilege assertions, was turned over months after the close of fact discovery. The court is considering, under both of the above paths, ruling that the fourth privilege log is stricken in its entirety for late disclosure. Cigna is ordered to show cause within seven days why it produced the log in May of 2023.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th of March 2025.

                                          /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge