**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CIGNA HEALTH AND | : | CIVIL CASE NO. |
| LIFE INSURANCE COMPANY | : | 3:19-CV-01324 (JCH) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BIOHEALTH LABORATORIES, INC., | : | MAY 20, 2025 |
| PB LABORATORIES, LLC, and | : | |
| EPIC REFERENCE LABS, INC., | : | |
|     Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
(DOC. NO. 509), DEFENDANTS' ORAL MOTION FOR DIRECTED VERDICT (DOC.
NO. 472), AND DEFENDANTS' AFFIRMATIVE DEFENSES**

## I.    INTRODUCTION

The plaintiff, Cigna Health and Life Insurance Company ("Cigna"), filed suit

against defendants Epic Reference Labs, Inc., BioHealth Medical Laboratory, Inc., and

PB Laboratories, LLC (together, "the Labs"), alleging that the Labs had unjustly

enriched themselves by billing Cigna for medically unnecessary services and by using

other improper billing practices.  See Amended Complaint ("Am. Compl.") (Doc. No.

87).[1]  After an eight-day jury trial, and after the close of evidence, the Labs moved for

judgment as a matter of law.  See Oral Motion for a Directed Verdict ("Oral Motion")

(Doc. No. 472).  The court allowed the case to proceed to the jury and on November 4,

2024, the jury returned a verdict against the Labs in favor of Cigna. See Jury Verdict

---

[1] The above-captioned case was tried together with a second case, Docket No. 3:19-cv-1326.
See Order of Consolidation (Doc. No. 477). In the present case, Cigna is the plaintiff and the Labs are the
defendants. In the second case, the Labs are the plaintiffs, and Cigna is the defendant. To avoid
confusing the two cases at trial, the court avoided using the terms "plaintiff" and "defendant" and referred
to the parties as "Cigna" and "the Labs."

Although this Ruling relates only to the above-captioned case in which Cigna is the plaintiff, the
court continues the practice here to avoid confusion.

1

(Doc. No. 483).  On December 4, 2024, the Labs filed a Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b). <u>See</u> Motion for Judgment as a Matter of Law ("Labs' Mot.") (Doc. No. 509).

For the reasons stated below, the Labs' Renewed Motion for Judgment as a Matter of Law is denied.  The court also concludes that the Labs have abandoned their previously asserted defense of laches, and finds that the Labs' defense of ERISA preemption does not bar Cigna's claim.

## II.     BACKGROUND

### A.     <u>Factual Background</u>

Cigna is a health insurance company that administers group employee health insurance benefit plans. <u>See</u> Joint Trial Memo at 15 ("Stipulation of Facts") (Doc. No. 351) at ¶ 1.  Cigna's group insurance plans are funded by employers using employee contributions. <u>See</u> Am. Compl. at ¶ 25. Cigna also offers fully insured individual insurance plans, which are funded by Cigna and which Cigna also administers. <u>See</u> Stipulation of Facts at ¶ 1.

BioHealth Laboratories, Inc., PB Laboratories, LLC, and Epic Reference Labs, Inc. (together, "the Labs") were three commercial toxicology laboratories all located in Florida. <u>See</u> <u>id.</u> at ¶ 2. The Labs provided drug testing services for substance abuse treatment facilities, primarily urine and blood tests.  Under group insurance policies administered by Cigna, the Labs were "out of network" providers for Cigna, meaning that they did not have a provider contract with Cigna that set forth terms of reimbursement.  <u>See</u> <u>id.</u> at ¶ 3.  Starting in 2012 and continuing for several years, Cigna paid approximately $16.3 million to the Labs on account of invoices for testing services

2

provided to subscribers and beneficiaries of the plans Cigna administered and sold.
See id. at ¶ 4.

Cigna had an internal investigations unit called the "Special Investigations Unit"
("SIU"), which investigates claims submitted by medical providers. See id. at ¶ 6.
Beginning in 2013, the SIU began to investigate claims submitted by the Labs, on the
theories that they were billing for medically unnecessary tests and using other improper
billing practices. Eventually, Cigna stopped paying certain of the Labs' claims.

B.    Procedural Background

The procedural history of this case is a long and winding one. The court presents
only a very abbreviated version relevant to the present Motion.

On July 25, 2019, the Labs commenced an action against Cigna in Connecticut
Superior Court, alleging that non-payment of their invoices violated the common law
and the statutory insurance law of Florida. See Epic Reference Labs, Inc. v. Cigna
Health & Life Ins. Co., No. 19-cv-1326, Notice of Removal (Doc. No. 1); State
Complaint, No: 19-cv-1326 (Doc. No. 2-1).[2] In August 2019, Cigna removed the action
to federal court and then commenced its own separate action in federal court against
the Labs, which is the present case. See Complaint (Doc. No. 1). Both cases were
consolidated for pretrial purposes and later for trial. See Notice of Consolidation (Doc.
No. 94); see Order (Doc. No. 477) (consolidating cases for trial).

The present Motion concerns only Cigna's case against the Labs, and the claims
and defenses in that case. Following this court's Ruling on the Labs' Motion for
Summary Judgment, Cigna had only two causes of action remaining: a common-law

---

[2] Unless specified otherwise, the docket numbers cited by the court refer to their numbered
docket entry in the above-captioned case, 3:19-cv-01324-JCH.

claim for unjust enrichment, and a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  See Ruling on Motions for Summary Judgment (Doc. No. 271).  Prior to trial, Cigna voluntarily dismissed its claim seeking declaratory judgment and chose to proceed to trial on only a claim of unjust enrichment.  See Oral Motion to Withdraw Declaratory Judgment Count with Prejudice (Doc. No. 390).

The court had previously held that the law of Florida, not Connecticut, applies to Cigna's unjust enrichment claim.  See Ruling on Motions for Summary Judgment (Doc. No. 271) at 30-33.  In the parties' joint pretrial memorandum, the Labs asserted two defenses to this Florida state law claim that are relevant to the present Motion.  See Joint Supplement to Joint Trail Memorandum (Doc. No. 396).  First, the Labs alleged that Cigna's claim is time-barred under the doctrine of laches.  See id.  Second, to the extent that Cigna seeks to recoup payments it made to the Labs under benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., the Labs alleged that Cigna's claim was preempted by ERISA.  See id.

