## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------------------------------------- x
CONNECTICUT GENERAL LIFE              :
INSURANCE COMPANY and CIGNA           :
HEALTH AND LIFE INSURANCE             :
COMPANY,                              :
                                      :
          Plaintiffs,                 :
v.                                    :   Civil No. 3:19-cv-01324 (JCH)
                                      :
BIOHEALTH LABORATORIES, INC., PB      :   June 15, 2026
LABORATORIES, LLC, EPIC REFERENCE     :
LABS, INC., EPINEX DIAGNOSTICS, INC., :
NJ REFERENCE LABORATORIES, INC.,      :
and ALETHEA LABORATORIES, INC.,       :
                                      :
          Defendants.                 :
------------------------------------------------------------- x
```

```
------------------------------------------------------------- x
EPIC REFERENCE LABS, INC.,            :
BIOHEALTH MEDICAL LABORATORY,         :
INC., and PB LABORATORIES, LLC,       :
                                      :
          Plaintiffs,                 :
v.                                    :   Civil No. 3:19-cv-1326 (JCH)
                                      :
CONNECTICUT GENERAL LIFE              :   June 15, 2026
INSURANCE COMPANY and CIGNA           :
HEALTH AND LIFE INSURANCE             :
COMPANY,                              :
                                      :
          Defendants.                 :
------------------------------------------------------------- x
```

## REPORT OF SPECIAL MASTER

## I.    INTRODUCTION

This is the report of a special master appointed by order of the court pursuant to Rule 53 of the Federal Rules of Civil Procedure (the "Order") (ECF Doc. Nos. 533, 190).[1] The Order directs that the special master review each document listed on a privilege log, in both redacted and unredacted form, to determine whether privilege was properly asserted and write a report detailing the findings. There were 953 documents (1906 in both forms) listed on the privilege log. This is the report required by the Order.

The report is in two parts. This memorandum summarizes the factual background, the legal basis for the analysis of the privilege claims and briefly describes the conclusions of that analysis.

The second part is a separate form for each document in redacted and unredacted form that describes the document, the privilege claim(s), an analysis of the claim and a conclusion as to whether the claim was properly asserted for that document.

## II.    BACKGROUND

This report is applicable to two cases.  Both cases were filed in this court in August of 2019.  The cases involve the same parties: Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (hereinafter collectively referred to as "Cigna") on one side and BioHealth Laboratories, Inc. ("BioHealth"), PB Laboratories, LLC ("PB Labs"), and Epic Reference Labs, Inc. ("Epic') (hereinafter collectively referred to as "the Labs") on the other side.

---

[1] Unless otherwise indicated, references to ECF document numbers refer to the same document filed in Civil No. 3:19-cv-01324 (JCH), then Civil No. 3:19-cv-1326 (JCH), respectively. For example, ECF No. 533 is the Order of Appointment of Special Master filed in Civil No. 3:19-cv-01324 (JCH), whereas ECF No. 190 refers to the Order of Appointment of Special Master filed in Civil No. 3:19-cv-1326 (JCH).

After early motions, the cases were consolidated for discovery and were subsequently consolidated for trial.

The cases involved competing claims for payments for biological tests performed by the Labs. The Labs rendered invoices for the tests. Cigna paid some, but not all of the invoices. Cigna sought to recover for the invoices it paid, generally on the grounds of misrepresentation. The Labs sought payment for their unpaid invoices. For a detailed description of these cases, see the court's ruling on summary judgment. Connecticut Gen. Life Ins. Co. v. BioHealth Laboratories, Inc., No. 3:19-CV-01324 (JCH), 2024 WL 2106837 (D. Conn, Mar. 1, 2024). See also, the Order for Response and Order to Show Cause dated March 7, 2025, ECF Doc. Nos. 523, 180 ("Order to Show Cause").

Following a twelve-day trial, two verdicts were returned by the jury on November 4, 2024. See ECF Doc. Nos. 483, 108. Cigna was awarded damages. The Labs' claims against Cigna were denied.

During discovery Cigna withheld and redacted documents. Cigna claimed they were protected by the attorney-client and work product privileges. Cigna produced a privilege log to the Labs. It was produced in four tranches over fifteen months. The last and largest part of its privilege log was delivered to the Labs after fact discovery was closed, and approximately two months before the dispositive motion deadline.

Below is a description of the size and delivery date of each of the four parts of Cigna's privilege log.

3

| Privilege Log | February 8, 2022 | 2 pages |
| Supplemental Privilege Log | November 10, 2022 | 26 pages |
| Second Supplemental Privilege Log | December 27, 2022 | 14 pages |
| Third Supplemental Privilege Log | May 31, 2023 | 121 pages |

The Privilege Log and its three supplements, as produced to the Labs, are hereinafter referred to collectively as the "Privilege Log."

Of the 953 documents listed on the Privilege Log, approximately 878, over 90%, are dated in 2014 and 2015. At that time, Cigna had a large in-house legal staff, including an in-house Litigation Department. By letter dated May 22, 2025, Cigna provided a list of nine in-house attorneys "who are either listed in Cigna's privilege logs or may appear on privileged documents."

Two of Cigna's in-house attorneys played significant roles in these cases, William M. Welch II ("Mr. Welch") and Michael Goldfarb ("Mr. Goldfarb").

Mr. Welch was employed by Cigna as Associate Chief Counsel from April 2012 until August 2016. He was the attorney most actively involved in the investigation of the Labs' claims and communicated directly with their attorneys. The Order to Show Cause notes that Mr. Welch's name appears on the Privilege Log over 300 times (Order to Show Cause, p. 4).

Mr. Goldfarb was less involved. He did not join Cigna's litigation department until May 2015 and worked in business capacities after December 2016. His name appears 46 times on Cigna's Privilege Log.