The court determined that it would decide the laches defense after the jury trial, because laches is an "equitable doctrine."  See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 675 (2014).  During the parties' pretrial conference, the court requested additional briefing on ERISA preemption, which the Labs had not previously raised at the summary judgment stage.  See Labs' Brief in Support of Special Defense of ERISA Preemption (Doc. No. 415); Cigna's Memorandum Regarding ERISA Preemption (Doc. No. 416).  However, the court did not have adequate time before trial[3] to decide whether

---

[3] The pretrial conference for these consolidated cases was, in the court's experience, unique.  To begin with, the court had to address so many issues that the conference took place over eight days.  See

_____

Transcript of Proceedings: Day 8 of Pretrial Conference (Doc. No. 489).  In addition to handling 17 complex motions in limine and other evidentiary issues, the court also had to address unrealistic and inappropriate witness lists, exhibit lists, and overly inclusive lists of affirmative defenses, all of which the court viewed as noncompliant with its Pretrial Order.  See Pretrial Order, Addendum to Amended Scheduling Order (Doc. No. 42) at 4-10.

For brevity, the court offers just one illustrative example. In the court's Pretrial Order, it directed the parties to file, along with their pretrial memorandum, a "list of all exhibits, with a brief description of each, that each party will offer at trial on its case-in-chief."  Addendum, Pretrial Order, attached to Amended Scheduling Order Regarding Case Management Plan (Doc. No. 42) at 7 (emphasis added). The opposing party would then list evidentiary objections to the opposing parties' listed exhibits, which would allow the court to rule on their objections before trial. The parties had agreed on eight days of trial time.  See Pretrial Memorandum (Doc. No. 351).  The court expected the parties to produce exhibit lists that were realistic for an eight-day trial, because the court's pretrial instructions directed the parties to list only exhibits they "will offer at trial."  Addendum, Pretrial Order, attached to Amended Scheduling Order Regarding Case Management Plan (Doc. No. 42) at 7.  The parties violated this Order.

In their initial exhibit list, the Labs listed 6,282 exhibits, and Cigna listed an apparent 2,878 exhibits.  See Exhibit Lists (Doc. Nos. 352-7, 352-8).  For Cigna, this number is misleading. On closer inspection of the electronic version of Cigna's list, the court observed that Cigna listed "sub" entries on certain line of their list.  For example, the entry for Exhibit 10 might list exhibits 10.1-10.5.  See, e.g., Cigna's Exhibit List (Doc. No. 352-8) at pg. 65, entry 2012 (listing, on one line, "Cigna's Exhibit 2012.1 through Cigna's Exhibit 2012.5649" as "summary plan description documents").  When all of these "sub" entries are added up, the court counts the total exhibits listed by Cigna as 72,822.  Both parties' exhibit lists were so long that the parties jointly moved for relief from this court's paper copies requirements.  See Joint Motion for Partial Relief from Paragraph 11 of the Addendum to the Pretrial Order (Doc. No. 371).

During the early days of the parties' pretrial conference, the court repeatedly urged the parties to reduce the number of exhibits on their lists and warned that the court would otherwise not have sufficient time to rule on objections before trial.  In the court's estimation, fully a quarter of the documents listed on these lists were marked as being objected to, and often on multiple evidentiary grounds.  Thus, the court would be required to make many thousands of evidentiary rulings for exhibit lists that it viewed as unrealistic for an eight-day trial.

The parties gave the court their assurances that they were "diligently working to reduce the number of exhibits that will be presented . . . including through . . . representative sampling of exhibits." Joint Motion for Partial Relief from Paragraph 11 of the Addendum to the Pretrial Order (Doc. No. 371) at 1-2. Thus, the court held off on ruling on exhibits and allowed the parties another chance to file an exhibit list.  To the court's surprise, the parties' second exhibit lists listed more exhibits than the first list: 6,299 for the Labs, and 2,893 for Cigna (or, counting "sub" entries, 72,837).  See Second Exhibit Lists (Doc. No.s 396-5, 396-6).

In order to begin working on objections, the court granted partial relief from its paper copy requirements and allowed the parties to produce only paper copies of those exhibits which were objected to by the other party.  Combined, these objected-to exhibits occupied more than four bankers boxes full of documents.  Later, the parties were later allowed to file third, and fourth, exhibit lists, neither of which meaningfully reduced the number of listed exhibits.  See Doc. No. 410-411, Doc. No. 424-1, 424-2.  The court did not have the time to rule on many thousands of exhibit objections across unrealistic exhibit lists, nor was it a good use of its time.  The court eventually informed the parties that it would not rule on exhibit objections ahead of trial, and that it would make rulings during the trial and count the time taken against their trial time.  In order to provide the jury with paper copies of relevant documents, the court approved a compromise whereby the parties were allowed to file paper copies of only those exhibits which they deemed "likely to offer."  These exhibits filled more than 30 bankers' boxes, which were stacked behind the clerk's desk during trial.

Cigna's claim was preempted by ERISA and, just as it had with the Labs' laches defense, reserved ruling until after the trial.

After the close of evidence at trial, the Labs made an Oral Motion for Judgment as a Matter of Law.  See Oral Motion; see Trial Transcript ("Trial Tr.") at 2212:16-2218:2.  The Labs moved for a directed verdict on three grounds.  The first ground was that Cigna, as a group plan administrator, was paying out money to the Labs out of group plan accounts, not its own fisc, and thus had failed to prove standing at trial.  See id.  Second, the Labs argued that Cigna had provided insufficient proof of any particular measure of damages.  See id.  Third, the Labs mentioned their defense of laches.  See id.  In their oral motion, the Labs did not refer to their defense of ERISA preemption, which the court had stated on the record it would address after trial.

The jury returned two verdicts.  In the Labs' case against Cigna, the jury found Cigna not liable.  See Jury Verdict, No. 3:19-cv-1326 (Doc. No. 108).  In Cigna's case against the Labs, the jury found the Labs liable and awarded $2.4 million in damages against each of the three defendant Labs.  See Jury Verdict (Doc. No. 483).

On December 4, 2024, the Labs filed a Renewed Motion for Judgment as a Matter of Law.  See Labs' Mot.; see also Labs' Memorandum of Law in Support of Motion for Judgment as a Matter of Law (Labs' Mem.") (Doc. No. 509-1). The Labs' Motion primarily addressed the first of the three directed verdict arguments, that is, their

---

The court views this episode as just one example of a pattern of pretrial noncompliance by both parties.  In retrospect, the court views it as a completely unnecessary exercise that wasted the court and jury's time, as well as the parties' money, because the final number of exhibits introduced into evidence by both parties was 121.

argument about standing.[4]  <u>See</u> Labs' Mem.  Cigna opposes the Renewed Motion.  <u>See</u> Cigna's Memorandum in Opposition to Labs' Motion for Judgment as a Matter of Law ("Cigna Opp.") (Doc. No. 514).