Together, Mr. Welch and Mr. Goldfarb were the basis for Cigna's assertion of privilege. (Order to Show Cause, p. 4). They both testified at the trial as fact witnesses on behalf of Cigna.

4

During the trial, the Labs questioned whether the testimony of the two Cigna attorneys waived Cigna's attorney-client privilege and "whether prior assertion of privilege had prejudiced their ability to cross examine Mr. Goldfarb and Mr. Welch." Order to Show Cause at 5. The court instructed the Labs to address that issue, as they saw fit, in post-trial motions. Id.

On December 4, 2024, the Labs filed a motion to compel and for sanctions. See ECF Doc. Nos. 510, 139. The court ordered Cigna to produce a designated sample of documents on the Privilege Log for in camera review. See ECF Doc. Nos. 516, 177. Following its in camera review, the court made the following findings:

> The court conducted a thorough review of the sample of documents that Cigna provided to the court in camera. For a majority of the documents where Cigna asserted privilege, the court finds the assertion to be overbroad or outright inappropriate. In certain cases, documents were withheld in their entirety when light redactions would have been appropriate. In a large number of cases, it appeared to the court that Cigna reflexively redacted or withheld any communication involving a lawyer, without attempting to discern whether the predominant purpose of the communication was to seek or provide legal advice.

> In several instances, for example, the court noted that documents were withheld in their entirety because lawyers appeared on an email chain. For example, the document listed on Cigna's privilege logs at Bates number CIGNA19-1326-0327206, listed on page 80 of Cigna's fourth privilege log [or third supplemental privilege log], is an email message to a large list of recipients within Cigna, a few of whom are Cigna lawyers. Without discussing the content of this communication, the court can discern no giving or seeking legal advice whatsoever. However, the document was withheld in its entirety, on the basis that it was a "privileged and confidential communication between Cigna employees and Cigna in-house counsel seeking legal advice regarding [a] potential policy change."

Order to Show Cause at 7.

The Order to Show Cause gave the parties notice that the court intended to appoint a special master to review the documents on the Privilege Log, pursuant to Federal Rule of Civil Procedure 53, and an opportunity to object. Cigna was given a choice of the form of that review.

Cigna did not object to the appointment of a special master and chose to have all documents on the Privilege Log reviewed.

By an order dated April 16, 2025, the Court appointed a special master and directed him to "review each of the documents on Cigna's privilege log, both in redacted and unredacted form, to determine whether the claim was improperly asserted. At the conclusion of his review, the special master will write a recommended report detailing his findings." Order of Appointment of Special Master, ECF Doc. Nos. 533, 190, at 4.

III.    **CHOICE OF LAW**

In federal court, the choice of law determination for privilege issues is governed by the Federal Rules of Evidence. Federal Rule of Evidence 501 provides:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.

> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Professor Rice, in his treatise on Privilege, discusses the complexities of choice of law issues in decisions concerning attorney-client privilege in cases founded on diversity of citizenship. See Paul R. Rice, Attorney-Client Privilege in the United States § 12:6 (2025). In the ruling on summary judgment, the court determined that the law of Florida applied to the unjust enrichment claim and Connecticut law applied to the timeliness issues.

While there are some differences between the law of attorney-client privilege in Florida and Connecticut, there are decisions in both the Second and Eleventh circuits that instruct parties how attorney-client privilege should be asserted. The issue of how privilege is asserted in federal

6

court is considered a procedural issue and is governed by federal law. Rice, supra, § 11:8. Gasparini v. Ctr for Humanities, Inc., 518 U.S. 415, 427 (1996).

Cigna has also withheld documents from the Labs based on claims of attorney work product privilege. Those privilege claims are always governed by federal law. See Danza v. Costco Wholesale Corp., 2012 WL 832289, at *1 (E.D.N.Y. Mar. 12, 2012) (noting that "[a]although state law provides the rules of decision for questions of privilege in diversity actions, the prevailing view among district courts in [the Second] Circuit is that the work product doctrine is not a privilege and that federal, rather than state, law therefore governs its application in all actions in federal court" and collecting cases).

A.  Asserting Privilege in the Second and Eleventh Circuits

The two Cigna entities that are parties to these cases are both incorporated. The Supreme Court has held that corporations have an attorney-client privilege. Upjohn Co. v. U.S., 449 U.S. 383 (1981).

The Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the District of Connecticut ("Local Rules"), and the decisions of the courts of appeals and the district court determine how all privileges are invoked. There is a two-step process. The proponent must claim the privilege, and it must then prove each element of the privilege claimed. U.S. v. Construction Prod. Rasch, Inc., 73 F.3d 464, 473 (2d Cir. 1996); In re Renco Group Inc., 164 F.4th 1336, 1344-45 (11th Cir. 2026).

i.    Second Circuit

"Rule 26(b)(1)[] . . . limits discovery to matter that is 'not privileged.'" 8 Wright & Miller's Federal Practice & Procedure § 2016 (3d ed. 2026). The party asserting the privilege must establish the essential elements of the privilege. U.S. v. Adlman, 68 F.3d 1495, 1500 (2d

7

Cir. 1995); von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987). To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. Construction Prod. Rsch, Inc., 73 F.3d at 473. and In re Cnty of Erie, 473 F.3, 413, 419 (2d Cir. 20070).

Cigna also asserts a work-product privilege. To invoke that privilege, a party generally must show that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared *because of* the prospect of litigation." U.S. v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998).

To facilitate its determination of privilege, the rules and decisions of the courts require "an adequately detailed privilege log in conjunction with evidentiary submissions." Bowne of New York City, Inc. v. Am Base Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993).  The privilege log should:

> identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between ... individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected. Bowne, 150 F.R.D. at 474 (citations omitted); see also von Bulow, 811 F.2d at 146; In re Grand Jury Subpoena Dtd. Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir.1984).