Upon reviewing the Labs' Motion, the court observed that it did not mention either of the Labs' pending defenses of laches or ERISA preemption.  Several days later, the court entered the following order:

> If the Labs still wish to assert a defense of laches, they must submit briefing by December 18, 2024. Cigna may file opposition within 30 days. Failure by the Labs to submit further briefing to the court on this defense will be deemed an abandonment of the defense."

The Labs did not file briefing in response.

Later, the court entered an order allowing the parties to supplement their briefing on ERISA preemption, which was filed during the pretrial period.  <u>See</u> Order (Doc. No. 517).  Both the Labs and Cigna filed additional briefing.  <u>See</u> Labs' Brief in Further Support of Motion for Judgment as a Matter of Law on ERISA Preemption Special Defense ("Labs' ERISA Mem.") (Doc. No. 518); <u>see</u> Cigna's Opposition in Response to the Labs' Motion for Judgment as a Matter of Law on their Defense of ERISA Preemption ("Cigna ERISA Mem.") (Doc. No. 521); <u>see</u> Labs' Reply Brief in Further Support of Motion for Judgment as a Matter of Law on ERISA Preemption Special Defense (Doc. No. 522).

## III.    LEGAL STANDARD

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally

---

[4] At Oral Argument, counsel for the Labs conceded that they did not develop the second argument in their Oral Motion, about the sufficiency of Cigna's damages proof, in their post-trial briefing. <u>See</u> Transcript of Oral Argument at 22:4-8.

sufficient evidentiary basis.  See Fed. R. Civ. P. 50(b).  The standard under Rule 50 is the same as that for summary judgment: a court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (alterations in original) (internal quotation marks and citation omitted).

A movant's burden under Rule 50 is "particularly heavy where, as here, the jury has deliberated in the case and has actually returned its verdict in favor of the non-movant."  Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted) (citing Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005)); see also Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) ("A party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden.").  In such cases, "the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence."  Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).  In short, the court cannot "substitute its judgment for that of the jury."  LeBlanc–Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted).

Rather, judgment as a matter of law may only be granted where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair

minded persons could not arrive at a verdict against it."  Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001) (quoting Galdieri–Ambrosini, 136 F.3d at 289).

Moreover, "weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" This Is Me, Inc., 157 F.3d at 142 (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993)).  The court "must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in its favor."  Norton, 145 F.3d at 118; see also Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (stating that the court must draw all reasonable inferences in favor of the non-moving party).  Additionally, in making its determination, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe."  Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)). Accordingly, Rule 50 motions "should be granted cautiously and sparingly."  Meloff, 240 F.3d at 145 (internal quotation marks and citation omitted).

## IV.    DISCUSSION

In the present Ruling, the court addresses the three grounds for the Labs' Oral Motion, as well as the Labs' defense of ERISA preemption.  Thus, the court addresses: (1) the Labs' defense of Laches, (2) the Labs' argument that Cigna has failed to prove standing, (3) the Labs' argument that Cigna failed to adequately prove damages, and (4) whether Cigna's unjust enrichment claim is preempted in part by ERISA.

A.    The Labs' Defense of Laches

Before and during the trial, the court made clear that it intended to address the Labs' defense of laches after the trial, because laches is an "equitable" doctrine for the court to decide.  See, e.g., Trial Tr. at 2217:13-20; see 9 Wright & Miller, Fed. Prac. & Proc. Civ. § 2305 (4th ed) ("Under now-familiar principles, if the case presents both legal and equitable issues, it is for the jury to decide the legal issues and for the court to decide the equitable issues.").  The Labs did not address their defense of laches in post-trial briefing, and during oral argument confirmed to the court their intention to abandon the defense.  See Transcript of Oral Argument ("Argument Tr.") at 5:22-24. Thus, the court deems the Labs' affirmative defense of laches abandoned.

B.    Whether Cigna has Standing

In their Renewed Motion, the Labs argue that Cigna failed to prove standing at trial.  See Labs' Mem. at 6-9.  The essence of the Labs' argument is that trial evidence showed that Cigna was acting as a claims administrator, which meant that it was paying out money from the accounts of group benefit plans, not from Cigna's fisc.  Thus, the Labs contend that Cigna failed to prove that it suffered an injury itself and therefore Cigna, as the plaintiff in that case, failed to prove standing. See id.  Cigna argues that it has a concrete business interest and duty to only pay out valid claims, and that it suffered an injury through the time and resources it expended to investigate the Labs' business practices.  See Cigna Mem. at 10-16.  The court agrees with Cigna.

Federal courts may decide only "actual cases and controversies."  Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016).  "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what

has traditionally been referred to as the question of standing to sue." <u>Sierra Club v.</u>

<u>Morton</u>, 405 U.S. 727, 731–32 (1972).  To establish Article III standing, a plaintiff must

show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." <u>Spokeo,</u> 578 U.S. at 338.  To constitute an "injury in fact," a harm must be

"concrete, particularized, and actual or imminent." <u>TransUnion LLC v. Ramirez</u>, 594

U.S. 413, 423 (2021).

Because standing is an element of federal subject matter jurisdiction, a plaintiff

must establish its standing at every phase of the case:

> The party invoking federal jurisdiction bears the burden of establishing these
> elements [of standing]. Since they are not mere pleading requirements but rather an
> indispensable part of the plaintiff's case, each element must be supported in the same
> way as any other matter on which the plaintiff bears the burden of proof, i.e., with the
> manner and degree of evidence required at the successive stages of the litigation. At
> the pleading stage, general factual allegations of injury resulting from the defendant's
> conduct may suffice, for on a motion to dismiss we presume that general allegations
> embrace those specific facts that are necessary to support the claim. In response to a
> summary judgment motion, however, the plaintiff can no longer rest on such mere
> allegations, but must set forth by affidavit or other evidence specific facts which for
> purposes of the summary judgment motion will be taken to be true. And at the final
> stage, those facts (if controverted) must be supported adequately by the evidence
> adduced at trial.