Construction Prod. Rsch, Inc., 73 F.3d at 473 (emphasis added).  But a privilege log alone is not enough. Main St. Assur. Co. v. Sevalle, 2019 WL 570 4403 (D. Conn., Nov. 5, 2019).

ii.    Eleventh Circuit and Additional Requirements of Florida Law

Attorney-client privilege attaches "to confidential communications between an attorney and client for the purposes of securing legal advice or assistance." Drummond Co., Inc. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1334 (11th Cir. 2018) (citing In re Grand Jury

8

Investigation, 842 F.2d 1223, 1224 (11th Cir. 1987)). "The attorney-client privilege 'belongs solely to the client,'" and only the client can waive the privilege, "either expressly or by implication." Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417, opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994) (quoting In re Von Bulow, 828 F.2d 94, 100, 101 (2d Cir. 1987)). The attorney work product doctrine affords broader protection, "extend[ing] to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." Drummond, 885 F.3d at 1334-35 (citing Fed. R. Civ. P. 26(b)(3)(A); Cox, 17 F.3d at 1421-22).

> While these protections are well established, a claim of attorney-client privilege or work product is not self-executing. The Federal Rules of Civil Procedure require a party seeking to "withhold[ ] information otherwise discoverable by claiming that the information is . . . subject to protection" to (1) "expressly make the claim," and (2) describe the nature of the items not produced or disclosed in a manner that will enable other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii). In the Eleventh Circuit, a party seeking to withhold information on the basis of a privilege is required to support its claims "on a document-by-document basis." In re Grand Jury Subpoena, 831 F.2d 225, 227 (11th Cir. 1987); see also Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer, LLP, 816 F.3d 1319, 1327-28 (11th Cir. 2016); Johnson v. Gross, 611 F. App'x 544, 547 (11th Cir. 2015) (per curiam). "Blanket assertions of privilege before a district court are usually unacceptable. . . . Instead, [an attorney] must present himself with his records for questioning, and as to . . . each record elect to raise or not to raise the defense." In re Grand Jury Subpoena, 831 F.2d at 226-27 (quoting U.S. v. Davis, 636 F.2d 1028, 1044 n.20 (5th Cir. Unit A Feb. 1981)). In addition, the moving party bears the burden of establishing that the privilege applies by a preponderance of the evidence. In re Grand Jury Proceedings in Matter of Freeman, 708 F.2d 1571, 1575 (11th Cir. 1983) (per curiam) (citing U.S. v. Kelly, 569 F.2d 928, 938 (5th Cir. 1978); U.S. v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973) (per curiam). In re Renco Grp. Inc., 164 F.4th at 1344-45.

The essential questions then boil down to whether the party asserting the privilege has presented sufficient evidence to support attorney-client privilege or work product protection by a preponderance of the evidence.  In re Renco Grp. Inc., 164 F.4th at 1344-45.

In addition, Florida law sets forth additional requirements for corporations asserting attorney-client privilege.

> Combining the tests established in <u>Harper & Row</u> [<u>Publishers, Inc. v. Decker</u>, 423 F.2d 487 (7th Cir. 1970)] and in <u>Diversified Industries, Inc. v. Meredith</u>, 572 F.2d 596 (8th Cir. 1977), [the Supreme Court of Florida] set forth the following criteria to judge whether a corporation's communications are protected by the attorney-client privilege:
> (1) the communication would not have been made but for the contemplation of legal services;
> (2) the employee making the communication did so at the direction of his or her corporate superior;
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

<u>S. Bell Tel. & Tel. Co. v. Deason</u>, 632 So. 2d 1377, 1383 (Fla. 1994) (footnote omitted); <u>see</u> <u>also</u> <u>Lender Processing Services, Inc v. Arch Ins. Co.</u>, 183 So. 3d 1052 (Fla. Dist. Ct. App. 2015).

## IV.    BURDEN OF PROOF

However, a privilege log is critical "but it is not sufficient to establish the requirements of attorney-client privilege." <u>Main St. Am. Assur. V. Savalle</u>, 2019 WL 5704403 (D. Conn. 2019).

The moving party's "burden is not, of course, discharged by mere conclusory or <u>ipsi</u> <u>dixit</u> assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." <u>von Bulow</u>, 811 F.2d at 147 (citation omitted). The courts of appeals for both circuits place the burden of proof on the party asserting privilege. <u>Construction Prod. Rsch, Inc.</u>, 73 F.3d at 473 ("The party asserting the privilege must establish the essential elements of the privilege."); <u>In re Renco</u>, 164 F.4th at 1344 ("[T]he moving party bears the burden of establishing that the privilege applies by a preponderance of the evidence."). In the frequently cited and well-respected opinion in <u>Bowne of New York City Inc. Inc. v. AmBase Corp.</u>, the court carefully considered and rejected every

conceivable argument as to why the party claiming privilege should be excused from that burden. 150 F.R.D. at 471.

There is no requirement that Cigna has received actual notice of its burden of proof. ([Sophisticated parties…are, or should be, aware that "the burden is on a party claiming the protection to establish those facts that re the essential elements of the privileged relationship." Von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987) (quoting in re Grand Subpoena Dtd. January 4, 1984)).  Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 240 F.R.D. 44, 46-47 (D. Conn. 2007).

 Here Cigna was given actual notice on at least three occasions.

1.  The Order to Show Cause, dated March 7, 2025 (ECF Doc. Nos. 523, 180), states: "The party asserting the privilege bears the burden of establishing its essential elements. See Mejia, 655 F. 3d at 132."