<u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561, (1992).  Because standing "must be

supported in the same way as any other matter on which the plaintiff bears the burden

of proof, <u>i.e.</u>, with the manner and degree of evidence required at the successive stages

of the litigation," the court applies the same legal standard relevant to the rest of this

Motion and examines whether there is evidence in the trial record on which a

reasonable jury could find that Cigna suffered an "injury in fact."[5]

---

[5] At Oral Argument, counsel for Cigna described Cigna's burden on this issue as requiring proof
by a preponderance of the evidence. Argument Tr. at 57:3-5.  In the court's view, that correctly describes

The Labs argue that Cigna failed to prove that it suffered an injury. At first glance, the Labs' argument appears to be reinforced by Cigna's trial tactics. At trial, Cigna's counsel and fact witnesses emphasized that the goal of Cigna's lawsuit was not to recover its own money, but to recover money on behalf of the group plans it administered. As an example of Cigna's emphasis that it was recovering money for group plan accounts, Cigna witnesses repeatedly referred to the group plan Cigna administered on behalf of the Miami Dade School System.[6] One such exchange was as follows with Cigna's witness Michael Goldfarb on direct examination:

> Q. "Can you tell the jury what an employer group plan is and whose money pays for claims of employer group plans?"
>
> A. "Let me use an example of an employer group plan in this case so we tie it to this case. The Miami-Dade School District is an employer group. What that is is the Miami-Dade School District has decided to offer health benefits to its employees, basically teachers and their families. The money that is used to pay for claims related to that plan, there's a health benefit fund that's established and the money that goes in that comes from teacher's paychecks as well as a contribution from the Miami-Dade School District. And when someone from that plan goes to see a doctor, the money that's paid to the doctor is not from Cigna. It is from that health benefit fund that's funded by teachers, their families and the school district."

Trial Tr. at 1286:17-1287:8 (emphasis added). Likewise, Cigna witness Stephanie Canto testified that money that Cigna demanded in overpayment letters "wasn't going to

---

Cigna's burden of proving standing on a fact-based Motion to Dismiss pursuant to Rule 12(b)(1), or at trial. However, the Motion before the court is a renewed motion for judgment as a matter of law. The court reads the Lujan decision as requiring it to treat the issue of standing as having the same "manner and degree of evidence required" as other fact-based issues. Thus, the court will apply to the standard of a Motion for Judgment as a Matter of Law.

However, as explained below, even if the court were to apply the standard for a fact-based 12(b)(1) standard, the result would be no different. See fn. 7, infra.

[6] Cigna's witnesses made such repeated references to the Miami Dade School system, volunteering it even when the question did not call for it, that the court admonished Cigna's counsel on one occasion. See Trial Tr. at 1395:3-14.

12

Cigna[,] [i]t was going to our clients." Trial Tr. 210:16-17.  Cigna's counsel echoed this testimony in his closing argument, telling the jury that "this money should be returned to the rightful owners."  Trial Tr. at 2320:4.  Because of this repeated emphasis that the money paid to the Labs did not come from Cigna itself, the Labs argue that Cigna failed to prove its own "injury in fact" at trial.

In its opposition to the Labs' Motion, Cigna argues that it has standing to sue by virtue of its status as a group plan administrator, and that it proved it suffered an "injury in fact" by offering evidence of the resources and time it invested in investigating the Labs and attempting to claw back payments.  See Cigna Opp at 5-10.  Cigna cites cases from around the country in which District Courts have concluded that group plan administrators possess Article III standing to bring actions against medical providers. After a thorough review of these cases, the court finds Cigna's argument persuasive.

Addressing this question, District Courts from around the country have concluded that plan administrators have a "concrete and particularized interest in paying only valid claims."  Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP, 128 F. Supp. 3d 501, 509 (D. Conn. 2015); see also, e.g., Blue Cross of California Inc. v. Insys Therapeutics Inc., 390 F. Supp. 3d 996, 1007 (D. Ariz. 2019) ("Although reimbursements on behalf of self-funded plans might not have been made from Anthem's fisc, Anthem still has a concrete and particularized interest in paying only valid claims to ensure its members' financial interests are protected" (internal quotations omitted)); Humana, Inc. v. Ameritox, LLC, 267 F. Supp. 3d 669, 674 (M.D.N.C. 2017) (concluding that allegations a plan administrator paid out "millions of dollars of medically unnecessary, duplicative tests" created a "concrete and particularized injury" to the plan

administrator).  Although these decisions were made at the motion-to-dismiss stage, this court likewise concludes that, as a plan administrator, Cigna has a business interest in only paying out valid claims.  On this basis the court concludes that Cigna has standing.

Even more persuasive to the court, however, is the evidence that Cigna expended its own time and resources in investigating the Labs.  In each of the above District Court cases, the Court also found that the expenditure of time and resources necessary to investigate providers, as well as the effort to try to recoup wrongly paid claims, amounted to an "injury in fact." See, e.g. Connecticut Gen. at 128 F. Supp. 3d at 509 ("Moreover, . . .  Cigna has expended its own time and resources in investigating the surgical centers' billing practices through post-procedure patient surveys and patient interviews, and by corresponding with the surgical centers regarding their billing practices.")  In the present case, multiple Cigna witnesses testified about Cigna's years-long effort to investigate the Labs and, eventually, to demand return payments.  See, e.g. Trial Tr. at 1534-1548; 1553-1564 (Cigna witness Deanna Anderson testifying about Cigna's years-long efforts to investigate the Labs);  id. at 1315-1316 (Cigna witness Michael Goldfarb testifying about years-long investigations); id. at 340-370 (Stephanie Canto testifying about efforts she made to investigate medical necessity of the Labs' claims).  In the court's view, a reasonable jury could find that this expenditure of resources was an "injury in fact" and, therefore, Cigna has sufficiently established its standing.[7]

---

[7] Even if the court were to determine based on the trial record whether Cigna had proven an injury by a preponderance of the evidence, the court would find, based on this evidence, that Cigna suffered an injury and therefore has standing.

14

C.    Whether Cigna has Proven Damages

In their Oral Motion, the Labs argued that Cigna did not offer proof of damages sufficient to tie any measure of damages to a particular defendant Lab.  See Trial Tr. at 2216:16-25.  In their Renewed Motion, this argument is almost entirely absent.  See generally, Labs Mem.  The Labs only make a brief reference to this basis in their post-trial briefing, and this reference offers a slightly different argument: that Cigna's evidence demonstrates that the damages actually awarded were non-party damages. See Labs' Mem. at 9-10. ("the only testimony to support that amount was from [Cigna witness Ms.] Canto, who testified that the amount belonged to non-parties").  The court views this as an extension of Cigna's argument about standing, which it has already rejected.