2.  By email dated April 29, 2025, counsel were invited to submit portions of the record of this case, including portions of the trial transcript for consideration by the special master. In a telephone conference call on May 9, 2025, counsel for both sides advised that it was not necessary to submit any portions of the record in connection with the review of the documents on Cigna's privilege list.

3.  By Special Master Order No. 1, dated October 30, 2025, the parties were invited to submit "evidence or memoranda of law in support of or in opposition to Cigna's claims of privilege." (ECF Doc. Nos. 559, 205). The order provided the citation to three cases. One from this district and two from the District of Florida.  Each of the cases makes clear that the privilege log is the first step and privilege claims must be supported by evidence. See Jansson v. Stamford Health, Inc., 312 F. Supp 3d 289, 293-96 (D. Conn 2018);

11

Diamond Resorts U.S. Collection Development, LLC v. US Consumer Attorneys, P.A., 519 F. Supp 3d 1184 (S.D. Fla. 2021) and National Equestrian League, LLC v. White, 2021 WL4690665 (S.D. Fla. Oct. 7, 2021).

Furthermore, "the burden of establishing the applicability of either the attorney-client privilege or the work product doctrine cannot be met by mere conclusory or ipsi dixit assertions in unsworn motion papers authored by attorneys." Main St. Am. Assurance Co. v. Savalle, No. 3:18CV02073 (JCH), 2019 WL 4437923, at *4 (D. Conn. Sept. 16, 2019) (citations and quotations marks omitted.)

Cigna offered no evidence to support its 953 claims of attorney-client and work product privilege.

### William M. Welch II

Mr. Welch was employed by Cigna from April 2012 to August 2016 as Associate Chief Counsel. Mr. Welch played a significant role in Cigna's interaction with the Labs while he was employed by Cigna. Before Mr. Goldfarb joined the Litigation Department of Cigna in May of 2015, Mr. Welch is the only attorney whose name regularly appears on many of the documents on Cigna's Privilege Log. Mr. Welch's name appears on the documents as sender, recipient and a source of the content of the documents. The Order to Show Cause states the Mr. Welch's name appears on 309 entries on the Privilege Log. There are also many documents that simply refer to "Legal" that likely reflect Mr. Welch's involvement. Mr. Welch and Mr. Goldfarb, whose name also appears on the Privilege Log, testified at the trial of this case as fact witnesses.

According to excerpts of the trial transcript, during direct examination, Mr. Goldfarb was asked the standard introductory questions about the law school he attended, prior employment and bar admissions. (Attached as Exhibit A is a copy of the trial transcript pages 1269-76, Mr.

12

Goldfarb's testimony regarding his professional background.)  During direct examination, Mr. Welch was asked about the law school he attended and whether he was a lawyer.  He was not asked any questions about his prior employment or whether he was a member of any bar. (Attached as Exhibit B is a copy of the trial transcript pages 1592-95 regarding his professional background.)

A search of the publicly available lists of bar members in Connecticut, Massachusetts, New York, Florida and Nevada showed no match for Mr. Welch on the publicly available roles of attorneys.  Information available on the internet reflects that Mr. Welch, immediately prior to joining Cigna, had been employed by the Department of Justice.  A search of the records of the United States District Court for the District of Columbia "Bar Member/Attorney Search Results" shows that William M. Welch II's status was as follows: "Membership Status: Removed." Attached as Exhibit C is a copy of the reports on the searches of the jurisdictions mentioned above.  (There is a William M. Welch listed on the Massachusetts Bar who appears to be a well-known  real estate lawyer who practices in Portland, Maine and is reported to have attended a different law school than William M. Welch II.)

Cigna has offered no evidence that Mr. Welch was admitted to the practice of law in any jurisdiction at the time he was employed by Cigna or, and more specifically, during the time period when Mr. Welch appears to have been the attorney referred to on the Privilege Log or on the documents Cigna claims to be privileged.

## V.    ISSUES IN REVIEWING THE PRIVILEGE LOG AND DOCUMENTS

The review of the Privilege Log and the documents in redacted and unredacted form, was complicated by several factors: 1) there were two privilege logs and they did not contain the same information; 2) the privilege logs reported incorrect privilege decisions numerous times; 3)

13

the same documents were produced several times but were treated inconsistently, sometimes withheld as fully privileged, sometimes redacted and sometimes the same document was redacted differently than other copies;  4) each document was subject to four numbering systems, but those numbers were not found in any one log or document; and 5) redacted documents were reformatted, so that redacted material appeared in a different place on the redacted when compared to the corresponding unredacted document.

### A.  Different Logs

There are at least two privilege logs. A log that was produced to the Labs, which has been referred to as the "Privilege Log" and a log identified as Cigna's Chronological Index of Privileged Documents, hereinafter referred to as the "Chron Log."

Both logs are set forth in multi-column spreadsheets but the spreadsheets do not contain the same columns of information. The Privilege Log has 12 columns. The Chron Log has 9 columns. Omitted from the Chron Log were the Privilege Log columns headed "Prod Begin Bates," "Prod End Bates," "To," "From," "CC," and "Document Author."

While the Chron Log had 3 less columns than the Privilege Log, there were 3 columns of information on the Chron Log not included in the Privilege Log. Those columns were headed "Chron No," "Privilege Log Tab No," and "Date of First Email."

### B.  Erroneous Reporting

Both the Privilege Log and the Chron Log have a column headed "Privilege Log-Privilege Decision."  It appears that this column was meant to report whether Cigna was withholding a document as "Fully Privileged" or redacting a document as "Privileged Redact." That column repeatedly displayed the Privilege Decision inaccurately. For example, the Privilege

Log would report "Privilege Redact" but on examination of the corresponding document provided to the Labs, the page said, "Document Withheld for Privilege." Attached as Exhibit D is a list of the inaccurate "privilege decision" entries on the Privilege Log and the Chron Log.