At Oral Argument, counsel for the Labs conceded that they chose not to develop the argument in their Oral Motion that Cigna had failed to offer an evidentiary basis for damages sufficient to tie a measure of damages to a particular Lab.  See Argument Tr. at 20:21-22:8.  Thus, the court deems this argument abandoned and will not address it.

D.    Whether Cigna's Claims are Preempted by ERISA

To the extent that Cigna's claim applies to ERISA plans, the Labs argue that Cigna's unjust enrichment claim is preempted by ERISA.  See, generally, Labs' ERISA Mem.  Cigna argues that its claim is not preempted with respect to ERISA plans because it is not premised on the terms of the plans, but instead on the Labs' misconduct.  See Cigna ERISA Mem. at 2.  After a careful review of the parties' pre-

and post-trial submissions, the court agrees with Cigna, though the nature of its proof

renders it a close question in this case.[8]

ERISA governs any "plan, fund, or program" that is "established or maintained by

an employer" for the purpose of providing benefits, including medical coverage, to its

employees and beneficiaries.  29 U.S.C. § 1002(1).  To begin with, it is helpful to

distinguish between two types of preemption under ERISA.  ERISA has two preemption

provisions, located at sections 502 and 514 of the Act.  See 29 U.S.C. §§ 1132(a)(1)(B),

1144(a).  Courts refer to the first of these provisions, section 502, as the basis for

"complete preemption."  See Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir.

2014).  Under complete preemption, "a plaintiff's state cause of action may be recast as

a federal claim for relief, making its removal by the defendant proper on the basis of

federal question jurisdiction."  Id. Complete preemption is thus jurisdictional in nature and

not relevant to the present Motion.

At issue in the present Motion is the second form of ERISA preemption under

section 514(a), ERISA's "express preemption" provision.  Under section 514(a), ERISA

"shall superseded any and all State laws insofar as they may now or hereafter relate to

an employee benefit plan [covered by ERISA]."  29 U.S.C. § 1144(a) (emphasis added).

"State laws" under section 514(a) include both state statutes and, as relevant here,

common-law causes of action.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47

(1987).

---

[8] Cigna argues that the Labs also failed to preserve this issue by not mentioning it in their Oral Motion. The court disagrees. It was the clear understanding of the court, expressed over multiple pretrial conferences and jury charge conferences, that both the Labs' laches defense and their defense of ERISA preemption would be decided post-trial.  For reference, the court notes that it had a brief colloquy with the Labs' counsel during the presentation of their Oral Motion saying that they did not need to mention laches to preserve the issue for post-trial consideration.  See Trial Tr. at 2217:13-15.

The Labs argue that, because Cigna's claim attempts to claw back payments that were made under ERISA plans, the claim "relate[s] to" Cigna plans under the ordinary meaning of the phrase. Labs' ERISA Mem. at 5. Indeed, it is not disputed that the existence of Cigna's ERISA plans is a "but/for" cause of the payments Cigna made to the Labs under those plans in the first instance. During the parties' brief discussion of the Labs' preemption defense at the pretrial conference, the court expressed sympathy with this view based on the broad, plain meaning of the term "relate to." However, based on the court's review of relevant authority, the matter is not so simple.

The Supreme Court has recognized that the plain meaning of the term "relate to" is so expansive that it offers little meaningful guidance about the scope of preemption. See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) ("[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course"). Therefore, courts reject "uncritical literalism," and must "go beyond the unhelpful text and the frustrating difficulty of defining [section 514(a)'s] key term, and look instead to the objectives of the ERISA statute as a guide." Id. at 656. As a result, "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan." Rutledge v. Pharm. Care Mgmt. Ass'n, 592 U.S. 80, 87 (2020). Some laws apply in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100, 103 (1983).

Mindful of these principles, the Supreme Court has stated that a law "relates to" an ERISA plan "in the normal sense of the phrase, if it has a connection with or

reference to such a plan." Id. at 96–97 (emphasis added).  The court thus examines whether Cigna's unjust enrichment count has a "connection with" or "reference to" Cigna's ERISA plans, as those terms have been interpreted by subsequent caselaw.

> 1.    Whether Cigna's Claim has a "Connection With" ERISA Plans

In evaluating whether a state law or cause of action has an impermissible "connection with" ERISA policies, the court must consider "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, and the nature of the effect of the state law on ERISA plans." Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312, 320 (2016).  In enacting ERISA, Congress "intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States. . . ." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990).  Accordingly, a law has a "connection with" an ERISA plan and is preempted if it "governs. . . a central matter of plan administration," or "interferes with nationally uniform plan administration." Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 148 (2001).

To determine whether a claim interferes with the national uniformity of plan administration, the Second Circuit and other Circuits have repeatedly analyzed whether a claim impacts the relationships between ERISA's "core entities," defined as the "beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself. Gerosa v. Savasta & Co., 329 F.3d 317, 324 (2d Cir. 2003).  "Courts are reluctant to find that Congress intended to preempt state laws that do not affect the relationships among these groups." Id.  A state law cause of action that "neither interferes with the relationships among core ERISA entities nor tends to control or

18

supersede their functions. . . poses no danger of undermining the uniformity of the administration of benefits that is ERISA's key concern."  Stevenson v. Bank of New York Co., 609 F.3d 56, 61 (2d Cir. 2010).

The present case is a dispute between a plan administrator and a medical provider, which is not a core ERISA entity.  Medical providers "orbit the periphery" of ERISA, because their "rights and remedies are not delineated in ERISA's substantive or remedial provisions."  Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co., 967 F.3d 218, 236 (3d Cir. 2020)  As a result, courts have held that the disputes between medical providers and claims administrators "arise out of a relationship ERISA did not intend to govern at all."  Id.