C. Inconsistent Redaction and Withholding

A time-consuming and persistent problem in the review of the documents was that the same document was produced several times but was not treated in the same way every time. Sometimes a document was withheld as fully privileged and other times, the same document was redacted, and sometimes a copy of the same document was redacted differently. Below is one example:

On the Chronological Privilege Log

Documents C-658 -C-671

They all have the same Date of First Email, "7/28/2015," and they all have the same Email Subject, "RE: IFP Substance Abuse Weekly Touch Point Call."

C-658-C-666 are marked "Privileged Redact" and C-667- C671 are marked "Fully Privileged." C-659 and C-660 are identical documents but are redacted differently. C-659 has one redaction. C-660 has two redactions.

Detecting and analyzing the inconsistencies was difficult and time consuming but necessary to try to understand Cigna's privilege claims. See Combined Analysis.

D. Four Document Numbering Systems

No explanation of the numbering systems was provided by Cigna. The description below is based on the review of the documents in redacted and unredacted form and the two privilege logs:

Document ID: This appears to be a Cigna in-house numbering system. This number appears on the unredacted documents, both the Privilege Log and the Chron Log, but not

15

on the documents produced to the Labs. These document numbers are in no apparent sequence.

Bates number: This is a number assigned by Cigna to each privileged document produced to the Labs. There is no apparent sequence to these numbers. The Bates Numbers appear on the documents produced to the Labs and on the Privilege Log.  They do not appear on the unredacted documents or the Chron Log.

Chron No.: This is the number assigned sequentially from 1-953 as they appear on the Chron-Log. The Chron No. appears only on the Chron Log.

Privilege Log Tab No.: These are sequential numbers assigned to each document in the order that Cigna produced it to the Labs.  This number appears only on the Chron Log.

Cigna provided no information about the numbering systems, when they were applied to the documents or why the copies of the documents provided to the Labs did not contain Document ID.

The unredacted documents only had one number on them, the Document ID. The redacted documents, the documents produced to the Labs, had only the Bates numbers on them.

E.  Reformatted Redacted Documents

The format of the redacted document is different than the format of the unredacted documents. When comparing the deleted text with the undeleted text, which was required for every redacted document, the corresponding text was frequently located in a different place on the corresponding document. The written material on the redacted document was condensed, when compared to the unredacted document. Frequently, this resulted in the page count being different. The unredacted document was longer, for example five pages, as compared to the redacted document, which was four pages.

F.  The Form

In order to deal with these complexities and make certain that each of the documents in redacted and unredacted form was analyzed in a consistent manner, a form was developed to

describe the document, the privilege claim asserted, the analysis of the claim and the conclusion of the analysis.

In cases where there was more than one reason for not accepting the privilege claim, not all grounds for that conclusion were recorded. Similarly, where redactions were inappropriate, no attempt was made to redact them properly. Those efforts would have extended the completion time even further.

Attached as Exhibit E is a blank copy of the form with an explanation as to the meaning of most of the items listed, unless they seem self-explanatory.

## VI.     REVIEW OF PRIVILEGE LOG

As set forth above, there is a two-step process to the effective unitization of any privilege: the party must first claim the privilege and then prove each element of the privilege.

Privilege is claimed through a privilege log. The purpose of the log is twofold: 1) to alert the other parties that responsive documents and other things are being withheld from discovery and 2) to inform the other parties of the nature of those documents and things "in a manner that . . . will enable them to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(ii). The required contents of the privilege log are described by rules, as interpreted by court decisions.

Throughout this section, the only log referred to will be the Privilege Log produced to the Labs in four parts, as described above.

### A. Applicable Rules

Federal Rule of Civil Procedure 26(b)(1) states: "Parties may obtain discovery regarding any nonprivileged matter." Federal Rule of Civil Procedure 26(b)(5)(A) states:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party must:

    (i)    expressly make the claim; and

    (ii)    describe the nature of the documents, communications or tangible things not produced or disclosed—and do so in manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The local rules of this court provide further direction as to the information required to be disclosed in a privilege log. Local Rule 26(e) provides:

Privilege Log.  In accordance with Fed. R. Civ. P. 26(b), when a claim of privilege or work product protection is asserted in response to a discovery request for documents or electronically stored information, the party asserting the privilege or protection shall serve on all parties a privilege log containing the following information:

(1) The type of document or electronically stored information;
(2) The general subject matter of the document or electronically stored information;
(3) The date of the document or electronically stored information;
(4) The author of the document or electronically stored information; and
(5) Each recipient of the document or electronically stored information.

This rule shall apply only to requests for documents or electronically stored information.

In addition, the parties in these cases filed a Stipulation Regarding Collection and Production of Documents and Electronically Stored Information. <u>See</u> ECF Doc. Nos. 32-2, 91-2. It was granted on December 20, 2019. <u>See</u> ECF Doc. No. 36 in Civil No. 3:19-cv-01324 (JCH). The stipulation made no material change to the requirements of Local Rules 26 (e). By its terms the rule does not permit change, unless the parties waive their rights to file motions.

Thirty years ago, the Second Circuit, in a case appealed from the District of Connecticut, gave clear instructions regarding the minimum content of a privilege log:

The privilege log should: "<u>identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure</u>. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient

18

detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." Bowne, 150 F.R.D. at 474 (citations omitted); see also von Bulow, 811 F.2d at 146; In re Grand Jury Subpoena Dtd. Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984).

Construction Prod. Rsch. Inc., 73 F.3d at 473 (omission in original) (emphasis added).