Here, because medical providers are not "core entities" under ERISA, the court follows the Stevenson case and concludes that Cigna's claim does not endanger the national uniformity of plan administration.  It is worth noting that in this case's sister case, in which the Labs sued Cigna for its nonpayment, Judge Underhill conducted a "core entities" analysis and held that lower courts have held "with near unanimity" that "independent state law claims of third-party healthcare providers are not preempted by ERISA."  Epic Reference Labs v. Cigna, No. 3:19-CV-1326 (SRU), 2021 WL 4502836, at *8 (D. Conn. Sept. 30, 2021) (internal citations omitted) (collecting cases).  The court likewise concludes here that, because the Labs are not "core entities" under ERISA, Cigna's claim does not "govern[ ]. . . a central matter of plan administration," or "interfere[ ] with nationally uniform plan administration."  Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 148 (2001).  Thus, the court concludes, Cigna's claim lacks an impermissible "connection with" an ERISA plan.  See Shaw, 463 U.S. at 96–97.

2. Whether Cigna's Claim makes "Reference To" ERISA Plans

The court now turns to the second prong of the <u>Shaw</u> definition: whether a claim makes an impermissible "reference to" an ERISA benefit plan. The Labs argue that Cigna's claims make an impermissible "reference to" ERISA plans and are therefore preempted. Labs ERISA Mem. at 10. To determine whether a law makes "reference to" an ERISA plan, courts evaluate whether a law "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." <u>Gobeille v. Liberty Mut. Ins. Co.</u>, 577 U.S. 312, 319–20 (2016) (citations omitted). Put another way, if an ERISA plan is a "critical factor in establishing liability," <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 139–40 (1990), then the claim makes an impermissible "reference to" an ERISA plan and is therefore preempted.

However, "[t]he mere fact that a claim arises against the factual backdrop of an ERISA plan does not mean it makes 'reference to' that plan." <u>Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.</u>, 967 F.3d 218, 235 (3d Cir. 2020), <u>citing</u> <u>Travelers Ins. Co.</u>, 514 U.S. at 661 ("[p]re-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability"). In particular, the Supreme Court has recognized that "run-of-the-mill state-law claims" between ERISA and non-ERISA entities are not necessarily preempted. <u>See Mackey v. Lanier Collection Agency & Serv., Inc.</u>, 486 U.S. 825, 833 (1988).

The Second Circuit has also elaborated on when state law claims make "reference to" an ERISA plan and are therefore preempted:

> [Plaintiff] Paneccasio's state law claims sound in breach of contract, breach of the covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act, reckless misrepresentation,

> negligent misrepresentation, and tortious interference with contract. Each claim is premised on the termination of the [ERISA] Plan and resulting denial of benefits under that Plan; each makes explicit reference to the Plan; and each would require reference to the Plan in the calculation of any recovery. Consequently, each of Paneccasio's state law claims 'relates to' a covered plan and is preempted by ERISA.

Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir. 2008).  In

Paneccasio, each cause of action made specific reference to an ERISA plan, and the

terms of that plan were required to calculate damages, so the claims were preempted.

In contrast, the Second Circuit has held that a "garden variety" fraud claim in the context

of an ERISA plan was not preempted.  See Geller v. Cnty. Line Auto Sales, Inc., 86 F.3d

18, 23 (2d Cir. 1996).  In Geller, the plaintiffs alleged that the defendants signed up one

of the defendants' girlfriends for an employee benefit plan even though she was not

employed by the company or otherwise eligible, and she later received more than

$100,000 in reimbursements for medical care.  The Second Circuit held that "[t]he

[ERISA] plan was only the context in which this garden variety fraud occurred," and that

"the essence of the plaintiffs' fraud claim does not rely on the pension plan's operation or

management."  Id.  Likewise, when claims are brought against plan advisors, the Second

Circuit has observed that "courts routinely find that garden-variety state-law malpractice

or negligence claims against non-fiduciary plan advisors, such as accountants,

attorneys, and consultants, are not preempted."  Gerosa v. Savasta & Co., 329 F.3d 317,

324 (2d Cir. 2003).  Additionally, when liability is determined not from the terms of an

ERISA plan, but from an independent source, such as a separate promise, then the

claim is not preempted.  See Stevenson v. Bank of New York Co., 609 F.3d 56, 60–61

(2d Cir. 2010).  This results because, when liability "does not derive from the particular

rights and obligations established by any benefit plan," the "resolution does not require a

court to review the propriety of an administrator's or employer's determination of benefits under such a plan," and the claim is therefore not preempted.  Id.

Thus, the question for this court is whether Cigna's unjust enrichment claim is more like the "garden-variety" fraud claim in Geller, based on a law of general applicability, or more like the claims in Paneccasio, which depended on the terms of ERISA plans and required reference to the plans in their calculation of damages.  The Labs contend that it is more like the latter and argue that each of Cigna's theories of liability (or the reasons Cigna offered for why the enrichment was "unjust") depend on coverage provisions in Cigna's ERISA plans.  Labs ERISA Mem. at 10.  Cigna, in contrast, argues that its claim is "not premised on the terms of the plans, but rather on the Labs' misconduct" generally.  Cigna's ERISA Mem. at 2.  Put another way, the question is whether Cigna's entitlement to a claw-back exists (1) because the Labs billed for services not covered under the specific terms of ERISA policies, or (2) because the Labs' misconduct generally gave rise to a common-law claim that is not dependent on the provisions of ERISA plans.  Here, the court agrees with Cigna that its unjust enrichment claim does not make "reference to" the ERISA policies, but Cigna's manner of proof at trial renders it a close question.

The court first examines the nature of unjust enrichment as a cause of action to determine whether the cause of action by its nature can be said to make "reference to" ERISA plans. Cigna cites a number of District Court cases from around the country in which plan administrators' unjust enrichment claims were found not to be preempted by section 514(a).  See Cigna's ERISA Mem. at 9-10.  Many of these courts held that the unjust enrichment claims at issue were based on laws of "general applicability" that do