Significantly, while the Local Rule and its Stipulation required Cigna to provide the "general subject matter of each document," Cigna provided the "Email Subject."  The email subject was often uninformative such as "PB Labs," "Email-Internal," "Phone Call Internal," "Re U In," "Time Spent," "Letter," "Drug Testing," "for Noon 1X1," "Substance Abuse," and "8:30 Thursday."  For many documents, Cigna simply omitted any subject matter description.

Attached as Exhibit F is a list of entries from the Chron Log where the Email Subject column is blank.  The corresponding entry on the Privilege Log is also blank.

Additionally, for many documents, information required by Local Rule 26(e) and decisions of the Second Circuit has not been provided.

B.  Narrative

For each of the 953 entries on the Privilege Log, there is a column entitled "Narrative." The language of each of the 953 entries is largely the same, boilerplate.

Of the 953 entries, 481 Narrative entries relate to "investigation" and 412 entries relate to "potential policy change(s)."

Below are two examples of those descriptions from the column entitled "Narrative."

"Privileged and confidential email among Cigna employee and Cigna in-house counsel seeking legal advice regarding investigation into PB Labs." (emphasis added) [e.g., see Chron. 1-100]; and

"Privileged and confidential portions of communication between Cigna employees relaying legal advice from Cigna's in-house counsel regarding potential policy change." (emphasis added) (e.g., see Chron 324-367 and 513-627],

Those narrative descriptions are inadequate for at least two reasons. Almost identical prefatory language has been held to be simply "vague and repetitive" and do "little to communicate the potential basis for the privilege assessments." U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgmt. LLC, 2021 WL 1968325, at *4 (S.D.N.Y.  Mar. 31, 2021) (quoting In re Aenergy, S.A., 451 F. Supp. 3d 319, 325-26 (S.D.N.Y. 2020)).  Similarly, policy advice and advice concerning insurance company investigations are not privileged.

C.  Policy Advice Not Legal Advice

i.      Policy

In In re Cnty. of Erie, the Second Circuit said:

> When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged. In re Lindsey, 148 F.3d [1100,] 1106 [(D.C. Cir. 1998)] (citing 1 McCormick on Evidence § 88, at 322–24 (4th ed. 1992); Restatement (Third) of the Law Governing Lawyers § 122 (Proposed Final Draft No. 1, 1996)). In the government context, one court considered relevant the fact that the attorney seeking to invoke the privilege held two formal positions: Assistant to the President (ostensibly non-legal) and Deputy White House Counsel (ostensibly legal). In re Lindsey, 148 F.3d at 1103, 1106-07. The same is true in the private sector where "in-house attorneys are more likely to mix legal and business functions." Bank Brussels Lambert [v. Credit Lyonnais (Suisse)], 220 F. Supp. 2d [283,] 286 [(S.D.N.Y. 2002)]; accord Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 147 (D. Del. 1977) (Emphasis added).

473 F.3d 413, 421 (2d Cir. 2007) (footnote omitted); see also Nat'l Council of La Raza v. Dep't of Justice, 411 F. 3d 350 (2d Cir. 2005); Brennan Ctr. for Justice at New York Univ. Sch. Of Law v. U.S. Dep't of Justice, 697 F.3d 184 (2d Cir. 2012).

Significantly, in La Raza, the Court of Appeals observed, in connection with policy advice, there are circumstance where, even if the advice was initially legal advice, "the principal rationale behind the attorney-client privilege . . . evaporates." 411 F.3d at 358.

20

ii.    Insurance Investigations Not Privileged

Professor Rice reports that there are many activities that are not privileged, even if performed by lawyers, particularly investigations conducted by insurance companies. Rice, Privilege § 7:19.

"The business of insurance companies is the payment of claims. A necessary part of this business is the investigation of claims. When lawyers have been employed to perform this function, courts have not considered these services to be legal advice." Rich Privilege § 7:19 at 1487.

Courts in the Second and Eleventh Circuits have held that where in-house attorneys participate in claims investigation work for insurance companies their work may not be legal advice. Bank Hapoalim B.M. v. American Home Assur Co., 1993 WL 37506 at *4 (S.D.N.Y. Feb. 8, 1993); Ranger Construction Industries, Inc v. Allied World Nat'l Assur. Co., 2019 WL 436555 (S.D. Fla. Feb. 5, 2019).

> Thus, in the insurance context, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation. Harrigan v. Electronic Pre–Press Systems, Inc., 1992 WL 121438, at *3 (S.D.N.Y. May 15, 1992). A party withholding insurance documents may not rest on conclusory allegations of privilege, but must establish, by objective evidence, that the author of the document anticipated litigation at the time that the document was created, and would not have created the document in essentially the same way had the prospect of litigation not existed. Adlman, 134 F.3d at 1202.

Weber v. Paduano, 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003).

In a case in this District, Judge Dorsey said:

> An insurance company "may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigation." Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, No. 90 Cir. 7811 (AGS) 1994 WL 510043 at 5 (S.D.N.Y. Sept. 16, 1994). "To the extent an attorney acts as a claims adjuster, claims process supervisor or claims investigation monitor, and not as a legal advisor, the attorney-client

21

privilege does not apply." <u>Amerisure Ins. Co. v. Laserage Tech. Corp.</u>, No. 96-Circ-6313, 1998 WL 310750 at *1 (W.D.N.Y., Feb. 12, 1998.)

<u>First Aviation Servs. v. Gulf Ins. Co.</u>, 205 F.R.D. 65, 60 (D. Conn. 2001).

The Privilege Log does not comply with Federal Rule of Civil Procedure 26(b)(5), Local Rule 26(e), or the teaching of the courts.  In <u>U.S. v. Construction Prod. Research Inc.</u>, the Court of Appeals affirmed the denial of attorney-client and work product primarily claims where the party claiming the privilege provided a deficient privilege log and no evidence supporting its privilege claims.  73 F.3d at 473.  <u>First Aviation Servs. v. Gulf Ins. Co.</u>, 205 F.R.D. 65, 60 (D. Conn. 2001).