not reference ERISA plans.  See, e.g. Blue Cross of California Inc. v. Insys Therapeutics Inc., 390 F. Supp. 3d 996, 1004 (D. Ariz. 2019) (collecting cases);  see also United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc., 5 F. Supp. 3d 1350, 1363 (S.D. Fla. 2014) (an unjust enrichment claim is not conflict preempted); Blue Cross & Blue Shield of Mississippi v. Sharkey-Issaquena Cmty. Hosp., No. 3:17-CV-338-DPJ-FKB, 2017 WL 6375954, at *4 (S.D. Miss. Dec. 13, 2017) ("unjust enrichment . . . do[es] not address areas of exclusive federal concern. . ."). However, the caselaw does not point overwhelmingly in one direction, as Cigna's brief seems to suggest. See Connecticut Gen. Life Ins. Co. v. Elite Ctr. for Minimally Invasive Surgery LLC, No. 4:16-CV-00571, 2017 WL 607130, at *14 (S.D. Tex. Feb. 15, 2017), opinion amended and superseded in part, No. 4:16-CV-00571, 2017 WL 1807681 (S.D. Tex. May 5, 2017) (finding an unjust enrichment claim is preempted because it "depends on the interpretation of the [ERISA] plan"); see also Neurological Surgery, P.C. v. Aetna Health Inc., 511 F. Supp. 3d 267, 289 (E.D.N.Y. 2021) (holding that the plaintiff medical provider's unjust enrichment cause of action is preempted when based on "pre-authorization" or "pre-certification" documents that are part of an ERISA plan); Pharmacia Corp. Supplemental Pension Plan, ex rel. Pfizer Inc. v. Weldon, 126 F. Supp. 3d 1061, 1072 (E.D. Mo. 2015) (state law recoupment claims from a plan administrator are conflict preempted by ERISA).

Having reviewed these cases and others, the court makes several observations. First, some of these cases are arguably distinguishable because they apply tests for preemption fashioned by other Circuits. See, e.g., Sharkey-Issaquena, 2017 WL 6375954, at *3 (applying the Fifth Circuit's "two-part test").  However, the apparent inconsistency of the results is better explained by the fact that not every unjust

enrichment claim is based on the same set of facts.  Unjust enrichment is "a broad and flexible remedy," Vertex, Inc. v. City of Waterbury, 278 Conn. 557, 573, (2006), which is appropriate in different sets of circumstances. To the extent that the court can discern a pattern in its review of these District Court cases, it is that unjust enrichment claims which are based on more explicit references to plan documents are more likely to be preempted.  See, e.g., Neurological Surgery, P.C. v. Aetna Health Inc., 511 F. Supp. 3d 267, 289 (E.D.N.Y. 2021) (an unjust enrichment claim based on "pre-authorization" or "pre-certification" documents which are part of an ERISA plan is preempted).  Because unjust enrichment claims are based on different sets of facts, and because they can vary in the extent to which they reference plan documents, the question for this court is not whether unjust enrichment claims generally make "reference to" ERISA plans, but whether this unjust enrichment claim makes such a reference.

In addressing this question, the court notes that it is deciding this issue in an unusual posture.  In the cases the court reviewed, District Courts typically decided this issue when ruling on a Motion to Dismiss pursuant to Rule 12(b)(6) or at summary judgment.  Here, the court has the benefit of the trial record in assessing how Cigna proved its case.  Although ERISA preemption is a question of law, the court makes use of the trial record to understand how Cigna sought to prove the elements of unjust enrichment.

To prove its claim of unjust enrichment under Florida law, Cigna had to prove that "(1) [the] plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) [the] defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the

benefit without first paying the value thereof to the plaintiff." <u>Duty Free World, Inc. v.</u>
<u>Miami Perfume Junction, Inc.</u>, 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018) (internal
quotations and citations omitted).  Although many Florida courts describe unjust
enrichment as equitable in nature, "the use of the term 'equitable' in reference to an
unjust enrichment claim denotes fairness and does not mandate that unjust enrichment
be construed as seeking only an equitable, as opposed to a legal, remedy." <u>Duty Free</u>
<u>World, Inc. v. Miami Perfume Junction, Inc.</u>, 253 So. 3d 689, 694 (Fla. Dist. Ct. App.
2018).  Unjust enrichment in Florida is therefore quasi-contractual in nature and is "an
action at law, not in equity." <u>Am. Safety Ins. Serv., Inc. v. Griggs</u>, 959 So. 2d 322, 331
(Fla. Dist. Ct. App. 2007).

At trial, Cigna and the Labs stipulated that the first two elements of the claim
were satisfied.  Trial Tr. at 2399:4-21.  The court then instructed the jury, in accordance
with Florida's Standard Jury instructions, to determine the third element: whether "the
circumstances are such that it would be unfair for a Lab to retain the payments Cigna
made to it." <u>Id.</u>; <u>see</u> Fl. Contract & Business Jury Instructions, § 416.7.  The court
instructed the jury that, when the benefit conferred is money, the damages are measured
"by the extent to which a Lab has been unjustly enriched at the expense of Cigna."  Trial
Tr. at 2411:17-25.

Throughout this litigation and at trial, Cigna offered three reasons why it was
inequitable, or unfair, for the Labs to retain payments that Cigna made to them.  First,
Cigna alleged that the Labs billed for medically unnecessary services.  <u>See</u> Am. Compl.
at ¶¶ 97-114.  Second, Cigna alleged that the Labs engaged in a practice called "fee-
forgiveness," in which they did not collect patient copays, deductibles, or other cost-

share obligations.  See id. at ¶¶ 89-97.  Finally, Cigna alleged that the Labs engaged in

an improper billing practice known as "unbundling," by failing to bill Cigna for "bundled"

Lab tests, instead using separate billing codes, causing Cigna to overpay.[9]  See id. at ¶¶

115-123.  Cigna pressed each of these reasons at trial and asked the court in its

proposed jury instructions to charge the jury on each of them.  See Cigna's Proposed

Jury Instructions at 21-22 (Doc. No. 352-14).

What matters under each of these bases is whether the ERISA plans at issue are

a "critical factor in establishing liability," Ingersoll-Rand, 498 U.S. at 139–40, or whether

these reasons for finding unjust enrichment "would require reference to the Plan" in

determining liability or damages.  Paneccasio, 532 F.3d at 114.  Thus, when Cigna

argues that the Labs' services were not medically necessary, does that argument go to a

reason it is generally unfair or inequitable for the Labs to keep the payment, or is it unfair

because the terms of the ERISA plans required services to be medically necessary?

Throughout this consolidated trial, the answer has not always been clear.

In the court's view, what renders this a close question is that Cigna, throughout

this consolidated proceeding, has referred to all three of these bases not just as reasons

that it was "unfair" or "inequitable" for the Labs to retain payments, but also as specific

reasons why the Labs' services were not covered under the terms of its policies.  To be

---

[9] The Labs billed Cigna using certain billing codes, known as "CPT codes."  See Am. Compl. at ¶ 116.  According to Cigna, some CPT codes referred to "bundled" services, while other billing codes may refer to a service or test that is one constituent part of the "bundled" test.  For example, Cigna says that CPT code 81003 refers to a urinalysis test that tests for bilirubin, glucose, hemoglobin, ketone, leukocytes, nitrite, pH, protein, specific gravity, and urobilinogen.  See id. at ¶ 118.  According to Cigna, there were also CPT codes for tests of one or several of these measurements.  For example, CPT code 83986 tested only specific gravity and pH.  See id. at ¶ 119.