## VII.    REVIEW OF REDACTED AND UNREDACTED DOCUMENTS

In performing the required legal and factual analysis, reliance was placed on the teachings of Professor Paul R. Rice.  Professor Rice is the author of two highly relevant treatises. Paul R. Rice, <u>Attorney-Client Privilege in the United States</u> (2025 Ed.) and Paul R. Rice <u>Electronic Evidence Law and Practice Second Edition</u> (2008).  Additionally, Professor Rice was a Special Master for privilege issues in several complex and high profile cases including <u>In re Vioxx</u>, 501 F.Supp. 2d 789 (E.D. La 2007).  Professor Rice's analysis of expanding roles of in-house counsel and the increased use and informality of emails in the corporate setting was particularly informative.

The results of the document by document review of the redacted and unredacted documents are set forth in the document analysis summary forms submitted herewith. There is at least one form for each document on the Privilege Log. The forms are in the same order as Cigna's Chronological Index of Privileged Documents. In certain instances, there is also a combined analysis of several related documents. The documents were reviewed individually and

with other documents when the other documents appeared to be relevant to an understanding of the document or the privilege claims.

The result of this analysis is consistent with the court's analysis of the designated sample of documents as set forth in the Order to Show Cause. Most of the documents on Cigna's privilege list simply are not privileged because they concern business advice, status reports, transmittal emails or administrative, logistical or non-substantive matters.

At the outset of this litigation the parties agreed, and the court approved a stipulation regarding the handling of documents, including "Privilege and Redaction Logs." <u>See</u> ECF Doc. No. 32-2 at 12, ECF Doc. No. 91-2 at 11. That Stipulation provided in part:

> A. The Parties agree that the following categories of <u>Documents need not be identified on a privilege log</u>: . . . (ii) all communications between an inhouse attorney or counsel of record and their respective clients <u>concerning scheduling, logistical, and/or other non-substantive or ministerial matters</u>; (iii) all communications between Plaintiffs' counsel; and (iv) all communications between Defendants' counsel.

<u>Id.</u> (emphasis added).

A significant number of documents on the Privilege Log were documents that the parties agreed were not privileged in the first place and did not need to be listed on a privilege log. However, Cigna's listing of these documents was not a harmless error, because the Labs had no way of knowing that the privilege list contained unnecessary documents, especially where such documents were claimed as "Fully Privileged," which was not uncommon.

A. <u>Attorney-Client Privilege</u>

As set forth above, the Court of Appeals has repeatedly said that attorney-client privilege has three essential elements and the party claiming privilege must prove each element with competent evidence. The three elements are: (1) a communication between a client and an attorney (2) that was intended to be and was in fact kept confidential (3) for the purpose of

obtaining legal advice.  U.S. v. Mejia, 655 F.3d 126, 132 (2d Cir 2011) (citing In re Cnty. of Erie, 473 F. 3d at 419).

According to Professor Rice, generally, bar membership is a precondition for the application of the attorney-client privilege. Rice, supra, § 3:2. See also, Colton v. U.S., 306 F.2d 633, 637 (2d Cir. 1962).  Cigna has offered no proof that William M. Welch II was admitted to the practice of law in any jurisdiction at the time he was employed by Cigna. It is Cigna's privilege that is at issue, not the Cigna employees who may have consulted with Mr. Welch.

For purposes of the document by document analysis, however, Mr. Welch was assumed to be a practicing attorney.

B.  Legal Advice

The Second Circuit has defined legal advice as follows:

> Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. See generally 1 Paul R. Rice, Attorney Client Privilege in the United States § 7:9 (2d ed. 1999). It requires a lawyer to rely on legal education and experience to inform judgment. Ball v. U.S. Fid. & Guar. Co., 1989 WL 135903, at *1 (S.D.N.Y. Nov. 8, 1989) (reasoning that legal advice "involve[s] the judgment of a lawyer in his capacity as a lawyer").

In re Cnty. of Erie, 473 F.3d at 419-20.

As shown in the document analysis many of the documents on Cigna's Privilege Log simply are not privileged because they do not request, provide or relay legal advice. They contain business advice such as advice regarding investigations, potential policy changes "flagging," "prepaid edits," or "fee forgiveness" determinations or concern logistical, administrative, transmittal and other non-substantive matters.

Communications do not become privileged, simply because the emails is addressed or copied to an attorney. See Rice, supra, § 7:1 ("The fact that a person consults with an attorney does not render everything he says to the attorney privileged. Similarly, sending a copy of a

24

correspondence to legal counsel does not make the communication privileged." (footnote omitted)); In re Grand Jury Subpoena, 599 F.2d 504, 511 (2d Cir. 1979) ("Participation of the general counsel does not automatically cloak the investigation with legal garb.").

Privilege is only related to the substance of the communication made for the purpose of obtaining legal advice. In does not protect the fact of the communication or the general subject matter of the communication. These elements are required to be disclosed by the rules and the Stipulation and are not privileged. Haddock v. Nationwide Fin. Serv. Inc., 2009 U.S. Dist. Lexis 103816*7 (Dist. Conn. Nov. 6, 2009).

C. Confidentiality

The last essential element of attorney client privilege is confidentiality. A communication is not privileged unless it was intended to be confidential at the time of the communication and remains confidential.

> "[I]it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence." In re Horowitz, 482 F.2d 72, 81-82 (2d Cir. 1973). Moreover, the person invoking the privilege must have taken steps to ensure that it was not waived—"[i]t is not asking too much to insist that if a client wishes to preserve the privilege . . . , he must take some affirmative action to preserve confidentiality." Id. at 82.