In this example, "unbundling" would occur when the Labs performed one comprehensive test, but billed Cigna for each of the constituent parts, which would result in Cigna paying more than if the Labs had billed under the "bundled" test code.

sure, in this consolidated trial, some of Cigna's references were made in defense of the Labs' claims, not in support of its own unjust enrichment claim. Because the Labs' claims were contract-based, in their claims against Cigna, "medical necessity" operated not as an equitable basis for an unjust enrichment claim, but as express condition of coverage in Cigna's insurance policies. Thus, drawing inferences in favor of Cigna, many of Cigna's arguments about the contents of ERISA policy documents were made in defense of the Labs' contract claims, not in support of its own unjust enrichment claim. However, this is not true in every instance and, on a number of occasions, it appeared the Cigna was arguing that the Labs were unjustly enriched because the Labs' services were not covered under the terms of its policies.

For example, in Cigna's proposed jury instructions on its own unjust enrichment claim, Cigna sought to have the court instruct the jury that "[s]ervices that are not medically necessary are not covered under the Cigna Plans[.]" Id. at 21 (emphasis added). The court did not give this charge and instead instructed the jury that "the notion of 'unfairness' in an unjust enrichment action is not based upon any finding of an enforceable agreement between the parties." Trial Tr. at 2400:15-17. However, this proposed charge by Cigna is consistent with other examples in which Cigna appeared to argue that enrichment was unjust because of the contents of the policies. On one occasion during the trial, for example, counsel for Cigna asked Michael Goldfarb, a Cigna witness and current employee of Cigna, to read aloud and explain policy language from an ERISA policy. After the language was read, Mr. Goldfarb testified to the existence of "a fee forgiving exclusion" in the policy. Trial Tr. at 1385:7-1389:2. The court had previously ruled that the issue of fee forgiveness was irrelevant to the Labs'

claims against Cigna.  See Transcript of Day 6 of Pretrial Conference at 14:16-15:15.

The court therefore understands that Cigna was offering this evidence from Mr. Goldfarb

about ERISA policy language in support of its own unjust enrichment claim.  A third

example occurred in Cigna's closing arguments about its own unjust enrichment claim.

There, counsel for Cigna argued that all of their insurance policies, including ERISA

plans, "require services to be medically necessary in order for them to be covered and

payable."  Trial Tr. at 2301:25-2302:6 (emphasis added).  In these and other instances, it

appeared to the court that Cigna was referencing the terms of ERISA plans to argue that,

under those terms, the Labs were unjustly enriched.  If these examples were the end of

the record, the court would likely have concluded that Cigna's claim makes "reference to"

ERISA plans.

      However, reviewing the totality of the evidence, Cigna's closing arguments, and

the court's own instructions to the jury on unjust enrichment, the court concludes that

Cigna's unjust enrichment claim does not depend on the written terms of Cigna's ERISA

policies.  The court instructed the jury to consider the "totality of the circumstances" in

determining whether it would be unfair or inequitable for the Labs to retain payments.

Trail Tr. at 2400:5-9.  Also, with regard to Cigna's proposed bases for unfairness, the

court specifically instructed the jury that it was not bound by the definitions of medical

necessity, fee forgiveness, and unbundling in Cigna's policy documents.  See Trial Tr. at

2400:20-2401:6 ("you should not look to any agreement to define what is 'unfair' . . . .

While Cigna does not have any agreement with the Labs, Cigna does have written

agreements with its insureds. . . . I instruct you that the terms of these [insurance]

policies do not necessarily define what is "unfair" in the Labs' dealings with Cigna.)

In the court's view, the court was clear that the jury could reach its verdict without reference to the terms of ERISA policies, and that the written terms of such policies were relevant only to the extent that they were part of the "totality of circumstances" that the court instructed the jury to consider.  Further, there was ample evidence in the record on which a reasonable jury could find the Labs liable, on Cigna's stated bases, when those bases are understood as reasons for unfairness and not as contract provisions of ERISA plans.  For example, Cigna's expert witness Dr. Kelly Clark testified at length about her opinion of excessive and medically unnecessary drug testing services, which, in the court's view, provides a basis external to ERISA plans on which a reasonable jury could find the Labs liable.  See Trial Tr. at 1627-1702.  Thus, there is more than sufficient evidence for a reasonable jury to have found the Labs liable without reference to the terms of the policies.

Because the jury was instructed to consider medical necessity, fee forgiveness, and unbundling, not as those terms are defined in Cigna policies, but generally as being among the "totality of the circumstances" that would determine whether it is "equitable" or "fair" for the Labs to retain Cigna's payments, the court concludes that Cigna is correct in saying that its claim is premised more on the Labs "misconduct" generally than on the written terms of ERISA policies.  Thus, the court concludes that Cigna's claim is more like the fraud claim in Geller, which did not turn on the interpretation of any ERISA policy. See Geller, 86 F.3d at 23.  The terms of Cigna's ERISA plans were not a "critical factor in establishing liability," Ingersoll-Rand, 498 U.S. at 139–40, and Cigna's cause of action therefore does not make an impermissible "reference to" an ERISA plan.

29

Thus, the court concludes that Cigna's unjust enrichment claim is based on a law of general applicability, which has neither a "connection with" or "reference to" an ERISA plan necessary to be preempted.  Shaw, 463 U.S. at 96–97 (a law "relates to" an ERISA plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan.")  Thus, the court concludes that Cigna's claim does not "relate to" ERISA plans as courts have read section 514(a), and is therefore not preempted.

## V.   CONCLUSION

For the reasons stated above, the Labs' Oral Motion for a Direct Verdict (Doc. No. 472) is denied, and their renewed Motion for Judgment as a Matter of Law (Doc. No.509) is denied.  The court deems the Labs' defense of laches abandoned and holds that Cigna's unjust enrichment claim is not preempted by ERISA.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 20th day of May, 2025.

        /s/ Janet C. Hall
Janet C. Hall
United States District Judge