U.S. v. Mejia, 655 F.3d at 134 (omission in original).

Most of the documents are emails. A few are marked "confidential" or "Attorney-Client Privilege," although such markings are not controlling. See, e.g., Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 564 (S.D.N.Y. 2008) ("The fact that the e-mails contain a warning indicating they contain 'PRIVILEGED AND CONFIDENTIAL INFORMATION,' does not transform them from non-privileged communications into privileged communications." (internal citation omitted)). The overwhelming majority of documents have no indication that they were intended to be confidential and remain confidential.

While the NARRATIVE for each and every one of the 953 documents on the Privilege Log unfailingly begins "Privileged and Confidential," that is what the Second Circuit dismisses as, the "ipsi dixit" of the privilege log. It is not evidence of confidentiality of intent or its preservation.

Over 880 of the documents on the Privilege Log are dated prior to 2016, a decade ago and 6 years before they first appeared on the Privilege Log.

Even if it was relevant, which it no longer is, it is unlikely that at this point in time Cigna could credibly prove confidentiality of each of the 953 documents on its Privilege Log for several reasons: 1) most of the documents are now 10 years old; 2) some of the authors and recipients, including Mr. Welch, are no longer employed by Cigna; and 3) many of the authors and recipient testified, during their pretrial depositions, that they had no recollection of "important facts" and others involved. See ECF Doc. No. 271 at 22 in Civil No. 3:19-cv-01324 (JCH).

In U.S. v. Mejia, the Court of Appeals said, when addressing a privilege claim of an incarcerated person, "'[i]t is not asking too much to insist that if a client wishes to preserve the privilege . . . , he must take some affirmative action to preserve confidentiality.'" 655 F.3d at 134 (alteration and omission in original) (quoting In re Horowitz, 482 F.2d at 82).

D. Work Product

In U.S. v. Adlman, the Second Circuit adopted Wright & Miller's articulation of the work-product privilege.

> The formulation of the work-product rule used by the Wright & Miller treatise, and cited by the Third, Fourth, Seventh, Eighth and D.C. Circuits, is that documents should be deemed prepared "in anticipation of litigation," and thus within the scope of the Rule, if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."

26

134 F. 3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (quoting 8 Wright, Miller, &

Marcus's Federal Practice & Procedure § 2024 (1994)).

Here Cigna chose not to offer any evidence about "the nature of the document and the

factual situation" or any evidence that the document claimed to be work product was produced

"because of" the anticipation of litigation and was not created in the "ordinary course of

business." Id.

District courts in this circuit, including one in this District, have warned about the

difficulty in analyzing the work product privilege of insurance companies.

> Determining whether documents were prepared or obtained "because of" anticipated
> litigation can be challenging in the insurance context, since "the very business of
> [insurance companies] is to evaluate claims that may ultimately ripen into litigation."
> Weber v. Paduano, 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003) (citation and
> quotation marks omitted). Because insurance companies routinely investigate claims in
> the ordinary course of business without necessarily anticipating future litigation, "in the
> insurance context, it is particularly important that the party opposing production of the
> documents, on whom the burden of proof as to privilege rests, demonstrate by specific
> and competent evidence that the documents were created in anticipation of litigation." Id.

Philadelphia Indem. Ins. Co. v. 1961 Bos. Post Rd. LLC, 2021 WL 1783119, at *3 (D. Conn.

May 4, 2021) (alteration in original).

In camera review not a substitute proof

"[I]n camera review of the documents, while potentially helpful to the determination of

privilege, is 'not . . . to be routinely undertaken . . . as a substitute for a party's submission of an

adequate record for its privilege claims[.]'" Weber, 2003 WL 161340 at *13 (omissions in

original) (quoting Bowne, 150 F.R.D. at 475); see also 6340 NB LLC v. Cap. One, N.A., 2023

WL 7924176, at *5 (E.D.N.Y. Nov. 16, 2023) (citing Weber, 2003 WL 161340 at *13, for same

proposition).

27

"Courts may conduct in camera review of documents to evaluate an agency's claimed exemptions. However, '[a] district court should not undertake in camera review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions . . . .'" Cox v. Dep't of Just., 504 F. Supp. 3d 119, 151 (E.D.N.Y. 2020) (alteration in original) (quoting Seife v. Dep't of State, 298 F. Supp. 3d 592, 630 (S.D.N.Y. 2018)), aff'd, 111 F.4th 198 (2d Cir. 2024).

## VIII.  CONCLUSION

Cigna's Privilege Log is incomplete, inaccurate, redundant and fails to accomplish the essential objective of Rule 26 (b)(5) Fed. R. Civ. P. to describe the communication it has chosen to withhold from discovery sufficiently to "enable other parties to assess the claim."  Despite the clear obligation to prove, with competent evidence, each element of its privilege claims, Cigna offered no evidence.

The review of the redacted and unredacted documents, as documented in the analysis forms, reveals many of the documents are simply not privileged because they do not concern legal advice, but business advice or routine transmittal, logistical, administrative documents, which are not privileged and should not have been on the privilege list.

The cases make clear that courts treat attorney-client and work product privileges as privileges. The court will enforce the privilege, provided that the party claiming the privilege fulfills its obligations to provide the other parties with a fair opportunity to assess and challenge the privilege, and prove each element of the privilege. Cigna elected to remain silent.

It is respectfully submitted that for the reasons set forth above and as reflected on the document analysis forms, Cigna improperly asserted privilege in these cases.

Dated: June 15, 2026

JAMES R. HAWKINS, II
Special Master

James R. Hawkins, II (ct 00128)
106 Jordan Lane
Stamford, CT 06903
203-940-3512
jrhawkinsii@yahoo.com

29